John P. Bovich (SBN 150688)
Email: jbovich@reedsmith.com
Douglas H. Riegelhuth (SBN 166686)
Email: driegelhuth@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936
Telephone:   415 543 8700
Facsimile:   415 391 8269

Douglas W. Hall (*Pro Hac Vice* Application Pending)
Email: dhall@fordharrison.com
Ford & Harrison LLP
1300 Nineteenth Street, N.W., Suite 700
Washington, DC 20036
Telephone:   202.719.2065
Facsimile:   202.719.2077

Attorneys for Defendant
SKYWEST AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SKYWEST AIRLINES, INC., <br><br> Defendant. | No.: 3:07-CV-02688-CRB <br><br> **MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER** <br><br> Honorable Charles R. Breyer |

Defendant SkyWest Airlines, Inc. ("SkyWest") moves to dissolve the Temporary Restraining Order ("TRO") entered in this matter on May 22, 2007. The TRO should be dissolved because, under the Norris-LaGuardia Act ("NLGA"), the Court lacked jurisdiction to grant the TRO and the TRO does not comply with the requirements of Rule 65(b) of the Federal Rules of Civil Procedure.

SkyWest also requests that the Court immediately stay its TRO pending resolution of this motion to dissolve. SkyWest is compelled to make this request because Plaintiffs have demanded that SkyWest immediately comply with certain aspects of the TRO – including providing access to SkyWest's email system by noon today and establishing dedicated bulletin boards throughout SkyWest's system by 5:00 p.m. "local time" today – quite likely before SkyWest can be heard in this matter. *See* Declaration of Douglas W. Hall ("Hall Decl."), Exh. A. This places SkyWest in an extremely untenable position: comply with the Plaintiffs' demands, thus mooting its motion, or risk being held in contempt of the TRO.

## I.   THE COURT LACKED JURISDICTION TO ENTER THE TRO UNDER NLGA

When Congress enacted the NLGA, it "severely restricted the jurisdiction of the federal courts to issue injunctions in 'any labor dispute.'" *Camping Constr. Co. v. District Council of Iron Workers*, 915 F.2d 1333, 1341 (9th Cir. 1990), *cert. denied*, 500 U.S. 905 (1991). *See also Reuter v. Skipper*, 4 F.3d 716, 718 (9th Cir. 1993) (NLGA "prohibits any federal court from issuing an injunction in almost any 'labor dispute'"), *cert. denied*, 511 U.S. 1017 (1994). Section 1 of the NLGA states that no court of the United States "shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101.[1] NLGA Sections 7 and 9

---

[1] This action unquestionably involves a "labor dispute," as the NLGA defines that phrase. NLGA Section 13 defines "labor dispute" to "include[] any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." 29 U.S.C. § 113(c). "This definition is extraordinarily broad, and the Supreme Court has so interpreted it." *Camping Constr. Co.*, 915 F.2d at 1342 (citing *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 712-14 (1982), and *New Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 559-61 (1938)).

expand on this statement by listing the procedural steps that must be followed, and the substantive findings that a court must make, before a labor injunction may issue. *See Camping Constr. Co.*, 915 F.2d at 1341 ("sections 7 and 9 of the Act impose a number of substantive and procedural conditions on the availability of injunctive relief").

One prerequisite to the issuance of injunctive relief is that the court must hold a hearing in open court involving the examination and cross-examination of witnesses:

> No court of the United States shall have jurisdiction to issue a temporary or permanent injunction in any case involving or growing out of a labor dispute ... except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered .... 29 U.S.C. § 107.

The NLGA also requires that "due and personal notice" of such a hearing must be given "to all known persons against whom relief is sought." *Id.*[2]

The NLGA contains additional procedural requirements for the issuance of a TRO. Specifically, a TRO (or other injunctive relief) may be granted only "on the basis of findings of fact made and filed by the court in the record of the case prior to the issuance of such restraining order or injunction." 29 U.S.C. § 109. Moreover, a court may not issue a TRO without requiring the moving party to "file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoyed for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, <u>including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any</u>

---

[2] The only circumstance in which a TRO could issue without notice would be when the moving party shows that a "substantial and irreparable injury to complainant's property will be unavoidable." *Id.* In this vein, the NLGA requires that a TRO or injunction may not issue except upon a showing that the "public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection," 29 U.S.C. § 107(e), and that notice of the hearing also be given "to the chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's property." 29 U.S.C. § 107. Plaintiffs here made no claim that their property was in imminent danger of "substantial and irreparable" harm in order to justify the issuance of a TRO without notice, and the Court made no such finding. Moreover, a TRO can last no longer than five days, after which time it becomes void. *Id.*

injunctive relief sought in the same proceeding and subsequently denied by the court." 29 U.S.C. §107 (emphasis added).

None of these requirements was followed before the Court issued the TRO here. Contrary to NLGA Section 7, there was no hearing in open court – and thus, obviously, no "due and personal notice" to SkyWest of such a hearing – during which the testimony of the Plaintiffs' witnesses was taken, and no opportunity for SkyWest to cross-examine or offer opposing testimony. *See Int'l Union, United Automobile, Aerospace and Agric. Implement Workers of America v. LaSalle Machine Tool*, 696 F.2d 452, 457 (6th Cir. 1982) ("This court has long held that when the allegations of a complaint seeking an injunction are denied by the defendant, the defendant is entitled to a hearing on controverted facts as well as upon questions of law."). The Court made no factual findings before issuing the TRO, also in contravention of the NLGA. *Id.* at 458 (NLGA Sections 7 and 9 state that a federal court "has no jurisdiction to grant an injunction until after the specified findings have been made." (emph. in orig.)). And the TRO did not require the Plaintiffs to post any bond, much less a bond sufficient to compensate SkyWest for any expenses caused by the issuance of the TRO, including SkyWest's costs, expenses and attorneys' fees in defending against the TRO or against the additional injunctive relief Plaintiffs are seeking in this proceeding that may be denied. This, too, violates the NLGA. *See Aluminum Workers Int'l Union, AFL-CIO, Local Union No. 215 v. Consolidated Aluminum Corp.*, 696 F.2d 437, 446 (6th Cir. 1982) (district court abused its discretion in setting a bond at only $1,000 because that amount would not allow for recovery of attorney fees); *Tejidos de Coamo, Inc. v. Int'l Ladies' Garment Workers' Union*, 22 F.3d 8 (1st Cir. 1994) (district court erred when it did not require a bond "to cover damages including attorney's fees, as section 7 also requires."); *Int'l Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines*, 925 F.2d 6 (1st Cir.) ("Section 7 of the Norris-LaGuardia Act clearly expresses the congressional intent to require that preliminary injunction undertakings in labor disputes include a provision for reasonable attorneys' fees."), *cert. denied*, 502 U.S. 901 (1991).[3] These all are

---

[3] There is some confusion as to whether a party against whom a preliminary injunction in a labor dispute is erroneously granted can recover all its attorney fees, or only those covered by the bond required by Section 7 of the NLGA. *Compare United States Steel Corp. v. United Mine*

jurisdictional requirements, and the failure to comply with them requires the dissolution of the TRO. *See, e.g., id.* ("the injunction in this case was erroneously issued because the district court failed to comply with the jurisdictional requirements of §7"); *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 876-77 (6th Cir. 1972) ("The fact that this case involves an injunction against the employer does not mean that the District Court was free to ignore the procedural mandates set forth in §7 of the [NLGA] or to grant an injunction in the absence of irreparable harm."), *cert. denied*, 411 U.S. 967 (1973); *District 29, United Mine Workers of America v. New Beckley Mining Co.*, 895 F.2d 942, 947 (4th Cir. 1990) ("the district court can issue no injunction without adhering to the strict procedural requirements of §7"); *In re District No. 1 – Pac. Coast Dist., Marine Engineers Beneficial Ass'n*, 723 F.2d 70, 76-77 (D.C. Cir. 1983) ("Strict adherence to the Act's procedures is not a mere matter of form: A district court has no <u>jurisdiction</u> under the [NLGA] to issue a labor injunction without adhering to the explicit terms of the Act." (emph. in orig.)); *United Telegraph Workers v. Western Union Corp.*, 771 F.2d 699, 704 (3rd Cir. 1985) (same).

In addition to its procedural requirements, NLGA Section 7 contains substantive provisions that must be satisfied before temporary or permanent injunctive relief may issue. These include a showing that the defendant has committed and will continue committing unlawful acts unless restrained; that substantial and irreparable injury to complainant's property will follow absent injunctive relief; that as to <u>each item</u> of relief granted, the complainant would suffer greater injury from a denial of relief than will be inflicted upon defendants by granting relief; that there is no adequate remedy at law; and that the public officers charged with the duty to protect the

---

*Workers*, 456 F.2d 483 (3d Cir.), *cert. denied*, 408 U.S. 923 (1972) (all attorney fees) *with Alton & Southern Ry. Co. v. Bhd. of Maint. of Way Employees*, 899 F.Supp. 646 (D.D.C. 1995), *aff'd*, 72 F.3d 919 (D.C. Cir. 1995) (only fees covered by bond). That problem can be obviated here by requiring a bond that will cover SkyWest's costs, damages and attorney fees. Investigating Plaintiffs' claims, reviewing and analyzing their motion and the declarations associated with it, and responding to their motion will be an expensive proposition. Additional sums could be necessary for appellate proceedings to have any improperly awarded preliminary injunctive relief vacated or reversed. Consequently, SkyWest requests that, if injunctive relief of any sort ultimately is ordered, a bond should be set in the amount of $500,000.

complainant's property are unable or unwilling to furnish adequate protection. Section 7 requires that the court must make findings of fact on each of these points. That was not done here. Moreover, for the reasons discussed in the context of SkyWest's Rule 65(b) argument, below, Plaintiffs did not establish that "substantial and irreparable injury" to their property would follow absent injunctive relief.

## II.   THE *EX PARTE* TRO FAILS TO COMPLY WITH RULE 65(b)

A temporary restraining order is an extraordinary remedy designed to preserve the "status quo" until the court has an opportunity to rule on an application for a preliminary injunction. Moreover, although there are circumstances under which a TRO may be issued *ex parte*, without affording the other party an opportunity to be heard in opposition, granting such relief is even more extraordinary, requiring exigent, emergency circumstances. Thus, Rule 65(b) establishes clear standards for the issuance of an *ex parte* TRO. First, it must clearly appear from specific facts shown by affidavit or by the verified complaint that "immediate" and "irreparable" harm will result to the moving party "before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b). Second, the applicant's attorney must certify to the court in writing the efforts, if any, which have been made to give notice to the adverse party and the reasons supporting the claim that notice should not be required. *Id.* With respect to the order itself, it must, in relevant part, "define the injury and state why it is irreparable and why the order was granted without notice." *Id.* These standards were not met in this case, requiring dissolution of the TRO.

### A.   Plaintiffs Did Not Establish Any Immediate Harm Justifying The Extraordinary Relief Of An Ex Parte TRO

The materials submitted to the Court by Plaintiffs, even if fully credited, do not establish any immediate harm that warrranted issuing a TRO, particularly on an *ex parte* basis. Plaintiffs do not contend that there was some watershed event or action taken by SkyWest that has dramatically changed the landscape at SkyWest or among its pilots, nor that there has been an increase in the frequency of alleged unlawful actions by SkyWest management. On the contrary, Plaintiffs allege

that SkyWest has prohibited the "expressive and associational" activities at issue "[s]ince the inception of Plaintiffs' organizing campaign" – which, based on the Plaintiffs' submission, has been going on for many, many months. *See* Memorandum at p. 3. To the extent that Plaintiffs' pleadings provide any detail about specific actions of SkyWest that they consider unlawful, the vast majority of these allegedly occurred several months ago, and none of them occurred within the last month and a half. For example, the Declaration of Andy Bharath asserts that his conflict with respect to an ALPA lanyard occurred in August or September of 2006 and issues with respect to ALPA fliers in the crew room were raised in late 2006. (Decl. Of Andy Bharath, ¶¶4, 6.) Indeed, the SkyWest ALPA Organizing Committee sent a letter to SkyWest on March 15, 2007, demanding the same rights now sought by the present action. SkyWest declined the demands, yet ALPA waited more than ten weeks to seek emergency relief, which belies its assertion that any "emergency" exists.

Plaintiffs attempt to satisfy the immediacy requirement by claiming that they themselves decided in mid-May that "it is necessary to sponsor as soon as possible a carrier-wide action, pursuant to which pilots would wear union insignia in a show of solidarity, to energize the organizing campaign." Memorandum at pages 2, 6.[4] Why the immediacy of this situation prevented a hearing on Plaintiffs' TRO Motion is not apparent, except for some cryptic and unexplained reference to "pilots becom[ing] unavailable due to their summer schedules." *Id.* at page 8. Plaintiffs offer no evidence to support the assertion that pilots suddenly will become unavailable during the summer – SkyWest certainly plans to keep operating, and the summer typically is a heavy season for air travel. Even if the "summer disappearance" theory were true, Plaintiffs did not present any evidence regarding the number of pilots that would become unavailable due to summer schedules, much less evidence supporting the assertion that such unavailability is so imminent for a significant enough number of pilots that a TRO had to issue before Defendant could be heard in opposition. Nor do the Plaintiffs explain why, if they suspected pilots would become harder to reach

---

[4] The only alleged "interference" that Plaintiffs link to their ability to hold this "carrier-wide action" is the prohibition against wearing ALPA lanyards. Memorandum at 8. If the "chilling effect" of this prohibition was the "immediate" harm, then the Court should not even have considered any of the Plaintiffs' other contentions, for which no immediate harm was alleged.

during the summer, they waited until the week before Memorial Day weekend to decide to hold their "carrier wide action" – and to file this suit. This is an artificial emergency created by ALPA in order to have something to satisfy the elements of Rule 65(b). It is remarkable that Plaintiffs could create and impose deadlines upon themselves and then claim that SkyWest is somehow interfering with their ability to meet them.

Again, under Rule 65(b), it must "clearly" appear from "specific facts" shown by affidavit or by the verified complaint that "immediate" and irreparable injury will result to the applicant before the adverse party can be heard in opposition. Plaintiffs have offered no facts to demonstrate that support for their organizing efforts among the SkyWest pilots has waned or, more importantly, that it would do so irretrievably if a TRO were not granted. On the contrary, Plaintiffs' pleadings speak only about the hypothetical, not the concrete. Accordingly, there has been no injury of such immediacy to warrant an *ex parte* TRO. Moreover, any "immediate" injury has not been "clearly" demonstrated with "specific facts." And, even if such a showing had been made, it is Plaintiffs who created the alleged emergency by waiting this long to seek relief. Plaintiffs should not be permitted to manipulate Rule 65(b) in this fashion, and SkyWest should not, as a result, have been deprived of a hearing. *See Hoh v. PepsiCo, Inc.*, 491 F.2d 556, 560-61 (2d Cir. 1974) ("Time pressures on the district court which the unions could readily have avoided … afford no basis for dispensing with the testimony on disputed issues required by §7 of the Norris-LaGuardia Act and by F.R.Civ.P. 65.").[5]

### B. The TRO Does Not Comply With Other Rule 65(b) Requirements

Under Rule 65(b), an *ex parte* temporary restraining order must "define the injury and state why it is irreparable and why the order was granted without notice." The TRO entered here does not comply with any of these requirements. Accordingly, it should be dissolved on these grounds as well.

---

[5] In addition to these errors, Plaintiffs did not make the required certification as to why notice should not be required, another prerequisite to an *ex parte* TRO under Rule 65(b). This, too, justifies dissolution of the TRO.

Finally, Plaintiffs did not show a substantial likelihood of success on the merits to justify a TRO under Rule 65(b). ALPA and its SkyWest Organizing Committee did not meet that standard because they lack standing to seek <u>any</u> relief under Sections 2, Third and Fourth of the Railway Labor Act, the only grounds for the relief sought in their lawsuit. Courts uniformly have held that an uncertified union – like ALPA here – lacks standing to seek relief under those provisions, either on behalf of those employees it seeks to represent or due to alleged injury to its own organizational interests. *See, e.g., International Bhd. of Teamsters v. Zantop*, 394 F.2d 36 (6th Cir. 1968); *Adams v. Federal Express Corp.*, 90 L.R.R.M. (BNA) 2742 (W.D. Tenn. Sept. 10, 1975), *aff'd*, 547 F.2d 319 (6th Cir. 1976), *cert. denied*, 431 U.S. 915 (1977); *Bensel v. Allied Pilots Ass'n*, 387 F.3d. 298, 318 (3rd Cir. 2004); *International Bhd. of Teamsters v. American W. Airlines*, 153 L.R.R.M. (BNA) 2181 (D. Ariz.. 1996); *Grosschmidt v. Chautaqua Airlines, Inc.*, 122 L.R.R.M. (BNA) 3254, 3255 (N.D. Ohio 1985). Moreover, since ALPA's Complaint must be dismissed due to its lack of standing, all the allegations related to the its purported institutional harm (harm to <u>its</u> organizational campaign) must also be dismissed because the individual employee Plaintiffs lack standing to assert those claims on a third-party's behalf. *See Duke Power Co. v. Carolina Envtl. Study Group, Inc.*, 438 U.S. 59, 80 (1978); *Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976). *Warth*, 422 U.S. at 499. To the extent the TRO granted such relief, it should be dissolved for this reason as well.

## III.    CONCLUSION

For the reasons stated herein, the Court should dissolve its TRO.

DATED: May 23, 2007.

                                                  FORD & HARRISON LLP

                                                  REED SMITH LLP

                                                  By____/s/_____
                                                     John P. Bovich
                                                     Douglas H. Riegelhuth
                                                     Attorneys for Defendant
                                                     SKYWEST AIRLINES, INC.

REED SMITH LLP
A limited liability partnership formed in the State of Delaware