STEPHEN P. BERZON (#46540)
sberzon@altshulerberzon.com
LINDA LYE (#215584)
llye@altshulerberzon.com
CLAIRE P. PRESTEL (#235649)
cprestel@altshulerberzon.com
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:   (415) 362-8064

ELIZABETH GINSBURG
(Admitted to Practice *Pro Hac Vice*)
elizabeth.ginsburg@alpa.org
Air Line Pilots Association, International
535 Herndon Parkway
Herndon, VA 20172-1169
Telephone:  (703) 481-2424
Facsimile:   (703) 481-2478

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>SKYWEST AIRLINES, INC.,<br><br>Defendant. | CASE No. C-07-2688 CRB<br><br>**OPPOSITION TO MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER** |

**INTRODUCTION**

This brief addresses only the Norris-LaGuardia Act issues raised by Defendant's motion to dissolve the temporary restraining order.  Plaintiffs will address the remaining issues at oral argument.

**I.    THE NORRIS-LAGUARDIA ACT DOES NOT APPLY TO PLAINTIFFS' REQUEST TO PROTECT PEACEFUL EXPRESSIVE AND ASSOCIATIONAL LABOR ORGANIZING ACTIVITY**

SkyWest invokes the Norris-LaGuardia Act, 29 U.S.C. §§101–115 ("NLGA"), in an attempt to challenge the Court's temporary restraining order.  In doing so, SkyWest ignores 70 years of case

law holding that the Norris-LaGuardia Act does not strip the federal courts of jurisdiction or otherwise bar injunctive relief where the injunction *protects* employees' exercise of their right to organize through peaceful expressive and associational activity.

### A. THE NORRIS-LAGUARDIA ACT DOES NOT APPLY WHERE EMPLOYEES SEEK AN INJUNCTION TO PROTECT THEIR RLA-PROTECTED EXPRESSIVE AND ASSOCIATIONAL RIGHTS

The NLGA does not apply to cases such as this, where employees seek an injunction to protect their RLA right to organize through peaceful expressive and associational activity. The purpose of the NLGA is to prevent federal court interference with peaceful labor activity. To apply the NLGA to prevent issuance of a TRO against employer interference with peaceful labor activity, as Defendant seeks to do here, would frustrate the purposes of *both* the RLA and the NLGA. The NLGA was intended as a shield for employees' exercise of their rights to organize for the purpose of collective bargaining through peaceful means – not a sword for employers against employees' efforts to obtain judicial protection of those rights.

#### 1. THE NORRIS-LAGUARDIA ACT WAS INTENDED TO PROTECT EMPLOYEES' RIGHT TO ENGAGE IN PEACEFUL LABOR ACTIVITY

As the plain language of the statute makes clear, Congress' purpose in enacting the NLGA – much like its purpose in passing the RLA – was to protect employees' rights to "have full freedom of association, self-organization, and designation of representatives of his own choosing, and [to] be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. §102 (NLGA); *compare* 45 U.S.C. §152, Third and Fourth (RLA). Concerned that federal courts had inappropriately issued injunctions against unions, Congress enacted the NLGA for the specific purpose of "prevent[ing] the federal courts from using their powers to weaken unions and crippling striking workers." *Burlington Northern Santa Fe Ry. Co. v. Int'l Bhd.of Teamsters Local 174*, 203 F.3d 703, 709 (9th Cir. 2000). Congress was particularly concerned with securing the rights of employees to engage in peaceful expressive labor activity, and to that end stripped the federal courts of jurisdiction, in cases arising out of a labor dispute, to issue *any* restraining order or injunctive relief that would prohibit

1  "any person or persons" from "[a]ssembling peaceably to act or to organize to act in promotion of
2  their interests in a labor dispute." 29 U.S.C. §104(f).
3      In cases not expressly beyond the jurisdiction of the federal courts to issue injunctive relief,
4  *see* 29 U.S.C. §104(f), Section 7 of the NLGA establishes certain prerequisites to the issuance of
5  any restraining order or injunctive relief, including the requirement that the court make certain
6  specified findings of fact. *See* 29 U.S.C. §107. As we show below, Section 7 applies *only* to those
7  situations involving violent or destructive acts. The NLGA does not apply to RLA cases where the
8  conduct at issue is peaceful expressive labor activity.

    **2. BECAUSE THE NLGA AND THE RLA MUST BE HARMONIZED, THE NLGA CANNOT BE INVOKED AGAINST EMPLOYEES SEEKING TO PROTECT THEIR STATUTORY RIGHT TO ENGAGE IN PEACEFUL EXPRESSIVE AND ASSOCIATIONAL ORGANIZING ACTIVITY**

12      Defendant invokes the NLGA in its effort to dissolve the TRO. SkyWest's reliance on the
13  NLGA to strip employees of judicial enforcement of their RLA-protected right to engage in peaceful
14  organizing activity turns the purposes of *both* statutes on their heads.
15      In *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515 (1937), the Supreme
16  Court upheld an injunction entered to *protect* employees' RLA rights and rejected a challenge to the
17  injunction based on the NLGA. The Court explained that the injunction at issue, like the Court's
18  temporary restraining order in this case, had been entered to protect employees' rights to organize
19  and to choose a bargaining representative free from carrier interference. *Id*. at 543–44 (citing RLA
20  Section 2, Third and Fourth). The Court held that these specific RLA-protected rights could not "be
21  rendered nugatory by the earlier and more general provisions of the Norris-LaGuardia Act," and that
22  the Norris-LaGuardia Act could not be applied to bar injunctive relief. *Id*. at 562–63.
23      In arriving at this holding, the Court in *Virginian Railway* explained that the NLGA should
24  not be applied in the RLA context when its application would frustrate either statute's purposes.
25  *See id*. at 562–63; *cf. Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 458 (1957) (must look
26  beyond "literal reading" of NLGA to determine whether policy of the Act is furthered by its
27  application). As discussed above, Congress enacted the NLGA for the express purpose, *inter alia*,
28  of protecting employees' right to engage in peaceful organizing activity, free "from the interference,

1  restraint, or coercion of employers." 29 U.S.C. §102; *see also* 29 U.S.C. §104(f); *supra* Part I-A-1.
2  Congress similarly enacted the RLA to "forbid any limitation upon freedom of association among
3  employees" and to guarantee employees' "complete independence" from carriers "in the matter of
4  self-organization." 45 U.S.C. §151a. In light of these expressed purposes, the Supreme Court held
5  that the provisions of the NLGA may not be turned against employees to bar an injunction intended
6  to preserve and protect the peaceful exercise of the very associational and organizational rights that
7  both the RLA and NLGA were intended to safeguard. *Virginian Railway*, 300 U.S. at 562–63.

8        The rule of *Virginian Railway* has repeatedly been restated by the Supreme Court and by the
9  Ninth Circuit. In *Brotherhood of Railroad Trainmen v. Chicago River and Indiana Railroad Co.*,
10  353 U.S. 30 (1957), the Supreme Court explained that there must be "an accommodation" of the
11  NLGA to the RLA "so that the obvious purpose in the enactment of each is preserved." *Id*. at 40.
12  The Court also held that the purpose of the NLGA was to "protect working men in the exercise of
13  organized, economic power." *Id*.; *Burlington Northern Santa Fe Ry. Co. v. Int'l Bhd. of Teamsters
14  Local 174*, 203 F.3d 703, 713 (9th Cir. 2000) (purposes of Norris-LaGuardia include preventing
15  courts "from using their powers to weaken unions").

16        Given this purpose, the NLGA cannot preclude an injunction, like the TRO issued here,
17  intended to vindicate employees' RLA-protected rights to organize through peaceful expressive and
18  associational activity. *Trainmen,* 353 U.S. at 40–41; *see also, e.g.*, *Textile Workers Union of Am. v.
19  Lincoln Mills*, 353 U.S. 448, 458 (1957) ("[T]he Norris-LaGuardia Act does not deprive federal
20  courts of jurisdiction to compel compliance with the mandates of the Railway Labor Act."); *Fed.
21  Express Corp. v. Teamster Union, Local No. 85*, 617 F.2d 524, 526 (9th Cir. 1980) (when "specific
22  legal command of the RLA is violated," Norris-LaGuardia does not bar entry of an injunction); *In re
23  Northwest Airlines Corp.*, 349 B.R. 338, 374 (S.D.N.Y. 2006) ("[W]here there is a clear violation of
24  the RLA's provisions, the Court has jurisdiction to compel compliance with those provisions."); *cf.
25  Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 937 (9th Cir. 1987) ("[I]njunctive relief is
26  available to protect employees' organizational rights under the RLA.").

27        Application of the Norris-LaGuardia Act to vacate the Court's temporary restraining order in
28  this case would do precisely what *Virginian Railway* and *Chicago River* held not to be permitted. It

would frustrate the purposes of *both* the NLGA and the RLA by permitting ongoing employer interference with employees' organizational rights, while leaving employees without an effective remedy to enforce their statutorily protected rights.

### B. SECTION 7 OF THE NORRIS-LAGUARDIA ACT APPLIES ONLY TO SITUATIONS INVOLVING VIOLENT AND DESTRUCTIVE ACTS AND NOT TO CASES SUCH AS THIS INVOLVING THE EXERCISE OF RLA-PROTECTED PEACEFUL EXPRESSIVE AND ASSOCIATIONAL ACTIVITY

Moreover, as numerous courts have held, the specific provision of the NLGA that Defendant seeks to invoke here, Section 7, was intended to apply only to situations involving violent and destructive acts, and not cases such as this, where the conduct is precisely the type of peaceful expressive and associational labor organizing activity that Congress sought to protect in enacting the NLGA and the RLA.

Section 7 of the NLGA requires certain factual findings as a prerequisite to issuance of a restraining order or injunction. These findings include the requirement that the complainant's *property* be irreparably injured. *See* 29 U.S.C. §107(b). Section 7 was clearly enacted with a specific factual situation in mind – namely, a potential strike by union members on employer property – and does not apply outside of that context. *See, e.g.*, 29 U.S.C. §107 (requiring that notice of hearing regarding preliminary injunction be provided to the "chief of those public officials of the county and city within which the unlawful acts have been threatened or committed charged with the duty to protect complainant's party"); *id*. §107(e) (requiring evidence that "the public officers charged with the duty to protect complainant's property are unable or unwilling to furnish adequate protection"). As the First Circuit explained in *Local 205, United Elec., Radio & Machine Workers v. Gen. Elec. Co.*, 233 F.2d 85 (1st Cir. 1956), the provisions of Section 7 of the NLGA were "obviously aimed to limit injunctions to cases *involving violent or destructive acts*" by unions "in strikes and picketing." *Id.* at 91-92 (emphasis added), *cited with approval in Textile Workers*, 353 U.S. at 458 n.8.

In *Int'l Ass'n of Machinists & Aerospace Workers v. Trans World Airlines, Inc.*, 645 F.Supp. 447 (D.D.C. 1987), *affirmed in part, reversed in part on other grounds*, 839 F.2d 809 (D.C. Cir. 1988), the court explained that "the required findings of fact contained in section 7 are simply

inapplicable in this case *where a union seeks to compel an employer to comply with the commands of the Railway Labor Act.*" *Id.* at 456 (emphasis added) (citing 29 U.S.C. §107(b)'s requirement of irreparable injury to complainant's *property*).

The district court's reasoning in *Machinists* is consistent with the Supreme Court's holding in *Textile Workers* that Section 7 of the NLGA should not be applied where the specific findings it requires are inapposite to the facts at hand. *See Textile Workers*, 353 U.S. at 458 n.8. (NLGA Section 7 was "inapposite" in the context of an injunction to compel arbitration). Thus, in *Local 205, United Elec., Radio & Machine Workers v. Gen. Elec. Co.*, 233 F.2d 85 (1st Cir. 1956), cited with approval by the Supreme Court in *Textile Workers*, the First Circuit held that Section 7's requirements did not "sensibly apply" outside the intended factual context of "violent and destructive acts." *Local 205*, 233 F.2d at 92. The First Circuit concluded that "Congress [did not] intend[] § 7 . . . to be a snare and a delusion, holding out the possibility of jurisdiction but demanding for its exercise sworn allegations of inapposite facts." *Id.*; *see also Smith v. Bowers*, 337 F.Supp.2d 576, 585 (S.D.N.Y. 2004) (NLGA Section 7 inapplicable to proceeding to enforce rights protected by the Labor Management Reporting Disclosure Act because application of the Norris-LaGuardia Act would not serve that statute's purpose and because, where plaintiffs seek to enforce "abstract legal rights," it makes no sense to require them to demonstrate that the police "are unable or unwilling to furnish adequate protection").

The factual findings required by Section 107 are completely inapposite to this dispute, which involves the peaceful exercise of employees' RLA-protected expressive and associational rights. *See, e.g.*, 29 U.S.C. §107(e) (requiring proof that public officials cannot adequately protect plaintiffs' property). The requirements of Section 7 serve "no valid purpose" in the factual context presented here, where employees have been granted temporary relief to protect their entirely peaceful efforts to enforce statutory rights and no threat of violent or destructive acts is remotely at issue. *Machinists*, 654 F.Supp.2d at 455. *see also Independent Federation of Flight Attendants v. Davis*, 633 F.Supp. 634, 639–39 (D. Mass. 1986) (NLGA Section 7 inapplicable to union's request for injunction that would prevent employer from denying picketers' access to its premises).

In sum, application of the NLGA to dissolve the TRO would frustrate the purposes of both the Norris-LaGuardia Act and the RLA, by stripping employees of protection for their peaceful expressive organizing activity . In addition, Section 7 of the NLGA is simply inapposite to the facts of this case, which involves no threat of violent or destructive acts. As a result, the NLGA does not strip the court of jurisdiction to issue the TRO or require the court to comply with Section 7 prior to issuance of the TRO.

Dated:  May 23, 2007                    Respectfully submitted

STEPHEN P. BERZON
LINDA LYE
CLAIRE P. PRESTEL
Altshuler Berzon LLP

ELIZABETH GINSBURG
Air Line Pilots Association, International


by:   \s\Claire P. Prestel
        Claire P. Prestel

Attorneys for Plaintiffs