John P. Bovich (SBN 150688)
Email: jbovich@reedsmith.com
Douglas H. Riegelhuth (SBN 166686)
Email: driegelhuth@reedsmith.com
REED SMITH LLP
Two Embarcadero Center, Suite 2000
San Francisco, CA 94111-3922

**Mailing Address:**
P.O. Box 7936
San Francisco, CA 94120-7936
Telephone:   415 543 8700
Facsimile:   415 391 8269

Douglas W. Hall (*Pro Hac Vice* Application Pending)
Email: dhall@fordharrison.com
Ford & Harrison LLP
1300 Nineteenth Street, N.W., Suite 700
Washington, DC 20036
Telephone:   202.719.2065
Facsimile:   202.719.2077

Attorneys for Defendant
SKYWEST AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SKYWEST AIRLINES, INC.,<br><br>Defendant. | No.: 3:07-CV-02688-CRB<br><br>**REPLY BRIEF IN SUPPORT OF MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**<br><br>Honorable Charles R. Breyer<br><br>Date: May 24, 2007<br>Time: 8:30 a.m.<br>Place: Courtroom 8, 19th Floor<br>Compl. Filed: May 22, 2007 |

Defendant SkyWest Airlines, Inc. ("SkyWest") submits this reply to Plaintiffs' Opposition to SkyWest's Motion to Dissolve Temporary Restraining Order ("Opposition") filed yesterday afternoon, as well as "Part Two" of Plaintiff's Opposition ("Second Opposition") filed late last night. Neither pleading provides any basis for denying SkyWest's motion to dissolve.

## I. PLAINTIFF'S NLGA-RELATED ARGUMENTS ARE DISINGENUOUS

Regarding the Norris-LaGuardia Act ("NLGA") issue, Plaintiffs proceed from a faulty premise: that SkyWest is contending the statute "strip[s] the federal courts of jurisdiction or otherwise bar[s] injunctive relief" in this matter. Opposition, p. 2. *See also id.i* p. 3 (claiming SkyWest seeks "to strip employees of judicial enforcement of their RLA-protected right to engage in peaceful organizing activity"), p. 4 ("the NLGA cannot preclude an injunction … intended to vindicate employees' RLA-protected rights"); Second Opposition, p 2 ("adoption of Defendant's position, that the NLGA should apply here, would leave Plaintiffs without any protection"). That is not SkyWest's argument. SkyWest acknowledges that the NLGA does not prohibit injunctive relief against a party who violates the RLA's affirmative commands. The absence of an NLGA bar does not end the inquiry, however.

SkyWest does not contend, if ALPA could show on the merits that SkyWest has violated the RLA, that the NLGA would bar injunctive relief. It contests only that, before a court issues an injunction, it must comply with the NLGA's procedural requirements. Several RLA decisions recognize this principle, including ones in which ALPA itself was a party. *See, e.g., Air Line Pilots Ass'n, Int'l v. Guilford Transp. Industries, Inc.*, 399 F.3d 89, 105 (1st Cir. 2005) (reversing injunction entered in ALPA's favor; NLGA Section 7 "applies in connection with injunctions issued under the RLA"); *Delta Airlines v. Air Line Pilots Ass'n, Int'l*, 238 F.3d 1300, 1307 (11th Cir.) (NLGA procedural standards apply where RLA injunction may issue), *cert. denied*, 532 U.S. 1019 (2001); *United Air Lines, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers*, 243 F.3d 349, 362 n.9 (7th Cir.) ("when a carrier seeks to enjoin a strike against a union under the status quo provisions of the RLA, the procedural provisions of the NLGA remain in effect," citing the requirement of live testimony), *cert. denied*, 534 U.S. 889 (2001) (emphasis in original); *Detroit & Toledo Shore Line R.R. v. Bhd. Of Locomotive Firemen & Engineers*, 357 F.2d 152, 153 (6th Cir. 1966) (reversing

injunction because no witnesses were produced and no testimony was received, in violation of NLGA Section 7). *See also* The Railway Labor Act (BNA), Ch. 6.IV.C.2., page 366 (2d ed. 2005) (the NLGA "sets forth procedural requirements applicable in those situations where a federal court has jurisdiction to issue an injunction in a labor dispute").

Moreover, Plaintiffs' suggestion that the purpose underlying the enactment of the NLGA somehow changes the analysis (Opposition, pages 2-3), ignores the current state of the law – specifically, subsequent Supreme Court precedent that recognized the need to accommodate the NLGA to the labor movement's changing conditions. *See Boys Markets, Inc. v. Retail Clerks Union*, 398 U.S. 235, 250-51 (1970). And, since *Boys Markets*, numerous courts – including the Ninth Circuit – have held that the NLGA's requirements apply equally where it is the union seeking injunctive relief. *See Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America v. LaSalle Machine Tool, Inc.*, 696 F.2d 452, 457 (6th Cir. 1982) (collecting cases, including *Amalgamated Transit Union v. Greyhound Lines*, 529 F.2d 1073, 1078 (9th Cir.), *vacated and remanded*, 429 U.S. 807 (1976), *decision on remand*, 550 F.2d 1237 (9th Cir.), *cert. denied*, 434 U.S. 837 (1977). Indeed, contrary to the position ALPA now takes, in *ALPA v. Guilford Transp*, it explicitly <u>conceded</u> that Section 7 of the NLGA applied to the injunction it obtained (and which subsequently was reversed) regarding the defendants' alleged transfer of work to a related subsidiary carrier. *Air Line Pilots Ass'n, Int'l. v. Guilford Transp. Indus., Inc.*, 360 F. Supp.2d 248, 260, 261 (D.N.H. 2004), *rev'd*, 399 F.3d 89, 105 (1st Cir. 2005). Here, as in those cases, the "fact that this case involves an injunction against the employer does not mean that the District Court was free to ignore the procedural mandates set forth in § 7." *Detroit Newspaper Publishers Ass'n v. Detroit Typographical Union*, 471 F.2d 872, 876-77 (6th Cir. 1972), *cert. denied*, 411 U.S. 967 (1973). [1]

---

[1]  Plaintiffs misstate the holding of *Independent Fed. Of Flight Attendants v. Davis*, 633 F. Supp. 634 (D. Mass. 1986), when they claim that decision stands for the proposition that Section 7 does not apply to the union's request for an injunction prohibiting the employer from denying picketers' access to its premises. It was IFFA's <u>position</u> there that Section 7 did not apply, but not the court's holding. The court merely accepted IFFA's proposition *arguendo*, finding IFFA was not entitled to injunctive relief under traditional equity principles. 633 F. Supp. at 639-40. Moreover, the First Circuit has since unequivocally held that Section 7 does apply to union injunction requests under the RLA. *ALPA v. Guilford Transp. Industries, Inc.*, 399 F.3d at 105.

1   Equally misguided is Plaintiffs' final argument that Section 7 of the NLGA only applies "to
2   situations involving violent and destructive acts." Opposition, p. 5. Plaintiffs base this contention
3   on Section 7(e), which states that the court is to make findings of fact on whether the "public officers
4   charged with the duty to protect complainant's property are unable or unwilling to furnish adequate
5   protection." That is an unwarranted leap of logic, unsupported by case law. Section 7(e) only
6   requires such factual findings where such issues are presented. Where such issues are not presented,
7   those factual findings are not required, as demonstrated by the numerous decisions discussed above
8   in which injunctive relief sought by employers and unions alike was held subject to the requirements
9   of the NLGA, despite the absence of any threatened "violent" or "destructive" acts (such as actions
10  brought by unions to maintain the status quo pending arbitration). *See United States Steel Corp. v.*
11  *United Mine Workers of America*, 456 F.2d 483, 488 (3rd Cir. 1972) (noting that Section 7(e)
12  "probably would not be appropriate" in a case under § 301 of the Labor-Management Relations Act,
13  "[b]ut this does not mean the entire section is inapplicable").

14  In short, Plaintiffs' Opposition fails to refute SkyWest's position that the Court lacked
15  jurisdiction under the NLGA to issue the May 22, 2007 TRO; indeed, it entirely ignores the current
16  state of the law. The procedural and due process protections contained in Section 7 of the NGLA,
17  about which Plaintiffs failed to apprise the Court in its application for a TRO, indisputably apply to
18  Plaintiffs' motion for a TRO. Those procedural requirements were not met. Consequently, the TRO
19  must be dissolved.

20  **II. PLAINTIFFS STILL HAVE NOT SHOWN ANY IMMEDIATE HARM THAT JUSTIFIED THE ENTRY OF AN *EX PARTE* TRO**
21

22  SkyWest's motion to dissolve pointed out that Plaintiffs had not established the level of
23  substantial and immediate harm that would justify the entry of a TRO on an *ex parte* basis. Nothing
24  in their oppositions to the motion changes that conclusion.

25  Plaintiffs still do not cite any recent activity on the part of SkyWest management to attempt
26  to justify their requested relief, nor do they offer any facts to support their claim that the status of
27  their organizing drive is so critical that they have to hold their "solidarity" drive immediately, rather
28  than in a few days, such that an *ex parte* TRO was necessary. On the contrary, Plaintiffs defiantly

state that it is wholly up to them to make the decision that the situation is sufficiently dire, as "nothing in the RLA permits employers to decide when and how employees should organize." Second Opposition, p. 2. While it may be true that nothing in the RLA permits employers to decide when and how employees should organize, likewise nothing in the RLA, the NLGA, or Fed. R. Civ. P. 65 allows Plaintiffs to manufacture an "emergency" and then demand emergency relief. The alleged actions by SkyWest about which Plaintiffs complaint are weeks and months in the past. There is no emergency other than what Plaintiffs have conjured up through a suddenly self-imposed timeline. Plaintiffs are seeking extraordinary injunctive relief, and therefore must demonstrate to the Court why the "when and how" of their planned activity satisfies the immediacy requirement. They have failed to do so. The TRO should be vacated.

### III.  PLAINTIFFS HAVE FAILED TO REFUTE SKYWEST'S ARGUMENTS REGARDING THE TRO'S NON-COMPLIANCE WITH RULE 65(b)

Plaintiffs' only response to SkyWest's contentions that the TRO did not comply with Rule 65(b) is to assert that the TRO was <u>not</u> entered without notice because the Plaintiffs had informed SkyWest that they had filed suit and were seeking a TRO. Second Opposition, p. 4. That is not what Rule 65(b) provides. It states that a TRO will not be <u>granted</u> without notice unless the requirements of Rule 65(b) are met – which Plaintiffs do not even attempt to argue. There is a vast difference between being informed that a party has filed suit in which a TRO is among the types of relief sought and notice that a court intends to grant the TRO. SkyWest did not have the notice to which it was entitled, and thus the TRO had to – but did not – comply with Rule 65(b).

Perhaps most importantly, Plaintiffs fail to explain why circumstances were so exigent that an *ex parte* TRO was sought in the first instance. With only hours notice counsel for SkyWest could have appeared telephonically to at least argue its case. With a day's notice, counsel for SkyWest could have appeared personally. Inasmuch as the actions about which Plaintiffs complaint were weeks, not days or hours in the past, and union organizing campaigns are long, drawn-out affairs, there simply is no rational basis, other than strategic surprise, for an *ex parte* TRO to have been sought. Plaintiffs, to put it plainly, abused the process.

## IV. PLAINTIFFS DO NOT CONTEST THAT ALPA AND THE ORGANIZING COMMITTEE LACK STANDING

Finally, the Plaintiffs make no effort to distinguish the substantial case law cited by SkyWest establishing that ALPA and its Organizing Committee lack standing in this matter. Instead, Plaintiffs attempt to brush this aside by suggesting that the Court need not deal with it because the individual employee Plaintiffs have standing. Second Opposition, p. 5. That is not consistent with the case law; courts have dismissed uncertified unions due to lack of standing even where there were other plaintiffs with standing. *See Adams v. Federal Express Corp.*, 90 L.R.R.M. (BNA) 2742 (W.D. Tenn. Sept. 10, 1975), *aff'd*, 547 F.2d 319 (6th Cir. 1976), *cert. denied*, 431 U.S. 915 (1977); *International Bhd. of Teamsters v. American W. Airlines*, 153 L.R.R.M. (BNA) 2181 (D. Ariz.. 1996); *Grosschmidt v. Chautaqua Airlines, Inc.*, 122 L.R.R.M. (BNA) 3254, 3255 (N.D. Ohio 1985).

ALPA's lack of standing cannot be ignored in this case because it is seeking relief on its own behalf. Moreover, the TRO makes no differentiation between the Plaintiffs in granting the various forms of relief ordered. By its terms, the TRO could be construed as applying to any ALPA "member" – SkyWest employee or not – even with respect to such matters as access to SkyWest pilot mailboxes, the SkyWest internal email system, and new-hire classes.[2] SkyWest has real concern that ALPA could argue that it is entitled to access the SkyWest internal email system – which would require that it be given access to the entirety of SkyWest's intranet, and any proprietary, confidential, and sensitive material included therein.[3]

---

[2] This interpretation, unfortunately, is not out of line with the manner in which Plaintiffs already have attempted to expand the TRO's scope. For example, the TRO states that SkyWest is required to provide a dedicated bulletin board to Plaintiffs "in each crew lounge where SAPA had a dedicated bulletin board at any point in the last year." As shown in the correspondence attached to the Second Opposition, SkyWest informed Plaintiffs that no such dedicated bulletin boards existed at the crew lounges during the last year. Nevertheless, Plaintiffs wrote back and, relying on the "including but not limited to" language in paragraph 3 of the TRO, took the position that SkyWest was required to provide Plaintiffs with dedicated bulletin boards anywhere, not just in the crew lounges. The TRO must be vacated because, all other defects aside, it is overbroad. *See* 29 U.S.C. § 109 ("[E]very restraining order . . . granted in a case involving or growing out of a labor dispute shall include only a prohibition of such specific act or acts as may be expressly complained of . . . .").

[3] Plaintiffs dismiss SkyWest's concerns in this regard, noting that SkyWest has told them that the individual employee Plaintiffs have access to the intranet and the email system already. Second Opposition, p. 4, note 1. This ignores, however, that the individual employee Plaintiffs are subject to legal and contractual confidentiality requirements

ALPA has no standing; its presence in this suit serves no purpose; and it should be dismissed from this action. In the meantime, it should not, indeed cannot, be permitted any temporary or preliminary injunctive relief.

## V. **CONCLUSION**

For all of the reasons cited herein and in SkyWest's motion, the TRO should be dissolved. In addition, because the matter may arise at the hearing, SkyWest also informs the Court of its intention to move to transfer this matter to the District of Utah on grounds of *forum non conveniens*. The basis for that relief will be set forth in detail in SkyWest's forthcoming motion, which SkyWest will file shortly. Among the points that SkyWest intends to make is that there is no nexus in this District to any of the alleged actions that give rise to Plaintiffs' claims. SkyWest is headquartered in St. George, Utah. Its largest pilot base is in Salt Lake City with over 800 pilots permanently assigned there. The pilot training center is located in Salt Lake City. None of the individual employee Plaintiffs is based in San Francisco; indeed, contrary to the assertion Plaintiffs make in their Complaint, SkyWest does not even have a pilot crew base in San Francisco. At most, there are five "reserve" pilots based in San Francisco whose function is only to replace pilots who become unfit for duty anywhere else in the system. To the extent Plaintiffs' affidavits provide any detail regarding the alleged actions of SkyWest management that form the basis of their suit, none occurred in the Northern District, while several occurred in Utah. None of the parties, likely witnesses, or documents is located in this District, making it inconvenient to litigate this matter here.

DATED: May 24, 2007.

                              FORD & HARRISON
                              REED SMITH LLP


                              By    /s/ Douglas H. Riegelhuth
                                  John P. Bovich
                                  Douglas H. Riegelhuth
                                  Attorneys for Defendant
                                  SKYWEST AIRLINES, INC.

---

that would prevent them from misusing or improperly disclosing SkyWest information – obligations that would not apply to ALPA.