1  STEPHEN P. BERZON (#46540)
   sberzon@altshulerberzon.com
2  LINDA LYE (#215584)
   llye@altshulerberzon.com
3  CLAIRE P. PRESTEL (#235649)
   cprestel@altshulerberzon.com
4  Altshuler Berzon LLP
   177 Post Street, Suite 300
5  San Francisco, CA  94108
   Telephone:  (415) 421-7151
6  Facsimile:   (415) 362-8064

7  ELIZABETH GINSBURG
   (Admitted to Practice *Pro Hac Vice*)
8  elizabeth.ginsburg@alpa.org
   Air Line Pilots Association, International
9  535 Herndon Parkway
   Herndon, VA 20172-1169
10 Telephone:  (703) 481-2424
   Facsimile:  (703) 481-2478

11 Attorneys for Plaintiffs

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15  SKYWEST PILOTS ALPA ORGANIZING        )    CASE No. C-07-2688 CRB
    COMMITTEE, *et al.*,                   )
                                          )    **PLAINTIFFS' OPPOSITION TO**
16           Plaintiffs,                   )    **DEFENDANT'S MOTION TO**
                                          )    **CHANGE TIME RE: DEFENDANT'S**
17       vs.                              )    **MOTION TO TRANSFER VENUE**
                                          )    **AND PLAINTIFFS' MOTION FOR**
18  SKYWEST AIRLINES, INC.,               )    **PRELIMINARY INJUNCTION**
                                          )
19           Defendant.                    )
    _____)

20

21       Plaintiffs oppose Defendant SkyWest Airlines, Inc.'s ("SkyWest's") motion to change time.

22  Defendant's effort to delay the preliminary injunction hearing in this case is remarkable in light of

23  its vigorous complaint that it would suffer great prejudice if the hearing were not held by Thursday,

24  May 31, 2007.  Now that the Court has twice rejected SkyWest's arguments on the merits of

25  Plaintiffs' application for a temporary restraining order, SkyWest has decided that it would prefer to

26  litigate the preliminary injunction motion before a different District Court Judge and claims

27  prejudice if the preliminary injunction schedule, which was painstakingly agreed to by all parties in

28  open court on May 24, 2007, is *not* delayed.  The Court should not countenance Defendant's judge

OPPOSITION TO DEFENDANT'S MOTION TO CHANGE TIME RE: DEFENDANT'S MOTION TO TRANSFER
VENUE AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE No. C-07-2688 CRB        1

1  shopping and inconsistent claims of prejudice.

2      For these reasons, the abbreviated briefing schedule and May 31, 2007 hearing date for the

3  preliminary injunction should be maintained, and Plaintiffs should subsequently be allowed

4  reasonable time to brief and obtain declarations on the transfer issue.  If, however, the Court is at all

5  inclined to delay the scheduled preliminary injunction hearing, SkyWest's proposed alternative

6  schedule creates irreconcilable conflicts with Plaintiffs' counsel's schedules as described more fully

7  below.  The only available alternative that will not severely prejudice Plaintiffs is for the Court to

8  set the preliminary injunction hearing during the week of July 2, 2007 and for SkyWest to stipulate

9  to continue the TRO in effect until the preliminary injunction motion is resolved.

10  **I.    SKYWEST'S MOTION TO SHORTEN TIME IS AN IMPROPER ATTEMPT TO
        JUDGE SHOP AND IS NOT SUPPORTED BY ANY SHOWING OF "SIGNIFICANT
11      HARM OR PREJUDICE."**

12      SkyWest's attempt to have its transfer motion heard before Plaintiffs' preliminary injunction

13  motion is a blatant attempt to "judge shop."  Now that this Court has ruled against SkyWest twice

14  on Plaintiffs' application for a temporary restraining order, SkyWest is attempting to have the merits

15  of Plaintiffs' injunction motion heard by a different District Court Judge – notwithstanding

16  SkyWest's earlier assurances that it could easily prepare for a Thursday, May 31, 2007 San

17  Francisco hearing, and its initial request that the hearing be scheduled *even earlier* than Thursday.[1]

18      Given its earlier assurances, SkyWest cannot possibly demonstrate the "significant harm or

19  prejudice" required to change time under Local Rule 6–3.  SkyWest not only assured the Court on

20  May 24, 2007 that it could prepare for a preliminary injunction hearing in San Francisco on May 31,

21  it represented that it would be prejudiced by *any* delay in the preliminary injunction hearing.

22  SkyWest even expressed great concern about the 18 hour difference between holding the hearing on

23  the afternoon of May 30th or the morning of May 31st.  SkyWest's inconsistent and shifting claims

24  of prejudice belie any claim that it will suffer such "substantial harm or prejudice" unless its motion

25

26      [1] SkyWest's motion to change time also does not comply with the Local Rules.  SkyWest
    proposed a different schedule to Plaintiffs' counsel during the parties' exchanges.  *Compare* Spagat
27  Decl. Ex. A *with* Def.'s Mot. to Change Time at 1.  SkyWest never sought a stipulation to the
    schedule it now proposes, notwithstanding the clear requirement in Local Rule 6-3 that it do so.  *See*
28  Local Rule 6-3(a)(2).

OPPOSITION TO DEFENDANT'S MOTION TO CHANGE TIME RE: DEFENDANT'S MOTION TO TRANSFER
VENUE AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE No. C-07-2688 CRB       2

1  is granted.  Local Rule 6-3(a)(3).

2          Although SkyWest suggests in its motion papers that going forward with the hearing on

3  Thursday in San Francisco could result in cancelled or delayed flights, it has not provided any

4  evidence that tends to support this speculation.[2]  Only *one* of Plaintiffs' witnesses was scheduled to

5  fly for SkyWest on Wednesday or Thursday of this week, and only one was scheduled for reserve

6  duty.  *See* Decl. of Linda Lye ¶3; *contra* Decl. of Todd Emerson ¶15 (suggesting that SkyWest has

7  to replace five pilot witnesses).  Those two witnesses have already been released from duty, and

8  SkyWest makes no specific claim in its papers that any flights will be delayed or canceled as a

9  result.  Lye Decl. ¶5.  SkyWest also keeps pilots on "reserve," which means that they must be

10  available as replacement staff for flights on very short notice (1½ to 2 hours).  *Id*. ¶6.  It is typical

11  for airlines to keep 8% of their pilots on reserve.  *Id*.  Further, some SkyWest pilots are generally

12  kept on "ready reserve," which means that they are actually sitting in airport crew lounges, ready to

13  staff flights immediately if necessary.  *See* Lye Decl. ¶6.  Finally, SkyWest has the option of calling

14  pilots who are on their days off and having them come in to work on a voluntary basis.  This

15  practice is known as "junior manning."  *Id*.  SkyWest therefore has many options available to it to

16  fill in slots if a pilot becomes unable to work an assigned shift.[3]

17

18

19

20          [2]  SkyWest also contends that it suffers prejudice because "[f]lying company personnel to
San Francisco" takes seats from the paying public.  *See* Emerson Decl. ¶14.  SkyWest does not
21  provide *any* specific evidence that any of its witnesses have taken seats that would otherwise have
been purchased by a member of the public.
22

23          [3]  SkyWest other claims of prejudice are even less persuasive.  SkyWest asserts prejudice
based on the fact that "Plaintiffs chose the timing of this action."  *See* Def.'s Mot. to Change Time
24  (Doc. No. 48) at 4:17-18.  In every action that is filed, however, the plaintiff chooses the timing.
That alone does not constitute substantial prejudice to the defendant, any more than the mere filing
25  of the lawsuit.
          SkyWest also asserts obliquely that its motion to change time should be granted because
26  otherwise the procedural posture will be unnecessarily complicated when "the parties . . . re-litigate
the effect of this Court's ruling in the on-going proceedings."  *Id.* at 4:24-27.  It is unclear what
27  SkyWest means by this, other than that it intends to try for a second bite at the apple if it succeeds in
transferring this case to what it views as a more favorable District Court forum.
28

OPPOSITION TO DEFENDANT'S MOTION TO CHANGE TIME RE: DEFENDANT'S MOTION TO TRANSFER
VENUE AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE No. C-07-2688 CRB          3

1    **II.    AN ORDER SHORTENING TIME WOULD SIGNIFICANTLY PREJUDICE**
2    **PLAINTIFFS, INCONVENIENCE THEIR WITNESSES, FRUSTRATE THE**
     **PURPOSES OF THE VENUE TRANSFER STATUTE, AND INTERFERE WITH**
3    **THE SCHEDULE IN THIS CASE.**

4         Granting SkyWest's request to shorten time will significantly inconvenience Plaintiffs and

5    frustrate the purposes of the venue transfer statute, 28 U.S.C. §1404(a).

6         After the Thursday morning TRO hearing on May 24, 2007, all of Plaintiffs' witnesses

7    adjusted their work- or family-schedules to make themselves available for the Thursday, May 31st

8    preliminary injunction hearing.  Most of Plaintiffs' witnesses will arrive in San Francisco *today*,

9    Tuesday the 29th, for witness preparation, and Plaintiffs' Washington, D.C. counsel arrived late

10   yesterday, May 28.  Lye Decl. ¶7–8.

11        The venue transfer statute directs the Court to take into account the convenience to parties

12   and witnesses.  28 U.S.C. §1404(a).  Here, it would greatly *inconvenience* Plaintiffs, their witnesses,

13   and their counsel to require them to leave San Francisco once they have already arrived, to re-

14   purchase travel tickets, and to change their work and family schedules *again* after having already

15   changed them to accommodate SkyWest's earlier contention that a full-scale evidentiary hearing

16   should be held here no later than May 31st.[4]

17        In addition, Plaintiffs and their counsel are fully occupied preparing for the previously

18   scheduled evidentiary hearing and will have 24 hours to research and draft their reply brief, which is

19   due on Wednesday, May 30th.  An order requiring them simultaneously to brief, obtain declarations

20   for, and argue the entirely separate issues raised by SkyWest's transfer motion will greatly

21   compromise their ability to prepare their reply papers and prepare a number of witnesses for the

22   preliminary injunction hearing, *id*. ¶9, which both sides described as critical to the case during the

23   Court hearing on May 24, 2007.

24

25

26        [4] Although SkyWest's counsel informed Plaintiff's counsel on the afternoon of Friday, May
27   25, 2007, that it might seek to file a motion to transfer venue on shortened time, SkyWest did not
     file the motion to change time until the evening of Sunday, May 27, and Plaintiffs needed to prepare
28   for this case and make travel arrangements based on the Court-ordered schedule in effect.

OPPOSITION TO DEFENDANT'S MOTION TO CHANGE TIME RE: DEFENDANT'S MOTION TO TRANSFER
VENUE AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE No. C-07-2688 CRB      4

1    Finally, an order granting SkyWest's request that its transfer motion be heard before

2  Plaintiffs' preliminary injunction motion could easily *frustrate* the "interest of justice," rather than

3  serve it.  28 U.S.C. §1404(a).  In the unlikely event that SkyWest is successful in transferring the

4  case, it will likely argue that Plaintiffs' TRO cannot continue in effect under the Norris-LaGuardia

5  Act's time limit pending the new Court's preliminary injunction hearing.  *See* 29 U.S.C. §107; *see*

6  *also* Def.'s Mot. to Change Time at 1 (agreeing to continue the TRO in effect only until the *earlier*

7  of this Court's preliminary injunction hearing or June 8, 2007).  If SkyWest were to succeed with

8  this argument, it would effectively circumvent this Court's TRO and prompt setting of the

9  preliminary injunction hearing and leave Plaintiffs and other pilots without a remedy or any other

10  protection pending the new Court's scheduled hearing on the preliminary injunction.  *Contra*

11  *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938–39 (9th Cir. 1987) (courts have a "duty"

12  to protect RLA expressive and associational rights when called upon to do so, and harm to those

13  rights is irreparable).  Under the "interest of justice" standard, this is reason enough to deny

14  SkyWest's motion to change time.

15  **III.    SKYWEST'S TRANSFER MOTION IS MERITLESS.**

16    In any event, SkyWest's underlying venue transfer motion is meritless.  We touch only on

17  the main reasons why this is so, and will address these issues more fully in our opposition brief, at

18  such time as the Court orders.  The touchstone of SkyWest's transfer motion is that because

19  SkyWest is headquartered in Utah, it would be more convenient for *SkyWest* to litigate this case at

20  home.  Under Defendant's theory, no nationwide corporation that purposefully injects itself into

21  foreign states would ever have to litigate in a judicial district other than where it is headquartered.

22  This defendant-centric view of the venue transfer statute is not the law.

23    As a threshold matter, Defendant does not dispute that venue is proper in this judicial

24  district.  *See* 28 U.S.C. §1391(b), (c) (venue is proper in any judicial district where a defendant

25  resides; a defendant corporation resides in any judicial district in which it is subject to personal

26  jurisdiction).  A quick review of SkyWest's web site – www.skywest.com – shows that the company

27  does a large amount of business here, more than sufficient to demonstrate the requisite "minimum

28  contacts."  Contrary to the express representation of SkyWest's Assistant General Counsel Patricia

1  Stambelos at the hearing on May 24, 2007, SkyWest crews *are* domiciled in San Francisco. *See* Lye

2  Decl. ¶10& Exh. 2. San Francisco is actually a SkyWest "hub," and the airline also has a

3  "maintenance base" here. *See id.* In fact, SkyWest makes 114 scheduled daily departures from San

4  Francisco International Airport ("SFO"). *See id.*

5       SkyWest's motion to transfer is also without merit under 28 U.S.C. §1404(a) (authorizing

6  transfer "[f]or the convenience of parties and witnesses, in interest of justice"). "The defendant must

7  make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."

8  *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834, 843 (9th Cir. 1986); *E. & J. Gallo

9  Winery v. F. & P. S.p.A.*, 899 F.Supp. 465, 466 (E.D. Cal. 1994) ("Unless the balance of

10  convenience is strongly in favor of the defendant, plaintiff's choice of forum should not, or should

11  rarely, be disturbed."). "Section 1404(a) provides for transfer to a more convenient forum, not to a

12  forum likely to prove equally convenient or inconvenient." *Van Dusen v. Barrack,* 376 U.S. 612,

13  645-46 (1964). It is inappropriate to transfer a case where "[t]he transfer would merely shift rather

14  than eliminate the inconvenience." *Decker,* 805 F.2d at 843.

15       It is well-established that the plaintiff's choice of forum is entitled to "significant weight."

16  *Robinson Corp. v. Auto-Owners Ins. Co.*, 304 F.Supp.2d 1232, 1243 (D. Haw. 2003); *see also

17  Decker Coal Co.*, 805 F.2d at 843; *E. & J. Gallo Winery*, 899 F.Supp. at 466. Plaintiffs chose this

18  forum, and it is clearly more convenient for them and for their witnesses than Salt Lake City. A

19  plurality (four) of the nine individual pilot Plaintiffs reside in California, with the residences of the

20  remaining five pilots scattered across four states (Colorado, Illinois, Utah, and Idaho). Lye Decl.

21  ¶12. Two of the five Plaintiffs who are testifying at the upcoming evidentiary hearing reside in

22  California; only one resides in Utah. *Id.* ¶13.[5]

23

24

25  [5] Although SkyWest contends vaguely that "most or all" of its anticipated witnesses either live in or are domiciled in Utah, SkyWest has never identified any specific witnesses so its vague assertion cannot be tested. Given SkyWest's careful wording, it could also turn out that *none* of its witnesses actually live in Utah, as opposed to being "domiciled" there for SkyWest's purposes. *Cf.* Lye Decl. ¶12–13 (providing information about specific, identified Plaintiffs and witnesses). In any event, since SkyWest is an airline, it is hard pressed to argue that it would have substantial difficulty flying its witnesses to San Francisco.

1    Plaintiffs' choice of their home state also overlaps with Defendant's strong connection to

2  California and with evidence that Defendant has repeatedly violated pilots' Railway Labor Act

3  rights *in California* and *at SFO specifically.* According to its website, SkyWest has more hubs in

4  California than in any other state. *See id.* ¶10. SkyWest flies in and out of more airports in

5  California than in any other state. *Id.* SkyWest flies more flights from California on a daily basis

6  than it flies from Salt Lake City. *Id.* ¶11. SkyWest has more crew domiciles in California (nine of

7  16 total) than in any other state, with Colorado (host to two crew domiciles) coming in a distant

8  second. *Id.* ¶10. California is also host to more maintenance bases (five) than any other state. *See*

9  *id.* ¶10 & Exh. 2.

10    One of the key allegations in Plaintiffs' complaint is that SkyWest prevents pilots from

11  wearing ALPA lanyards while flying. *See* Compl. ¶¶25–28. Given that there are more daily

12  SkyWest flights from California than from Utah, SkyWest's illegal conduct in prohibiting ALPA

13  lanyards clearly has a significant impact in and strong connection to California. A second key

14  allegation in Plaintiffs' complaint is that SkyWest removes ALPA-related material from crew

15  lounges in airports. *See id.* ¶¶30–34. Given that SkyWest flies from 26 airports in California, but

16  from only 2 in Utah, SkyWest's illegal conduct in removing ALPA related material from crew

17  lounges also clearly has a significant impact and strong connection to California.

18    Finally, it is important to note that SkyWest has engaged in the type of illegal conduct

19  alleged in Plaintiffs' complaint in this judicial district. Captain Clinton Weichers, who resides and

20  is domiciled within the Northern District, has repeatedly seen material posted by SkyWest's illegal

21  company union (SAPA) in SFO, including as recently as May 27, 2007. *See* Decl. of Clinton

22  Weichers ¶3; *see also id.* (stating that he has seen SAPA materials posted in other California

23  airports as well); Amended TRO Ex. A (listing Capt. Weichers as a public member of the SkyWest

24  Pilots Organizing Committee). Captain Weichers has also repeatedly attempted to post ALPA-

25  related materials in the SAPA crew room at SFO, but the materials he posts quickly "disappear"

26  even though other, non-work related materials remain. Weichers Decl. ¶4; *see also id.* ¶5 (stating

27  that this has happened at other California airports as well). On one occasion, Captain Weichers

28  attempted to deliver ALPA materials to another pilot by placing them in his SFO mailbox, only to

1   learn later that the intended recipient never received the materials. *Id*. ¶6. Captain Weichers was

2   also instructed to remove his ALPA lanyard by a Chief Pilot within California, and he has only

3   recently begun wearing his lanyard again following entry of the Court's TRO. *Id*. ¶7.

4       This case, by its nature – pilots seeking to organize an airline that operates in multiple states

5   – necessarily involves some dispersal of parties and witnesses, and for that reason, it is unlikely that

6   there is any single forum that is clearly "more convenient." *Van Dusen,* 376 U.S. at 645–46.  Given

7   that the Northern District of California is Plaintiffs' chosen forum, that Defendant has more hubs in

8   California than in Utah, and that Defendant has violated pilots' rights in this district, granting

9   Defendant's motion would merely "shift rather than eliminate" any inconvenience from hearing this

10  matter in Plaintiffs' chosen forum. *Decker,* 805 F.2d at 843.

11

12  **IV.    SKYWEST'S PROPOSED SCHEDULE CREATES IRRECONCILABLE
        CONFLICTS FOR PLAINTIFFS.**

13      SkyWest proposes that its venue motion be heard on June 4, 2007 and that the hearing on

14  Plaintiffs' preliminary injunction motion be continued to June 7, 2007.  This schedule creates

15  irreconcilable conflicts for Plaintiffs' counsel.

16      It will be critical for Stephen Berzon to attend the hearing on Plaintiffs' motion for a

17  preliminary injunction.  Mr. Berzon is Plaintiffs' lead litigation counsel, and he will prepare and

18  examine most of Plaintiffs' witnesses and present legal argument at the preliminary injunction

19  hearing. *See* Lye Decl. ¶14.  Mr. Berzon is unavailable from June 6, 2007 through June 11, 2007

20  due to a long-planned family trip in Hawaii. *Id*.[6]

21

22      [6] Plaintiffs' other litigation attorney, Linda Lye, is also unavailable for a hearing from June
    4, 2007 through June 6, 2007.  Ms. Lye has a previously-scheduled arbitration on June 6, 2007 that
23  will require substantial preparation on June 4 and 5, 2007, including witness preparation.  The
    arbitration involves a complex question of contract interpretation and fifteen years of past practice
24  under a collective bargaining agreement.  Ms. Lye is representing the union, which filed a policy
    grievance on behalf of the entire, 5,000 person bargaining unit at a major manufacturing facility in
25  Northern California.  The dispute affects the sick leave rights of the entire unit, and potentially tens
    of millions of dollars in sick leave benefits are at stake.  The arbitration was very difficult to
26  schedule and cannot be deferred without causing substantial disruption to relations between the
    company and the union and further harm to the many employees who have already lost their sick
27  leave benefits under the company policy being challenged in the arbitration. *See* Lye Decl. ¶17.

28

OPPOSITION TO DEFENDANT'S MOTION TO CHANGE TIME RE: DEFENDANT'S MOTION TO TRANSFER
VENUE AND PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION, CASE No. C-07-2688 CRB     8

1    It will also be critical for Elizabeth Ginsburg of the ALPA legal department to be present for

2    the transfer and preliminary injunction hearings.  As the Court may have observed during the

3    hearing on Thursday, May 24th, Ms. Ginsburg is the attorney most familiar with the underlying

4    facts, with ALPA's and the SkyWest pilots' organizing efforts, and with the significant and

5    irreparable harm that will result if Plaintiffs are not granted relief.  Ms. Ginsburg needs to be in

6    Washington, D.C. from June 4 through June 7 for events related to her daughter's graduation from

7    high school on June 5.  *See* Lye Decl. ¶¶15–16.  In addition, Ms. Ginsburg has planned and paid for

8    a cruise vacation to Alaska with her children that is scheduled for June 14, 2007 through June 27,

9    2007.  *Id*. ¶16.  On June 28 and June 29, she has family obligations related to the disposition of her

10   late mother's estate.  *Id*.

11   These significant scheduling conflicts make SkyWest's June 4th and June 7th hearing dates

12   unworkable for Plaintiffs.  If the Court is at all inclined to change time, the only viable alternative is

13   to schedule hearing(s) on the preliminary injunction and venue motions for the week of July 2,

14   2007, with a stipulation from SkyWest extending the TRO in effect until Plaintiffs' preliminary

15   injunction motion is resolved.  Otherwise, Plaintiffs are prepared to proceed as scheduled with the

16   preliminary injunction hearing on May 31, 2007, and to brief and argue the motion to transfer in

17   accordance with the schedule set forth in the Local Rules.

18   Dated:  May 29, 2007                    Respectfully submitted

19

20                                           STEPHEN P. BERZON
                                             LINDA LYE
21                                           CLAIRE P. PRESTEL
                                             Altshuler Berzon LLP

22                                           ELIZABETH GINSBURG
                                             Air Line Pilots Association, International
23

24                                           by:   \s\Stephen P. Berzon
                                                       Stephen P. Berzon
25
                                             Attorneys for Plaintiffs
26

27

28