Douglas W. Hall (Admitted *Pro Hac Vice*)
Ford & Harrison LLP
1300 Nineteenth Street, N.W., Suite 700
Washington, DC 20036
Telephone:   202.719.2065
Facsimile:   202.719.2077
Email: dhall@fordharrison.com

Robert Spagat (SBN: 157388)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone:   415-591-1000
Facsimile:   415-591-1400
Email: rspagat@winston.com

Attorneys for Defendant
SKYWEST AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>SKYWEST AIRLINES, INC.,<br><br>Defendant. | Case No. C-07-2688 CRB<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT** |

DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. C 07-2688 CRB

I.  **INTRODUCTION**

Defendant SkyWest Airlines, Inc. ("SkyWest") is not in "calculated defiance" of any provision of the Court's Amended Temporary Restraining Order ("TRO") and Plaintiffs have not established beyond any applicable standard that the Court may, or should, hold SkyWest in contempt. Plaintiffs have applied for an order to show case re contempt against SkyWest on the single issue of access to a newly-hired pilot class that is currently being held and will continue for the next several weeks. Plaintiffs did so, despite that fact that SkyWest set out a good faith position in writing, assured Plaintiffs that the class to which they seek access will be continuing for two more weeks, and invited Plaintiffs to join SkyWest in seeking clarification of the order when the parties already are scheduled to appear before the Court this week. Instead of working amicably to resolve the dispute, or even to schedule a date for the matter to be heard, Plaintiffs filed the instant motion, seeking an order of contempt, and sanctions of $250,000 a day. Notably, Plaintiffs do not allege that SkyWest is in violation of any of the other requirements of the TRO.

SkyWest has not violated the TRO. The TRO provides that SkyWest is restrained and enjoined from *discriminating* against SkyWest pilots in terms of the access provided to SAPA to participate in new hire trainings. (Docket No. 42 at 2: 7-14.) The TRO does not require that SkyWest provide access to the current new-hire class to representatives of the Plaintiff SkyWest ALPA Organizing Committee (the "OC") because SkyWest has not provided similar access to SAPA. As discussed below, Plaintiffs' contrary interpretation is flawed because it attempts to elevate the "to provide access" language, which merely describes ways in which SkyWest may not discriminate, into an independent affirmative duty. Taken in context, the TRO requires that SAPA and the OC be granted equal access to the same new hire class. Because SAPA has not been provided access to the new hire class, the OC is not discriminated against if they are denied access.

1

DEFENDANT'S OPPOSITION TO APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. C 07-2688 CRB

Whether or not SkyWest's interpretation of the TRO is correct, however, this Court does not need to schedule another emergency hearing on Monday or any other time. The issue can easily be resolved at the Preliminary Injunction hearing scheduled for this Thursday, June 7, 2007 at 9:30 a.m. As SkyWest has told Plaintiffs' counsel, the training for this new hire class will continue for another two weeks. Therefore, there is no urgency to decide this issue three days before the Court will hear the parties' arguments on these issues.

Rather than seek clarification from the Court on June 7, or even on June 5, when the parties will be before the court on a motion to transfer, Plaintiffs filed the instant motion. They filed it two hours before SkyWest's opposition to the Preliminary Injunction motion was due, and they sought to require SkyWest to appear at a hearing on Monday, June 4, the day SkyWest's reply on the motion to transfer is due. Worse, the motion obviously was staged. Plaintiffs were told on Thursday that they would not be allowed to present Friday. (Docket No. 95, Lye Decl., Ex. H). The ALPA representatives appeared at the training center in Salt Lake City on Friday morning and demanded access anyway. Plaintiffs' motion must already have been prepared because they filed it just a few hours later.[1]

This motion is the culmination of four "emergency" motions filed by Plaintiffs in the last three Court days. Plaintiffs' aim is clear: to divert SkyWest's resources so that it is unable adequately to prosecute its motion to transfer and to prepare for the hearing on Plaintiffs' motion for a preliminary injunction.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint and *Ex Parte* Motion for Temporary Restraining Order and Motion for Order to Show Cause Why Preliminary Injunction Should Not be Granted on

---

[1] It bears mentioning that Plaintiffs precipitated the conflict *in Utah* one day after they opposed SkyWest's motion to transfer the case there pursuant to 28 U.S.C. § 1404(a), and then filed their motion in the *Northern District of California.*

2

May 22, 2007 seeking a hearing the following week on May 30, 2007. (Docket Nos. 1, 4-16). They filed the Complaint in the Northern District of California, where there are no material witnesses, no material allegations, and most importantly for Plaintiffs, where SkyWest had no existing relationships with counsel. Plaintiffs thus forced SkyWest, over a five day period that included the Memorial Day weekend, to locate local counsel far from the situs of the dispute, seek to challenge the temporary restraining order, prepare its motion to transfer, prepare its opposition to the motion for a preliminary injunction, line up its own witnesses, make arrangements to make Plaintiffs' witnesses available, begin preparations for the preliminary injunction hearing, *and*, to the best of its ability, address Plaintiffs' on-going series of communications seeking to add matters to its "to-do" list. SkyWest's General Counsel was forced to oversee all of this activity during a time when his son was hospitalized at less than one week of age with a condition that was potentially life threatening. (*See* Spagat Decl., Exs. A-B). Plaintiffs repeatedly fought SkyWest's efforts to set the preliminary injunction hearing for a date that would give SkyWest a fair opportunity to brief and prepare for both the motion to transfer and the motion for a preliminary injunction, and succeeded in having the hearing on the motion for a preliminary injunction moved from June 11 to June 7, 2007.[2] (*See* Spagat Decl., Exs. C-D).

Apparently not satisfied with these tremendous tactical advantages, Plaintiffs orchestrated and filed the instant motion. They filed it two hours before SkyWest's opposition to Plaintiffs' motion for a preliminary injunction was due, and sought to force SkyWest to appear in

---

[2] SkyWest sought to oppose Plaintiffs' "emergency" motion to move the hearing date from June 11 to June 7 on numerous grounds, not the least of which being that the additional four days were necessary to prepare fully for the hearing. Unfortunately, the Court ruled on the motion two hours after it was filed, without hearing from SkyWest. Since that time, Plaintiffs have filed two additional "emergency" motions seeking the Court's immediate attention. SkyWest respectfully requests that the Court refrain from ruling on such motions in the future until SkyWest has had an opportunity to be heard. *See* Northern District of California Local Rule ("LR") 6-3(a) (party must meet and confer before filing motion to change time to hear motion); LR 6-3(c) (opposing party has three days to oppose unless otherwise ordered); LR 7-10 (no ex parte motions except in specified circumstances).

Court on a motion for a contempt order on Monday, June 4, 2007, at 9:00 a.m. – *i.e.*, the day its reply on the motion to transfer is due. They did so, even though SkyWest explained in writing its good faith interpretation of the order, noted that the class would continue for two weeks, and offered to seek clarification from the Court this week, when the parties already were set for other hearings. Tellingly, Plaintiffs' motion seeks sanctions of $250,000 per day.

### III.  ARGUMENT

#### A.  SkyWest's Interpretation Of The Amended Temporary Restraining Order Is Correct And, Therefore, The Court Should Deny Plaintiffs' Application

Plaintiffs have failed to establish that SkyWest has violated the TRO and should be held in contempt.[3] Civil contempt consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply. *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006). "The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003).

Here, SkyWest has complied with the TRO. Plaintiffs argue that SkyWest has violated one provision of the TRO because SkyWest has not allowed Plaintiffs access to a newly-hired pilot class that recently began and is scheduled to continue for the next two weeks. Plaintiffs contend that Plaintiff SkyWest Pilots ALPA Organizing Committee (the "OC") is entitled to access to this current newly-hired pilot class if SkyWest Airline Pilot Association ("SAPA") had access to another newly-hired pilot class at any time during the past year. Plaintiffs' interpretation of the TRO is incorrect.

---

[3]  SkyWest objects to Plaintiffs' declarations in support of their application for order to show cause re contempt because the declarations are not properly executed under penalty of perjury as required by 28 U.S.C. § 1746. 28 U.S.C. § 1746; *see also* Northern District of California Local Rule 7-2 (pleadings must be supported by declarations). Plaintiffs' Declarations state: "Under penalty of perjury, I affirm the information herein is complete and accurate to the best of my ability and recollection." (Docket Nos. 93-94). Plaintiffs' declarations are out of compliance with 28 U.S.C. § 1746, and must be stricken. Plaintiffs therefore have proffered *no admissible evidence* in support of their motion for an order of contempt.

The TRO states in pertinent part:

> [SkyWest is] restrained and enjoined . . . from . . . [d]iscriminating in any way against SkyWest pilots with respect to channels of communication they may use to communicate with fellow pilots, and to provide [sic] the pilots employed by SkyWest, who are members of Plaintiff SkyWest Pilots ALPA Organizing Committee [the OC] and whose names appear on the attached Appendix A, with access to the same channels of communication provided to SAPA at any point last year, including but not limited to a dedicated bulletin board in each crew lounge where SAPA had a dedicated bulletin board at any point in the last year, general bulletin boards in crew lounges, pilot mailboxes, SkyWest's email system, and newly-hired pilot classes.

(Docket No. 42). The TRO's requirement of access to the members of the OC is a grammatically incorrect construction, *i.e.*, SkyWest is "restrained and enjoined from . . . to provide . . . access." This language must be construed together with the primary clause of the sentence, which provides that SkyWest shall not discriminate between SAPA and the OC in terms of providing access to new hire classes. SkyWest believes that the language "access to . . . newly-hired pilot classes" refers to equal access to the *same* new hire class. Accordingly, SkyWest believes that it is in full compliance with the TRO if it prohibits both SAPA and the OC from having a segment at the current new hire class.

SkyWest's position is supported by the plain wording of the TRO. Plaintiffs could have requested and drafted the TRO to specifically provide access to the newly-hired pilot class currently underway, even though SAPA has not had access to this class. In fact, the TRO specifically allows for such access with respect to the dedicated bulletin boards. The TRO provides that SkyWest is required to provide the OC access to a dedicated bulletin board in each crew lounge where SAPA had a dedicated bulletin board "at any point in the last year." Thus, the TRO contemplates that SAPA may not currently have a dedicated bulletin board, but the OC should still be provided a dedicated bulletin board if SAPA was provided access within the past year. Under Plaintiffs' reading of the TRO, however, the phrase "at any point in the last year" is duplicative and rendered meaningless.

Plaintiffs are again overreaching on the scope of the TRO and demanding things the Court never intended. Plaintiffs' first attempt was to require SkyWest to install bulletin boards for them. (Docket No. 95, Ex. D, Lye May 22, 2007 letter). The Court, however, denied this request during the hearing. Plaintiffs have a pattern of demanding more than the Court has ordered and threatening violations and contempt when SkyWest does not instantly acquiesce. It is more than reasonable to seek the Court's clarification regarding this issue. Plaintiffs, however, instead of waiting for the Court's clarification immediately brought their motion.

Plaintiffs' reading of the TRO also would reserve to the OC the unfettered right to demand access to a captive audience of newly hired pilots who are on paid company time so that they can deliver their organizational message in the middle of a training required by the Federal Aviation Administration, and to do so without regard to whether SAPA is allowed the same access to the same group of pilots. Plaintiffs' demand is utterly unprecedented in Railway Labor Act ("RLA") jurisprudence, and is characteristic of Plaintiffs' continuous overreaching in this case.[4] Plaintiffs have not cited any decision, nor is SkyWest aware of any, in which a court granted an organization seeking to represent a group of employees under the RLA access to those employees for purposes of promoting the organizing effort.

SkyWest has not violated the TRO, nor is SkyWest in calculated defiance of the Court's Order. SkyWest has not in any way discriminated against the OC. SAPA has not spoken to the current newly-hired pilot class presently underway. There is no way to give access to classes that happened "in the past year" as those pilots have graduated and are out in the system. The current class is untainted by either the OC or SAPA. The OC, therefore, should not be allowed

---

[4] This example also clearly illustrates why this dispute is within the exclusive primary jurisdiction of the National Mediation Board ("NMB"). (*See* Defendant's Amended Opposition to Motion for Preliminary Injunction (Docket No. 97 at 9:26-16:2)). Congress did not intend to allow labor unions to employ contempt proceedings, or the threat of contempt, to pressure employers into allowing them to give campaign speeches to captive audiences on paid company time.

access to this newly-hired pilot class when SAPA did not have access. The Court, therefore, should deny Plaintiffs' Application.

### B. Even If The Court Concludes That Plaintiffs' Interpretation Of The TRO Is Correct, SkyWest Should Not Be Held In Contempt Because The Order Is Vague and Ambiguous And SkyWest's Position Is A Good Faith And Reasonable Reading Of The Order

As shown above, SkyWest has not violated the Court's Order. At most, the parties have a good faith dispute as to the interpretation of a vague and ambiguous clause in the TRO. Such a good faith dispute does not satisfy the standard to hold a party in contempt. "[A] person should not be held in contempt if his action appears to be based on a good faith and reasonable interpretation of the court's order." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130 (9th Cir. 2006); *see also International Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967) ("The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one."); *Gates v. Shinn*, 98 F.3d 463, 368 (9th Cir. 1996) ("If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt."); *Biovail Labs., Inc. v. Anchen Pharms., Inc.*, 463 F. Supp. 2d 1073, 1080-81 (C.D. Cal. 2006) (denying motion for contempt and sanctions where phrase in order was ambiguous and alleged contemnor's interpretation of order was reasonable).

After discussing the issue with Plaintiffs' counsel and concluding that the parties had two different interpretations of the TRO, SkyWest's counsel respectfully suggested to Plaintiffs' counsel that the parties should wait for the transcript of the hearing because it may provide clarification of this issue and offered to revisit the issue after the transcript was received and reviewed. Instead, Plaintiffs filed their motion. Plaintiffs, however, have not adequately established that SkyWest has disobeyed a specific and definite court order or that SkyWest's interpretation is neither good faith nor reasonable. SkyWest, therefore, cannot be held in contempt.

In addition, as SkyWest explained to Plaintiffs, the new hire training will extend for two more weeks. Therefore, Plaintiffs are not prejudiced if the Court determines that SkyWest's reading of the TRO is incorrect. Even if the Court were to determine that Plaintiffs' reading is correct, Plaintiffs would have time to present to the newly-hired pilot class currently underway.

Finally, Plaintiffs' request for sanction in the amount of $250,000 per day is not supported by any authority or factual basis and is egregious. Plaintiffs provided no authority for such a sanction in their motion. Plaintiffs also did not provide any factual basis for such a high sanction and did not provide any clarification as to whether this contempt sanction should be to compensate Plaintiffs or coerce SkyWest (civil) or to punish SkyWest (criminal).[5] Under any theory, Plaintiffs cannot prevail.

"The party alleging civil contempt must demonstrate that the alleged contemnor violated the court's order by clear and convincing evidence, not merely a preponderance of the evidence." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). As discussed above, Plaintiffs cannot demonstrate any violation of the TRO by any applicable standard because SkyWest's actions are taken pursuant to a good faith and reasonable interpretation of the TRO. Plaintiffs have not alleged that SkyWest has violated any of the other numerous provisions of the TRO. SkyWest has complied with all other provisions and are only not complying with Plaintiffs' reading of one of the many requirements based on its reasonable interpretation.

---

[5] "Whether contempt is civil or criminal depends on the intended effect of the penalty imposed. If the intent is remedial, or if the penalty is conditional in that it is meant to compel the defendant to act, the contempt is civil. If the intent is punitive and the penalty is unconditional, the contempt is criminal." *United States v. Laurins*, 857 F.2d 529, 534 (9th Cir. 1988). The U.S. Supreme Court has stated, "[a] contempt fine accordingly is considered civil and remedial if it either coerces the defendant into compliance with the court's order, or compensates the complainant for losses sustained. Where a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge. Thus, a flat, unconditional fine totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *International Union v. Bagwell*, 512 U.S. 821, 829 (1994).

8

DEFENDANT'S OPPOSITION TO PLAINTIFFS' APPLICATION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NO. C 07-2688 CRB

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Further, "[c]ompensatory awards are limited to 'actual losses sustained as a result of the contumacy.'" *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citations omitted). Here, Plaintiffs have not alleged, nor presented any evidence, that Plaintiffs have suffered actual losses as a result of the alleged contempt.

"Moreover, in determining how large a coercive sanction should be the court should consider the 'character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction.'" *General Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986) (citations omitted); *see also Honor Plastic Indus. Co. Ltd. v. Lollipop USA, Inc.*, 466 F. Supp. 2d 1217, 1224-25 (E.D. Ca. 1006) (granting $3,000 fine per day where defendant had "egregiously violated" for "many weeks" both TRO and preliminary injunction and argued that it made some effort to comply, but admitted it did not fully or substantially comply).

Here, Plaintiffs have not even attempted to present any evidence or argument regarding the character and magnitude of the harm. In fact, Plaintiff would not be harmed even if SkyWest was in direct violation of the TRO because the new hire classes to which Plaintiffs seek access will continue for the next two weeks. Plaintiffs will have ample opportunity to present to the class should the Court find Plaintiffs' interpretation to be correct. SkyWest already has offered to address the issue when the parties appear before the Court this week. Further, SkyWest has not shown any unwillingness to follow the TRO. SkyWest's counsel has specifically stated to Plaintiffs that there is a good faith dispute that should be decided by the Court. SkyWest has complied with all other provisions of the TRO to be test of its ability. Therefore, there is no need or cause for the Court to impose any sanction to compel compliance with its orders.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Application or, in the alternative, address the issue at the hearing on the motion for a preliminary injunction. If the Court

believes it is necessary to hold a hearing before that time, SkyWest requests that the Court order a hearing on Tuesday, June 5, 2007, at the time of the hearing on the motion to transfer, to permit the parties to fully vet the issue before the Court.

Dated: June 4, 2007                                   WINSTON & STRAWN LLP

                                   By:   /s/ Robert Spagat
                                         Robert Spagat

                                         Attorneys for Defendant
                                         SKYWEST AIRLINES, INC.