1   Douglas W. Hall (Admitted *Pro Hac Vice*)
    FORD & HARRISON LLP
2   1300 Nineteenth Street, N.W., Suite 700
    Washington, DC 20036
3   Telephone:     202-719-2065
    Facsimile:     202-719-2077
4   Email: dhall@fordharrison.com

5   Robert Spagat (SBN: 157388)
    WINSTON & STRAWN LLP
6   101 California Street
    San Francisco, CA 94111-5894
7   Telephone:     415-591-1000
    Facsimile:     415-591-1400
8   Email: rspagat@winston.com

9
    Attorneys for Defendant
10  SKYWEST AIRLINES, INC.

11                  **UNITED STATES DISTRICT COURT**

12                **NORTHERN DISTRICT OF CALIFORNIA**

13                    **SAN FRANCISCO DIVISION**

14  SKYWEST PILOTS ALPA ORGANIZING          **Case No. C-07-2688 CRB**
15  COMMITTEE, et al.,

16              Plaintiffs,                 **DEFENDANT'S REPLY TO PLAINTIFFS'**
                                            **OPPOSITION TO SKYWEST AIRLINES,**
17       vs.                                **INC.'S MOTION TO TRANSFER**

18  SKYWEST AIRLINES, INC.,                 Date:   June 5, 2007
                                            Time:   3:00 p.m.
19              Defendant.                  Ctrm:   8, 19th Floor

20                                          Judge:  Hon. Charles R. Breyer

21                                          Action Filed:  May 22, 2007

22

23

24

25

26

27

28

*(left margin, vertical text)* Winston & Strawn LLP   101 California Street   San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

| | | | |
|---|---|---|---|
| 1 | I. | INTRODUCTION ................................................................................................1 |
| 2 | II. | UNDISPUTED FACTS RELEVANT TO THE MOTIOn.......................................1 |
| 3 | | A. | SkyWest's Allegedly Unlawful Dealings With SAPA.................................2 |
| 4 | | B. | Alleged Discriminatory Enforcement Of Uniform Policy (Lanyards). .........3 |
| 5 | | C. | Alleged Discriminatory Enforcement Of Bulletin Board Posting Policy.......3 |
| 6 | | D. | Alleged Removal Of ALPA Materials From Pilot Mailboxes......................4 |
| 7 | | E. | Alleged Denial of Equal Access To SkyWest's FAA-Mandated New Hire Orientation Program................................................................................4 |
| 8 | | | |
| 9 | | F. | A Plurality Of Plaintiffs' Witnesses Are Domiciled In The District Of Utah...............5 |
| 10 | | G. | Only One Plaintiff Resides In The Northern District Of California; He Is Domiciled In Utah..............................................................................5 |
| 11 | | H. | SkyWest's Corporate Headquarters, And The Vast Majority Of Its Witnesses Are In Utah; None Are In The Northern District Of California. ...................6 |
| 12 | | | |
| 13 | | I. | Venuing This Case In The Northern District Of California Creates A Greater Risk Of Canceled And Delayed Flights Than Venuing It In The District Of Utah..............................................................................................6 |
| 14 | | | |
| 15 | | J. | The Northern District Of California Has A Much More Congested Docket Than The District Of Utah. .......................................................................7 |
| 16 | | K. | SkyWest's Utah-Based Pilots Outnumber Its Northern District of California-Based Pilots By More Than 37 to 1.........................................................7 |
| 17 | | | |
| 18 | III. | ARGUMENT........................................................................................................8 |
| 19 | | A. | Plaintiffs Concede That This Action Could Have Been Brought In The District Of Utah..............................................................................8 |
| 20 | | B. | Plaintiffs' Choice of Forum is Entitled To No Deference Because It Bears No Relation To The Underlying Dispute..............................................................8 |
| 21 | | | |
| 22 | | C. | The Parties And Witnesses To This Case Are In Utah. .................................8 |
| 23 | | D. | Plaintiffs' Reliance Upon Int'l Bhd. of Teamsters v. N. Am. Airlines Is Misplaced. ..........................................................................................9 |
| 24 | | E. | Plaintiffs May Not Bring An Action In A Venue With No Connection To The Dispute Simply Because SkyWest Is A "Transportation Company." .............9 |
| 25 | | | |
| 26 | | F. | Venuing This Action In This Judicial District Creates A Substantial Burden On SkyWest And Its Passengers.................................................................10 |
| 27 | | | 1. SkyWest Cannot Send Its Witnesses "For Free."............................10 |
| 28 | | | |

2.     Arranging To Send Plaintiffs And Their Witnesses Creates A Risk Of Canceled Flights And Costs SkyWest Money. ..................................................11

G.     California Public Policy Is Preempted And Irrelevant To The Venue Issue In Any Event. .....................................................................................................12

IV.     CONCLUSION..........................................................................................................12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

ii

1

# TABLE OF AUTHORITIES

2

**CASES**

3

4
*Calva v. American Airlines, Inc.,*
    177 F. Supp. 238 (D. Minn. 1959)........................................................................12

5
*Int'l Bhd. of Teamsters v. N. Am. Airlines,*
    2005 WL 947083 (N.D. Cal. 2005) .....................................................................11

6

7
*Miracle v. N.Y.P. Holdings, Inc.,*
    87 F. Supp. 2d 1060 (D. Haw. 2000)...................................................................14

8

9
*Tice v. American Airlines, Inc.,*
    162 F.3d 966 (7th Cir. 1998) ...............................................................................13

10

11

**STATUTES**

12
28 U.S.C. § 1401(a) ............................................................................. 4, 12-13

13
28 U.S.C. § 1746................................................................................................4-5

14

**RULES**

15

Rule 602, Federal Rules of Evidence.....................................................................7, 8

16
Rule 603, Federal Rules of Evidence.....................................................................7, 8

17
Rule 802, Federal Rules of Evidence.....................................................................7, 8

18
Northern District of California Local rule 7-2 ...........................................................4

19

20

21

**OTHER AUTHORITIES**

22
15 Wright & Miller, Federal Prac. & Proc. § 3851 (3d ed. 2007) ................................12

23
FRE §§ 802, 602, 603 ..................................................................................7-8

24
Local Rule 7-2...................................................................................................4

25

26

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO SKYWEST AIRLINES, INC.'S MOTION TO TRANSFER, CASE NO.  C 07-2688 CRB

SF:173912.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## I.    INTRODUCTION

The issue before the court is not whether Defendant SkyWest Airlines, Inc. ("SkyWest") has minimum contacts in the Northern District of California.  The change of venue statute presumes that jurisdiction exists in the judicial district where the plaintiff has filed suit, yet authorizes the District Court to transfer the action to another judicial district where there is jurisdiction "for the convenience of the parties and witnesses [and] in the interests of justice."  28 U.S.C. § 1401(a).  Plaintiffs have proffered evidence that arguably demonstrates SkyWest has sufficient contacts to be amenable to suit in the Northern District of California.  Virtually all of this evidence is unrelated to this dispute however, and is therefore irrelevant to the issues before the Court in this motion.

Nor is the issue before the Court whether venue is more appropriate in Utah or "California."  California includes four judicial districts, the Northern District, the Eastern District, the Central District, and the Southern District.  Plaintiffs cite no authority for the novel proposition that the Northern District of California may annex the other three California judicial districts for purposes of deciding a motion pursuant to § 1404(a) because there is none.  Under Plaintiffs' overreaching theory, a case never could be transferred from one judicial district in California to another because, in all cases, each district would have the same ties to the dispute.  That is not the law.

Once the Court makes the appropriate comparison between the District of Utah and the Northern District of California – something Plaintiffs are afraid to do – there is no question that the convenience of the parties and witnesses and the interests of justice overwhelmingly favor transferring this action to the District of Utah.

## II.    UNDISPUTED FACTS RELEVANT TO THE MOTION

Stripped of the rhetoric, the key facts which this court must consider in ruling on the instant motion to transfer are not in dispute.  They clearly show that all roads in this dispute lead to the District of Utah, and that none – except the road to Plaintiffs' law firm – lead to the Northern District of California.[1]

---

[1]    SkyWest objects to Plaintiffs' declarations in support of their opposition to the motion to transfer because the declarations are not properly executed under penalty of perjury as required by 28 U.S.C. § 1746.  28 U.S.C. § 1746 (setting forth requirements for unsworn declarations); *see also* Northern District of California Local Rule 7-2 (pleadings must be supported by declarations).

**A.    SkyWest's Allegedly Unlawful Dealings With SAPA.**

Plaintiffs allege that SkyWest is engaged in an unlawful relationship with the SkyWest Pilots Association ("SAPA"), and that, between July and September 2006, SkyWest bargained with SAPA unlawfully. (Doc. 1, Cmplt., ¶¶ 20-22.) The complained-of bargaining took place in primarily in Utah. (Supplemental Declaration of Todd Emerson in Support of Defendant's Reply In Support Of SkyWest Airlines Inc.'s Motion To Transfer Venue ("Supp. Emerson Decl."), ¶ 3.) None of the bargaining sessions took place in the Northern District of California. (*Id.*) Four of the six representatives for SAPA and SkyWest who participated in the bargaining sessions – Mike Eisenstat and Jim Black for SAPA, and Brad Holt and Klen Brooks for SkyWest – reside and are domiciled in Utah; none of the six reside or are domiciled in the Northern District of California. (*Id.*)

All three of SAPA's executives are domiciled in Utah. (Doc. 46, Emerson Decl., ¶ 12.)[2] Two of them reside in Utah; none of them reside in this judicial district. (*Id.*) Current SkyWest President Russell Childs and former President Ron Reber have quarterly meetings with the SAPA Executive Committee in St. George, Utah. (¶ 4.)

The sum total of Plaintiffs' allegations regarding the allegedly unlawful SkyWest-SAPA relationship to the Northern District of California is that Russell Jacobie, who neither resides nor is domiciled in the Northern District of California, saw SAPA materials in crew lounges in airports in multiple judicial districts, including but not limited to the San Francisco Airport. (Doc. 82, Jacobie Decl., ¶ 5.) Those materials also were posted in Utah, where they were viewed by considerably more SkyWest pilots. (Supp. Emerson Decl., ¶ 5.)

Plaintiffs also allege that SkyWest management gives discriminatory access to its e-mail system to SAPA but not ALPA. (Doc. 1, Cmplt., ¶ 36.) The e-mail servers are in Utah, as is SkyWest's IT management. (Doc. 46, Emerson Decl., ¶ 13.)

---

Plaintiffs' Declarations state: "Under penalty of perjury, I affirm the information herein is complete and accurate to the best of my ability and recollection." (Docs. 55, 79-84.) In addition, Claire Prestel's declaration is not even signed. (Doc. 78.) Plaintiffs' declarations are out of compliance with 28 U.S.C. § 1746, and must be stricken.

2      Except as otherwise noted, all declarations referenced herein were filed in support of, or in opposition to, Defendant SkyWest Airlines Inc.'s Motion to Transfer Venue.

2

SF:173912.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

**B.    Alleged Discriminatory Enforcement Of Uniform Policy (Lanyards).**

Plaintiffs allege that SkyWest has prevented pilots from wearing lanyards with ALPA's insignia, while allowing pilots to wear lanyards with other insignias. (Doc. 1, Cmplt., ¶¶ 25-29.) Plaintiffs have offered evidence that four pilots, Andy Bharath, Clinton Weichers, Chris Lowder, and Steve Dow, did not wear their lanyards wherever they flew, "including," but obviously not limited to, San Francisco. (Doc. 80, Bharath Decl., ¶ 5; Docs. 55, 84, Weichers Decl., ¶ 7; Doc. 83, Lowder Decl., ¶ 4; Doc. 81, Dow Decl., ¶ 3.)[3] Plaintiffs have offered no evidence (including but not limited to these declarations) that any pilot ever has been asked to remove his lanyard in the Northern District of California. By contrast, four of the nine Plaintiffs state that they have been asked to remove their lanyards in Salt Lake City by management personnel who work there. (Doc. 6, Boehm, Decl., ¶¶ 6-7 (identifying Jason Meister and Verdean Heiner); Shrier Decl. ¶¶ 5-6 (identifying Tony Fizer); Bowlin Decl., ¶¶ 3-4 (identifying Dave Faddis); Doc. 15, Alford Decl., ¶¶ 6-7 (identifying Shane Losee).) Meister, Verdeen, Fizer, Faddas and Losee all reside and are domiciled in Utah. (Supp. Emerson Decl., ¶¶ 6, 8.) The other two witnesses whom Plaintiffs allege asked them to take off their lanyards, Roy Glassey and Susan Brown (who is an administrative assistant, not management), do not reside and are not domiciled in the Northern District of California. (*Id.*)

**C.    Alleged Discriminatory Enforcement Of Bulletin Board Posting Policy.**

Plaintiffs allege that SkyWest management removed ALPA postings from bulletin boards and crew lounges. (Doc. 1, Cmplt., ¶¶ 30-34.) Plaintiffs have offered evidence that a single pilot, Clinton Weichers, who is neither a plaintiff nor a designated witness, has posted ALPA materials in the San Francisco crew lounge, and that they disappeared "very quickly – in some cases during the course of only one night and, in at least one case, after only two hours." (Docs. 55, 84, Weichers Decl., ¶ 4.)

---

[3]    One of these declarations were submitted in support of Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order and Order to Show Cause Why a Preliminary Injunction Should Not Issue.

1    It is undisputed that SkyWest has no permanently assigned pilot management in San

2    Francisco. (Doc. 46, Emerson Decl., ¶ 9.) SkyWest therefore is not in a position to monitor

3    postings in the crew lounge on a daily or overnight (let alone hourly) basis. (*Id.*) In fact, the only

4    regular pilot management presence in the SkyWest airport is Michael Huber, the Chief Pilot, Fresno.

5    (Declaration of Michael Huber in Support of Defendant's Motion to Transfer, ¶ 3.) Huber resides

6    and is domiciled in Fresno, California. (*Id.*, ¶ 1.) Huber only visits San Francisco once per week, on

7    Fridays. (*Id.*, ¶ 3) Huber has never seen, much less removed any ALPA posting from any bulletin

8    board, crew lounge, employee mailbox or any other place at the San Francisco Airport. (*Id.*, ¶ 4.) It

9    is therefore likely that non-management pilots, who voted no to ALPA in their many previous

10    organizing drives, removed the postings rather than SkyWest management. (*See* Supp. Emerson

11    Decl., ¶ 17, Ex. G.)

         **D.    Alleged Removal Of ALPA Materials From Pilot Mailboxes.**

13    Plaintiffs allege that SkyWest management removed ALPA materials from pilot mailboxes.

14    (Doc. 1, Cmplt., ¶ 35.) Plaintiffs have offered *no* admissible evidence of any materials ever being

15    removed from a pilot mailbox in the Northern District of California.[4] There are 847 pilot mailboxes

16    in Utah, and 29 in the Northern District of California. (Supp. Emerson Decl., ¶ 7.)

         **E.    Alleged Denial of Equal Access To SkyWest's FAA-Mandated New Hire
                 Orientation Program.**

19    Plaintiffs allege that SkyWest allows SAPA but not ALPA to participate in its new hire

20    orientation program for pilots. (Cmplt., ¶ 37-38.) The new hire orientation is in Utah; SkyWest has

21    no training facilities in the Northern District of California. (Emerson Decl., ¶ 6.) As recently as

22    Friday, June 1, 2007, two OC member Plaintiffs sought to present at an orientation program *in Utah,*

23    were refused, whereupon Plaintiffs filed a motion for a contempt order *in the Northern District of*

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

---

[4]    Plaintiffs proffer the inadmissible hearsay evidence of one pilot (Weichers), who declares
26    that he "learned later [from an unidentified, out-of-court declarant,] that the intended recipient never
         received the materials I left for him." (Doc. 55, 84, Weichers Decl., ¶ 6.) SkyWest objects to this
27    evidence. FRE §§ 802, 602, 603. Even if this inadmissible evidence were considered, it does not
         mean that pilot management, who maintains no regular presence in San Francisco, removed it.

4

SF:173912.2

1   *California.* (*See* Declaration of Steve Dow in Support of Application for Order to Show Cause re:

2   Contempt (Doc. 94), ¶ 3-5.)

3       Plaintiffs also claim that two members of SkyWest management, Dave Faddis and Shane

4   Losee, instructed them to stop leafleting at SkyWest's training facility in Salt Lake City, Utah. Both

5   Faddis and Losee reside and are domiciled in Utah. (Supp. Emerson Decl., ¶ 7.)

6   **F.    A Plurality Of Plaintiffs' Witnesses Are Domiciled In The District Of Utah.**

7
8       Pilots choose their own domicile, and that is the place that they have chosen to start and end

    each trip for SkyWest. (Doc. 46, Emerson Decl., ¶ 3.) Since they choose to start and end every
9
    work shift in their domicile, it obviously is a convenient location for them.
10
11      Four of the six pilots that Plaintiffs have chosen to testify at the preliminary injunction

    hearing are domiciled in Utah: Tracy Shrier, Phil Alford, David Boehm and Steve Kanuch. (Doc.
12
13  46, Emerson Decl., ¶ 8.) The other two, Steve Dow and Andy Bharath, are domiciled in Colorado.

    (*Id.*) None are domiciled in the Northern District of California. (*Id.*) Three of the Plaintiffs are
14
15  domiciled in Utah. (*Id.*, ¶ 7.) None are domiciled in the Northern District of California. (*Id.*)

16      Given that a plurality of Plaintiffs' witnesses are domiciled in Utah, from a scheduling

    standpoint, it would be more convenient for SkyWest and its operations to have the case venued in
17
18  Utah. (Declaration of Jay Oyler in Support of Motion to Transfer ("Oyler Decl."), ¶ 13.)

    Specifically, if the schedulers did not have to account for travel time both before and after any
19
20  hearing, there likely would be fewer trips to cover, thus reducing problems for the schedulers and

    lessening the possibility of delayed or canceled flights. (*Id.*, ¶¶ 12-13.)
21
22      Ironically, when SkyWest's General Counsel was at the Salt Lake City Airport waiting to

    board a flight to San Francisco, he was asked by the gate agent whether he was part of the group of
23
24  SkyWest pilots who was waiting on standby for available seats. (Supp. Emerson Decl., ¶ 10.)

25  **G.    Only One Plaintiff Resides In The Northern District Of California; He Is
        Domiciled In Utah.**

26
27      Only one Plaintiff resides in the Northern District of California, albeit within the intra-district

    venue of San Jose, not San Francisco: Frank Bowlin. (Supp. Emerson Decl., ¶ 11.) Bowlin is
28

5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:173912.2

1    domiciled in Salt Lake City. (*Id.*) Bowlin has not been designated as a witness to testify at the PI

2    hearing. (*Id.*, ¶ 8.) His involvement in this action is so remote that Plaintiffs did not even elicit a

3    declaration from him to support their opposition to the instant motion to transfer venue. Plaintiffs

4    have not designated Bowlin to testify at the PI hearing. (Prestel Decl., ¶ 2; Emerson Decl., ¶ 8.)

**H.    SkyWest's Corporate Headquarters, And The Vast Majority Of Its Witnesses
Are In Utah; None Are In The Northern District Of California.**

7    Even at this early stage of the case, SkyWest already has identified eighteen witnesses.

8    (Supp. Emerson Decl., ¶¶ 3-9.) Most of these have been identified because Plaintiffs allege that they

9    are wrongdoers in their various declarations. Of these, ten are in Utah: Jim Black, Mike Eisenstat,

10   Todd Emerson, Dave Faddis, Tony Fizer, Verdean Heiner, Brad Holt, Shane Losee, Jason Meister,

11   and Ron Reber. (*Id.*) The other seven are in Illinois (Roy Glassey and Kelly Riley), Colorado (Jeff

12   Curry and Susan Brown) and Palm Springs, California (Tony Hoetker). (*Id.*) None of the witnesses

13   are in the Northern District of California. (*Id.*)

**I.    Venuing This Case In The Northern District Of California Creates A Greater
Risk Of Canceled And Delayed Flights Than Venuing It In The District Of Utah.**

15   There is a risk that SkyWest will be forced to cancel or delay flights due to the disruption

16   caused by holding hearings in San Francisco rather than Utah because San Francisco puts most pilots

17   farther out of position and therefore requires that they be scheduled off longer than would be the

18   case if hearings were in the District of Utah. (Doc. 46, Emerson Decl., ¶ 15.) In fact, a dispute

19   already has arisen over Plaintiffs' demand to be taken off the schedule to meet with their attorneys in

20   San Francisco on May 29, 30 and 31, and June 6 and 7. (Supp. Emerson Decl., ¶ 15, and Exs. A-F.)

21   Each of the six witnesses Plaintiffs intend to call are Regional Jet Captains ("CRJ Captains").

22   (Oyler Decl., ¶ 13.) As the schedule for June already has been made (*Id.*, ¶ 6), if these (or SkyWest's

23   witnesses have trips scheduled on the date of the hearing or on the days they need to travel to and

24   from the hearing, other CRJ captains must be assigned to the trips (*Id.*, ¶¶ 7-8). While SkyWest

25   generally fills trips form a list of reserves, only 5% of its CRJ captains are on reserve. (*Id.*, ¶ 9.)

26   Thus, the reserve pool is small and SkyWest may well have to rely on out-of domicile reserves,

27   adding to the complexity of the rescheduling. (*Id.*) In the alternative, SkyWest can ask off-duty

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

6

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  pilots to take the trips that need to be reassigned, but that will be more expensive because such pilots

2  are paid time-and-a-half and they could well be domiciled in a different city. (*Id.*, ¶¶ 10-11.)  When

3  multiple CRJ captain trips must be re-assigned, there can be a domino effect on the rest of the flight

4  schedules and flights can be delayed and/or cancelled. (*Id.*, ¶ 12.)

**J.    The Northern District Of California Has A Much More Congested Docket Than The District Of Utah.**

The Northern District of California has a much more congested docket than the District of

Utah. *See* http://www.uscourts.gov/cgi-bin/cmsd2006.pl.  According to these statistics, judges in the

Northern District of California have an average of 583 cases pending, with their workload

increasing, whereas judges in the District of Utah have an average of 391 cases pending, with their

workload decreasing.

In the thirteen days between the filing of the complaint and the filing of this reply, the parties

have filed more than 106 pleadings with the Court.  Moreover, this case involves the potential for the

entry of a preliminary injunction.  The time between the determination whether or not to enter a

preliminary injunction and the final adjudication of the case undoubtedly will be much longer in this

judicial district than it would be in the District of Utah.  That, in turn, may substantially prejudice

whichever party loses on the motion for a preliminary injunction.

**K.    SkyWest's Utah-Based Pilots Outnumber Its Northern District of California-Based Pilots By More Than 37 to 1.**

SkyWest employs 2,651 pilots.  In the final analysis, this lawsuit is about Plaintiffs' quest to

get 1,326 of them to vote for ALPA.  One Thousand Eighty (1,080) of those pilots are domiciled

(*i.e.,* physically present at the beginning and end of every work shift) in Utah. (Doc. 46, Emerson

Decl., ¶ 5.)  Only twenty-nine (29) of them are in the Northern District of California. (Supp.

Emerson Decl., ¶ 7.)  Thus the ratio of pilots connected to Utah versus pilots connected to the

Northern District of California is more than 37 to 1.

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO SKYWEST AIRLINES, INC'S MOTION TO TRANSFER CASE NO. C 07-2688 CRB

SF:173912.2

1

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## III.  ARGUMENT

### A.  Plaintiffs Concede That This Action Could Have Been Brought In The District Of Utah.

Plaintiffs do not dispute that this action could have been brought in the District of Utah. Utah is the venue with by far the greatest connection to this dispute.

### B.  Plaintiffs' Choice of Forum is Entitled To No Deference Because It Bears No Relation To The Underlying Dispute.

Despite their efforts at obfuscation, Plaintiffs are unable to change the basic fact that none of the plaintiffs are domiciled in the Northern District of California, and only one of the nine natural Plaintiffs – whom Plaintiffs do not even deem worthy to offer a declaration in opposition to the instant motion – resides in this judicial district. Try as they might, Plaintiffs are unable to adduce admissible evidence of a single unlawful incident in San Francisco because *SkyWest has no regular pilot management here*. The best evidence they could muster is that four of SkyWest's 2,600 pilots felt that they could not wear their lanyard while traveling through San Francisco – and every other airport they visit – and that ALPA postings disappear "quickly" off a bulletin board (where, again, there is no regular management presence). No matter how convenient Plaintiffs' choice of forum may be to their outside counsel, it is entitled to no deference because it bears *no relation* to the underlying dispute.[5] *See* Doc. 45, SkyWest's Memorandum of Points and Authorities In Support of Motion to Transfer Venue ("Opening Brief"), at 10, and the numerous cases cited therein, which Plaintiffs choose to ignore.

### C.  The Parties And Witnesses To This Case Are In Utah.

As demonstrated above, the majority of witnesses, by a wide margin, is in Utah. In their opposition to the instant motion, Plaintiffs failed to identify a single testifying witness who resides or who is domiciled in the Northern District of California, yet three Plaintiffs are domiciled in Utah.

---

[5]  Ultimately, even if the Court were to apply a "strong presumption in favor of Plaintiffs forum," as Plaintiffs urge, SkyWest still would prevail because the District of Utah has by far the greatest connection to the parties, the witnesses and the dispute, whereas the Northern District of California has none.

8

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   Plaintiffs' case is so weak that they are forced to assert, without authority or any rational basis, that

2   Utah somehow is not a convenient for SkyWest's witnesses *who reside in Utah*! (Plaintiffs'

3   Opposition, at 11, fn. 6.) The Plaintiffs doth protest too much. It is patently absurd to assert that the

4   Northern District of California is convenient for witnesses who reside outside this judicial district,

5   yet the District of Utah is inconvenient for witnesses who reside inside that judicial district.[6] This is

6   just one of the many examples of Plaintiffs' overreaching in this case.

7   **D.    Plaintiffs' Reliance Upon *Int'l Bhd. of Teamsters v. N. Am. Airlines* Is Misplaced.**

8       Plaintiffs place undue reliance on a single unpublished decision, *Int'l Bhd. of Teamsters v. N.*

9   *Am. Airlines*, 2005 WL 947083 (N.D.Cal. 2005). *Teamsters* is easily distinguishable because, unlike

10  this case, there was a genuine nexus between the dispute and the Northern District of California to

11  start with.

12      In *Teamsters*, the Defendant moved to transfer the action to the Southern District of New

13  York, where litigation between the parties already was pending. By the time the Court in the

14  Northern District of California heard the motion, the Court in the Southern District of New York had

15  dismissed the case there for lack of jurisdiction. *Teamsters*, at *2. It is hardly surprising that the

16  District Court in California then denied the motion to transfer.

17      Here, Plaintiffs, who have all but cornered the market on overreaching, do not even dare to

18  argue that the District Court in Utah would lack jurisdiction over this action. Like their reliance on

19  allegations of witnesses and wrongdoing outside the Northern District of California, Plaintiffs'

20  reliance on *Teamsters* belies their desperation in attempting to overcome the motion to transfer.

21  **E.    Plaintiffs May Not Bring An Action In A Venue With No Connection To The**
22  **Dispute Simply Because SkyWest Is A "Transportation Company."**

23      In a "pot calling the kettle black" argument, Plaintiffs, who are airline *pilots*, assert that

24  SkyWest is disqualified from challenging venue because it is an airline *company*. Plaintiffs rely on

25  *Wright and Miller*, which in turn relies upon a 50 year old case that did not involve a dispute

26  between an airline and its pilots, for the proposition that it is not inconvenient for a transportation

---

27  [6]    The SkyWest residents who live in St. George, do not agree that it is just as easy for them to
    fly to San Francisco than it is to fly to Salt Lake City, *inter alia*, because their flight to San Francisco
28  routes through Salt Lake. (Supp. Emerson Decl., ¶ 9.)

9

1  company to travel to litigate claims. *See* 15 Wright & Miller, Federal Prac. & Proc. § 3851 at 423

2  (3d ed. 2007), citing *Calva v. American Airlines, Inc.*, 177 F. Supp. 238 (D. Minn. 1959).

3      *Calva* was a single plaintiff case, in which "a Minnesota resident of Mexican origin" sued

4  American Airlines in Minnesota for "unjust discrimination" for removing him from a flight in

5  Dallas, Texas. *Id.* at 238-39. That case did not involve substantial allegations of wrongful conduct,

6  large numbers of witnesses, and multiple plaintiffs, all in the transferee forum. Nor was the Plaintiff

7  a pilot, who could travel seamlessly (from his point of view) to the transferee forum.

8      Here, in stark contrast, only one of eleven Plaintiffs resides in the Northern District of

9  California, and he is domiciled in *Salt Lake City*. There simply are no cases holding, as Plaintiffs

10  would require to oppose this motion successfully, that a defendant waives its right to transfer venue

11  pursuant to 28 U.S.C. § 1401(a) by virtue of its status as a company in the transportation industry.

**F.    Venuing This Action In This Judicial District Creates A Substantial Burden On SkyWest And Its Passengers.**

**1.    SkyWest Cannot Send Its Witnesses "For Free."**

14      Plaintiffs' suggestion that there is no burden on SkyWest to litigate this action in a forum far

15  away from the situs of the dispute belies a lack of understanding of SkyWest and the airline industry

16  generally. ("Emerson Decl., ¶ 14.) SkyWest is a regional carrier that contracts with United Airlines

17  ("United") and Delta Airlines ("Delta"). (Supp. Emerson Decl., ¶ 12.) It does not sell tickets for its

18  own flights. (*Id.*) Rather, United and Delta sells the tickets for flights serviced by SkyWest and then

19  pays SkyWest on a per-departure basis. (*Id.*) United and Delta control the seat inventory and allow

20  SkyWest management to travel "positive space" on a limited basis for business. (*Id.*) However,

21  these seats are not guaranteed for any given flight and many times SkyWest employees must fly

22  stand-by. (*Id.*) Despite holding a positive space ticket, SkyWest employees can been bumped and

23  forced to overnight in that location or purchase a full fare ticket on another airline to reach their

24  destination. (*Id.*) Therefore, to ensure that its witnesses are at a hearing in the Northern District of

25  California at a given time on a given day SkyWest must purchase full-price tickets for each of its

26  witnesses. That is particularly true of flights between Salt Lake City and San Francisco because this

27  route is among SkyWest's busiest, most booked, routes. (*Id.*, ¶ 14.) Alternatively, SkyWest must

28

10

SF:173912.2

1  take its witnesses off line a day in advance to ensure that they will be able to board a flight.[7] (Supp.

2  Emerson Decl., ¶ 13.)

3        **2.    Arranging To Send Plaintiffs And Their Witnesses Creates A Risk Of Canceled Flights And Costs SkyWest Money.**

4

5        Nor can SkyWest transport its employees to the Northern District of California, as Plaintiffs

6  seem to be claiming, with "relative ease."[8] Opp. at 11. To the extent witnesses are captains,

7  SkyWest must consider additional factors to make these witnesses available. Indeed, SkyWest's

8  incurs further expense because it is, in fact, a transportation company. Plaintiffs intend to call at

9  least five captains at the June 7, 2007 Preliminary Injunction Hearing. *See* Declaration of Linda Lye

10 in Support of Plaintiffs' Motion to Require SkyWest to Provide Witness List (Doc. 88) Ex. 2 at 2.[9]

11 Similarly, SkyWest also intends to call captains. Each of these witnesses will be made available for

12 the hearing and for the travel days in and out of San Francisco. *See* Emerson Decl. ¶ 15.

13        In still another example of Plaintiffs' continuous overreaching, they claim that they need to

14 meet with their San Francisco counsel in person a day early for preparation, even though they

15 already met with them for one, and in some cases two, days after the originally scheduled May 31,

16 2007, hearing date was canceled. (Supp. Emerson Decl., ¶ 15, and Exhs. A-F.) *Both* trips would

17

18

19 7    Plaintiffs' attitude, that SkyWest can just pay the extra cost, is disrespectful, and likely explains why the SkyWest pilots repeatedly have voted no to ALPA in past elections, and instead

20 have chosen to pursue in a more positive relationship with SkyWest through representation by SAPA. Supp. Emerson Decl., ¶ 16.)

21 8    In *Tice v. American Airlines, Inc.*, 162 F.3d 966 (7th Cir. 1998), the Seventh Circuit noted

22 that "the district court gave some weight (as it was entitled to do) to the plaintiffs' choice of forum, to the relative ease with which American (an airline company) could transport its employees

23 between Texas and Illinois, to the questionable relevance and need at trial for the Dallas flight simulator, and to the fact that essentially the same number of plaintiffs were employed at O'Hare as

24 at DFW" and held that there was no reversible error in denying the defendant's motion to transfer. *Id.* at 974. This is hardly a finding that in all airline cases, an airline can transport its employees to a

25 plaintiff's choice of forum with "relative ease," without regard to the connection of the forum to the dispute.

26 9    Based on their Application for Order to Show Cause re: Contempt, *see* Doc. 90, and the

27 declarations support thereof, *see* Docs 93 (Declaration of Phil Alford) & 94 (Declaration of Steve Dow), Plaintiffs also seek to call captains at the contempt hearing they have requested.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

11

SF:173912.2

1  have been unnecessary if the case had been venued in Utah.  Instead, SkyWest again will be required

2  to "schedule around" these captains.[10]  (Emerson Decl., ¶ 15.)  (*Id*).

3        Adding this group of unavailable pilots to pilots unavailable because of illness and/or

4  personal reasons, SkyWest will have to draw on its reserve pilots.  ((Emerson Decl., ¶ 15; Oyler

5  Decl., ¶ 7.)  The percentage of SkyWest RJC captains on reserve is small (5%), thus increasing the

6  possibility that any available reserve will be out-of-domicile.  (Oyler Decl., ¶¶ 8-9.)  To the extent

7  the reserves do not have the flying hours available and/or cannot get to the necessary departing

8  airport on time, SkyWest may be able to assign another captain to come on his/her day off.  (Oyler

9  Decl., ¶ 11.)  (This will cost SkyWest more per captain that it otherwise would not have had to pay.

10  (Oyler Decl., ¶ 11.)  (*Id*).  If that is not possible, SkyWest must cancel flights.  (Oyler Decl., ¶ 12;

11  Emerson Decl., ¶ 15.)  ( If a flight is canceled, SkyWest will lose revenue because it is compensated

12  on a per-departure basis.  (Emerson Decl., ¶ 15.)  ( Worse, SkyWest will lose good will because, to

13  put it mildly, airline passengers do not like having their flights canceled.  Nor is the possibility

14  "discount travel" relevant to the analysis.[11]  The focus of a § 1404(a) is convenience to the parties.

### G.    California Public Policy Is Preempted And Irrelevant To The Venue Issue In Any Event.

        Finally, Plaintiffs' reliance upon California state law public policy is patently absurd.

Plaintiffs have not even brought a claim for violation of the Labor Code sections they reference, for

the obvious reason that such a claim would be preempted by the Railway Labor Act and the

Commerce Clause.  The public policy underlying an unasserted and preempted state law has no

bearing on this Court's analysis pursuant to 28 U.S.C. § 1404(a).

## IV.    CONCLUSION

---

[10]    In most lawsuits, parties meet with their lawyers on their own time.

[11]    Quoting from a personal jurisdiction case, in its analysis of motion to dismiss for lack of personal jurisdiction or, in the alternative, a motion to transfer venue, *Miracle v. N.Y.P. Holdings, Inc.*, 87 F. Supp. 2d 1060 (D. Haw. 2000) notes that "'in this era of fax machines and discount air travel,' it is not unreasonable to require a party to litigate in a distant forum." *Id.* at 1073 (quoting *Panavision*, 141 F.3d at 1074).  If fax machines and discount travel were dispositive in a transfer analysis, § 1404(a) would be relegated to the scrapbook of history. *Miracle*, therefore, does not aid the analysis.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

12

SF:173912.2

1    Through this motion, this Court must decide whether to continuously require the vast

2    majority of parties and witnesses to fly from Utah to the Northern District of California to litigate

3    this case, or to require Plaintiffs' attorneys to fly from San Francisco to the District of Utah to do so.

4    SkyWest respectfully submits that the interests of justice require that the court choose the latter.

5    Accordingly, SkyWest requests that the Court grant its motion to transfer venue, and transfer this

6    action to the District of Utah.

7

8

9    Dated: June 4, 2007                    WINSTON & STRAWN LLP

10

11                                     By:    /s/ Robert Spagat
                                              Robert Spagat
12                                            Attorneys for Defendant
                                              SKYWEST AIRLINES, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION TO SKYWEST AIRLINES, INC'S MOTION TO TRANSFER CASE NO.  C 07-2688 CRB

SF:173912.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894