1   STEPHEN P. BERZON (#46540)
    sberzon@altshulerberzon.com
2   LINDA LYE (#215584)
    llye@altshulerberzon.com
3   CLAIRE P. PRESTEL (#235649)
    cprestel@altshulerberzon.com
4   Altshuler Berzon LLP
    177 Post Street, Suite 300
5   San Francisco, CA  94108
    Telephone:  (415) 421-7151
6   Facsimile:   (415) 362-8064

7   ELIZABETH GINSBURG
    (Admitted to Practice *Pro Hac Vice*)
8   elizabeth.ginsburg@alpa.org
    Air Line Pilots Association, International
9   1525 Massachusetts Ave., NW
    Washington, D.C. 20036
10  Telephone: (202) 797-4081
    Facsimile:   (202) 797-4014

11
    Attorneys for Plaintiffs
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14

15  SKYWEST PILOTS ALPA ORGANIZING          )   CASE No. C-07-2688 CRB
    COMMITTEE, *et al.*,                     )
16                                           )   **PLAINTIFFS' REPLY IN SUPPORT**
               Plaintiffs,                   )   **OF MOTION FOR PRELIMINARY**
17                                           )   **INJUNCTION**
          vs.                                )
18                                           )
    SKYWEST AIRLINES, INC.,                  )   Date:   June 7, 2007
19                                           )   Time:   9:30 a.m.
               Defendant.                    )   Place:  Courtroom 8, 19th Floor
20  _____ )

21

22

23

24

25

26

27

28

**SUMMARY OF ARGUMENT**

Both SkyWest's opposition and its amended opposition ignore controlling Supreme Court and Ninth Circuit case law in favor of an imagined state of labor law that has never existed in the more than 80 year history of the Railway Labor Act ("RLA" or "Act").

1. SkyWest misstates the applicable legal standard by misrepresenting the holdings in both *Texas & N.O.R. Co. v. Brotherhood of Railway Clerks*, 281 U.S. 548 (1930), and *Adams v. Federal Express Corp.*, 1975 WL 1143 (W.D. Tenn.) ("*Adams I*"). *Texas & N.O.R.* did not hold that Plaintiffs must prove a "corrupted or overr[idden]" will in order to prevail on claims under RLA Section 2. To the contrary, the Supreme Court recognized that evidence of a "company union" – nearly identical to the evidence here – is sufficient to establish a violation of the Act. *Adams* also did not hold that a "practice of discharging employees" or a "conscious concerted attempt to violate" the Act are required to prove a statutory violation. In fact, the *Adams* court *rejected* the very same argument SkyWest makes here. *Adams v. Fed. Exp. Corp.*, 470 F.Supp. 1356, 1374 (W.D. Tenn. 1979) ("*Adams II*") (granting preliminary injunctive relief to the plaintiffs and rejecting FedEx's contention that a "practice of discharging employees" or a specific intent to violate the RLA was required).

2. Plaintiffs have an affirmative RLA-protected right to wear union insignia in connection with a union organizing campaign absent "special circumstances" not present here. *See, e.g.*, *Pay 'N Save Corp. v. NLRB*, 641 F.2d 697 (9th Cir. 1981). Contrary to SkyWest's contention, this statutory right may not be defeated by a company uniform policy or by an employer's purported concern about "the image projected to the public." *Id*. at 701; *Woonsocket Health Centre*, 245 NLRB 652, 658 (1979). Indeed, the Ninth Circuit has already expressly distinguished the case on which SkyWest principally relies, *NLRB v. Harrah's*, 337 F.2d 177 (9th Cir. 1964).

3. Plaintiffs have an equally well-established RLA right to distribute union literature on non-work time and in non-work areas, such as the general bulletin boards and crew lounges at issue here. *See, e.g.*, *Consolidated Diesel v. NLRB*, 263 F.3d 345, 354 (4th Cir. 2001). Any requirement that employees obtain advance permission to post materials on general bulletin boards or in crew rooms would be unlawful. *McDonnell Douglas Corp.*, 240 NLRB 794, 794 (1979). The primary

1  case SkyWest cites confirms that where, as here, an employer permits non-work related postings, it

2  may not validly discriminate against union related materials.  *Honeywell, Inc.*, 262 NLRB 1402

3  (1982).

4        4.  SkyWest's jurisdictional challenge is flatly inconsistent with controlling Supreme and

5  Ninth Circuit precedent holding that federal courts *have* jurisdiction to address claims under the

6  RLA of employer interference during a union organizing drive, including in cases where, as here,

7  the plaintiff employees are attempting to organize an alternative to an "incumbent" employee group.

8  *See, e.g.*, *Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 543–44  (RLA enacted and amended in

9  part to eliminate company unions); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002);

10  *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1363–64 (9th Cir. 1996); *Burke v. Compania*

11  *Mexicana de Aviacion, S.A.*, 433 F.2d 1031, 1033–34 (9th Cir. 1970).  Further, accepting SkyWest's

12  jurisdictional theory would render the Plaintiffs' rights "illusory," *contra Chicago & N.W. Ry. Co. v.*

13  *United Transp. Union*, 402 U.S. 570, 578 (1971), because the NMB cannot provide effective relief.

14  The NMB has no authority to adjudicate unfair labor practices and does not even investigate claims

15  of employer interference until *after* an election is conducted (at which point the irreparable harm of

16  Defendant's conduct is already done).  The caselaw is clear that the courts have authority to enforce

17  employees' RLA-protected rights in this circumstances.  Finally, neither of the two bases for NMB

18  jurisdiction exists in this case:  No party has "request[ed]" that the NMB conduct an election, *see* 45

19  U.S.C. §2, Ninth.  Under the RLA, it is solely up to the union, not the employer, to decide when to

20  seek an election.  And there is no dispute regarding the identity of SkyWest pilots' representative

21  "designated and authorized in accordance with the requirements of the [RLA]."  ALPA has never

22  contended that it is the pilots' "designated" or "authorized" RLA representative, and SkyWest

23  concedes that SAPA is not an RLA representative either.

24        5.  RLA Section 2, Fourth expressly prohibits the use of carrier funds "in maintaining or

25  assisting or contributing to any labor organization, labor representative, or other agency of collective

26  bargaining."  45 U.S.C. §152, Fourth.  SkyWest concedes that it wholly funds the SkyWest Airlines

27  Pilot Association ("SAPA"), and its relationship with SAPA squarely violates the Act and the

28  Supreme Court's holding in *Texas & N.O.R.*  SkyWest's reliance on *Barthelemy v. ALPA*, 897 F.2d

999 (9th Cir. 1990), to contend that its company union is permitted as a new, "forward-thinking" model of labor relations is misplaced. *All* of the factors relevant to *Barthelemy*'s holding favor a finding of unlawful interference here.

6. Finally, it is clear that SkyWest's interference with Plaintiffs' RLA-protected expressive and associational rights constitutes irreparable harm. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 398 (9th Cir. 1987). This Court therefore has a "duty" to protect Plaintiffs' rights, *id.*, and broad equitable jurisdiction to fashion an appropriate remedy. *See Burke*, 433 F.2d at 1033; *Bhd. of Locomotive Eng'rs v. Missouri-Kan.-Tex. R. Co.*, 363 U.S. 528, 532 (1960).

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    SkyWest's Contradictions and Misrepresentations Regarding SAPA . . . . . . . . . . . . . . . . . . 2

    SkyWest's False Statements Regarding Its Anti-Union Campaign . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.     SkyWest's Illegal Conduct Does Not Determine the "Status Quo," and This
             Court Has Broad Equitable Jurisdiction to Grant the Relief Plaintiffs Seek . . . . . . . 4

    II.    Plaintiffs Have Demonstrated an Overwhelming Likelihood of Success on
             the Merits of Their Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          A.    SkyWest Misrepresents the Holdings in *Texas & N.O.R. Co.* and
                 *Adams* and Misstates the Applicable Legal Standard . . . . . . . . . . . . . . . . . . 6

          B.    Plaintiffs Are More Than Likely to Succeed on the Merits of Their
                 Claims that SkyWest Unlawfully Interfered with Their Expressive
                 and Associational Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

               1.    Defendant's Argument Regarding ALPA Lanyards Flies in the
                    Face of Controlling Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

               2.    SkyWest Offers No Persuasive Factual or Legal Response to
                    Plaintiffs' Argument Regarding Distribution of Union Literature . . 9

          C.    Plaintiffs Are Likely to Succeed on the Merits of Their
                 SAPA-Related Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

               1.    The Court Has Jurisdiction over Plaintiffs' SAPA Claims . . . . . . . 10

                    (a)    Courts Routinely Exercise Jurisdiction over Claims
                        that an Employer Has Violated RLA Section 2, Third
                        and Fourth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                    (b)    The NMB Cannot Grant Plaintiffs Effective Relief,
                        and This Court Therefore Has Jurisdiction to Protect
                        Plaintiffs' Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

                    (c)    SkyWest's Jurisdictional Argument Finds No Support
                        in the Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

               2.    SkyWest's Arguments Regarding the Merits of Plaintiffs'
                    SAPA Claims Fail as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . 20

    III.   Plaintiffs Will Suffer Irreparable Harm If an Injunction Is Not Entered, and
             the Balance of Hardships Tips Strongly in Plaintiffs' Favor . . . . . . . . . . . . . . . . . . 23

A.    Interference with Plaintiffs' RLA-Protected Expressive and
      Associational Rights is *Per Se* Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . 23

B.    SkyWest's Speculative Assertions Do Not Demonstrate Any
      Legally Cognizable Harm  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*AFM Pilots Ass'n v. AFM Corp.*,
 1982 WL 2030 (D. Mass. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

4

*ALPA v. Transam. Airlines, Inc.*,
 817 F.2d 510 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 11

5

6

*Adams v. Federal Express Corp.*,
 470 F.Supp. 1356 (W.D. Tenn. 1979),
 *aff'd*, 654 F.2d 452 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12

7

8

*Adams v. Federal Express Corp.*,
 1975 WL 1143 (W.D. Tenn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

9

*Air Canada v. NMB*,
 478 F.Supp. 615 (S.D.N.Y. 1980),
 *aff'd*, 659 F.2d 1057 (2d Cir.),
 *cert. denied*, 454 U.S. 965 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

10

11

*Air Line Employees Ass'n, Int'l v. Republic Airlines, Inc.*,
 798 F.2d 967 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

12

13

*Air Lines Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*,
 656 F.2d 16 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

14

*Aircraft Mechanics Fraternal Ass'n v. United Airlines, Inc.*,
 406 F.Supp. 492 (N.D. Cal. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15

16

*Am. Train Dispatchers Ass'n v. Denver & R.G.W.R. Co.*,
 614 F.Supp. 543 (D. Colo. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

17

*Anderson v. United States*,
 612 F.2d 1112 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18

19

*Arcamuzi v. Continental Air Lines, Inc.*,
 819 F.2d 935 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

20

*Ass'n of Flight Attendants v. Horizon Air Indus.*,
 280 F.3d 901 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

21

22

*Barthelemy v. ALPA*,
 897 F.2d 999 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

23

*Bhd. of Locomotive Eng'rs v. Missouri-Kan.-Tex. R. Co.*,
 363 U.S. 528 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 23

24

25

*Bresgal v. Brock*,
 843 F.2d 1163 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

26

*Burger King Corp. v. NLRB*,
 725 F.2d 1053 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27

28

*Burke v. Compania Mexicana de Aviacion, S.A.*,
   433 F.2d 1031 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Burns v. Elrod*,
   509 F.2d 1133 (7th Cir. 1975),
   *aff'd* 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*CSX Transp. Inc. v. Marquar*,
   980 F.2d 359 (6th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chicago & N.W. Ry. Co. v. United Transp. Union*,
   402 U.S. 570 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Classic Indus., Inc. v. NLRB*,
   667 F.2d 205 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Consolidated Diesel Co. v. NLRB*,
   263 F.3d 345 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*EEOC v. Howard Univ.*,
   1983 WL 519 (D. D.C. June 14, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Fennessy v. Southwest Airlines*,
   91 F.3d 1359 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Gen. Comm. of Adjustment v. Missouri-Kan.-Tex. R. Co.*,
   320 U.S. 323 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

*Griffin v. Piedmont Aviation, Inc.*,
   384 F.Supp. 1070 (N.D. Ga. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Hess v. Resort Air, Inc.*,
   686 F.Supp. 741 (E.D. Mo. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Honeywell, Inc.*,
   262 NLRB 1402 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Horizon Air Indus. v. NMB*,
   232 F.3d 1126 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 19, 20, 22

*INS v. FLRA*,
   855 F.2d 1454 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Inland Steel Co. v. United States*,
   306 U.S. 153 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Int'l Bhd. of Teamsters v. Texas Int'l Airlines Inc.*,
   717 F.2d 157 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Int'l Flight Attendants v. Cooper*,
   141 F.3d 900 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Int'l Ladies' Garment Workers' Union v. NLRB*,
   366 U.S. 731 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Johnson v. Kay,*
   860 F.2d 529 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Konop v. Hawaiian Airlines, Inc.,*
   302 F.3d 868 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 13, 21, 22

*Lebow v. Am. Trans Air, Inc.,*
   86 F.3d 661 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Lum v. China Airlines Co.,*
   413 F.Supp. 613 (D. Hawaii 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Machinists v. Central Airlines,*
   372 U.S. 682 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Machinists v. Street,*
   367 U.S. 740 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McDonnell Douglas Corp.,*
   240 NLRB 794 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Meijer, Inc. v. NLRB,*
   130 F.3d 1209 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miller v. Norfolk S. R. Co.,*
   183 F.Supp.2d 996 (N.D. Ohio 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*NLRB v. Electro-Voice, Inc.,*
   83 F.3d 1559 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 23

*NLRB v. Essex Wire Corp.,*
   245 F.2d 589 (9th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*NLRB v. Harrah's,*
   337 F.2d 177 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*NLRB v. Lummus Indus.,*
   679 F.2d 229 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*NLRB v. Metro-Truck Body, Inc.,*
   613 F.2d 746 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Pay 'N Save Corp. v. NLRB,*
   641 F.2d 697, 701 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Railway Labor Execs. Ass'n v. NMB,*
   29 F.3d 655 (D.C. Cir. 1994) (en banc),
   *amended* 38 F.3d 1224 (D.C. Cir.),
   *cert. denied*, 514 U.S. 1032 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 17

*Railway Labor Executives' Ass'n v. Wheeling & Lake Erie Ry.,*
   756 F.Supp. 249 (E.D. Va.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Republic Aviation Corp. v. NLRB,*
   324 U.S. 793 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Roscello v. Southwest Airlines Co.*,
    726 F.2d 217 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Scott ex rel. NLRB v. Stephen Dunn & Associates*,
    241 F.3d 652 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 24

*Stanley v. Univ. of S. Cal.*,
    13 F.3d 1313 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stepanischen v. Merchants Despatch Transp. Corp.*,
    722 F.2d 922 (1st Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Switchmen's Union v. NMB*,
    320 U.S. 297 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
    316 F.2d 804 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Texas & N.O.R. Co. v. Bhd. of Railway Clerks*,
    281 U.S. 548 (1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 20

*Texidor v .Ceresa*,
    590 F.2d 357 (1st Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Trans World Airlines, Inc. v. Ind. Fed'n of Flight Attendants*,
    489 U.S. 426 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*,
    1977 WL 1714 (D. Ala. Apr. 26, 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United Transp. Union v. Gateway Western R. Co.*,
    78 F.3d 1208 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United Transp. Union v. United States*,
    987 F.2d 784 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Virginian Ry. v. Sys. Fed'n No. 40*,
    300 U.S. 515 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Woonsocket Health Centre*,
    245 NLRB 652 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**STATUTES**

45 U.S.C.
    §151a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    §152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
    §184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 C.F.R.
    §1206.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    §1206.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 15, 17, 19
    §1206.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    §1206.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

H.R. Rep. No. 110-23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 14

H.R. Rep. No. 1944 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 22

## MISCELLANEOUS

ABA, <u>The Railway Labor Act</u> Ch. 5.III.A. (2d ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Horizon Airlines*, 24 NMB 458 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Northwest Airlines*, 14 NMB 49 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

*Northwest Airlines*, 19 NMB 94 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

NMB Rep. Manual §17.0 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

**INTRODUCTION**

Both SkyWest's opposition and its amended opposition jettison controlling Supreme Court and Ninth Circuit case law in favor of an imagined state of labor law that has never existed in the more than 80 year history of the Railway Labor Act ("RLA" or "Act").  SkyWest ignores binding precedent holding that employees have an affirmative right to wear union insignia in connection with a union organizing campaign – relying instead on a company "uniform policy" that does not supersede Plaintiffs' statutorily protected free speech and organizing rights.  SkyWest similarly ignores controlling case law holding that employees have the right to distribute union literature in crew rooms and on general bulletin boards – again relying on a company solicitation policy that cannot, as a matter of law, defeat Plaintiffs' RLA-protected rights.  And SkyWest ignores controlling case law that employees have a right to be free from discrimination against expressive and associational activity related to union organizing.

SkyWest's contentions regarding the SkyWest Airlines Pilots Association ("SAPA") fare no better.  The company's jurisdictional argument regarding the National Mediation Board ("NMB" or "Board") fails as a matter of law because "[f]ederal courts have jurisdiction to enforce the provisions of 45 U.S.C. §152, Third and Fourth," and because the Ninth Circuit has repeatedly exercised jurisdiction over claims of unlawful employer interference in union organizing campaigns. *ALPA v. Transam. Airlines, Inc.*, 817 F.2d 510, 514 (9th Cir. 1987); *see also, e.g.*, *Burke v. Compania Mexicana de Aviacion, S.A.*, 433 F.2d 1031, 1033–34 (9th Cir. 1970).  The company's efforts to re-characterize the decades old practice of company unionism as a new "forward-thinking" model of labor relations is also unavailing.  Wholly carrier-funded "company unions" remain just as illegal today as when Congress enacted the RLA to prohibit them.  *See* 45 U.S.C. §152, Fourth; *Texas & N.O.R. Co. v. Bhd. of Railway Clerks*, 281 U.S. 548 (1930).  Finally, the issue of irreparable harm was decided in Plaintiffs' favor in *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987) – a case SkyWest never addresses – and the possibility that Plaintiffs and other employees may actually exercise their RLA-protected right to form a union is not and has never been a legally cognizable (let alone "irreparable") harm.

1    SkyWest filed more than 55 pages of opposition briefing in an attempt to confuse what are in

2    fact very simple issues:  (1) Plaintiffs have an RLA-protected right to wear union insignia in

3    connection with their organizing campaign, and SkyWest has admittedly violated that right by

4    prohibiting ALPA lanyards; (2) Plaintiffs have an RLA-protected right to distribute union literature

5    in non-work areas during non-work time, and SkyWest has interfered with that right by removing

6    ALPA material from crew rooms and general bulletin boards; (3) The RLA prohibits the use of

7    carrier funds to "maintain[] or assist[]" any labor organization, 45 U.S.C. §152, Fourth, and

8    SkyWest admittedly pays all of SAPA's expenses; and (4) employer interference with employees'

9    RLA-protected expressive and associational rights constitutes *per se* "irreparable" harm, and this

10    Court has a "duty" to provide relief.  *Arcamuzi*, 819 F.2d at 939.

11                                **FACTUAL BACKGROUND**

12    SkyWest devotes much of its brief to factual contentions that will be addressed during the

13    parties' evidentiary hearing.  Plaintiffs limit their factual discussion to a few of SkyWest's key

14    misrepresentations.

15    ***SkyWest's Contradictions and Misrepresentations Regarding SAPA.***  SkyWest makes

16    several misrepresentations and repeatedly contradicts itself regarding SAPA.  First, SkyWest states

17    in its brief that it "negotiat[es]" with SAPA over employee policies, and that those policies "may not

18    be changed by management without SAPA's approval."  Am. Opp. at 17.  In fact, Plaintiffs will

19    demonstrate during the evidentiary hearing that SkyWest not only has reserved the unilateral right to

20    change such policies, but has repeatedly done so.[1]

21    SkyWest also suggests in its brief – without citing evidence – that SAPA is the pilots'

22    chosen representative, provides them with independent representation, and is an "incumbent" union

23    within the meaning of the RLA.  *See* Am. Opp. at 16–17, 20–21.  At other points, however,

24

25    _____

26    [1]  SkyWest's argument that an injunction protecting its employees' rights would work to
      their detriment because SkyWest would no longer "be bound . . . to honor the agreements negotiated
27    with SAPA," Am. Opp. at 12–13, is disingenuous at best.  SkyWest is not currently bound to its
      agreements with SAPA and, even if it were, nothing about a Court order protecting its employees'
28    free speech rights in any way bars SkyWest from continuing to provide the same – or (hopefully)
      better – terms and conditions of employment.

1    SkyWest concedes that it does *not* consider SAPA to be a "representative" within the meaning of

2    the RLA and that it does *not* treat SAPA as an RLA representative.  For example, SkyWest asserts

3    that ALPA need only demonstrate 35% pilot support in order to call for an NMB election.  *See* Opp.

4    at 5; Am. Opp. at 6.  Under NMB regulations, this 35% requirement applies when employees are

5    currently *unrepresented* (a 50% showing is required if employees are already represented by a

6    union).  29 C.F.R. §1206.2.  At the parties' evidentiary hearing, the evidence will also show that

7    SAPA has both held itself out and functioned as a non RLA-representative organization.

8        Further, SkyWest admits that it retains complete discretion over employee grievances and

9    discipline.  *See* Livingston Decl. ¶10 (management "not obligated" to accept Review Board

10   recommendation).  When employees are represented within the meaning of the RLA, the statute

11   expressly requires the carrier to submit employee grievances to mandatory and binding resolution by

12   a neutral "board of adjustment."  *See* 45 U.S.C. §184; *Machinists v. Central Airlines*, 372 U.S. 682,

13   694–95 (1963).  By admitting that it retains complete discretion over employee grievances, SkyWest

14   admits that it does not treat SAPA as an RLA representative.  SkyWest additionally concedes that it

15   pays all of SAPA's expenses – notwithstanding its attempt to suggest that SAPA operates

16   independently.  *See* Livingston Decl. ¶11.

17       Finally, it is undisputed that SAPA has never been chosen by the pilot group in *any* vote or

18   authorization process.  SAPA has never been certified as the pilots' collective bargaining

19   representative under NMB procedures.  Nor have the SkyWest pilots ever designated or authorized

20   SAPA to represent them as provided for in the RLA.  *See* Livingston Decl. ¶4 (not disputing that

21   pilots never voted or authorized formation of SAPA and admitting that a two-thirds vote would be

22   necessary to dissolve SAPA).

23       SkyWest's various contradictions regarding SAPA demonstrate that the company would like

24   to "have its cake and eat it too."  When it suits SkyWest's argument, the airline contends that its

25   employees are already represented, and that SAPA is entitled to preferential treatment as their

26   "incumbent" union.  *See, e.g.*, Am. Opp. at 19–21.  But when this approach does not suit SkyWest's

27   attempt to evade the Court's jurisdiction, the airline instead contends that its employees are

28   currently *unrepresented* within the meaning of the statute.  *See* Opp. at 5; Am. Opp. at 11.

1    ***SkyWest's False Statements Regarding Its Anti-Union Campaign.***  SkyWest contends that

2    it has never "campaigned" against ALPA because it has never sent any "communications"

3    addressing the SkyWest Pilots ALPA Organizing Committee's ("OC's") campaign.  Am. Opp. at 4.

4    In fact, SkyWest's Vice President of Flight Operations, Brad Holt, sent SkyWest pilots an October

5    5, 2006 letter expressing the company's strong opposition to ALPA, implying that the company's

6    relationship with its employees would suffer if employees authorized ALPA to represent them, and

7    encouraging pilots not to sign ALPA authorization cards.  *See* Decl. of Claire Prestel Ex. 1.

8         Propaganda and speeches, however, are not the only methods to which aggressive employers

9    resort in an anti-union campaign.  As the RLA recognizes, an employer's anti-organizing campaign

10   can be more effective if it takes the form of illegal interference or company unionism.  *See* 45

11   U.S.C. §152, Third and Fourth; *see also, e.g.*, H.R. Rep. No. 110–23, at 22 (2007) (describing

12   devastating effect of anti-union campaigns that take the form, *inter alia*, of "dispos[ing]" of" union

13   literature left in "break rooms" and similar interference).  Here, SkyWest has engaged in an anti-

14   union campaign of the most traditional sort by prohibiting ALPA lanyards, interfering with the

15   distribution of ALPA literature, otherwise intimidating OC supporters, and funding a company-

16   dominated so-called "union."

17
                                            **ARGUMENT**
18
     **I.    SkyWest's Illegal Conduct Does Not Determine the "Status Quo," and This Court Has
19          Broad Equitable Jurisdiction to Grant the Relief Plaintiffs Seek.**

20        SkyWest contends that Plaintiffs seek a "mandatory" injunction because Plaintiffs request

21   "something . . . they . . . [have] never had," Am. Opp. at 7, *i.e.*, the right to exercise their RLA-

22   protected expressive and associational rights.

23        SkyWest's contention fails for the simple reason that an employer's illegal practices do not

24   determine the relevant "status quo" when distinguishing between mandatory and prohibitory relief.

25   The Seventh Circuit explained this principle in the labor context in *NLRB v. Electro-Voice, Inc.*, 83

26   F.3d 1559 (7th Cir. 1996).  In *Electro-Voice*, the defendant employer interfered with its employees'

27   efforts to unionize, and the company's illegal conduct resulted in the union's election defeat.  The

28   National Labor Relations Board ("NLRB") sought a preliminary injunction requiring Electro-Voice

1    to bargain with the union as a remedy for its unfair labor practices.  The district court refused the

2    NLRB's requested relief on the ground that it would alter the status quo (a non-union workforce).

3    The Seventh Circuit reversed, holding that the "status quo which deserves protection . . . is not the

4    illegal status quo which has come into being as a result of the unfair labor practices being litigated."

5    *Id.* at 1575 (internal quotation marks omitted).  Instead, the status quo that deserved protection was

6    "as it existed before the onset of unfair labor practices."  *Id.*

7          A review of Plaintiffs' proposed preliminary injunction also demonstrates that the requested

8    relief is prohibitory, rather than mandatory, because it directs SkyWest to *refrain* from illegal

9    conduct – namely, from interfering with its employees' expressive and associational rights and from

10   discriminating against the OC with respect to certain channels of communication.  Plaintiffs request

11   that SkyWest provide access to the specified channels of communication, but that permissive relief

12   is not the type of "affirmative" conduct that subjects Plaintiffs' motion to a heightened standard of

13   proof.  *See Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988) (order requiring defendant to "open

14   channels of communication to dissenting views" was not subject to a higher standard where, as in

15   this case, it only required the defendant "to do what it should have done earlier").  By comparison,

16   the examples of mandatory injunctions cited by SkyWest include cases where the requested relief

17   would have required the University of California and federal government to promote particular

18   employees and give them raises.  *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994);

19   *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979); *Tanner Motor Livery, Ltd. v. Avis,*

20   *Inc.*, 316 F.2d 804, 809 (9th Cir. 1963).

21         In addition, regardless of whether Plaintiffs' proposed injunction is termed prohibitory or

22   mandatory, the law is clear that harm to expressive and associational rights is *per se* irreparable, and

23   that Courts have jurisdiction to protect those rights with a wide range of equitable remedies.  In

24   *Burns v. Elrod*, 509 F.2d 1133 (7th Cir. 1975), the Seventh Circuit held that plaintiffs' request for

25   an injunction should have been granted – even though plaintiffs' proposed injunction required

26   employee reinstatement, which is arguably "mandatory" in nature.  *Id*. at 1135–36.  The Supreme

27   Court affirmed, emphasizing that "the loss of First Amendment freedoms, for even minimal periods

28

1   of time, unquestionably constitutes irreparable injury." *See* 427 U.S. 347, 373 (1976); *see also*

2   *Arcamuzi*, 819 F.2d at 938–39.

3           Finally, although SkyWest repeatedly attempts to characterize Plaintiffs' requested relief as

4   somehow extraordinary or unprecedented, the law is also clear that the Court is "free to fashion

5   appropriate civil remedies . . . where necessary to ensure the full effectiveness" of the RLA's

6   purpose. *Burke*, 433 F.2d at 1033; *see also CSX Transp. Inc. v. Marquar*, 980 F.2d 359, 367 (6th

7   Cir.1992) (courts have "the power to enforce the RLA with any appropriate remedy"). Indeed, "[i]t

8   is the duty of a court of equity granting injunctive relief" to protect "all . . . whose interests the

9   injunction may affect." *Bhd. of Locomotive Eng'rs v. Missouri-Kan.-Tex. R. Co.,* 363 U.S. 528, 532

10  (1960) (under the RLA, quoting *Inland Steel Co. v. United States*, 306 U.S. 153, 157 (1939)); *see*

11  *also Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) (injunction is not "made over-broad

12  by extending benefit or protection to persons other than prevailing parties in the lawsuit, "even if it

13  is not a class action if such breadth is necessary to give prevailing parties the relief to which they are

14  entitled.").

15  **II.    Plaintiffs Have Demonstrated an Overwhelming Likelihood of Success on the Merits of**

16  **Their Claims.**

        **A.    SkyWest Misrepresents the Holdings in *Texas & N.O.R. Co.* and *Adams* and**

17      **Misstates the Applicable Legal Standard.**

18          SkyWest misrepresents the Supreme Court's in *Texas & N.O.R. Co.* to contend that

19  Plaintiffs must demonstrate SkyWest has "corrupted or overr[idden]" their will. *See* 281 U.S. at

20  568; Am. Opp. at 13. This was *not* the holding in *Texas & N.O.R.*.

21          As an initial matter, the Supreme Court used the "corrupt or override" phrase only when

22  analyzing the meaning of the term "influence" in RLA Section 2, Third. The Court recognized that

23  Section 2, Third also separately prohibits employer "interference," and the Court never stated or

24  even implied that showing a corrupted or overridden will is required to prove unlawful interference.

25  *See* 45 U.S.C. §152, Third  ("neither party shall in any way interfere with . . . the other in its choice

26  of representatives."); *Texas & N.O.R.*, 281 U.S. at 568 (stating only that "interference" is a "well-

27  understood concept[] of the law" without offering definition). Indeed, even with respect to the term

28  "influence," the Supreme Court made clear that proof of a corrupted or overridden will is merely

1   one type of showing that could be sufficient. *Texas & N.O.R.*, 281 U.S. at 568. The Court

2   recognized that "influence" also means "pressure" or the "use of . . . authority" to induce employee

3   action that would detract from the protected right to organize. *Id.* Finally, *Texas & N.O.R.* only

4   considered a claim under RLA Section 2, Third because RLA Section 2, Fourth had yet to be

5   enacted. *See Trans World Airlines, Inc. v. Ind. Fed'n of Flight Attendants*, 489 U.S. 426, 440

6   (1989) (Section 2, Fourth enacted in 1934); *cf. Texas & N.O.R.*, 281 U.S. at 548 (decided in 1930).

7        SkyWest also misrepresents the holding in *Adams v. Federal Express Corp.*, 1975 WL 1143

8   (W.D. Tenn.) ("*Adams I*"), to suggest that Plaintiffs must demonstrate a "practice of discharging

9   employees" or a specific intent "to violate the RLA." *See* Am. Opp. at 13. Nothing in *Adams I*

10  supports this view, as the court merely noted that the defendant had not engaged in this type of

11  conduct without suggesting that such proof was required. In fact, the court held in *Adams I* that the

12  plaintiffs *had* demonstrated a possibility of success on the merits of their RLA claims,

13  notwithstanding the court's conclusion that the company had not engaged in a "practice" of

14  discharging employees or acted with a specific intent to violate the statute. *Id.* at *2.

15       The court then *expressly rejected* the very same argument SkyWest makes now only a few

16  years later when it granted permanent injunctive relief to the plaintiffs in the *Adams* case. In

17  opposition to plaintiffs' motion for permanent injunctive relief, FedEx argued to the court that

18  granting an injunction would be inconsistent with its earlier findings that the company had not

19  engaged in a "practice of discharging employees" and had not acted in a "conscious concerted

20  attempt" to violate the statute. *See Adams v. Federal Express Corp.*, 470 F.Supp. 1356, 1374 (W.D.

21  Tenn. 1979) ("*Adams II*"), *aff'd*, 654 F.2d 452 (6th Cir. 1981). The court rejected this mis-reading

22  of its earlier decision, holding that FedEx had violated the Act, and that neither a "practice of

23  discharging employees" nor a specific intent to violate the statute was required to demonstrate

24  unlawful conduct. *Id.* Further, the *Adams II* court specifically held that an employer prohibition

25  against union insignia violates the statute. *Id.* at 1362–63; *compare* Compl. ¶¶26-29.

26

27

28

**B.    Plaintiffs Are More Than Likely to Succeed on the Merits of Their Claims that SkyWest Unlawfully Interfered with Their Expressive and Associational Rights.**

**1.    Defendant's Argument Regarding ALPA Lanyards Flies in the Face of Controlling Precedent.**

As Plaintiffs explained in their opening brief, RLA Section 2, Third and Fourth protects their right to express support for the OC's campaign by wearing union insignia. *See* Mot. at 12–13. Defendant's counter-argument that SkyWest pilots have no right to wear ALPA lanyards flies in the face of binding Ninth Circuit case law.[2]

In *Pay 'N Save Corp. v. NLRB*, 641 F.2d 697 (9th Cir. 1981), the Ninth Circuit held that absent "special considerations," an employer may not prohibit employees from wearing union insignia in connection with protected activity, such as a union organizing campaign. 641 F.2d at 700-01.  Indeed, in *Pay 'N Save,* the Ninth Circuit *rejected* an employer's argument that "concern about the image projected to the public" justified its prohibition against union insignia where, as here, the insignia-wearing was "part of a[] concerted campaign to organize the employees." *Id*. at 701; *see also Woonsocket Health Centre,* 245 NLRB 652, 658 (1979) ("mere fact that an employer has a dress code . . . is not a special circumstance which warrants depriving employees of [the] right" to "wear[] union insignia").

In so holding, the Ninth Circuit in *Pay 'N Save* expressly distinguished *NLRB v. Harrah's*, 337 F.2d 177 (9th Cir. 1964), on which Defendant relies.  Am. Opp. at 23.  The *Harrah's* court found the button-wearing unprotected *because* it was not linked to any "purpose protected by the act." *Harrah's*, 337 F.2d at 179.  In *Harrah's*, unlike *Pay 'N Save* and this case, "[t]here was no attempt to organize the employees." *Id.*  And, as the *Pay 'N Save* court explained, because the

---

[2]  NLRA precedent is applicable where, as here, employees seek to engage in expressive organizing activity. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 882-83 & n.10 (9th Cir. 2002).  Protections for union insignia derive from the NLRA's general rights to organize and to engage in union activity, and not the specific statutory phrase "other concerted activities" that appears exclusively in the NLRA.  *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 802 n.7, 803 (1945) ("the right of employees to wear union insignia at work has long been recognized as a reasonable and legitimate form of union activity" and "prohibitions against the wearing of insignia must fall as interferences with union organization").  Protections for the right to wear union insignia are thus equally applicable to the RLA, which similarly protects the rights to organize and to engage in union activity free from employer interference.  45 U.S.C. §152, Third and Fourth.

1    button-wearing in *Harrah's* was itself unprotected (because unconnected to organizing or other

2    protected activity), the court's observation about a uniform policy constituting a "special

3    consideration" was pure "dictum, unnecessary to the decision of the case." *Pay 'N Save*, 641 F.2d at

4    701. Defendant's uniform policy and purported effort to maintain its public image, Amended Opp.

5    at 23, do not constitute "special considerations" warranting prohibition of ALPA lanyards as part of

6    the organizing campaign. *Pay 'N Save*, 641 F.2d at 701.[3]

7        In any event, SkyWest does not dispute that discriminatory enforcement of a uniform policy

8    is unlawful. *See id.* (disparate application of rule against wearing of political or controversial

9    buttons unlawful); Am. Opp. at 23. Instead, it ascribes the existence of non-ALPA, non-SkyWest

10   lanyards to occasional "lapses" in enforcement. *Id.* at 24. This argument is factually and legally

11   wanting. As the evidence at the hearing will show, Defendant consistently prohibits ALPA

12   lanyards, while permitting other non-SkyWest lanyards. But even if Defendant's discriminatory

13   conduct were only occasional, it would still be unlawful. In *NLRB v. Essex Wire Corp.*, 245 F.2d

14   589 (9th Cir. 1957), a case involving discriminatory prohibition of union insignia, the Ninth Circuit

15   rejected an employer's argument that its inconsistent enforcement was lawful because "isolated and

16   sporadic." *Id.* at 593. The conduct here, as in *Essex*, involves "positive and purposeful action by

17   management in the form of a specific and direct order or demand." *Id.* at 594; *see, e.g.,* Boehm

18   Decl. ISO TRO ¶¶2–9 (Doc. No. 6); Shrier Decl. ISO TRO ¶¶6–10 (Doc. No. 7).

19

20

21

22        [3] Defendant's reliance on *Burger King Corp. v. NLRB*, 725 F.2d 1053, 1055 (6th Cir. 1984),
23   is similarly misplaced. Am. Opp. at 23. Even in the Sixth Circuit, the vitality of *Burger King* is
     seriously in doubt. *Meijer, Inc. v. NLRB*, 130 F.3d 1209, 1215-16 (6th Cir. 1997). In any event,
24   Sixth Circuit case law cannot trump the Ninth Circuit's clear rejection of the "public image"
     rationale in *Pay 'N Save*. Furthermore, as the facts at trial will show, SkyWest does not implement
25   its uniform policy in a non-discriminatory fashion. Defendant's reliance on *INS v. FLRA,* 855 F.2d
     1454 (9th Cir. 1988), is also unavailing. The Ninth Circuit found no protected right to wear insignia
26   while in uniform in that case, reasoning that employees did not "enjoy greater rights" under the
     Federal Service Labor-Management Relations Act than the NLRA with respect to union insignia.
27   *Id.* at 1461. Like *Harrah's*, but unlike this case, the insignia-wearing in *INS v. FLRA* was
28   *unconnected* to any organizing effort or other statutorily protected activity. *Id.* at 1457.

1      **2.    SkyWest Offers No Persuasive Factual or Legal Response to Plaintiffs'**
       **Argument Regarding Distribution of Union Literature.**

2      SkyWest's defense to its interference with Plaintiffs' distribution of union literature through

3      bulletin boards and other locations in crew rooms is also legally and factually meritless.

4            It is well-established that employers may not prohibit employees from distributing union

5      literature on non-work time and in non-work areas, such as the general bulletin boards and crew

6      lounges at issue here. *See, e.g., Consolidated Diesel Co. v. NLRB*, 263 F.3d 345, 354 (4th Cir.

7      2001); *NLRB v. Lummus Indus.*, 679 F.2d 229, 233 (11th Cir. 1982). SkyWest's own written rules

8      acknowledge as much: "Employees may distribute literature or products" in "cafeterias,

9      lunch/break/*crew rooms*, restrooms, and parking lots" "during their scheduled days and shifts but

10     only during non-work time." Decl. of Klen Brooks Ex. B, ¶6D (emphasis added) (Doc. No. 63).

11           Any requirement that employees obtain advance permission to post union materials on the

12     general bulletin boards or otherwise distribute such materials in crew lounges would be unlawful.

13     *McDonnell Douglas Corp.*, 240 NLRB 794, 794 (1979) (unlawful to "forbid . . . employees, by rule

14     or otherwise, to . . .distribut[e] literature on company property in non-work areas, during

15     non-working time, and within a reasonable time before or after their shifts, without management's

16     permission"); *but see* Decl. of Roy Glassey ¶2 (to "post[] non-company materials on bulletin

17     boards" must "first obtain[] Company approval") (Doc. No. 62).

18           Defendant relies on *Honeywell, Inc.*, 262 NLRB 1402 (1982), to argue that employees do not

19     have an absolute right to use a company bulletin board. That case, however, did not discuss the

20     location of the bulletin boards, *i.e.*, whether they were in non-work locations. Thus, it was not a

21     blanket curtailment of the broad right to distribute union literature in non-work areas during non-

22     work times. In any event, *Honeywell* made clear that where, as here, "an employer permits . . . *any*

23     nonwork related matters, it may not 'validly discriminate against notices of union meetings which

24     employees also posted.' *Id.* at 1402 (emphasis added) (employer's prohibition of union notices

25     unlawful where personal notices permitted). Defendant's "occasional lapses" in enforcement

26     argument is no defense. As *Honeywell* makes clear, Defendant's subjective "motivation" is

27     "irrelevant"; as long as it permits "*any* nonwork related matters," it may not discriminate against

28     union literature. *Id.* (emphasis added).

**C.    Plaintiffs Are Likely to Succeed on the Merits of Their SAPA-Related Claims.**

**1.    The Court Has Jurisdiction over Plaintiffs' SAPA Claims.**

In its amended opposition brief SkyWest relies primarily on a fall-back jurisdictional argument regarding the role of the NMB.  Contrary to SkyWest's jurisdictional theory, the Ninth Circuit has repeatedly held that it has jurisdiction to adjudicate employees' claims of unlawful employer interference during an organizing campaign.  *See, e.g.*, *Burke*, 433 F.2d at 1033. SkyWest's alternative jurisdictional theory would leave Plaintiffs without a remedy and render their statutorily protected rights "illusory" – in direct contravention of controlling Supreme Court precedent.  *Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 578 (1971).  Further, neither of the bases for NMB jurisdiction exists in this case (unlike in each of the inapposite cases SkyWest cites in its brief).  *See* 45 U.S.C. §152, Ninth.

**(a)    Courts Routinely Exercise Jurisdiction over Claims that an Employer Has Violated RLA Section 2, Third and Fourth.**

Plaintiffs allege that SkyWest has violated their expressive and associational rights under RLA Section 2, Third and Fourth, by funding and providing discriminatory assistance to SAPA, a company union.  *See* Compl. ¶¶27-39; *see also Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 543–44  (1937) (RLA enacted and amended in part to eliminate company unions).

Under controlling Ninth Circuit case law, "[f]ederal courts have jurisdiction to enforce the provisions of 45 U.S.C. §152, Third and Fourth, prohibiting interference with effective representation and organization."  *See Transam. Airlines*, 817 F.2d at 514 (citing cases).  The leading RLA treatise confirms: "[T]he courts generally have exercised jurisdiction over actions brought against carriers for interference with employees' rights under RLA Sections 2, Third and Fourth, during union organizing drives."  ABA, The Railway Labor Act Ch. 5.III.A., at 257 (2d ed. 2005) (Prestel Decl. Ex. 2).  "[C]ourts have held or implied that . . . the NMB's powers under Section 2, Ninth, to determine the identity of the employees' representative . . . [is not] the exclusive means for protecting employees' rights under Section 2, Third and Fourth."  *Id*. (citing cases).

Courts, including the Supreme Court and the Ninth Circuit, have repeatedly exercised jurisdiction over employees' claims that their employers violated RLA Section 2, Third and Fourth

1  during union organizing campaigns.  In *Burke*, the Ninth Circuit held that it had jurisdiction over the

2  plaintiff's claim that his employer violated RLA Section 2, Fourth by firing him for his participation

3  in a pre-certification organizing effort.  *See* 433 F.2d at 1032–34 (reversing district court's dismissal

4  for lack of jurisdiction).  *Burke* emphasized that judicial enforcement of RLA rights is particularly

5  important during an organizing campaign, before a union that can protect employees' rights is firmly

6  in place.  *Id*. at 1033.  "To hold . . . that [plaintiff] may not bring suit for a violation of section 2

7  (Fourth) would leave a gap in the enforcement of that section which would blunt the effectiveness of

8  the congressional purpose."  *Id*.  "So long as a carrier's interference with its employees' right to

9  freely organize were swift and forceful enough to prevent organization of a union altogether or to

10  coerce employees into joining a company dominated union, the carrier would have acted with

11  impunity."  *Id*.  (footnote omitted); *see also Virginian Railway*, 300 U.S. at 543–44 (affirming

12  injunction prohibiting employer from violating RLA Section 2, Third and Fourth, by "interfer[ing] .

13  . . with the free choice of representatives by its employees" and "fostering . . . [a] company union").[4]

14  *Accord Adams II*, 470 F.Supp. at 1361–63, 1367–68, 1372 (court had jurisdiction over the

15  plaintiffs' claims that FedEx unlawfully interfered with RLA-protected rights during an organizing

16  campaign by discharging one employee for wearing union insignia and by transferring another

17  employee because of his union activity), *aff'd*, 654 F.2d 452 (6th Cir. 1981); *Adams v. Federal Exp.*

18  *Corp.*, 547 F.2d 319, 321 (6th Cir. 1976); *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661 (7th Cir.

19  1996); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 220 n.2 (5th Cir. 1984); *Stepanischen v.*

20  *Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir.1983); *Union of Prof'l Airmen v. Alaska*

21

22

23

24      [4] SkyWest contends that *Virginian Railway* is distinguishable because the employer's illegal

25  activities in that case followed an NMB certification.  But there is no support in *Virginian Railway*
   for limiting its holding or analysis to the post-certification context.  To the contrary, the Ninth

26  Circuit has squarely held that judicial enforcement of employees' RLA rights is particularly
   appropriate in *pre-certification* cases, when organizing drives are in their initial stages and no

27  certified union is yet available to protect its employees' rights.  *See, e.g.*, *Ass'n of Flight Attendants*

28  *v. Horizon Air Indus.*, 280 F.3d 901, 905–06 (9th Cir. 2002) ("judicial intervention" more
   appropriate in pre-certification cases than in post-certification cases).

1    *Aeronautical Indus., Inc.*, 1977 WL 1714, *2 (D. Ala. Apr. 26, 1977).[5]

2         Indeed, courts have also repeatedly asserted jurisdiction over cases arising out of organizing

3    drives where, as here, the company claims that its employees are already represented and the

4    company interferes with employees' efforts to obtain alternative representation.  In *Fennessy v.*

5    *Southwest Airlines*, 91 F.3d 1359, 1363–64 (9th Cir. 1996), the Ninth Circuit exercised jurisdiction

6    over an employee's claim that Southwest interfered with his right under RLA Section 2, Fourth to

7    engage in organizing activities intended to replace the airline employees' existing union with the

8    Teamsters.  *Id.* at 1361–64 (citing cases).  In *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th

9    Cir. 2002), the Ninth Circuit held that it had subject matter jurisdiction over plaintiff's claim that

10   Hawaiian Airlines violated his rights under RLA Section 2, Third and Fourth when it interfered with

11   his attempts to organize a rival union.  *Id.* at 881–86.  In neither of these cases did the existence of

12   the organizing drive or an incumbent representative deprive the federal court of jurisdiction over

13   employees' claims of interference.

14        Plaintiffs allege that SkyWest has violated RLA Section 2, Third and Fourth, by interfering

15   with its employees' organizing campaign.  *See* Compl. ¶¶42-47.  Because Plaintiffs' allegations are

16   materially indistinguishable from the unlawful interference claims at issue in *Virginian Railway*,

17   *Burke*, *Fennessy*, *Konop* and similar cases, this Court has jurisdiction and has a "duty" to enforce

18   Plaintiffs' RLA-protected rights.  *See Arcamuzi*, 819 F.2d at 939.[6]

19

20

21

22       [5]  *See also AFM Pilots Ass'n v. AFM Corp.*, 1982 WL 2030, *1 (D. Mass. 1982); *Hess v.*

23   *Resort Air, Inc.*, 686 F.Supp. 741 (E.D. Mo. 1988); *Lum v. China Airlines Co.*, 413 F.Supp. 613 (D.

24   Hawaii 1976); *Griffin v. Piedmont Aviation, Inc.*, 384 F.Supp. 1070 (N.D. Ga. 1974).

25       [6]  SkyWest claims that *Konop* is distinguishable.  Am. Opp. at 12 n.3.  But its own

26   description of the case shows it is directly controlling.  *Konop* held that the district court had
     jurisdiction over plaintiff's claim that Hawaiian Airlines violated RLA Section 2, Fourth by
     providing unlawful assistance to its employees' incumbent representative and by interfering with

27   plaintiff's efforts to organize a new union.  Similarly, Plaintiffs in this case allege that SkyWest

28   violated Section 2, Fourth, by providing unlawful assistance to SAPA and by interfering with their
     efforts to organize a new union.

1
2

**(b)    The NMB Cannot Grant Plaintiffs Effective Relief, and This Court Therefore Has Jurisdiction to Protect Plaintiffs' Rights.**

3    Courts must enforce employees' RLA-protected rights when the failure to do so would

4    render those rights "illusory." *Chicago & N.W. Ry.*, 402 U.S. at 578.  But SkyWest's erroneous

5    jurisdictional argument – if accepted – would lead to exactly that prohibited result. As we explain,

6    SkyWest's jurisdictional theory would permit the airline to violate Plaintiffs' rights "with

7    impunity," *Burke*, 433 F.2d at 1033, would render Plaintiffs' rights "illusory," *Chicago & N.W. Ry.*,

8    402 U.S. at 578, and would frustrate Congress' purposes and the entire statutory scheme – all in

9    violation of the Ninth Circuit's and Supreme Court's teachings regarding the importance of

10    enforcing employees' RLA rights.

11    Congress enacted the RLA to protect employees' right to conduct their own independent

12    organizing campaigns, free from carrier interference. *See, e.g.*, 45 U.S.C. §151a (RLA intended to

13    provide "for the complete independence . . . of employees" regarding organization). Congress

14    added Section 2, Ninth to the statute in 1934 in order to strengthen the Act's protections for

15    independent union organizing – not to weaken them. *Virginian Ry.*, 300 U.S. at 543–54; *Machinists*

16    *v. Street*, 367 U.S. 740, 759 (1961) ("primary purpose of the major revisions made in 1934 was to

17    strengthen the position of the labor organizations vis-a -vis the carriers"); *Gen. Comm. of*

18    *Adjustment v. Missouri-Kan.-Tex. R. Co.*, 320 U.S. 323, 330 (1943) ("[f]urther protection was

19    accorded" employees' protected rights by the 1934 amendments).  Thus, Section 2, Ninth leaves it

20    to employees and their representatives – not to carriers or the NMB – to determine when the

21    organizing campaign has reached the point where an election is appropriate. *See* Section 2, Ninth;

22    *Railway Labor Execs. Ass'n v. NMB*, 29 F.3d 655, 658 (D.C. Cir. 1994) (en banc), *amended* 38

23    F.3d 1224 (D.C. Cir.), *cert. denied*, 514 U.S. 1032 (1995) (only employee representatives may call

24    for NMB election; carrier may not invoke Board's procedures, nor may NMB invoke its own

25    jurisdiction absent an employee or union request).

26    This discretion is critically important to independent union organizing because an employee

27    committee with only 35% support (the minimum required for NMB jurisdiction when employees are

28    currently unrepresented) would be highly unlikely to prevail in an NMB election.  Under the RLA, a

1    majority of employees must vote for the election to be valid, and a majority of those voting must

2    support the union.  *See* 29 C.F.R. §1206.4(b); *id.* §1206.1; *see also* 45 U.S.C. §152, Fourth

3    ("majority . . . shall have the right to determine" representatives).  Because many employees

4    opposed to unionization are unlikely to vote, this means that union organizers must gather absolute

5    majority support before an election becomes worthwhile.  Moreover, employers' anti-union

6    campaigns routinely reduce support for unionization in the period before an election.  *See* H.R.

7    Rep. 110–23, at 20–23 (explaining that "many employers insist" on elections "because they are a

8    tool for killing an organizing drive"); *see also, e.g.*, *Scott ex rel. NLRB v. Stephen Dunn &*

9    *Associates*, 241 F.3d 652, 668 (9th Cir. 2001).

10         Under SkyWest's jurisdictional theory, however, employees are deprived of the control over

11   their organizing campaigns that the RLA was intended to protect.  According to SkyWest, a union

12   that reaches 35% support may either (1) immediately invoke the NMB's procedures and call for an

13   election (which it will surely lose, for the reasons given above) or (2) continue to try to build

14   support among employees without any of the protections afforded by the RLA (because, under

15   SkyWest's theory, the courts lose jurisdiction to enforce those rights as soon as a union's support

16   reaches 35%).  *See, e.g.*, Am. Opp. at 10.  In other words, SkyWest's approach would force any

17   union with 35% to invoke NMB jurisdiction in an attempt merely to retain the RLA's protections –

18   thereby permitting an employer's illegal conduct effectively to determine when a union invokes the

19   NMB's jurisdiction, thereby depriving employees and their representatives of the independent

20   control and truly free choice the RLA was intended to ensure.

21         There is no support for this approach in the NMB's 35% regulation, which nowhere purports

22   to *require* that an employee organization invoke the Board's election procedures when it meets this

23   minimum support requirement.  *See* 29 C.F.R. §1206.2; 45 U.S.C. §152, Ninth (leaving invocation

24   of Board's process to union or employee "request").  Further, SkyWest's approach leads inevitably

25   to the result that the Ninth Circuit warned against in *Burke*.  "So long as [SkyWest's] interference

26   with its employees' right to freely organize were swift and forceful enough," the company could

27   prevent the union from ever achieving more-than-35% support, as is necessary to invoke the NMB's

28   election process with any hope of success.  *Burke*, 433 F.2d at 1033. And once an organizing

1  campaign reaches the NMB's 35% "floor," courts would instantly lose jurisdiction to protect

2  employees' RLA-protected expressive and associational rights, leaving employers to "act[] with

3  impunity." *Id.*

4      Indeed, even if a union with 35% support *did* invoke the NMB's election procedures, it

5  would still be left without any real ability to enforce employees' rights under RLA Section 2, Third

6  and Fourth.  Unlike the NLRB, the NMB does not have any adjudicatory authority to decide unfair

7  labor practices.  *See Horizon Air Indus. v. NMB*, 232 F.3d 1126, 1133 (9th Cir. 2000).  The NMB

8  may supervise elections, but the Board is not permitted even to investigate a union's claims of

9  improper interference until *after* the election is conducted (absent undefined "extraordinary

10 circumstances").  *See* NMB Rep. Manual §17.0, at 24 (2005) (Prestel Decl. Ex. 3).  And, even then,

11 the NMB's investigation may take months, and the only remedy the NMB can provide is a re-run

12 election – long after the "irreparable" harm has already been done.  *Arcamuzi*, 819 F.2d at 938;

13 *Scott*, 241 F.3d at 668 ("new election will leave the union disadvantaged by the same unfair labor

14 practices which caused it to lose the first election" and "the union's position . . . may have

15 deteriorated to such a degree that effective representation is no longer possible.").[7]

16     Given the limited scope of the NMB's investigatory and remedial authority, accepting

17 SkyWest's jurisdictional theory would effectively render Plaintiffs' RLA-protected rights "illusory"

18 – contrary to the holdings in *Chicago & Northwest Railway*, *Burke*, and their progeny.

19           **(c)    SkyWest's Jurisdictional Argument Finds No Support in the Statute.**

20     SkyWest erroneously relies on RLA Section 2, Ninth to argue that the NMB has exclusive

21 jurisdiction over Plaintiffs' unlawful interference claims.  Section 2, Ninth provides, *inter alia*: "If

22 any dispute shall arise among a carrier's employees as to who are the representatives of such

23 employees designated and authorized in accordance with the requirements of this chapter, it shall be

24 the duty of the Mediation Board, upon request of either party to the dispute, to investigate such

25 dispute . . . ."  45 U.S.C. §152, Ninth.

26

27     [7]  Further, once a union is certified following an election, no challenger may file a request for

28 NMB intervention for two years.  If less than a majority of employees vote, a new request is barred for one year.  29 C.F.R. §1206.4.

1    Although SkyWest asserts that this case involves a "representational dispute" within the

2  meaning of Section 2, Ninth, SkyWest never defines "representational dispute," never explains how

3  this case qualifies, and never demonstrates that the requirements for NMB jurisdiction are met.  In

4  fact, neither of the bases for NMB jurisdiction exists here.

5        ***First basis for NMB jurisdiction: an employee request for an election.***  RLA Section 2,

6  Ninth states that the NMB shall exercise jurisdiction "upon request of either party to the dispute."

7  45 U.S.C. §152, Ninth.  Only employee representatives are permitted to make a request for an

8  election under this Section.  Carriers are not permitted to invoke the Board's processes.  *Railway*

9  *Labor Execs.*, 29 F.3d at 658.  Nor is the NMB itself permitted to assert jurisdiction without an

10  employee or union request.  *Id*.

11    Once an employee or employee representative requests NMB intervention pursuant to

12  Section 2, Ninth, the Board's jurisdiction is exclusive in the sense that courts may not step in to

13  provide relief that would effectively preempt an ongoing NMB proceeding or reverse a Board

14  decision.  *See id*. at 659.  But "the Board's authority under Section 2, Ninth is 'exclusive' only '*if*

15  the present dispute falls within §2, Ninth,'" *and* "[t]he duty of the [NMB] to investigate [a

16  representation dispute] does not arise except upon request of either party, *i.e.*, employees."  *Railway*

17  *Labor Execs.*, 29 F.3d at 659 (quoting *Missouri-Kan.-Tex. R.R.*, 320 U.S. at 336).

18    Here, it is undisputed that *neither* ALPA *nor* SAPA has invoked the Board's jurisdiction by

19  submitting a request under Section 2, Ninth.  Accordingly, this ground for asserting NMB

20  jurisdiction is unavailable.[8]

21  _____

22    [8] Although SkyWest asserts that Plaintiffs *must* invoke the NMB's processes because they
have gathered authorization cards from 35% of SkyWest pilots, the 35% figure on which SkyWest

23  relies is contained in an NMB regulation that merely sets a floor for the minimum showing of
support needed to file a "request" under Section 2, Ninth.  *See* 29 C.F.R. §1206.2.  This floor is

24  intended to preserve the NMB's resources by reducing the risk that the Board will invest time and
money in elections with little employee support.  *NLRB v. Metro-Truck Body, Inc.*, 613 F.2d 746,

25  749–50 (9th Cir. 1979) (describing NLRB's 30% requirement).  As discussed above, nothing in the
NMB's regulation purports to *require* employees or unions to invoke the Board's jurisdiction at the

26  35% level.  *See* 29 C.F.R. §1206.2.

27    Nor could the NMB impose this requirement, given the statute's provision leaving this

28  decision to employees or their representatives and case law holding that (1) the minimum support
requirement is "not . . . jurisdictional" and (2) the NMB cannot invoke its own jurisdiction.  *See*

1    ***Second basis for NMB jurisdiction: a dispute over representatives "designated and***

2    ***authorized in accordance with the requirements of this chapter."***  RLA Section 2, Ninth also

3    requires that there be a dispute regarding the "representative . . . designated and authorized in

4    accordance with the requirements of this chapter."  45 U.S.C. §152, Ninth.  A representative

5    "designated" or "authorized in accordance with the requirements of" the RLA is a representative

6    "determined" by a "majority" of the relevant bargaining unit.  *See* 45 U.S.C. §152, Fourth.

7            Once a dispute is brought to the NMB regarding the identity of the employees' RLA

8    "designated" and "authorized" representative, the NMB's jurisdiction is exclusive in the "narrow"

9    sense that only the NMB may actually conduct an election and certify a bargaining representative.

10   *See Railway Labor Execs.*, 29 F.3d at 659 ("the Board's role under Section 2, Ninth is very

11   narrow"); *see also* H.R. Rep. No. 1944, at 2 (Section 2, Ninth added to the statute to provide

12   "[m]achinery . . . for the taking of a secret ballot" by the NMB) (Prestel Decl. Ex. 4).  Courts may

13   not grant relief that certifies a particular union as employees' RLA representative, but there is no

14   evidence in the legislative history that Section 2, Ninth was intended otherwise to limit courts'

15   jurisdiction.  *See Air Lines Employees*, 798 F.2d at 968; H.R. Rep. No. 1944, at 2 ("The bill does

16   not introduce any new principles into the existing Railway Labor Act.").

17           Here, SkyWest has failed to make *any* showing that there is a dispute regarding the identity

18   of the pilots' RLA "designated and authorized" representative.  Plaintiffs have never contended that

19   ALPA is the SkyWest pilots' RLA representative, and SAPA clearly is not a representative

20   "designated" or "authorized" within the meaning of the RLA.  *See* discussion *supra* pp. 2-3.

21   Moreover, ALPA has not asked the Court for any relief that would interfere with the NMB's

22   "narrow" role.  *Railway Labor Execs.*, 29 F.3d at 659.  None of ALPA's proposed relief would

23   require the Court to conduct an election or to count authorization cards.  *But cf.* Amend. Opp. at 11

24   (asking Court to find that ALPA has gathered cards from 35% of employees, an irrelevant matter

25   ─────────────────

26   *Metro-Truck*, 613 F.2d at 749–50; *Railway Labor Execs.*, 29 F.3d at 658.  Moreover, SkyWest
     essentially asks this Court to *find* that Plaintiffs have gathered 35% support, but that finding – unlike
27   Plaintiffs' claims under RLA Section 2  – *is* within the NMB's exclusive jurisdiction.  *See Air
     Canada v. NMB*, 478 F.Supp. 615, 618 (S.D.N.Y. 1980), *aff'd*, 659 F.2d 1057 (2d Cir.), *cert.*
28   *denied*, 454 U.S. 965 (1981).

1  over which the NMB has exclusive jurisdiction).  Nor has ALPA asked the Court to designate it as

2  the pilots' RLA representative or to order SkyWest to bargain with it.

3  **The cases cited by SkyWest are inapposite.**  Unlike in this case, where neither of the two

4  statutory bases for NMB jurisdiction exists, every single case cited by SkyWest involves one of the

5  traditional grounds for NMB jurisdiction.

6  In several of SkyWest's cases, a party had already invoked the Board's certification

7  procedures, and the court could not grant the requested relief without interfering with the Board's

8  ongoing investigation or reversing a Board decision.  *See, e.g.*, *Switchmen's Union v. NMB*, 320

9  U.S. 297 (1943) (court did not have jurisdiction to overturn NMB's certification of bargaining

10 representative; affirming the holdings in *Texas & N.O.R.* and *Virginian Railway* that Section 2,

11 Third and Fourth claims are, by contrast, within the courts' jurisdiction); *Railway Labor Execs.*, 29

12 F.3d at 661 (*Switchmen's* merely held that actual "certification of representatives" is an NMB

13 function).[9]

14 In other cases, the relief requested would have required the courts to conduct an election or

15 to designate an RLA representative – acts properly left to the Board.  *See Missouri-Kan.-Tex. R.*,

16

17     [9] *See also Horizon Air Indus. v. NMB*, 232 F.3d 1126, 1131 (9th Cir. 2000) (employer sought
18  to overturn NMB finding); *Int'l Bhd. of Teamsters v. Texas Int'l Airlines Inc.*, 717 F.2d 157, 160
    (5th Cir. 1983) (union invoked NMB jurisdiction); *Int'l Flight Attendants v. Cooper*, 141 F.3d 900,
19  901–03 (8th Cir. 1998) (relief would effectively overturn NMB's representation determination);
    *Texidor v .Ceresa*, 590 F.2d 357 (1st Cir. 1978) (same); *Railway Labor Executives' Ass'n v.
20  Wheeling & Lake Erie Ry.*, 756 F.Supp. 249, 252 n.9 (E.D. Va.1991) (party had already invoked
    NMB procedures and court could not review those NMB proceedings); *Am. Train Dispatchers
21  Ass'n v. Denver & R.G.W.R. Co.*, 614 F.Supp. 543, 545 (D. Colo. 1985) (simultaneously pending
    NMB proceedings); *Aircraft Mechanics Fraternal Ass'n v. United Airlines, Inc.*, 406 F.Supp. 492
22  (N.D. Cal. 1976) (party had already invoked NMB processes).
23      Although SkyWest relies heavily on the *Aircraft Mechanics* case, *Aircraft Mechanics* is
    distinguishable because in that case – unlike here – a party had already invoked the NMB's
24  jurisdiction.  *See* 406 F.Supp. at 495.  Much of the analysis in *Aircraft Mechanics* actually supports
    jurisdiction in this case.  Judge Conti recognized that courts do have jurisdiction over claims of
25  "company unionism," and that they may intervene when an employer's unlawful interference could
    "preclude any union . . . from gaining the requisite quantum of support."  *Id*. at 501–02, 509.  To the
26  extent Judge Conti suggested that a union with 35% support *must* invoke the Board's jurisdiction,
    that portion of the *Airline Mechanics* case is dicta, finds no support in the relevant regulation, and is
27  inconsistent with Section 2, Ninth, which leaves the decision to invoke the NMB's jurisdiction to
28  the employees' or union's choice.  *See* 29 C.F.R. §1206.2; 45 U.S.C. §152, Ninth; *supra* n.8.

1  320 U.S. at 326, 329 (court did not have jurisdiction to "declare[] [plaintiffs] to be the sole

2  representative" of railroad's employees; but affirming that Section 2, Fourth is "enforcible in an

3  appropriate suit"); *Texas Int'l Airlines Inc.*, 717 F.2d at 160–61 (court could not grant interim relief

4  that would effectively "determin[e] . . . employee representation").[10]

5

6      **2.    SkyWest's Arguments Regarding the Merits of Plaintiffs' SAPA Claims
           Fail as a Matter of Law.**

7

8      SkyWest offers both factual and legal contentions in response to Plaintiffs' SAPA-related

9  claims.  Most of SkyWest's factual assertions regarding SAPA are incorrect or misleadingly

10 incomplete, as explained *supra* pp. 2-3 and as we will demonstrate during the June 7 evidentiary

11 hearing.  The rest of SkyWest's factual contentions are either irrelevant or actually support

12 Plaintiffs' claims.  *See, e.g.*, Livingston Decl. ¶11 (SkyWest pays SAPA's expenses).

13     SkyWest's legal theories fare no better.  RLA Section 2, Third prohibits any carrier

14 interference in the choice of employees' representatives, and Section 2, Fourth expressly prohibits

15 the use of carrier funds "in maintaining or assisting or contributing to any labor organization, labor

16 representative, or other agency of collective bargaining."  45 U.S.C. §152, Fourth.  More than 75

17 years ago, the Supreme Court held that company unions violate the RLA's protections against

18 employer interference.  *See Texas & N.O.R.*, 281 U.S. at 560, 569; *see also Virginian Ry.*, 300 U.S.

19 at 543–44.  *Texas & N.O.R.* found the following to be persuasive evidence of unlawful carrier

20 interference—evidence that the carrier (1) permitted employees to devote their time to the alleged

21

22     [10]  *See also United Transp. Union v. Gateway Western R. Co.*, 78 F.3d 1208, 1213–14 (7th
   Cir. 1996) (court could not grant relief that would designate representative for new company
23 subsidiary); *United Transp. Union v. United States*, 987 F.2d 784 (D.C. Cir. 1993) (court could not
   designate RLA representative); *Air Line Employees Ass'n, Int'l v. Republic Airlines, Inc.*, 798 F.2d
24 967, 968 (7th Cir. 1986) (court could not designate employee representative pending NMB
   resolution); *Air Lines Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*, 656 F.2d 16, 24 (2d Cir. 1981)
25 (relief requested "would necessarily involve this Court in determining, as a substantive matter,
   whether ALPA is the proper representative"); *Texidor*, 590 F.2d at 359 (court could not grant
26 requested relief that included conducting an election and decertifying an RLA representative);
   *Miller v. Norfolk S. R. Co.*, 183 F.Supp.2d 996, 1000 (N.D. Ohio 2002) (relief requested would have
27 designated employees' collective bargaining representative).

28

1   company union without deduction from pay, (2) paid the company union's expenses, (3) kept track

2   of the company union's recruitment efforts, and (4) discriminated against supporters of a rival

3   union. *Texas & N.O.R.*, 281 U.S. at 560.  *see also Horizon Air Indus., Inc.*, 232 F.3d at 1135 (use of

4   a pre-existing employee committee to expand benefits, material changes in the activities of such

5   committee, and carrier campaigns indicating that committee is a substitute for true bargaining

6   representative as evidence of unlawful interference).

7         In addition, in a case addressing anti-employer interference provisions in the National Labor

8   Relations Act that are similar to provisions in the RLA, the Supreme Court held that an employer

9   acts unlawfully if it recognizes a representative of its employees without first establishing that the

10  recognized organization actually enjoys majority support (regardless of the employer's good faith

11  "belief" about the organization's support). *See Int'l Ladies' Garment Workers' Union v. NLRB*, 366

12  U.S. 731, 732–33 (1961).  More recently, the Ninth Circuit has held that the RLA prohibits

13  "employers from providing assistance to a union or labor faction" and prohibits "assist[ing] one

14  union faction over another." *Konop*, 302 F.3d at 885.

15        The evidence here will establish that SkyWest wholly funds SAPA, that it permits

16  employees to devote their time to SAPA without penalty, that it pays SAPA representatives for their

17  SAPA-related work, that the company monitors SAPA's activities, that it discriminates against

18  ALPA supporters, and that it improperly recognized SAPA as the representative of SkyWest's

19  pilots. *See* Livingston Decl. ¶11; Compl. ¶¶48-53.

20        Nonetheless, SkyWest contends – notwithstanding the clear language of the statute and this

21  clear and controlling case law – that wholly carrier-funded company unions are now legal as a

22  "forward-thinking, cooperative model of labor relations."  Am. Opp. at 18.  But none of the cases

23  SkyWest cites support this proposition, and wholly carrier-funded company unions are no more

24  legal now than they were 70 years ago. *See Virginian Ry.*, 300 U.S. at 543–44.

25        SkyWest relies heavily on the Ninth Circuit's decision in *Barthelemy v. ALPA*, 897 F.2d 999

26  (9th Cir. 1990), which held that a non-carrier financier's conditional, one-time agreement to pay

27  ALPA investment-banking fees did not violate the RLA given the "circumstances of [that] case."

28  *Id.* at 1002, 1014, 1017.  The Ninth Circuit emphasized that ALPA's members had voted to approve

1    the transaction, that the payment was a one-time arrangement, that the financier's promise was

2    conditional, and that the purpose of the payment was to enable employees to protect their RLA

3    rights by soliciting airline takeover bids from individuals and entities who were "less hostile to the

4    pilots' interests" than the leading contender.  *Id*. at 1002, 1017.

5         *None* of these factors favors a similar result here.  There is no evidence that SkyWest pilots

6    have ever voted to approve the financial payments (let alone to approve SAPA as their collective

7    bargaining representative).  SkyWest has been funding SAPA for many years, and its payments are

8    not conditional.  There is also no evidence that SkyWest funds SAPA for the purpose of protecting

9    its employees' ability to organize and protect their rights.  To the contrary, SkyWest has given

10   SAPA no independent grievance procedure, and has expressed vehement opposition to any attempt

11   by its employees actually to form a union.  *See* Prestel Decl. Ex. 1.

12        The remainder of the cases cited by SkyWest are similarly inapposite.  Providing copies,

13   coffee, or a meeting room is not the same as providing all of an entity's funds, and the Ninth Circuit

14   distinguished most of the cases SkyWest cites in *Barthelemy* as permitting only "minor assistance."

15   *Barthelemy*, 897 F.2d at 1016.  Other cases cited by SkyWest are distinguishable because they did

16   not involve evidence that the employer paid the salaries of non-working representatives, provided

17   the organization with more than a "limited use" of company resources, or had an anti-union

18   motivation.  *Classic Indus., Inc. v. NLRB*, 667 F.2d 205, 209 (1st Cir. 1981); Prestel Decl. Ex. 1; *see*

19   *also* H.R. Rep. No. 1944, at 2 (one of purposes of 1934 amendments was to eliminate the practice of

20   management's "pay[ing] the salary of the employees' representatives").

21        In the final section of its SAPA-related argument, SkyWest cites a series of NMB cases for

22   the proposition that an employer need not provide "equal access" to an incumbent representative

23   and to a challenger union.  SkyWest's reliance on these cases is misplaced for several reasons.

24   First, unlike in the cases SkyWest cites, SAPA is *not* an incumbent representative within the

25   meaning of the RLA, and the company does not contend otherwise.  *See Northwest Airlines*, 19

26   NMB 94, 96 (1991) (incumbent was RLA representative); *Northwest Airlines*, 14 NMB 49 (1986)

27   (motion for reconsideration of earlier decision, 13 NMB 399 (1986), which recognized that both

28   competing organizations were RLA representatives); *cf. Horizon Airlines*, 24 NMB 458 (1997)

1   (finding unlawful interference); *see also supra* pp. 2-3 and Prestel Decl. Ex. 7.

2         Second, the cases SkyWest cites do *not* stand for the proposition that an employer may

3   discriminate between competitor organizations. The NMB held that the employers in question had

4   not violated the RLA because they had *not* discriminated between unions. *See, e.g.*, *Northwest*

5   *Airlines*, 19 NMB at 110–11.

6         Finally, the NMB only has jurisdiction to determine whether an election has been conducted

7   according to "laboratory conditions" – not to adjudicate violations of the statute. *See Horizon Air*

8   *Indus.*, 232 F.3d at 1133.  The Ninth Circuit, which *does* have jurisdiction to adjudicate violations

9   of the statute, has held that the RLA prohibits employers from "assist[ing] one union faction over

10  another." *Konop*, 302 F.3d at 885.

11  **III.    Plaintiffs Will Suffer Irreparable Harm If an Injunction Is Not Entered, and the**
         **Balance of Hardships Tips Strongly in Plaintiffs' Favor.**

12        **A.    Interference with Plaintiffs' RLA-Protected Expressive and Associational**
13             **Rights is *Per Se* Irreparable Harm.**

14        Controlling case law is clear and Defendant makes no effort to contend otherwise.  Under

15  Ninth Circuit precedent, "coercive and inhibitory effects upon . . . employees' organizational rights

16  secured by the RLA . . . [are] irreparable." *Arcamuzi,* 819 F.2d at 938.

17        As set forth in Plaintiffs' opening brief, Plaintiffs suffer two types of irreparable harm, each

18  of which provides an independent basis for issuing an injunction:  the chilling effect on the exercise

19  of their RLA-protected expressive and associational rights, and the negative impact on their

20  organizing campaign.  Plaintiffs' resourcefulness in engaging in speech outside the workplace,

21  Amended Opp. at 26, is irrelevant.  To establish irreparable harm, Plaintiffs need not have been

22  entirely silenced, only chilled.  And it is undisputed that Plaintiffs have been chilled from engaging

23  in protected expressive and associational activity, for example, wearing ALPA lanyards.  As to the

24  irreparable harm to the organizing campaign, Plaintiffs rely not only on the declaration of Jeffrey

25  MacDonald, *contra* Am. Opp. at 26 ("only" support for this contention), but also extensive Ninth

26  Circuit and district court cases holding that "[t]he deprivation to employees from . . . the dimunition

27  of union support is immeasurable" and establishes irreparable harm.  *NLRB v. Electro-Voice, Inc.*,

28

83 F.3d 1559, 1573 (9th Cir. 1996); *see also* Mot. at 19-20.[11]

## B.    SkyWest's Speculative Assertions Do Not Demonstrate Any Legally Cognizable Harm.

SkyWest complains that a preliminary injunction would taint its conduct with the specter of illegality.  Am. Opp. at 27.  Where, as here, Plaintiffs have an overwhelming likelihood of success on the merits and established irreparable harm as a matter of law, such a taint is entirely appropriate.[12]  *Cf. Scott*, 241 F.3d at 669 ("[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created").  Under SkyWest's "taint" argument, no preliminary injunction would ever issue.

SkyWest also contends that it would suffer harm if the organizing drive were to succeed and its employees were to choose ALPA as their representative.  Am. Opp. at 27-28.  Should pilots' exercise of their right to organize result in ALPA's election, then the consequence of which Defendant complains – the obligation to engage in collective bargaining – is a Congressionally imposed and favored duty, 45 U.S.C. §2, Ninth, not a legally cognizable harm.

---

[11]  Defendant contends that Plaintiffs' requested relief is not "strictly tailored" to the irreparable harm in this case.  Am. Opp. at 27.  Defendant has interfered with pilots' right to engage in protected expressive and associational activity (wearing lanyards, communicating with their co-workers); Plaintiffs seek an injunction prohibiting further interference.  Defendant has discriminated against ALPA supporters and provided SAPA with preferred access to various channels of communication; Plaintiffs seek an injunction prohibiting such discrimination and granting OC members access to these same channels to remedy the discrimination.  Finally, Defendant has unlawfully funded SAPA; Plaintiffs seek an injunction prohibiting such unlawful funding.  Each form of relief is directly related to Defendant's unlawful conduct and the harm to Plaintiffs in terms of chilling effect and the negative impact on their organizing campaign.  The relief sought is plainly appropriate.  *Missouri-Kan.-Tex. R. Co.*, 363 U.S. at 532 ("[i]t is the duty of a court of equity" to grant relief "upon conditions that will protect all . . . whose interests the injunction may affect").

[12]  Such a "taint" would only be inappropriate in entirely distinguishable cases, such as *EEOC v. Howard Univ.*, 1983 WL 519 (D. D.C. June 14, 1983), on which Defendant relies.  In *EEOC*, Plaintiffs failed to establish any irreparable harm and had "no evidence whatsoever" in support of the merits of their claims.  1983 WL *4-5.  The case stands for the unremarkable proposition that an injunction should not issue where the applicable standard is not met.

1

**CONCLUSION**

2

    For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

3

Dated:  June 5, 2007                  Respectfully submitted

4

5
                        STEPHEN P. BERZON
                        LINDA LYE
                        CLAIRE P. PRESTEL

6
                        Altshuler Berzon LLP

7
                        ELIZABETH GINSBURG
                        Air Line Pilots Association, International

8

9
                      by:  \s\Stephen P. Berzon
                                Stephen P. Berzon

10
                      Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28