

# The Railway Labor Act

Second Edition

ABA Section of Labor and Employment Law

# The Railway Labor Act

## Second Edition

### Senior Editors

Michael E. Abram, *New York, NY*

John O'B. Clarke, Jr., *Washington, DC*

David P. Dean, *Washington, DC*

Michael M. Duran, Sr., *New Orleans, LA*

Daniel R. Elliott III, *Lakewood, OH*

Ronald M. Etters, *Centreville, VA*

John J. Gallagher, *Washington, DC*

Ira L. Gottlieb, *Burbank, CA*

Douglas W. Hall, *Washington, DC*

Chris Hollinger, *Los Angeles, CA*

Edgar James, *Washington, DC*

Tom A. Jerman, *Washington, DC*

Mary L. Johnson, *Washington, DC*

Paul D. Jones, *Memphis, TN*

Gary S. Kaplan, *Chicago, IL*

Andrew D. McClintock, *Atlanta, GA*

Stephen B. Moldof, *New York, NY*

Joanna L. Moorhead, *Washington, DC*

Harry A. Rissetto, *Washington, DC*

Robert A. Siegel, *Los Angeles, CA*

E. Scott Smith, *Atlanta, GA*

Margaret H. Spurlin, *Washington, DC*



Railway and Airline Labor Law Committee
Section of Labor and Employment Law
American Bar Association

The Bureau of National Affairs, Inc., Washington, DC

---

**BNA Books Authored by the ABA Section of Labor and Employment Law**

Covenants Not to Compete: A State-by-State Survey
The Developing Labor Law
Discipline and Discharge in Arbitration
Elkouri & Elkouri: How Arbitration Works
Employee Benefits Law
Employee Duty of Loyalty: A State-by-State Survey
Employment Discrimination Law
Employment Termination: Rights and Remedies, 2003 Supplement
Equal Employment Law Update
The Fair Labor Standards Act
How ADR Works
How to Take a Case Before the NLRB
International Labor and Employment Laws
Labor Arbitration: A Practical Guide for Advocates
Labor Arbitration: Cases and Materials for Advocates
Labor Arbitrator Development: A Handbook
Labor Union Law and Regulation
Occupational Safety and Health Law
The Railway Labor Act
Tortious Interference in the Employment Context: A State-by-State Survey
Trade Secrets: A State-by-State Survey
Wage and Hour Laws: A State-by-State Survey

For details on these titles, visit BNA Books' home page on the Internet at http://www.bnabooks.com or call 800-960-1220 to request a catalog. All BNA books are available on a 30-day free-examination basis.

Copyright © 1995, 2005
American Bar Association
Chicago, IL

Library of Congress Cataloging-in-Publication Data

The Railway Labor Act / senior editors, Michael E. Abram ... [et al.].-- 2nd ed.
   p. cm.
   "Railway and Airline Labor Law Committee, Section of Labor and Employment Law, American Bar Association."
   Include index.
   ISBN 1-57018-323-6
   1. Railroads--Employees--Legal status, laws, etc.--United States. 2. United States. Railway Labor Act. I. Abram, Michael E. II. American Bar Association. Railway and Airline Labor Law Committee.

KF3448.R35 2005
344.7301'761385--dc22
                                                                2005055327

Published by BNA Books
1231 25th Street, N.W., Washington, D.C. 20037

http://www.bnabooks.com

ISBN: 1-57018-323-6; 978-1-57018-323-2
Printed in the United States of America

The materials contained herein represent the opinions of the authors and editors and should not be construed to be those of either the American Bar Association or the Section of Labor and Employment Law. Nothing contained herein is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. These materials and any forms and agreements herein are intended for educational and informational purposes only.

## SENIOR BOARD OF EDITORS

MICHAEL E. ABRAM
Cohen, Weiss and Simon LLP
New York, NY

JOHN-O'B. CLARKE, JR.
Highsaw, Mahoney & Clarke
Washington, DC

DAVID P. DEAN
James & Hoffman, P.C.
Washington, DC

MICHAEL M. DURAN, SR.
New Orleans, LA

DANIEL R. ELLIOTT III
Lakewood, OH

RONALD M. ETTERS
Centreville, VA

JOHN J. GALLAGHER
Paul, Hastings, Janofsky & Walker LLP
Washington, DC

IRA L. GOTTLIEB
Geffner & Bush
Burbank, CA

DOUGLAS W. HALL
Baker & Hostetler LLP
Washington, DC

CHRIS HOLLINGER
O'Melveny & Myers LLP
San Francisco, CA

EDGAR JAMES
James & Hoffman, P.C.
Washington, DC

TOM A. JERMAN
O'Melveny & Myers LLP
Washington, DC

MARY L. JOHNSON
National Mediation Board
Washington, DC

PAUL JONES
FedEx Corporation
Memphis, TN

GARY S. KAPLAN
Seyfarth Shaw LLP
Chicago, IL

ANDREW D. MCCLINTOCK
Ford & Harrison LLP
Atlanta, GA

Section 2, Fifth, however, applies before a person becomes an "employee" and prohibits carriers from requiring "any person seeking employment to sign any contract or agreement promising to join or not to join a labor organization." Section 2, Eighth, states that this provision, like several others in Section 2, is "made a part of the contract of employment between the carrier and each employee." Section 2, Fifth, like the other 1934 additions to the Act, was intended "to advance the maintenance of effective labor organizations."[19] The only appellate court decisions construing Section 2, Fifth, have stressed, however, that it narrowly encompasses agreements or promises with respect to the choice of joining labor organizations and does not incorporate the protections against interference in self-organization and the choice of representatives embodied in Section 2, Third and Fourth.[20]

One district court held that plaintiffs were not mere "applicants" but rather were "transfer" employees protected by the RLA and could therefore proceed with their Section 2, Third and Fourth, claims against a railroad that purchased a substantial segment of their former employer's assets and allegedly denied them employment for antiunion reasons.[21] The court also held that the plaintiffs stated a cause of action against the purchasing carrier as a "successor" based on claims that the seller and purchaser entered into the transaction for the purpose of committing antiunion acts.[22]

---

[19] Line Pilots Ass'n v. United Air Lines, 802 F.2d 886, 911–14, 123 LRRM 2617 (7th Cir. 1986), cert. denied, 480 U.S. 946, 124 LRRM 3192 (1987). But see Pyles v. United Air Lines, 79 F.3d 1046, 1050–52, 151 LRRM 2818 (11th Cir. 1996). (PanAm pilot claimed misapplication of agreement between United and ALPA containing mechanism for transfer of certain PanAm pilots to United).

[20] Air Line Pilots Ass'n v. United Air Lines, 802 F.2d at 915, 123 LRRM at 2638. Id. (holding that the protections of §§2, Third and Fourth, unlike those of §2, Fifth, did not apply before employees performed work in the service of a carrier); Nelson, 750 F.2d at 1236 (same).

[21] Adler v. I&M Rail Link, 13 F. Supp. 2d 912, 923, 158 LRRM 2647, 2654–55 (N.D. Iowa 1998). In so holding, the court relied on the broad definition of "employee" in Pyles v. United Air Lines, 79 F.3d 1046, 151 LRRM 2818 (11th Cir. 1996) (holding that RLA's compulsory arbitration provisions applied to dispute between carrier and applicant who was employee of another carrier). For a fuller discussion of the Pyles case, see Chapter 7, §§II.A. and VI.B.).

[22] Adler, 13 F. Supp. at 927. For further discussion of successorship under the RLA, see Chapter 4, §VIII.F.

---

## III. PROTECTION OF EMPLOYEE RIGHTS TO SELF-ORGANIZATION

### A. Jurisdiction

The 1934 amendments added administrative procedures to the Act, whereby the NMB determines the employees' choice of representative "in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier."[23] The courts in general have continued to recognize a private right of action to enforce the right to organize without carrier interference, as set forth in Texas & New Orleans R.R.[24] The first such case in the Supreme Court under the amended statute, Virginian Railway v. System Federation,[25] upheld the power of the courts to compel a carrier to treat with a union certified by the NMB under the procedures of Section 2, Ninth.

Subsequently, the courts generally have exercised jurisdiction over actions brought against carriers for interference with employees' rights under RLA Sections 2, Third and Fourth, during union organizing drives. These courts have held or implied that neither the NMB's powers under Section 2, Ninth, to determine the identity of the employees' representative without interference by the carrier, nor the enforcement procedures specified in Section 2, Tenth, are the exclusive means for protecting employees' rights under Section 2, Third and Fourth.[26]

---

[23] RLA §2, Ninth. For a discussion of the NMB's determinations on interference with employee choice during representation campaigns, see supra at Chapter 4, §VI.

[24] Thus, the holding of Texas & New Orleans R.R. v. Railway & Steamship Clerks, 281 U.S. 548 (1930), that the Act's protections of the right of self-organization are judicially enforceable in a private suit, continues to apply after the 1934 amendments. In Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922, 926–27, 114 LRRM 3641 (1st Cir. 1983), for example, the court observed that in adopting the 1934 amendments to the Act, Congress did not express an intent to overrule Texas & New Orleans R.R. or to make proceedings by the U.S. Attorneys the exclusive means for enforcing the Act.

[25] 300 U.S. 515, 1 LRRM 743 (1937).

[26] See, e.g., Stepanischen, 722 F.2d at 924, 926, 114 LRRM 3641, and cases cited therein (existence of criminal penalties does not preclude enforcement by private parties); Adams v. Federal Express Corp., 547 F.2d 319, 321, 94 LRRM 2008 (6th Cir. 1976) (because the RLA contains no analog to the NLRB's jurisdiction over unfair labor practices, courts must resolve interference claims under RLA),

Legal actions to seek relief for carrier interference with precertification organizing activities under Section 2, Third or Fourth, may be brought during the processing of representation disputes under Section 2, Ninth, as well as after the dispute has been resolved.[27] Supplementing the NMB's traditional remedies for carrier interference, discussed in Chapter 4, courts may adjudicate the legality of carrier conduct; issue injunctive relief; and order reinstatement, backpay, and restored benefits and seniority.[28] Some courts also have recognized a right to a jury trial and punitive damages.[29] One district court held that the NMB's findings in a representation proceeding that employees were not discharged for engaging in organizing activities neither bar the employees from suing the carrier for wrongful discharge in violation of the Act nor bind the court.[30]

In certain circumstances, courts have exercised jurisdiction over claims of carrier interference occurring after certification of a

---

[27]See, e.g., Adams v. Federal Express Corp., 90 LRRM 2742 (W.D. Tenn. 1975), aff'd, 547 F.2d 319, 94 LRRM 2008 (6th Cir. 1976), cert. denied, 431 U.S. 915, 95 LRRM 2326 (1977) (action brought during organizing drive); Burke v. Compania Mexicana de Aviacion, 433 F.2d 1031, 75 LRRM 2658 (action brought following organizing drive).

[28]For a full discussion of judicial remedies and procedures in carrier interference cases, see §III.F., infra.

[29]See, e.g., Lebow v. American Trans Air, Inc., 86 F.3d 661, 667–72, 152 LRRM 2463 (7th Cir. 1996) (finding right to jury trial and punitive damages for claim of discharge because of union activities). See also §III.F., infra.

[30]Freiburger v. Emery Air Charter, 142 LRRM 2570 (N.D. Ill. 1992).

---

union.[31] The Supreme Court has noted, however, that Section 2, Third and Fourth, address primarily precertification rights of unorganized employees[32] and some courts have held or implied that they do not have jurisdiction of postcertification claims because adjustment boards will protect employee rights.[33]

The First Circuit summarized the various bases for federal court jurisdiction under Section 2, Third and Fourth, finding as a general

---

[31]E.g., Fennessy v. Southwest Airlines, 91 F.3d 1359, 1362 (9th Cir. 1996), cert. denied, 520 U.S. 1210, 155 LRRM 2192 (1997) (carrier firing a represented employee in retaliation for his efforts to replace existing union with another union where employee had already lost contractual arbitration for wrongful discharge); Davies v. American Airlines, 971 F.2d 463, 465 (10th Cir. 1992) (wrongful termination in violation of public policy based on activism in conjunction with organizing activity); Arcamuzi v. Continental Airlines, Inc., 819 F.2d 935, 936–39 (9th Cir. 1987) (reversing dismissal and remanding for possible injunction for pilots seeking to bar requirement that they take an allegedly retaliatory polygraph test as a condition for employment after a strike); Air Line Pilots Ass'n v. Transamerica Airlines, 817 F.2d 510, 513–14 (9th Cir. 1987) (carrier transferring business to a newly formed corporate alter ego); Railway Labor Executives' Ass'n v. Boston & Maine Corp., 808 F.2d 150, 157–59 (1st Cir. 1986), cert. denied, 484 U.S. 830, 126 LRRM 2496 (1987) (abolition of jobs in retaliation for refusing to cross picket lines); Air Line Pilots Ass'n v. United Air Lines, Inc., 802 F.2d 886, 900 (7th Cir. 1986), cert. denied, 480 U.S. 946, 124 LRRM 3192 (1987) (plan to allow nonstriking pilots to bid for alleged vacancies left by striking pilots); Conrad v. Delta Air Lines, 494 F.2d 914, 917–18 (7th Cir. 1974) (wrongful discharge in retaliation for union activity); Ruby v. TACA Int'l Airlines, 439 F.2d 1359, 1364 (5th Cir. 1971) (airline's plan to move plant base to El Salvador, allegedly to prevent union from acting as collective bargaining representative); Held v. American Airlines, Inc., 13 F. Supp. 2d 20, 26, 158 LRRM 2414 (D.D.C. 1998) (discriminatory denial of access to flight operations during ratification process for new collective bargaining agreement); Clift v. United Parcel Serv., 133 LRRM 2639, 2641 (W.D. Ky. 1990) (dismissal of probationary employees in retaliation for outspokenness against the company and plans to run for union office); Flight Attendants (AFA) v. Horizon Air Indus., 135 LRRM 2855, 2859 (D. Or. 1990) (carrier's circulation during negotiations of questionnaires to represented employees that showed an "unwillingness to deal fairly" with the union), aff'd on other grounds, 976 F.2d 541 (9th Cir. 1992); Teamsters Local 808 v. Providence & Worcester R.R., 576 F. Supp. 693, 703 (D. Conn. 1983) (demotions and discharges designed to undermine the union's status as collective bargaining representative).

[32]Trans World Airlines v. Flight Attendants (IFFA), 489 U.S. 426, 440, 130 LRRM 2657 (1989).

[33]E.g., Flight Attendants (AFA) v. Horizon Air, 280 F.3d 901, 905–07 (9th Cir. 2002) (finding no exceptional circumstances necessitating judicial intervention "such as a policy motivated by anti-union animus or circumstances that significantly undermine the functioning of the union" and concluding the dispute over union insignia policy "was a matter for arbitration rather than district court litigation"). See §III.D., infra, and cases cited therein, for a full discussion of court jurisdiction over postcertification claims of carrier interference.