1  STEPHEN P. BERZON (#46540)
   sberzon@altshulerberzon.com
2  LINDA LYE (#215584)
   llye@altshulerberzon.com
3  CLAIRE P. PRESTEL (#235649)
   cprestel@altshulerberzon.com
4  Altshuler Berzon LLP
   177 Post Street, Suite 300
5  San Francisco, CA  94108
   Telephone:  (415) 421-7151
6  Facsimile:   (415) 362-8064

7  ELIZABETH GINSBURG
   (Admitted to Practice *Pro Hac Vice*)
8  elizabeth.ginsburg@alpa.org
   Air Line Pilots Association, International
9  1525 Massachusetts Ave., NW
   Washington, D.C. 20036
10 Telephone: (202) 797-4081
   Facsimile:   (202) 797-4014

11
   Attorneys for Plaintiffs
12
                    UNITED STATES DISTRICT COURT
13
                  NORTHERN DISTRICT OF CALIFORNIA
14

15 SKYWEST PILOTS ALPA ORGANIZING        )    CASE No. C-07-2688 CRB
   COMMITTEE, *et al.*,                    )
16                                        )    **PLAINTIFFS' *CORRECTED* REPLY**
              Plaintiffs,                 )    **IN SUPPORT OF MOTION FOR**
17                                        )    **PRELIMINARY INJUNCTION**
        vs.                               )
18                                        )    Date:   June 7, 2007
   SKYWEST AIRLINES, INC.,                )    Time:   9:30 a.m.
19                                        )    Place:  Courtroom 8, 19th Floor
              Defendant.                  )
20 _____ )

21

22

23

24

25

26

27

28

# SUMMARY OF ARGUMENT

Both SkyWest's opposition and its amended opposition ignore controlling Supreme Court and Ninth Circuit case law in favor of an imagined state of labor law that has never existed in the more than 80 year history of the Railway Labor Act ("RLA" or "Act").

1. SkyWest misstates the applicable legal standard by misrepresenting the holdings in both *Texas & N.O.R. Co. v. Brotherhood of Railway Clerks*, 281 U.S. 548 (1930), and *Adams v. Federal Express Corp.*, 1975 WL 1143 (W.D. Tenn.) ("*Adams I*"). *Texas & N.O.R.* did not hold that Plaintiffs must prove a "corrupted or overr[idden]" will in order to prevail on claims under RLA Section 2. To the contrary, the Supreme Court recognized that evidence of a "company union" – nearly identical to the evidence here – is sufficient to establish a violation of the Act. *Adams* also did not hold that a "practice of discharging employees" or a "conscious concerted attempt to violate" the Act are required to prove a statutory violation. In fact, the *Adams* court *rejected* the very same argument SkyWest makes here. *Adams v. Fed. Exp. Corp.*, 470 F.Supp. 1356, 1374 (W.D. Tenn. 1979) ("*Adams II*") (granting preliminary injunctive relief to the plaintiffs and rejecting FedEx's contention that a "practice of discharging employees" or a specific intent to violate the RLA was required).

2. Plaintiffs have an affirmative RLA-protected right to wear union insignia in connection with a union organizing campaign absent "special circumstances" not present here. *See, e.g.*, *Pay 'N Save Corp. v. NLRB*, 641 F.2d 697 (9th Cir. 1981). Contrary to SkyWest's contention, this statutory right may not be defeated by a company uniform policy or by an employer's purported concern about "the image projected to the public." *Id.* at 701; *Woonsocket Health Centre*, 245 NLRB 652, 658 (1979). Indeed, the Ninth Circuit has already expressly distinguished the case on which SkyWest principally relies, *NLRB v. Harrah's*, 337 F.2d 177 (9th Cir. 1964).

3. Plaintiffs have an equally well-established RLA right to distribute union literature on non-work time and in non-work areas, such as the general bulletin boards and crew lounges at issue here. *See, e.g.*, *Consolidated Diesel v. NLRB*, 263 F.3d 345, 354 (4th Cir. 2001). Any requirement that employees obtain advance permission to post materials on general bulletin boards or in crew rooms would be unlawful. *McDonnell Douglas Corp.*, 240 NLRB 794, 794 (1979). The primary

1  case SkyWest cites confirms that where, as here, an employer permits non-work related postings, it

2  may not validly discriminate against union related materials. *Honeywell, Inc.*, 262 NLRB 1402

3  (1982).

4        4. SkyWest's jurisdictional challenge is flatly inconsistent with controlling Supreme and

5  Ninth Circuit precedent holding that federal courts *have* jurisdiction to address claims under the

6  RLA of employer interference during a union organizing drive, including in cases where, as here,

7  the plaintiff employees are attempting to organize an alternative to an "incumbent" employee group.

8  *See, e.g.*, *Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515, 543–44  (RLA enacted and amended in

9  part to eliminate company unions); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002);

10  *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1363–64 (9th Cir. 1996); *Burke v. Compania*

11  *Mexicana de Aviacion, S.A.*, 433 F.2d 1031, 1033–34 (9th Cir. 1970).  Further, accepting SkyWest's

12  jurisdictional theory would render the Plaintiffs' rights "illusory," *contra Chicago & N.W. Ry. Co. v.*

13  *United Transp. Union*, 402 U.S. 570, 578 (1971), because the NMB cannot provide effective relief.

14  The NMB has no authority to adjudicate unfair labor practices and does not even investigate claims

15  of employer interference until *after* an election is conducted (at which point the irreparable harm of

16  Defendant's conduct is already done).  The caselaw is clear that the courts have authority to enforce

17  employees' RLA-protected rights in this circumstances.  Finally, neither of the two bases for NMB

18  jurisdiction exists in this case:  No party has "request[ed]" that the NMB conduct an election, *see* 45

19  U.S.C. §2, Ninth.  Under the RLA, it is solely up to the union, not the employer, to decide when to

20  seek an election.  And there is no dispute regarding the identity of SkyWest pilots' representative

21  "designated and authorized in accordance with the requirements of the [RLA]."  ALPA has never

22  contended that it is the pilots' "designated" or "authorized" RLA representative, and SkyWest

23  concedes that SAPA is not an RLA representative either.

24        5. RLA Section 2, Fourth expressly prohibits the use of carrier funds "in maintaining or

25  assisting or contributing to any labor organization, labor representative, or other agency of collective

26  bargaining."  45 U.S.C. §152, Fourth.  SkyWest concedes that it wholly funds the SkyWest Airlines

27  Pilot Association ("SAPA"), and its relationship with SAPA squarely violates the Act and the

28  Supreme Court's holding in *Texas & N.O.R.*  SkyWest's reliance on *Barthelemy v. ALPA*, 897 F.2d

1   999 (9th Cir. 1990), to contend that its company union is permitted as a new, "forward-thinking"

2   model of labor relations is misplaced.  *All* of the factors relevant to *Barthelemy*'s holding favor a

3   finding of unlawful interference here.

4          6.  Finally, it is clear that SkyWest's interference with Plaintiffs' RLA-protected expressive

5   and associational rights constitutes irreparable harm.  *Arcamuzi v. Continental Air Lines, Inc.*, 819

6   F.2d 935, 398 (9th Cir. 1987).  This Court therefore has a "duty" to protect Plaintiffs' rights, *id.*, and

7   broad equitable jurisdiction to fashion an appropriate remedy.  *See Burke*, 433 F.2d at 1033; *Bhd. of*

8   *Locomotive Eng'rs v. Missouri-Kan.-Tex. R. Co.*, 363 U.S. 528, 532 (1960).

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    SkyWest's Contradictions and Misrepresentations Regarding SAPA . . . . . . . . . . . . . . . . . . 2

    SkyWest's False Statements Regarding Its Anti-Union Campaign . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    I.    SkyWest's Illegal Conduct Does Not Determine the "Status Quo," and This
           Court Has Broad Equitable Jurisdiction to Grant the Relief Plaintiffs Seek . . . . . . . 4

    II.   Plaintiffs Have Demonstrated an Overwhelming Likelihood of Success on
           the Merits of Their Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

          A.   SkyWest Misrepresents the Holdings in *Texas & N.O.R. Co.* and
               *Adams* and Misstates the Applicable Legal Standard . . . . . . . . . . . . . . . . . 6

          B.   Plaintiffs Are More Than Likely to Succeed on the Merits of Their
               Claims that SkyWest Unlawfully Interfered with Their Expressive
               and Associational Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

               1.   Defendant's Argument Regarding ALPA Lanyards Flies in the
                    Face of Controlling Precedent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

               2.   SkyWest Offers No Persuasive Factual or Legal Response to
                    Plaintiffs' Argument Regarding Distribution of Union Literature . 10

          C.   Plaintiffs Are More Than Likely to Succeed on the Merits of Their
               SAPA-Related Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

               1.   The Court Has Jurisdiction over Plaintiffs' SAPA Claims . . . . . . . 11

                    (a)   Courts Routinely Exercise Jurisdiction over Claims
                          that an Employer Has Violated RLA Section 2, Third
                          and Fourth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

                    (b)   The NMB Cannot Grant Plaintiffs Effective Relief,
                          and This Court Therefore Has Jurisdiction to Protect
                          Plaintiffs' Rights . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                    (c)   SkyWest's Jurisdictional Argument Finds No Support
                          in the Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

               2.   SkyWest's Arguments Regarding the Merits of Plaintiffs'
                    SAPA Claims Fail as a Matter of Law . . . . . . . . . . . . . . . . . . . . . . . 20

    III.  Plaintiffs Will Suffer Irreparable Harm If an Injunction Is Not Entered, and
           the Balance of Hardships Tips Strongly in Plaintiffs' Favor . . . . . . . . . . . . . . . . . 23

A.    Interference with Plaintiffs' RLA-Protected Expressive and
Associational Rights is *Per Se* Irreparable Harm . . . . . . . . . . . . . . . . . . . . . 23

B.    SkyWest's Speculative Assertions Do Not Demonstrate Any
Legally Cognizable Harm  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

1

# TABLE OF AUTHORITIES

2

## CASES

3

*AFM Pilots Ass'n v. AFM Corp.*,
  1982 WL 2030 (D. Mass. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

4

*ALPA v. Transam. Airlines, Inc.*,
  817 F.2d 510 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 12

5

*Adams v. Federal Express Corp.*,
  470 F.Supp. 1356 (W.D. Tenn. 1979),

6

  *aff'd*, 654 F.2d 452 (6th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 13

7

*Adams v. Federal Express Corp.*,
  1975 WL 1143 (W.D. Tenn.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

8

9

*Air Canada v. NMB*,
  478 F.Supp. 615 (S.D.N.Y. 1980),

10

  *aff'd*, 659 F.2d 1057 (2d Cir.),
  *cert. denied*, 454 U.S. 965 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

11

*Air Line Employees Ass'n, Int'l v. Republic Airlines, Inc.*,
  798 F.2d 967 (7th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18, 19

12

13

*Air Lines Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*,
  656 F.2d 16 (2d Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

14

*Aircraft Mechanics Fraternal Ass'n v. United Airlines, Inc.*,
  406 F.Supp. 492 (N.D. Cal. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

15

16

*Am. Train Dispatchers Ass'n v. Denver & R.G.W.R. Co.*,
  614 F.Supp. 543 (D. Colo. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

17

*Anderson v. United States*,
  612 F.2d 1112 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18

19

*Arcamuzi v. Continental Air Lines, Inc.*,
  819 F.2d 935 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

20

*Ass'n of Flight Attendants v. Horizon Air Indus.*,
  280 F.3d 901 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

21

22

*Barthelemy v. ALPA*,
  897 F.2d 999 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

23

*Bhd. of Locomotive Eng'rs v. Missouri-Kan.-Tex. R. Co.*,
  363 U.S. 528 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 24

24

25

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

26

*Burger King Corp. v. NLRB*,
  725 F.2d 1053 (6th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

27

28

*Burke v. Compania Mexicana de Aviacion, S.A.,*
    433 F.2d 1031 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Burns v. Elrod,*
    509 F.2d 1133 (7th Cir. 1975),
    *aff'd* 427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*CSX Transp. Inc. v. Marquar,*
    980 F.2d 359 (6th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chicago & N.W. Ry. Co. v. United Transp. Union,*
    402 U.S. 570 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 17

*Classic Indus., Inc. v. NLRB,*
    667 F.2d 205 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Consolidated Diesel Co. v. NLRB,*
    263 F.3d 345 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*EEOC v. Howard Univ.,*
    1983 WL 519 (D. D.C. June 14, 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Fennessy v. Southwest Airlines,*
    91 F.3d 1359 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Gen. Comm. of Adjustment v. Missouri-Kan.-Tex. R. Co.,*
    320 U.S. 323 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 20

*Griffin v. Piedmont Aviation, Inc.,*
    384 F.Supp. 1070 (N.D. Ga. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hess v. Resort Air, Inc.,*
    686 F.Supp. 741 (E.D. Mo. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Honeywell, Inc.,*
    262 NLRB 1402 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Horizon Air Indus. v. NMB,*
    232 F.3d 1126 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19, 21, 23

*Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977) . . . . . . . . . . . . . . . . . . . . . . . 11

*INS v. FLRA,*
    855 F.2d 1454 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Inland Steel Co. v. United States,*
    306 U.S. 153 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Int'l Bhd. of Teamsters v. Texas Int'l Airlines Inc.,*
    717 F.2d 157 (5th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Int'l Flight Attendants v. Cooper*,
    141 F.3d 900 (8th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Int'l Ladies' Garment Workers' Union v. NLRB,*
  366 U.S. 731 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Johnson v. Kay,*
  860 F.2d 529 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Konop v. Hawaiian Airlines, Inc.,*
  302 F.3d 868 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Lebow v. Am. Trans Air, Inc.,*
  86 F.3d 661 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lum v. China Airlines Co.,*
  413 F.Supp. 613 (D. Hawaii 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Machinists v. Central Airlines,*
  372 U.S. 682 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Machinists v. Street,*
  367 U.S. 740 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*McDonnell Douglas Corp.,*
  240 NLRB 794 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Meijer, Inc. v. NLRB,*
  130 F.3d 1209 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Miller v. Norfolk S. R. Co.,*
  183 F.Supp.2d 996 (N.D. Ohio 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*NLRB v. Electro-Voice, Inc.,*
  83 F.3d 1559 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24

*NLRB v. Essex Wire Corp.,*
  245 F.2d 589 (9th Cir. 1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*NLRB v. Harrah's,*
  337 F.2d 177 (9th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*NLRB v. Lummus Indus.,*
  679 F.2d 229 (11th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*NLRB v. Metro-Truck Body, Inc.,*
  613 F.2d 746 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Pay 'N Save Corp. v. NLRB,*
  641 F.2d 697, 701 (9th Cir. 1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Railway Labor Executives' Assn. v. Boston & Maine Corp.,*
  808 F.2d 150 (1st Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Railway Labor Execs. Ass'n v. NMB,*
  29 F.3d 655 (D.C. Cir. 1994) (en banc),
  *amended* 38 F.3d 1224 (D.C. Cir.),
  *cert. denied,* 514 U.S. 1032 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Railway Labor Executives' Ass'n v. Wheeling & Lake Erie Ry.*,
  756 F.Supp. 249 (E.D. Va.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Republic Aviation Corp. v. NLRB*,
  324 U.S. 793 (1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Roscello v. Southwest Airlines Co.*,
  726 F.2d 217 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Scott ex rel. NLRB v. Stephen Dunn & Associates*,
  241 F.3d 652 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 24

*Stanley v. Univ. of S. Cal.*,
  13 F.3d 1313 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Stepanischen v. Merchants Despatch Transp. Corp.*,
  722 F.2d 922 (1st Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Switchmen's Union v. NMB*,
  320 U.S. 297 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tanner Motor Livery, Ltd. v. Avis, Inc.*,
  316 F.2d 804 (9th Cir. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Texas & N.O.R. Co. v. Bhd. of Railway Clerks*,
  281 U.S. 548 (1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 19, 21

*Texidor v .Ceresa*,
  590 F.2d 357 (1st Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Trans World Airlines, Inc. v. Ind. Fed'n of Flight Attendants*,
  489 U.S. 426 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Union of Prof'l Airmen v. Alaska Aeronautical Indus., Inc.*,
  1977 WL 1714 (D. Ala. Apr. 26, 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United Transp. Union v. Gateway Western R. Co.*,
  78 F.3d 1208 (7th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United Transp. Union v. United States*,
  987 F.2d 784 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Village of Arlington Heights v. Met. Housing Dev. Corp.*,
  429 U.S. 252 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Virginian Ry. v. Sys. Fed'n No. 40*,
  300 U.S. 515 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Woonsocket Health Centre*,
  245 NLRB 652 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1

**STATUTES**

2

45 U.S.C.
 §151a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
 §152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
 §184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

29 C.F.R.
 §1206.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
 §1206.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*
 §1206.4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
 §1206.4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

H.R. Rep. No. 110-23 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

H.R. Rep. No. 1944 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 23

3

4

5

6

7

8

9

**MISCELLANEOUS**

10

ABA, The Railway Labor Act Ch. 5.III.A. (2d ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Horizon Airlines*, 24 NMB 458 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Northwest Airlines*, 14 NMB 49 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Northwest Airlines*, 19 NMB 94 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

NMB Rep. Manual §17.0 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**INTRODUCTION**

2    Both SkyWest's opposition and its amended opposition jettison controlling Supreme Court

3  and Ninth Circuit case law in favor of an imagined state of labor law that has never existed in the

4  more than 80 year history of the Railway Labor Act ("RLA" or "Act").  SkyWest ignores binding

5  precedent holding that employees have an affirmative right to wear union insignia in connection

6  with a union organizing campaign – relying instead on a company "uniform policy" that does not

7  supersede Plaintiffs' statutorily protected free speech and organizing rights.  SkyWest similarly

8  ignores controlling case law holding that employees have the right to distribute union literature in

9  crew rooms and on general bulletin boards – again relying on a company solicitation policy that

10  cannot, as a matter of law, defeat Plaintiffs' RLA-protected rights.  And SkyWest ignores

11  controlling case law that employees have a right to be free from discrimination against expressive

12  and associational activity related to union organizing.

13    SkyWest's contentions regarding the SkyWest Airlines Pilots Association ("SAPA") fare no

14  better.  The company's jurisdictional argument regarding the National Mediation Board ("NMB" or

15  "Board") fails as a matter of law because "[f]ederal courts have jurisdiction to enforce the

16  provisions of 45 U.S.C. §152, Third and Fourth," and because the Ninth Circuit has repeatedly

17  exercised jurisdiction over claims of unlawful employer interference in union organizing campaigns.

18  *ALPA v. Transam. Airlines, Inc.*, 817 F.2d 510, 514 (9th Cir. 1987); *see also, e.g.*, *Burke v.*

19  *Compania Mexicana de Aviacion, S.A.*, 433 F.2d 1031, 1033–34 (9th Cir. 1970).  The company's

20  efforts to re-characterize the decades old practice of company unionism as a new "forward-thinking"

21  model of labor relations is also unavailing.  Wholly carrier-funded "company unions" remain just as

22  illegal today as when Congress enacted the RLA to prohibit them.  *See* 45 U.S.C. §152, Fourth;

23  *Texas & N.O.R. Co. v. Bhd. of Railway Clerks*, 281 U.S. 548 (1930).  Finally, the issue of

24  irreparable harm was decided in Plaintiffs' favor in *Arcamuzi v. Continental Air Lines, Inc.*, 819

25  F.2d 935, 938 (9th Cir. 1987) – a case SkyWest never addresses – and the possibility that Plaintiffs

26  and other employees may actually exercise their RLA-protected right to form a union is not and has

27  never been a legally cognizable (let alone "irreparable") harm.

28

1    SkyWest filed more than 55 pages of opposition briefing in an attempt to confuse what are in

2    fact very simple issues:  (1) Plaintiffs have an RLA-protected right to wear union insignia in

3    connection with their organizing campaign, and SkyWest has admittedly violated that right by

4    prohibiting ALPA lanyards; (2) Plaintiffs have an RLA-protected right to distribute union literature

5    in non-work areas during non-work time, and SkyWest has interfered with that right by removing

6    ALPA material from crew rooms and general bulletin boards; (3) The RLA prohibits the use of

7    carrier funds to "maintain[] or assist[]" any labor organization, 45 U.S.C. §152, Fourth, and

8    SkyWest admittedly pays all of SAPA's expenses; and (4) employer interference with employees'

9    RLA-protected expressive and associational rights constitutes *per se* "irreparable" harm, and this

10   Court has a "duty" to provide relief.  *Arcamuzi*, 819 F.2d at 939.

11                        **FACTUAL BACKGROUND**

12   SkyWest devotes much of its brief to factual contentions that will be addressed during the

13   parties' evidentiary hearing.  Plaintiffs limit their factual discussion to a few of SkyWest's key

14   misrepresentations.

15   ***SkyWest's Contradictions and Misrepresentations Regarding SAPA.***  SkyWest makes

16   several misrepresentations and repeatedly contradicts itself regarding SAPA.  First, SkyWest states

17   in its brief that it "negotiat[es]" with SAPA over employee policies, and that those policies "may not

18   be changed by management without SAPA's approval."  Am. Opp. at 17.  In fact, Plaintiffs will

19   demonstrate during the evidentiary hearing that SkyWest not only has reserved the unilateral right to

20   change such policies, but has repeatedly done so.[1]

21   SkyWest also suggests in its brief – without citing evidence – that SAPA is the pilots'

22   chosen representative, provides them with independent representation, and is an "incumbent" union

23   within the meaning of the RLA.  *See* Am. Opp. at 16–17, 20–21.  At other points, however,

24

25   _____

26   [1]  SkyWest's argument that an injunction protecting its employees' rights would work to
     their detriment because SkyWest would no longer "be bound . . . to honor the agreements negotiated

27   with SAPA," Am. Opp. at 12–13, is disingenuous at best.  SkyWest is not currently bound to its
     agreements with SAPA and, even if it were, nothing about a Court order protecting its employees'

28   free speech rights in any way bars SkyWest from continuing to provide the same – or (hopefully)
     better – terms and conditions of employment.

1   SkyWest concedes that it does *not* consider SAPA to be a "representative" within the meaning of

2   the RLA and that it does *not* treat SAPA as an RLA representative.  For example, SkyWest asserts

3   that ALPA need only demonstrate 35% pilot support in order to call for an NMB election.  *See* Opp.

4   at 5; Am. Opp. at 6.  Under NMB regulations, this 35% requirement applies when employees are

5   currently *unrepresented* (a 50% showing is required if employees are already represented by a

6   union).  29 C.F.R. §1206.2.  At the parties' evidentiary hearing, the evidence will also show that

7   SAPA has both held itself out and functioned as a non RLA-representative organization.

8           Further, SkyWest admits that it retains complete discretion over employee grievances and

9   discipline.  *See* Livingston Decl. ¶10 (management "not obligated" to accept Review Board

10  recommendation).  When employees are represented within the meaning of the RLA, the statute

11  expressly requires the carrier to submit employee grievances to mandatory and binding resolution by

12  a neutral "board of adjustment."  *See* 45 U.S.C. §184; *Machinists v. Central Airlines*, 372 U.S. 682,

13  694–95 (1963).  By admitting that it retains complete discretion over employee grievances, SkyWest

14  admits that it does not treat SAPA as an RLA representative.  SkyWest additionally concedes that it

15  pays all of SAPA's expenses – notwithstanding its attempt to suggest that SAPA operates

16  independently.  *See* Livingston Decl. ¶11.

17          Finally, it is undisputed that SAPA has never been chosen by the pilot group in *any* vote or

18  authorization process.  SAPA has never been certified as the pilots' collective bargaining

19  representative under NMB procedures.  Nor have the SkyWest pilots ever designated or authorized

20  SAPA to represent them as provided for in the RLA.  *See* Livingston Decl. ¶4 (not disputing that

21  pilots never voted or authorized formation of SAPA and admitting that a two-thirds vote would be

22  necessary to dissolve SAPA).

23          SkyWest's various contradictions regarding SAPA demonstrate that the company would like

24  to "have its cake and eat it too."  When it suits SkyWest's argument, the airline contends that its

25  employees are already represented, and that SAPA is entitled to preferential treatment as their

26  "incumbent" union.  *See, e.g.*, Am. Opp. at 19–21.  But when this approach does not suit SkyWest's

27  attempt to evade the Court's jurisdiction, the airline instead contends that its employees are

28  currently *unrepresented* within the meaning of the statute.  *See* Opp. at 5; Am. Opp. at 11.

1   ***SkyWest's False Statements Regarding Its Anti-Union Campaign.*** SkyWest contends that

2   it has never "campaigned" against ALPA because it has never sent any "communications"

3   addressing the SkyWest Pilots ALPA Organizing Committee's ("OC's") campaign. Am. Opp. at 4.

4   In fact, SkyWest's Vice President of Flight Operations, Brad Holt, sent SkyWest pilots an October

5   5, 2006 letter expressing the company's strong opposition to ALPA, implying that the company's

6   relationship with its employees would suffer if employees authorized ALPA to represent them, and

7   encouraging pilots not to sign ALPA authorization cards. *See* Decl. of Claire Prestel Ex. 1.

8       Propaganda and speeches, however, are not the only methods to which aggressive employers

9   resort in an anti-union campaign. As the RLA recognizes, an employer's anti-organizing campaign

10  can be more effective if it takes the form of illegal interference or company unionism. *See* 45

11  U.S.C. §152, Third and Fourth; *see also, e.g.*, H.R. Rep. No. 110–23, at 22 (2007) (describing

12  devastating effect of anti-union campaigns that take the form, *inter alia*, of "dispos[ing] of" union

13  literature left in "break rooms" and similar interference). Here, SkyWest has engaged in an anti-

14  union campaign of the most traditional sort by prohibiting ALPA lanyards, interfering with the

15  distribution of ALPA literature, otherwise intimidating OC supporters, and funding a company-

16  dominated so-called "union."

17                              **ARGUMENT**

18  **I.  SkyWest's Illegal Conduct Does Not Determine the "Status Quo," and This Court Has**

19      **Broad Equitable Jurisdiction to Grant the Relief Plaintiffs Seek.**

20      SkyWest contends that Plaintiffs seek a "mandatory" injunction because Plaintiffs request

21  "something . . . they . . . [have] never had," Am. Opp. at 7, *i.e.*, the right to exercise their RLA-

22  protected expressive and associational rights.

23      SkyWest's contention fails for the simple reason that an employer's illegal practices do not

24  determine the relevant "status quo" when distinguishing between mandatory and prohibitory relief.

25  The Seventh Circuit explained this principle in the labor context in *NLRB v. Electro-Voice, Inc.*, 83

26  F.3d 1559 (7th Cir. 1996). In *Electro-Voice*, the defendant employer interfered with its employees'

27  efforts to unionize, and the company's illegal conduct resulted in the union's election defeat. The

28  National Labor Relations Board ("NLRB") sought a preliminary injunction requiring Electro-Voice

1   to bargain with the union as a remedy for its unfair labor practices.  The district court refused the

2   NLRB's requested relief on the ground that it would alter the status quo (a non-union workforce).

3   The Seventh Circuit reversed, holding that the "status quo which deserves protection . . . is not the

4   illegal status quo which has come into being as a result of the unfair labor practices being litigated."

5   *Id.* at 1575 (internal quotation marks omitted).  Instead, the status quo that deserved protection was

6   "as it existed before the onset of unfair labor practices."  *Id.*

7          A review of Plaintiffs' proposed preliminary injunction also demonstrates that the requested

8   relief is prohibitory, rather than mandatory, because it directs SkyWest to *refrain* from illegal

9   conduct – namely, from interfering with its employees' expressive and associational rights and from

10  discriminating against the OC with respect to certain channels of communication.  Plaintiffs request

11  that SkyWest provide access to the specified channels of communication, but that permissive relief

12  is not the type of "affirmative" conduct that subjects Plaintiffs' motion to a heightened standard of

13  proof.  *See Johnson v. Kay*, 860 F.2d 529, 541 (2d Cir. 1988) (order requiring defendant to "open

14  channels of communication to dissenting views" was not subject to a higher standard where, as in

15  this case, it only required the defendant "to do what it should have done earlier").  By comparison,

16  the examples of mandatory injunctions cited by SkyWest include cases where the requested relief

17  would have required the University of California and federal government to promote particular

18  employees and give them raises.  *See Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994);

19  *Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979); *Tanner Motor Livery, Ltd. v. Avis,*

20  *Inc.*, 316 F.2d 804, 809 (9th Cir. 1963).

21         In addition, regardless of whether Plaintiffs' proposed injunction is termed prohibitory or

22  mandatory, the law is clear that harm to expressive and associational rights is *per se* irreparable, and

23  that Courts have jurisdiction to protect those rights with a wide range of equitable remedies.  In

24  *Burns v. Elrod*, 509 F.2d 1133 (7th Cir. 1975), the Seventh Circuit held that plaintiffs' request for

25  an injunction should have been granted – even though plaintiffs' proposed injunction required

26  employee reinstatement, which is arguably "mandatory" in nature.  *Id*. at 1135–36.  The Supreme

27  Court affirmed, emphasizing that "the loss of First Amendment freedoms, for even minimal periods

28

1  of time, unquestionably constitutes irreparable injury." *See* 427 U.S. 347, 373 (1976); *see also*

2  *Arcamuzi*, 819 F.2d at 938–39.

3      Finally, although SkyWest repeatedly attempts to characterize Plaintiffs' requested relief as

4  somehow extraordinary or unprecedented, the law is also clear that the Court is "free to fashion

5  appropriate civil remedies . . . where necessary to ensure the full effectiveness" of the RLA's

6  purpose. *Burke*, 433 F.2d at 1033; *see also CSX Transp. Inc. v. Marquar*, 980 F.2d 359, 367 (6th

7  Cir.1992) (courts have "the power to enforce the RLA with any appropriate remedy"). Indeed, "[i]t

8  is the duty of a court of equity granting injunctive relief" to protect "all . . . whose interests the

9  injunction may affect." *Bhd. of Locomotive Eng'rs v. Missouri-Kan.-Tex. R. Co.,* 363 U.S. 528, 532

10  (1960) (under the RLA, quoting *Inland Steel Co. v. United States*, 306 U.S. 153, 157 (1939)); *see*

11  *also Bresgal v. Brock*, 843 F.2d 1163, 1170–71 (9th Cir. 1987) (injunction is not "made over-broad

12  by extending benefit or protection to persons other than prevailing parties in the lawsuit, "even if it

13  is not a class action if such breadth is necessary to give prevailing parties the relief to which they are

14  entitled.").

15  **II.  Plaintiffs Have Demonstrated an Overwhelming Likelihood of Success on the Merits of**
    **Their Claims.**

16

17      **A.  SkyWest Misrepresents the Holdings in *Texas & N.O.R. Co.* and *Adams* and**
        **Misstates the Applicable Legal Standard.**

18      SkyWest misrepresents the Supreme Court's in *Texas & N.O.R. Co.* to contend that

19  Plaintiffs must demonstrate SkyWest has "corrupted or overr[idden]" their will. *See* 281 U.S. at

20  568; Am. Opp. at 13. This was *not* the holding in *Texas & N.O.R.*.

21      As an initial matter, the Supreme Court used the "corrupt or override" phrase only when

22  analyzing the meaning of the term "influence" in RLA Section 2, Third. The Court recognized that

23  Section 2, Third also separately prohibits employer "interference," and the Court never stated or

24  even implied that showing a corrupted or overridden will is required to prove unlawful interference.

25  *See* 45 U.S.C. §152, Third ("neither party shall in any way interfere with . . . the other in its choice

26  of representatives."); *Texas & N.O.R.*, 281 U.S. at 568 (stating only that "interference" is a "well-

27  understood concept[] of the law" without offering definition). Indeed, even with respect to the term

28  "influence," the Supreme Court made clear that proof of a corrupted or overridden will is merely

1   one type of showing that could be sufficient. *Texas & N.O.R.*, 281 U.S. at 568. The Court

2   recognized that "influence" also means "pressure" or the "use of . . . authority" to induce employee

3   action that would detract from the protected right to organize. *Id.* Finally, *Texas & N.O.R.* only

4   considered a claim under RLA Section 2, Third because RLA Section 2, Fourth had yet to be

5   enacted. *See Trans World Airlines, Inc. v. Ind. Fed'n of Flight Attendants*, 489 U.S. 426, 440

6   (1989) (Section 2, Fourth enacted in 1934); *cf. Texas & N.O.R.*, 281 U.S. at 548 (decided in 1930).

7       SkyWest also misrepresents the holding in *Adams v. Federal Express Corp.*, 1975 WL 1143

8   (W.D. Tenn.) ("*Adams I*"), to suggest that Plaintiffs must demonstrate a "practice of discharging

9   employees" or a specific intent "to violate the RLA." *See* Am. Opp. at 13. Nothing in *Adams I*

10  supports this view, as the court merely noted that the defendant had not engaged in this type of

11  conduct without suggesting that such proof was required. In fact, the court held in *Adams I* that the

12  plaintiffs *had* demonstrated a possibility of success on the merits of their RLA claims,

13  notwithstanding the court's conclusion that the company had not engaged in a "practice" of

14  discharging employees or acted with a specific intent to violate the statute. *Id.* at *2.

15      The court then *expressly rejected* the very same argument SkyWest makes now only a few

16  years later when it granted permanent injunctive relief to the plaintiffs in the *Adams* case. In

17  opposition to plaintiffs' motion for permanent injunctive relief, FedEx argued to the court that

18  granting an injunction would be inconsistent with its earlier findings that the company had not

19  engaged in a "practice of discharging employees" and had not acted in a "conscious concerted

20  attempt" to violate the statute. *See Adams v. Federal Express Corp.*, 470 F.Supp. 1356, 1374 (W.D.

21  Tenn. 1979) ("*Adams II*"), *aff'd*, 654 F.2d 452 (6th Cir. 1981). The court rejected this mis-reading

22  of its earlier decision, holding that FedEx had violated the Act, and that neither a "practice of

23  discharging employees" nor a specific intent to violate the statute was required to demonstrate

24  unlawful conduct. *Id.* Further, the *Adams II* court specifically held that an employer prohibition

25  against union insignia violates the statute. *Id.* at 1362–63; *compare* Compl. ¶¶26-29.

26

27

28

**B.  Plaintiffs Are More Than Likely to Succeed on the Merits of Their Claims that SkyWest Unlawfully Interfered with Their Expressive and Associational Rights.**

**1.  Defendant's Argument Regarding ALPA Lanyards Flies in the Face of Controlling Precedent.**

As Plaintiffs explained in their opening brief, RLA Section 2, Third and Fourth protects their right to express support for the OC's campaign by wearing union insignia. *See* Mot. at 12–13. Defendant's counter-argument that SkyWest pilots have no right to wear ALPA lanyards flies in the face of binding Ninth Circuit case law.[2]

In *Pay 'N Save Corp. v. NLRB*, 641 F.2d 697 (9th Cir. 1981), the Ninth Circuit held that absent "special considerations," an employer may not prohibit employees from wearing union insignia in connection with protected activity, such as a union organizing campaign. 641 F.2d at 700-01.  Indeed, in *Pay 'N Save,* the Ninth Circuit *rejected* an employer's argument that "concern about the image projected to the public" justified its prohibition against union insignia where, as here, the insignia-wearing was "part of a[] concerted campaign to organize the employees." *Id*. at 701; *see also Woonsocket Health Centre,* 245 NLRB 652, 658 (1979) ("mere fact that an employer has a dress code . . . is not a special circumstance which warrants depriving employees of [the] right" to "wear[] union insignia").

In so holding, the Ninth Circuit in *Pay 'N Save* expressly distinguished *NLRB v. Harrah's*, 337 F.2d 177 (9th Cir. 1964), on which Defendant relies.  Am. Opp. at 23.  The *Harrah's* court found the button-wearing unprotected *because* it was not linked to any "purpose protected by the act." *Harrah's*, 337 F.2d at 179.  In *Harrah's*, unlike *Pay 'N Save* and this case, "[t]here was no attempt to organize the employees." *Id.*  And, as the *Pay 'N Save* court explained, because the

---

[2]  NLRA precedent is applicable where, as here, employees seek to engage in expressive organizing activity. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 882-83 & n.10 (9th Cir. 2002).  Protections for union insignia derive from the NLRA's general rights to organize and to engage in union activity, and not the specific statutory phrase "other concerted activities" that appears exclusively in the NLRA. *See Republic Aviation Corp. v. NLRB*, 324 U.S. 793, 802 n.7, 803 (1945) ("the right of employees to wear union insignia at work has long been recognized as a reasonable and legitimate form of union activity" and "prohibitions against the wearing of insignia must fall as interferences with union organization").  Protections for the right to wear union insignia are thus equally applicable to the RLA, which similarly protects the rights to organize and to engage in union activity free from employer interference. 45 U.S.C. §152, Third and Fourth.

1  button-wearing in *Harrah's* was itself unprotected (because unconnected to organizing or other

2  protected activity), the court's observation about a uniform policy constituting a "special

3  consideration" was pure "dictum, unnecessary to the decision of the case." *Pay 'N Save*, 641 F.2d at

4  701.  Defendant's uniform policy and purported effort to maintain its public image, Amended Opp.

5  at 23, do not constitute "special considerations" warranting prohibition of ALPA lanyards as part of

6  the organizing campaign. *Pay 'N Save*, 641 F.2d at 701.[3]

7     In any event, SkyWest does not dispute that discriminatory enforcement of a uniform policy

8  is unlawful.  *See id.* (disparate application of rule against wearing of political or controversial

9  buttons unlawful); Am. Opp. at 23.  Instead, it ascribes the existence of non-ALPA, non-SkyWest

10 lanyards to occasional "lapses" in enforcement.  *Id*. at 24.  This argument is factually and legally

11 wanting.  As the evidence at the hearing will show, Defendant consistently prohibits ALPA

12 lanyards, while permitting other non-SkyWest lanyards.  But even if Defendant's discriminatory

13 conduct were only occasional, it would still be unlawful.  In *NLRB v. Essex Wire Corp.*, 245 F.2d

14 589 (9th Cir. 1957), a case involving discriminatory prohibition of union insignia, the Ninth Circuit

15 rejected an employer's argument that its inconsistent enforcement was lawful because "isolated and

16 sporadic."  *Id.* at 593.  The conduct here, as in *Essex*, involves "positive and purposeful action by

17 management in the form of a specific and direct order or demand."  *Id.* at 594; *see, e.g.,* Boehm

18 Decl. ISO TRO ¶¶2–9 (Doc. No. 6); Shrier Decl. ISO TRO ¶¶6–10 (Doc. No. 7).

---

[3]  Defendant's reliance on *Burger King Corp. v. NLRB*, 725 F.2d 1053, 1055 (6th Cir. 1984), is similarly misplaced.  Am. Opp. at 23.  Even in the Sixth Circuit, the vitality of *Burger King* is seriously in doubt.  *Meijer, Inc. v. NLRB*, 130 F.3d 1209, 1215-16 (6th Cir. 1997).  In any event, Sixth Circuit case law cannot trump the Ninth Circuit's clear rejection of the "public image" rationale in *Pay 'N Save*.  Furthermore, as the facts at trial will show, SkyWest does not implement its uniform policy in a non-discriminatory fashion.  Defendant's reliance on *INS v. FLRA*, 855 F.2d 1454 (9th Cir. 1988), is also unavailing.  The Ninth Circuit found no protected right to wear insignia while in uniform in that case, reasoning that employees did not "enjoy greater rights" under the Federal Service Labor-Management Relations Act than the NLRA with respect to union insignia.  *Id.* at 1461.  Like *Harrah's*, but unlike this case, the insignia-wearing in *INS v. FLRA* was *unconnected* to any organizing effort or other statutorily protected activity.  *Id.* at 1457.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2. SkyWest Offers No Persuasive Factual or Legal Response to Plaintiffs' Argument Regarding Distribution of Union Literature.

SkyWest's defense to its interference with Plaintiffs' distribution of union literature through bulletin boards and other locations in crew rooms is also legally and factually meritless.

It is well-established that employers may not prohibit employees from distributing union literature on non-work time and in non-work areas, such as the general bulletin boards and crew lounges at issue here. *See, e.g., Consolidated Diesel Co. v. NLRB*, 263 F.3d 345, 354 (4th Cir. 2001); *NLRB v. Lummus Indus.*, 679 F.2d 229, 233 (11th Cir. 1982). SkyWest's own written rules acknowledge as much: "Employees may distribute literature or products" in "cafeterias, lunch/break/*crew rooms*, restrooms, and parking lots" "during their scheduled days and shifts but only during non-work time." Decl. of Klen Brooks Ex. B, ¶6D (emphasis added) (Doc. No. 63).

Any requirement that employees obtain advance permission to post union materials on the general bulletin boards or otherwise distribute such materials in crew lounges would be unlawful. *McDonnell Douglas Corp.*, 240 NLRB 794, 794 (1979) (unlawful to "forbid . . . employees, by rule or otherwise, to . . . distribut[e] literature on company property in non-work areas, during non-working time, and within a reasonable time before or after their shifts, without management's permission"); *but see* Decl. of Roy Glassey ¶2 (to "post[] non-company materials on bulletin boards" must "first obtain[] Company approval") (Doc. No. 62).

Defendant relies on *Honeywell, Inc.*, 262 NLRB 1402 (1982), to argue that employees do not have an absolute right to use a company bulletin board. That case, however, did not discuss the location of the bulletin boards, *i.e.*, whether they were in non-work locations. Thus, it was not a blanket curtailment of the broad right to distribute union literature in non-work areas during non-work times. In any event, *Honeywell* made clear that where, as here, "an employer permits . . . *any* nonwork related matters, it may not 'validly discriminate against notices of union meetings which employees also posted.' *Id.* at 1402 (emphasis added) (employer's prohibition of union notices unlawful where personal notices permitted). Defendant's "occasional lapses" in enforcement argument is no defense. As *Honeywell* makes clear, Defendant's subjective "motivation" is "irrelevant"; as long as it permits "*any* nonwork related matters," it may not discriminate against

1    union literature.  *Id.* (emphasis added).

2    **C.    Plaintiffs Are More Than Likely to Succeed on the Merits of Their SAPA-Related Claims.**

3    **1.    The Court Has Jurisdiction over Plaintiffs' SAPA Claims.**

4    In its amended opposition brief SkyWest relies primarily on a fall-back jurisdictional

5    argument regarding the role of the NMB.  Contrary to SkyWest's jurisdictional theory, the Ninth

6    Circuit has repeatedly held that it has jurisdiction to adjudicate employees' claims of unlawful

7    employer interference during an organizing campaign.  *See, e.g.*, *Burke*, 433 F.2d at 1033.

8    SkyWest's alternative jurisdictional theory would leave Plaintiffs without a remedy and render their

9    statutorily protected rights "illusory" – in direct contravention of controlling Supreme Court

10   precedent.  *Chicago & N.W. Ry. Co. v. United Transp. Union*, 402 U.S. 570, 578 (1971).  Further,

11   neither of the bases for NMB jurisdiction exists in this case (unlike in each of the inapposite cases

12   SkyWest cites in its brief).  *See* 45 U.S.C. §152, Ninth.[4]

13

14   **(a)    Courts Routinely Exercise Jurisdiction over Claims that an Employer Has Violated RLA Section 2, Third and Fourth.**

15

16   Plaintiffs allege that SkyWest has violated their expressive and associational rights under

17   RLA Section 2, Third and Fourth, by funding and providing discriminatory assistance to SAPA, a

18   ───────────────

19   [4]    Defendant also argues in a footnote that the OC lacks standing.  Am. Opp. at 11 n.2.
First, the court need not reach this issue because it is undisputed that the individual pilot Plaintiffs
20   possess standing.  *See, e.g.*, *Village of Arlington Heights v. Met. Housing Dev. Corp.*, 429 U.S. 252,
264 n.9 (1997).  Second, the argument is meritless.  The OC has associational standing because its
21   members (consisting exclusively of SkyWest pilots) have standing in their own right, the purpose of
this lawsuit is germane to the OC's purpose of organizing SkyWest pilots, and the participation of
22   individual OC members is not necessary because Plaintiffs seek only injunctive relief.  *See
generally Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333 (1977).  As a result, courts find
23   associations to have standing to challenge interference with RLA protected activity on behalf of
member employees.  *See, e.g.*, *Railway Labor Executives' Assn. v. Boston & Maine Corp.*, 808 F.2d
24   150, 153 & n. 8, 158 (1st Cir. 1986) (associational standing in suit involving interference with
Section 2, Fourth rights).  Third, dismissal of the OC would not affect the outcome of this case.
25   This Court can provide relief to OC members and other SkyWest pilots whether or not the OC
remains a named plaintiff.  *See Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("The scope of
26   injunctive relief is dictated by the extent of the violation established..."); *see also Bresgal*, 843 F.2d
at 1170–71 (class-wide relief appropriate even in non-class case if necessary "to give prevailing
27   parties the relief to which they are entitled"); *Missouri-Kan.-Tex. R.*, 363 U.S. at 532 ("duty of
court" to protect "all . . . whose interests the injunction may affect").
28

1  company union.  *See* Compl. ¶¶27-39; *see also Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515,

2  543–44  (1937) (RLA enacted and amended in part to eliminate company unions).

3        Under controlling Ninth Circuit case law, "[f]ederal courts have jurisdiction to enforce the

4  provisions of 45 U.S.C. §152, Third and Fourth, prohibiting interference with effective

5  representation and organization."  *See Transam. Airlines*, 817 F.2d at 514 (citing cases).  The

6  leading RLA treatise confirms: "[T]he courts generally have exercised jurisdiction over actions

7  brought against carriers for interference with employees' rights under RLA Sections 2, Third and

8  Fourth, during union organizing drives."  ABA, The Railway Labor Act Ch. 5.III.A., at 257 (2d ed.

9  2005) (Prestel Decl. Ex. 2).  "[C]ourts have held or implied that . . . the NMB's powers under

10  Section 2, Ninth, to determine the identity of the employees' representative . . . [is not] the exclusive

11  means for protecting employees' rights under Section 2, Third and Fourth."  *Id*. (citing cases).

12        Courts, including the Supreme Court and the Ninth Circuit, have repeatedly exercised

13  jurisdiction over employees' claims that their employers violated RLA Section 2, Third and Fourth

14  during union organizing campaigns.  In *Burke*, the Ninth Circuit held that it had jurisdiction over the

15  plaintiff's claim that his employer violated RLA Section 2, Fourth by firing him for his participation

16  in a pre-certification organizing effort.  *See* 433 F.2d at 1032–34 (reversing district court's dismissal

17  for lack of jurisdiction).  *Burke* emphasized that judicial enforcement of RLA rights is particularly

18  important during an organizing campaign, before a union that can protect employees' rights is firmly

19  in place.  *Id*. at 1033.  "To hold . . . that [plaintiff] may not bring suit for a violation of section 2

20  (Fourth) would leave a gap in the enforcement of that section which would blunt the effectiveness of

21  the congressional purpose."  *Id*.  "So long as a carrier's interference with its employees' right to

22  freely organize were swift and forceful enough to prevent organization of a union altogether or to

23  coerce employees into joining a company dominated union, the carrier would have acted with

24  impunity."  *Id*.  (footnote omitted); *see also Virginian Railway*, 300 U.S. at 543–44 (affirming

25  injunction prohibiting employer from violating RLA Section 2, Third and Fourth, by "interfer[ing] .

26  . . with the free choice of representatives by its employees" and "fostering . . . [a] company union").[5]

27  ───────────────

28        [5] SkyWest contends that *Virginian Railway* is distinguishable because the employer's illegal
          (continued...)

1   *Accord Adams II*, 470 F.Supp. at 1361–63, 1367–68, 1372 (court had jurisdiction over the

2   plaintiffs' claims that FedEx unlawfully interfered with RLA-protected rights during an organizing

3   campaign by discharging one employee for wearing union insignia and by transferring another

4   employee because of his union activity), *aff'd*, 654 F.2d 452 (6th Cir. 1981); *Adams v. Federal Exp.*

5   *Corp.*, 547 F.2d 319, 321 (6th Cir. 1976); *Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661 (7th Cir.

6   1996); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 220 n.2 (5th Cir. 1984); *Stepanischen v.*

7   *Merchants Despatch Transp. Corp.*, 722 F.2d 922 (1st Cir.1983); *Union of Prof'l Airmen v. Alaska*

8   *Aeronautical Indus., Inc.*, 1977 WL 1714, \*2 (D. Ala. Apr. 26, 1977).[6]

9       Indeed, courts have also repeatedly asserted jurisdiction over cases arising out of organizing

10  drives where, as here, the company claims that its employees are already represented and the

11  company interferes with employees' efforts to obtain alternative representation.  In *Fennessy v.*

12  *Southwest Airlines*, 91 F.3d 1359, 1363–64 (9th Cir. 1996), the Ninth Circuit exercised jurisdiction

13  over an employee's claim that Southwest interfered with his right under RLA Section 2, Fourth to

14  engage in organizing activities intended to replace the airline employees' existing union with the

15  Teamsters.  *Id*. at 1361–64 (citing cases).  In *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th

16  Cir. 2002), the Ninth Circuit held that it had subject matter jurisdiction over plaintiff's claim that

17  Hawaiian Airlines violated his rights under RLA Section 2, Third and Fourth when it interfered with

18  his attempts to organize a rival union.  *Id*. at 881–86.  In neither of these cases did the existence of

19  the organizing drive or an incumbent representative deprive the federal court of jurisdiction over

20  employees' claims of interference.

21

22          [5](...continued)

23  activities in that case followed an NMB certification.  But there is no support in *Virginian Railway*
    for limiting its holding or analysis to the post-certification context.  To the contrary, the Ninth

24  Circuit has squarely held that judicial enforcement of employees' RLA rights is particularly
    appropriate in *pre-certification* cases, when organizing drives are in their initial stages and no

25  certified union is yet available to protect its employees' rights.  *See, e.g.*, *Ass'n of Flight Attendants*
    *v. Horizon Air Indus.*, 280 F.3d 901, 905–06 (9th Cir. 2002) ("judicial intervention" more

26  appropriate in pre-certification cases than in post-certification cases).

27          [6]  *See also AFM Pilots Ass'n v. AFM Corp.*, 1982 WL 2030, \*1 (D. Mass. 1982); *Hess v.*

28  *Resort Air, Inc.*, 686 F.Supp. 741 (E.D. Mo. 1988); *Lum v. China Airlines Co.*, 413 F.Supp. 613 (D.
    Hawaii 1976); *Griffin v. Piedmont Aviation, Inc.*, 384 F.Supp. 1070 (N.D. Ga. 1974).

1    Plaintiffs allege that SkyWest has violated RLA Section 2, Third and Fourth, by interfering

2  with its employees' organizing campaign.  *See* Compl. ¶¶42-47.  Because Plaintiffs' allegations are

3  materially indistinguishable from the unlawful interference claims at issue in *Virginian Railway*,

4  *Burke*, *Fennessy*, *Konop* and similar cases, this Court has jurisdiction and has a "duty" to enforce

5  Plaintiffs' RLA-protected rights.  *See Arcamuzi*, 819 F.2d at 939.[7]

6              **(b)    The NMB Cannot Grant Plaintiffs Effective Relief, and This
                        Court Therefore Has Jurisdiction to Protect Plaintiffs' Rights.**
7

8        Courts must enforce employees' RLA-protected rights when the failure to do so would

9  render those rights "illusory."  *Chicago & N.W. Ry.*, 402 U.S. at 578.  But SkyWest's erroneous

10 jurisdictional argument – if accepted – would lead to exactly that prohibited result. As we explain,

11 SkyWest's jurisdictional theory would permit the airline to violate Plaintiffs' rights "with

12 impunity," *Burke*, 433 F.2d at 1033, would render Plaintiffs' rights "illusory," *Chicago & N.W. Ry.*,

13 402 U.S. at 578, and would frustrate Congress' purposes and the entire statutory scheme – all in

14 violation of the Ninth Circuit's and Supreme Court's teachings regarding the importance of

15 enforcing employees' RLA rights.

16      Congress enacted the RLA to protect employees' right to conduct their own independent

17 organizing campaigns, free from carrier interference.  *See, e.g.*, 45 U.S.C. §151a (RLA intended to

18 provide "for the complete independence . . . of employees" regarding organization).  Congress

19 added Section 2, Ninth to the statute in 1934 in order to strengthen the Act's protections for

20 independent union organizing – not to weaken them. *Virginian Ry.*, 300 U.S. at 543–54; *Machinists

21 v. Street*, 367 U.S. 740, 759 (1961) ("primary purpose of the major revisions made in 1934 was to

22 strengthen the position of the labor organizations vis-a -vis the carriers"); *Gen. Comm. of

23 Adjustment v. Missouri-Kan.-Tex. R. Co.*, 320 U.S. 323, 330 (1943) ("[f]urther protection was

24

25      [7] SkyWest claims that *Konop* is distinguishable.  Am. Opp. at 12 n.3.  But its own
26 description of the case shows it is directly controlling.  *Konop* held that the district court had
   jurisdiction over plaintiff's claim that Hawaiian Airlines violated RLA Section 2, Fourth by
27 providing unlawful assistance to its employees' incumbent representative and by interfering with
   plaintiff's efforts to organize a new union.  Similarly, Plaintiffs in this case allege that SkyWest
28 violated Section 2, Fourth, by providing unlawful assistance to SAPA and by interfering with their
   efforts to organize a new union.

1  accorded" employees' protected rights by the 1934 amendments).  Thus, Section 2, Ninth leaves it

2  to employees and their representatives – not to carriers or the NMB – to determine when the

3  organizing campaign has reached the point where an election is appropriate.  *See* Section 2, Ninth;

4  *Railway Labor Execs.  Ass'n v. NMB*, 29 F.3d 655, 658 (D.C. Cir. 1994) (en banc), *amended* 38

5  F.3d 1224 (D.C. Cir.), *cert. denied*, 514 U.S. 1032 (1995) (only employee representatives may call

6  for NMB election; carrier may not invoke Board's procedures, nor may NMB invoke its own

7  jurisdiction absent an employee or union request).

8       This discretion is critically important to independent union organizing because an employee

9  committee with only 35% support (the minimum required for NMB jurisdiction when employees are

10  currently unrepresented) would be highly unlikely to prevail in an NMB election.  Under the RLA, a

11  majority of employees must vote for the election to be valid, and a majority of those voting must

12  support the union.  *See* 29 C.F.R. §1206.4(b); *id.* §1206.1; *see also* 45 U.S.C. §152, Fourth

13  ("majority . . . shall have the right to determine" representatives).  Because many employees

14  opposed to unionization are unlikely to vote, this means that union organizers must gather absolute

15  majority support before an election becomes worthwhile.  Moreover, employers' anti-union

16  campaigns routinely reduce support for unionization in the period before an election.  *See* H.R.

17  Rep. 110–23, at 20–23 (explaining that "many employers insist" on elections "because they are a

18  tool for killing an organizing drive"); *see also, e.g., Scott ex rel. NLRB v. Stephen Dunn &*

19  *Associates*, 241 F.3d 652, 668 (9th Cir. 2001).

20       Under SkyWest's jurisdictional theory, however, employees are deprived of the control over

21  their organizing campaigns that the RLA was intended to protect.  According to SkyWest, a union

22  that reaches 35% support may either (1) immediately invoke the NMB's procedures and call for an

23  election (which it will surely lose, for the reasons given above) or (2) continue to try to build

24  support among employees without any of the protections afforded by the RLA (because, under

25  SkyWest's theory, the courts lose jurisdiction to enforce those rights as soon as a union's support

26  reaches 35%).  *See, e.g.*, Am. Opp. at 10.  In other words, SkyWest's approach would force any

27  union with 35% to invoke NMB jurisdiction in an attempt merely to retain the RLA's protections –

28  thereby permitting an employer's illegal conduct effectively to determine when a union invokes the

1    NMB's jurisdiction, thereby depriving employees and their representatives of the independent

2    control and truly free choice the RLA was intended to ensure.

3         There is no support for this approach in the NMB's 35% regulation, which nowhere purports

4    to *require* that an employee organization invoke the Board's election procedures when it meets this

5    minimum support requirement.  *See* 29 C.F.R. §1206.2; 45 U.S.C. §152, Ninth (leaving invocation

6    of Board's process to union or employee "request").  Further, SkyWest's approach leads inevitably

7    to the result that the Ninth Circuit warned against in *Burke*.  "So long as [SkyWest's] interference

8    with its employees' right to freely organize were swift and forceful enough," the company could

9    prevent the union from ever achieving more-than-35% support, as is necessary to invoke the NMB's

10   election process with any hope of success.  *Burke*, 433 F.2d at 1033. And once an organizing

11   campaign reaches the NMB's 35% "floor," courts would instantly lose jurisdiction to protect

12   employees' RLA-protected expressive and associational rights, leaving employers to "act[] with

13   impunity." *Id*.

14        Indeed, even if a union with 35% support *did* invoke the NMB's election procedures, it

15   would still be left without any real ability to enforce employees' rights under RLA Section 2, Third

16   and Fourth.  Unlike the NLRB, the NMB does not have any adjudicatory authority to decide unfair

17   labor practices.  *See Horizon Air Indus. v. NMB*, 232 F.3d 1126, 1133 (9th Cir. 2000).  The NMB

18   may supervise elections, but the Board is not permitted even to investigate a union's claims of

19   improper interference until *after* the election is conducted (absent undefined "extraordinary

20   circumstances").  *See* NMB Rep. Manual §17.0, at 24 (2005) (Prestel Decl. Ex. 3).  And, even then,

21   the NMB's investigation may take months, and the only remedy the NMB can provide is a re-run

22   election – long after the "irreparable" harm has already been done.  *Arcamuzi*, 819 F.2d at 938;

23   *Scott*, 241 F.3d at 668 ("new election will leave the union disadvantaged by the same unfair labor

24   practices which caused it to lose the first election" and "the union's position . . . may have

25   deteriorated to such a degree that effective representation is no longer possible.").[8]

26

27        [8] Further, once a union is certified following an election, no challenger may file a request for
     NMB intervention for two years.  If less than a majority of employees vote, a new request is barred

28
                                                                                (continued...)

1   Given the limited scope of the NMB's investigatory and remedial authority, accepting

2   SkyWest's jurisdictional theory would effectively render Plaintiffs' RLA-protected rights "illusory"

3   – contrary to the holdings in *Chicago & Northwest Railway*, *Burke*, and their progeny.

4                    **(c)    SkyWest's Jurisdictional Argument Finds No Support in the Statute.**

5   SkyWest erroneously relies on RLA Section 2, Ninth to argue that the NMB has exclusive

6   jurisdiction over Plaintiffs' unlawful interference claims.  Section 2, Ninth provides, *inter alia*: "If

7   any dispute shall arise among a carrier's employees as to who are the representatives of such

8   employees designated and authorized in accordance with the requirements of this chapter, it shall be

9   the duty of the Mediation Board, upon request of either party to the dispute, to investigate such

10  dispute . . . ."  45 U.S.C. §152, Ninth.

11  Although SkyWest asserts that this case involves a "representational dispute" within the

12  meaning of Section 2, Ninth, SkyWest never defines "representational dispute," never explains how

13  this case qualifies, and never demonstrates that the requirements for NMB jurisdiction are met.  In

14  fact, neither of the bases for NMB jurisdiction exists here.

15  ***First basis for NMB jurisdiction: an employee request for an election.***  RLA Section 2,

16  Ninth states that the NMB shall exercise jurisdiction "upon request of either party to the dispute."

17  45 U.S.C. §152, Ninth.  Only employee representatives are permitted to make a request for an

18  election under this Section.  Carriers are not permitted to invoke the Board's processes.  *Railway*

19  *Labor Execs.*, 29 F.3d at 658.  Nor is the NMB itself permitted to assert jurisdiction without an

20  employee or union request.  *Id*.

21  Once an employee or employee representative requests NMB intervention pursuant to

22  Section 2, Ninth, the Board's jurisdiction is exclusive in the sense that courts may not step in to

23  provide relief that would effectively preempt an ongoing NMB proceeding or reverse a Board

24  decision.  *See id*. at 659.  But "the Board's authority under Section 2, Ninth is 'exclusive' only '*if*

25  the present dispute falls within §2, Ninth,'" *and* "[t]he duty of the [NMB] to investigate [a

26  representation dispute] does not arise except upon request of either party, *i.e.*, employees."  *Railway*

27

28        [8](...continued)
     for one year.  29 C.F.R. §1206.4.

1  *Labor Execs.*, 29 F.3d at 659 (quoting *Missouri-Kan.-Tex. R.R.*, 320 U.S. at 336).

2        Here, it is undisputed that *neither* ALPA *nor* SAPA has invoked the Board's jurisdiction by

3  submitting a request under Section 2, Ninth.  Accordingly, this ground for asserting NMB

4  jurisdiction is unavailable.[9]

5        ***Second basis for NMB jurisdiction: a dispute over representatives "designated and***

6  ***authorized in accordance with the requirements of this chapter."***  RLA Section 2, Ninth also

7  requires that there be a dispute regarding the "representative . . . designated and authorized in

8  accordance with the requirements of this chapter."  45 U.S.C. §152, Ninth.  A representative

9  "designated" or "authorized in accordance with the requirements of" the RLA is a representative

10 "determined" by a "majority" of the relevant bargaining unit.  *See* 45 U.S.C. §152, Fourth.

11       Once a dispute is brought to the NMB regarding the identity of the employees' RLA

12 "designated" and "authorized" representative, the NMB's jurisdiction is exclusive in the "narrow"

13 sense that only the NMB may actually conduct an election and certify a bargaining representative.

14 *See Railway Labor Execs.*, 29 F.3d at 659 ("the Board's role under Section 2, Ninth is very

15 narrow"); *see also* H.R. Rep. No. 1944, at 2 (Section 2, Ninth added to the statute to provide

16 "[m]achinery . . . for the taking of a secret ballot" by the NMB) (Prestel Decl. Ex. 4).  Courts may

17 not grant relief that certifies a particular union as employees' RLA representative, but there is no

18 _____

19      [9]  Although SkyWest asserts that Plaintiffs *must* invoke the NMB's processes because they
have gathered authorization cards from 35% of SkyWest pilots, the 35% figure on which SkyWest

20 relies is contained in an NMB regulation that merely sets a floor for the minimum showing of
support needed to file a "request" under Section 2, Ninth.  *See* 29 C.F.R. §1206.2.  This floor is

21 intended to preserve the NMB's resources by reducing the risk that the Board will invest time and
money in elections with little employee support.  *NLRB v. Metro-Truck Body, Inc.*, 613 F.2d 746,

22 749–50 (9th Cir. 1979) (describing NLRB's 30% requirement).  As discussed above, nothing in the
NMB's regulation purports to *require* employees or unions to invoke the Board's jurisdiction at the

23 35% level.  *See* 29 C.F.R. §1206.2.

24      Nor could the NMB impose this requirement, given the statute's provision leaving this
decision to employees or their representatives and case law holding that (1) the minimum support

25 requirement is "not . . . jurisdictional" and (2) the NMB cannot invoke its own jurisdiction.  *See
Metro-Truck*, 613 F.2d at 749–50; *Railway Labor Execs.*, 29 F.3d at 658.  Moreover, SkyWest

26 essentially asks this Court to *find* that Plaintiffs have gathered 35% support, but that finding – unlike

27 Plaintiffs' claims under RLA Section 2 – *is* within the NMB's exclusive jurisdiction.  *See Air
Canada v. NMB*, 478 F.Supp. 615, 618 (S.D.N.Y. 1980), *aff'd*, 659 F.2d 1057 (2d Cir.), *cert.*

28 *denied*, 454 U.S. 965 (1981).

1   evidence in the legislative history that Section 2, Ninth was intended otherwise to limit courts'

2   jurisdiction. *See Air Lines Employees*, 798 F.2d at 968; H.R. Rep. No. 1944, at 2 ("The bill does

3   not introduce any new principles into the existing Railway Labor Act.").

4           Here, SkyWest has failed to make *any* showing that there is a dispute regarding the identity

5   of the pilots' RLA "designated and authorized" representative.  Plaintiffs have never contended that

6   ALPA is the SkyWest pilots' RLA representative, and SAPA clearly is not a representative

7   "designated" or "authorized" within the meaning of the RLA. *See* discussion *supra* pp. 2-3.

8   Moreover, ALPA has not asked the Court for any relief that would interfere with the NMB's

9   "narrow" role. *Railway Labor Execs.*, 29 F.3d at 659.  None of ALPA's proposed relief would

10  require the Court to conduct an election or to count authorization cards. *But cf.* Amend. Opp. at 11

11  (asking Court to find that ALPA has gathered cards from 35% of employees, an irrelevant matter

12  over which the NMB has exclusive jurisdiction).  Nor has ALPA asked the Court to designate it as

13  the pilots' RLA representative or to order SkyWest to bargain with it.

14          ***The cases cited by SkyWest are inapposite.***  Unlike in this case, where neither of the two

15  statutory bases for NMB jurisdiction exists, every single case cited by SkyWest involves one of the

16  traditional grounds for NMB jurisdiction.

17          In several of SkyWest's cases, a party had already invoked the Board's certification

18  procedures, and the court could not grant the requested relief without interfering with the Board's

19  ongoing investigation or reversing a Board decision. *See, e.g.*, *Switchmen's Union v. NMB*, 320

20  U.S. 297 (1943) (court did not have jurisdiction to overturn NMB's certification of bargaining

21  representative; affirming the holdings in *Texas & N.O.R.* and *Virginian Railway* that Section 2,

22  Third and Fourth claims are, by contrast, within the courts' jurisdiction); *Railway Labor Execs.*, 29

23  F.3d at 661 (*Switchmen's* merely held that actual "certification of representatives" is an NMB

24  function).[10]

25  _____

26          [10] *See also Horizon Air Indus. v. NMB*, 232 F.3d 1126, 1131 (9th Cir. 2000) (employer
    sought to overturn NMB finding); *Int'l Bhd. of Teamsters v. Texas Int'l Airlines Inc.*, 717 F.2d 157,
27  160 (5th Cir. 1983) (union invoked NMB jurisdiction); *Int'l Flight Attendants v. Cooper*, 141 F.3d
28  900, 901–03 (8th Cir. 1998) (relief would effectively overturn NMB's representation

                                                                                (continued...)

1    In other cases, the relief requested would have required the courts to conduct an election or

2    to designate an RLA representative – acts properly left to the Board. *See Missouri-Kan.-Tex. R.*,

3    320 U.S. at 326, 329 (court did not have jurisdiction to "declare[] [plaintiffs] to be the sole

4    representative" of railroad's employees; but affirming that Section 2, Fourth is "enforcible in an

5    appropriate suit"); *Texas Int'l Airlines Inc.*, 717 F.2d at 160–61 (court could not grant interim relief

6    that would effectively "determin[e] . . . employee representation").[11]

7           **2.     SkyWest's Arguments Regarding the Merits of Plaintiffs' SAPA Claims
                      Fail as a Matter of Law.**

8

9    SkyWest offers both factual and legal contentions in response to Plaintiffs' SAPA-related

10   _____

11          [10](...continued)

12   determination); *Texidor v .Ceresa*, 590 F.2d 357 (1st Cir. 1978) (same); *Railway Labor Executives'
     Ass'n v. Wheeling & Lake Erie Ry.*, 756 F.Supp. 249, 252 n.9 (E.D. Va.1991) (party had already

13   invoked NMB procedures and court could not review those NMB proceedings); *Am. Train
     Dispatchers Ass'n v. Denver & R.G.W.R. Co.*, 614 F.Supp. 543, 545 (D. Colo. 1985)

14   (simultaneously pending NMB proceedings); *Aircraft Mechanics Fraternal Ass'n v. United Airlines,
     Inc.*, 406 F.Supp. 492 (N.D. Cal. 1976) (party had already invoked NMB processes).

15          Although SkyWest relies heavily on the *Aircraft Mechanics* case, *Aircraft Mechanics* is

16   distinguishable because in that case – unlike here – a party had already invoked the NMB's
     jurisdiction. *See* 406 F.Supp. at 495. Much of the analysis in *Aircraft Mechanics* actually supports

17   jurisdiction in this case. Judge Conti recognized that courts do have jurisdiction over claims of
     "company unionism," and that they may intervene when an employer's unlawful interference could

18   "preclude any union . . . from gaining the requisite quantum of support." *Id.* at 501–02, 509. To the
     extent Judge Conti suggested that a union with 35% support *must* invoke the Board's jurisdiction,

19   that portion of the *Airline Mechanics* case is dicta, finds no support in the relevant regulation, and is

20   inconsistent with Section 2, Ninth, which leaves the decision to invoke the NMB's jurisdiction to
     the employees' or union's choice. *See* 29 C.F.R. §1206.2; 45 U.S.C. §152, Ninth; *supra* n.9.

21

22          [11]  *See also United Transp. Union v. Gateway Western R. Co.*, 78 F.3d 1208, 1213–14 (7th
     Cir. 1996) (court could not grant relief that would designate representative for new company

23   subsidiary); *United Transp. Union v. United States*, 987 F.2d 784 (D.C. Cir. 1993) (court could not
     designate RLA representative); *Air Line Employees Ass'n, Int'l v. Republic Airlines, Inc.*, 798 F.2d

24   967, 968 (7th Cir. 1986) (court could not designate employee representative pending NMB

25   resolution); *Air Lines Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*, 656 F.2d 16, 24 (2d Cir. 1981)
     (relief requested "would necessarily involve this Court in determining, as a substantive matter,

26   whether ALPA is the proper representative"); *Texidor*, 590 F.2d at 359 (court could not grant
     requested relief that included conducting an election and decertifying an RLA representative);

27   *Miller v. Norfolk S. R. Co.*, 183 F.Supp.2d 996, 1000 (N.D. Ohio 2002) (relief requested would have

28   designated employees' collective bargaining representative).

1  claims.  Most of SkyWest's factual assertions regarding SAPA are incorrect or misleadingly

2  incomplete, as explained *supra* pp. 2-3 and as we will demonstrate during the June 7 evidentiary

3  hearing.  The rest of SkyWest's factual contentions are either irrelevant or actually support

4  Plaintiffs' claims.  *See, e.g.*, Livingston Decl. ¶11 (SkyWest pays SAPA's expenses).

5       SkyWest's legal theories fare no better.  RLA Section 2, Third prohibits any carrier

6  interference in the choice of employees' representatives, and Section 2, Fourth expressly prohibits

7  the use of carrier funds "in maintaining or assisting or contributing to any labor organization, labor

8  representative, or other agency of collective bargaining."  45 U.S.C. §152, Fourth.  More than 75

9  years ago, the Supreme Court held that company unions violate the RLA's protections against

10 employer interference.  *See Texas & N.O.R.*, 281 U.S. at 560, 569; *see also Virginian Ry.*, 300 U.S.

11 at 543–44.  *Texas & N.O.R.* found the following to be persuasive evidence of unlawful carrier

12 interference—evidence that the carrier (1) permitted employees to devote their time to the alleged

13 company union without deduction from pay, (2) paid the company union's expenses, (3) kept track

14 of the company union's recruitment efforts, and (4) discriminated against supporters of a rival

15 union.  *Texas & N.O.R.*, 281 U.S. at 560.  *see also Horizon Air Indus., Inc.*, 232 F.3d at 1135 (use of

16 a pre-existing employee committee to expand benefits, material changes in the activities of such

17 committee, and carrier campaigns indicating that committee is a substitute for true bargaining

18 representative as evidence of unlawful interference).

19      In addition, in a case addressing anti-employer interference provisions in the National Labor

20 Relations Act that are similar to provisions in the RLA, the Supreme Court held that an employer

21 acts unlawfully if it recognizes a representative of its employees without first establishing that the

22 recognized organization actually enjoys majority support (regardless of the employer's good faith

23 "belief" about the organization's support).  *See Int'l Ladies' Garment Workers' Union v. NLRB*, 366

24 U.S. 731, 732–33 (1961).  More recently, the Ninth Circuit has held that the RLA prohibits

25 "employers from providing assistance to a union or labor faction" and prohibits "assist[ing] one

26 union faction over another."  *Konop*, 302 F.3d at 885.

27      The evidence here will establish that SkyWest wholly funds SAPA, that it permits

28 employees to devote their time to SAPA without penalty, that it pays SAPA representatives for their

1   SAPA-related work, that the company monitors SAPA's activities, that it discriminates against
2   ALPA supporters, and that it improperly recognized SAPA as the representative of SkyWest's
3   pilots. *See* Livingston Decl. ¶11; Compl. ¶¶48-53.

4        Nonetheless, SkyWest contends – notwithstanding the clear language of the statute and this
5   clear and controlling case law – that wholly carrier-funded company unions are now legal as a
6   "forward-thinking, cooperative model of labor relations." Am. Opp. at 18. But none of the cases
7   SkyWest cites support this proposition, and wholly carrier-funded company unions are no more
8   legal now than they were 70 years ago. *See Virginian Ry.*, 300 U.S. at 543–44.

9        SkyWest relies heavily on the Ninth Circuit's decision in *Barthelemy v. ALPA*, 897 F.2d 999
10  (9th Cir. 1990), which held that a non-carrier financier's conditional, one-time agreement to pay
11  ALPA investment-banking fees did not violate the RLA given the "circumstances of [that] case."
12  *Id.* at 1002, 1014, 1017. The Ninth Circuit emphasized that ALPA's members had voted to approve
13  the transaction, that the payment was a one-time arrangement, that the financier's promise was
14  conditional, and that the purpose of the payment was to enable employees to protect their RLA
15  rights by soliciting airline takeover bids from individuals and entities who were "less hostile to the
16  pilots' interests" than the leading contender. *Id.* at 1002, 1017.

17       *None* of these factors favors a similar result here. There is no evidence that SkyWest pilots
18  have ever voted to approve the financial payments (let alone to approve SAPA as their collective
19  bargaining representative). SkyWest has been funding SAPA for many years, and its payments are
20  not conditional. There is also no evidence that SkyWest funds SAPA for the purpose of protecting
21  its employees' ability to organize and protect their rights. To the contrary, SkyWest has given
22  SAPA no independent grievance procedure, and has expressed vehement opposition to any attempt
23  by its employees actually to form a union. *See* Prestel Decl. Ex. 1.

24       The remainder of the cases cited by SkyWest are similarly inapposite. Providing copies,
25  coffee, or a meeting room is not the same as providing all of an entity's funds, and the Ninth Circuit
26  distinguished most of the cases SkyWest cites in *Barthelemy* as permitting only "minor assistance."
27  *Barthelemy*, 897 F.2d at 1016. Other cases cited by SkyWest are distinguishable because they did
28  not involve evidence that the employer paid the salaries of non-working representatives, provided

1    the organization with more than a "limited use" of company resources, or had an anti-union

2    motivation. *Classic Indus., Inc. v. NLRB*, 667 F.2d 205, 209 (1st Cir. 1981); Prestel Decl. Ex. 1; *see*

3    *also* H.R. Rep. No. 1944, at 2 (one of purposes of 1934 amendments was to eliminate the practice of

4    management's "pay[ing] the salary of the employees' representatives").

5            In the final section of its SAPA-related argument, SkyWest cites a series of NMB cases for

6    the proposition that an employer need not provide "equal access" to an incumbent representative

7    and to a challenger union.  SkyWest's reliance on these cases is misplaced for several reasons.

8    First, unlike in the cases SkyWest cites, SAPA is *not* an incumbent representative within the

9    meaning of the RLA, and the company does not contend otherwise.  *See Northwest Airlines*, 19

10   NMB 94, 96 (1991) (incumbent was RLA representative); *Northwest Airlines*, 14 NMB 49 (1986)

11   (motion for reconsideration of earlier decision, 13 NMB 399 (1986), which recognized that both

12   competing organizations were RLA representatives); *cf. Horizon Airlines*, 24 NMB 458 (1997)

13   (finding unlawful interference); *see also supra* pp. 2-3 and Prestel Decl. Ex. 7.

14          Second, the cases SkyWest cites do *not* stand for the proposition that an employer may

15   discriminate between competitor organizations. The NMB held that the employers in question had

16   not violated the RLA because they had *not* discriminated between unions. *See, e.g.*, *Northwest*

17   *Airlines*, 19 NMB at 110–11.

18          Finally, the NMB only has jurisdiction to determine whether an election has been conducted

19   according to "laboratory conditions" – not to adjudicate violations of the statute.  *See Horizon Air*

20   *Indus.*, 232 F.3d at 1133.  The Ninth Circuit, which *does* have jurisdiction to adjudicate violations

21   of the statute, has held that the RLA prohibits employers from "assist[ing] one union faction over

22   another."  *Konop*, 302 F.3d at 885.

23   **III.    Plaintiffs Will Suffer Irreparable Harm If an Injunction Is Not Entered, and the**
     **Balance of Hardships Tips Strongly in Plaintiffs' Favor.**

24
             **A.    Interference with Plaintiffs' RLA-Protected Expressive and Associational**
25           **Rights is *Per Se* Irreparable Harm.**

26          Controlling case law is clear and Defendant makes no effort to contend otherwise.  Under

27   Ninth Circuit precedent, "coercive and inhibitory effects upon . . . employees' organizational rights

28   secured by the RLA . . . [are] irreparable." *Arcamuzi*, 819 F.2d at 938.

1    As set forth in Plaintiffs' opening brief, Plaintiffs suffer two types of irreparable harm, each

2    of which provides an independent basis for issuing an injunction:  the chilling effect on the exercise

3    of their RLA-protected expressive and associational rights, and the negative impact on their

4    organizing campaign.  Plaintiffs' resourcefulness in engaging in speech outside the workplace,

5    Amended Opp. at 26, is irrelevant.  To establish irreparable harm, Plaintiffs need not have been

6    entirely silenced, only chilled.  And it is undisputed that Plaintiffs have been chilled from engaging

7    in protected expressive and associational activity, for example, wearing ALPA lanyards.  As to the

8    irreparable harm to the organizing campaign, Plaintiffs rely not only on the declaration of Jeffrey

9    MacDonald, *contra* Am. Opp. at 26 ("only" support for this contention), but also extensive Ninth

10   Circuit and district court cases holding that "[t]he deprivation to employees from . . . the dimunition

11   of union support is immeasurable" and establishes irreparable harm.  *NLRB v. Electro-Voice, Inc.*,

12   83 F.3d 1559, 1573 (9th Cir. 1996); *see also* Mot. at 19-20.[12]

13

14   **B.    SkyWest's Speculative Assertions Do Not Demonstrate Any Legally Cognizable
         Harm.**

15       SkyWest complains that a preliminary injunction would taint its conduct with the specter of

16   illegality.  Am. Opp. at 27.  Where, as here, Plaintiffs have an overwhelming likelihood of success

17   on the merits and established irreparable harm as a matter of law, such a taint is entirely

18   appropriate.[13]  *Cf. Scott*, 241 F.3d at 669 ("[t]he most elementary conceptions of justice and public

19

20       [12] Defendant contends that Plaintiffs' requested relief is not "strictly tailored" to the

21   irreparable harm in this case.  Am. Opp. at 27.  Defendant has interfered with pilots' right to engage
     in protected expressive and associational activity (wearing lanyards, communicating with their co-

22   workers); Plaintiffs seek an injunction prohibiting further interference.  Defendant has discriminated
     against ALPA supporters and provided SAPA with preferred access to various channels of

23   communication; Plaintiffs seek an injunction prohibiting such discrimination and granting OC
     members access to these same channels to remedy the discrimination.  Finally, Defendant has

24   unlawfully funded SAPA; Plaintiffs seek an injunction prohibiting such unlawful funding.  Each

25   form of relief is directly related to Defendant's unlawful conduct and the harm to Plaintiffs in terms
     of chilling effect and the negative impact on their organizing campaign.  The relief sought is plainly

26   appropriate.  *Missouri-Kan.-Tex. R. Co.*, 363 U.S. at 532 ("[i]t is the duty of a court of equity" to

27   grant relief "upon conditions that will protect all . . . whose interests the injunction may affect").

28       [13] Such a "taint" would only be inappropriate in entirely distinguishable cases, such as
                                                                                  (continued...)

1    policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has

2    created").  Under SkyWest's "taint" argument, no preliminary injunction would ever issue.

3          SkyWest also contends that it would suffer harm if the organizing drive were to succeed and

4    its employees were to choose ALPA as their representative.  Am. Opp. at 27-28.  Should pilots'

5    exercise of their right to organize result in ALPA's election, then the consequence of which

6    Defendant complains – the obligation to engage in collective bargaining – is a Congressionally

7    imposed and favored duty, 45 U.S.C. §2, Ninth, not a legally cognizable harm.

8                                    **CONCLUSION**

9          For the foregoing reasons, Plaintiffs' motion for a preliminary injunction should be granted.

10   Dated:  June 6, 2007                    Respectfully submitted

11
                                            STEPHEN P. BERZON
12                                          LINDA LYE
                                            CLAIRE P. PRESTEL
13                                          Altshuler Berzon LLP

14                                          ELIZABETH GINSBURG
                                            Air Line Pilots Association, International
15

16                                          by:  \s\Stephen P. Berzon
                                                   Stephen P. Berzon
17
                                            Attorneys for Plaintiffs
18

19

20

21

22

23

24

25
     _____
26        [13](...continued)
     *EEOC v. Howard Univ.*, 1983 WL 519 (D. D.C. June 14, 1983), on which Defendant relies.  In
27   *EEOC*, Plaintiffs failed to establish any irreparable harm and had "no evidence whatsoever" in
     support of the merits of their claims.  1983 WL *4-5.  The case stands for the unremarkable
28   proposition that an injunction should not issue where the applicable standard is not met.