918

[Report of House Committee on Interstate and Foreign Commerce, with Amendments on H.R. 9861.]

| 73D CONGRESS<br>2d Session | HOUSE OF REPRESENTATIVES | REPORT<br>No. 1944 |
|---|---|---|

## TO AMEND THE RAILWAY LABOR ACT OF MAY 20, 1926

JUNE 11, 1934.—Committed to the Committee of the Whole House on the state of the Union and ordered to be printed

Mr. CROSSER of Ohio, from the Committee on Interstate and Foreign Commerce submitted the following

## REPORT

[To accompany H.R. 9861]

The Committee on Interstate and Foreign Commerce, to whom was referred the bill (H.R. 9861) to amend the Railway Labor Act approved May 20, 1926, and to provide for the prompt disposition of disputes between carriers and their employees, having considered the same, report thereon with a recommendation that it pass with the following amendments:

Page 8, line 6, after the word "reach" strike out the word "of".

Page 22, line 15, after the word "section" insert a period.

After the word "section." change the small "i" to capital "I" in the word "in".

The Committee on Interstate and Foreign Commerce, to whom was referred bill (H.R. 9861) to amend the Railway Labor Act, approved May 20, 1926, and to provide for the prompt disposition of disputes between carriers and their employees, and for other purposes, having considered the same, report favorably thereon to the House and recommend that the bill do pass.

Extensive hearings were held on this bill and the views of railway managements, employees, Federal Coordinator, chairman of the United States Board of Mediation, and other interested parties were presented. All agreed that the present Railway Labor Act is in need of amendment. The 21 Standard Railroad Labor Organizations unanimously urge the enactment of this legislation.

The purposes of this bill are:

1. To prohibit any interference with freedom of association among employees and to prevent the denial of the right of employees to join a labor organization as a condition precedent to their employment.

HeinOnline -- 1 The Railway Labor Act of 1926 A Legislative History Michael H. Campbell & Edward C. Brewer III eds. 918

2        AMEND THE RAILWAY LABOR ACT OF MAY 20, 1926

2. To provide for the complete independence of carriers and of employees in regard to self-organization in order to carry out the purposes of this act.

3. To provide for the prompt and orderly settlement of all disputes growing out of grievances and out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, so as to avoid any interruption of commerce or of the proper operation of any carrier engaged therein.

### ANALYSIS OF THE BILL

#### (Section 2)

1. The bill does not introduce any new principles into the existing Railway Labor Act, but it is designed to amend that act in order to correct the defects which have become evident as a result of 8 years of experience. It does not change the methods of conference, mediation, and voluntary arbitration to settle major disputes over wages and working conditions, which are provided in the Railway Labor Act of 1926, now in effect.

2. It provides that the employees shall be free to join any labor union of their choice and likewise be free to refrain from joining any union if that be their desire and forbids interference by the carriers' officers with the exercise of said rights.

3. While providing that labor unions shall be free from employer influence and control, it does not give preference to any particular union or class of unions.

4. Machinery is provided for the taking of a secret ballot to enable the Board of Mediation to determine what representatives the employees desire to have negotiate for them with the managements of the carriers in matters affecting their wages and working conditions.

5. It forbids the use of the carriers' funds to maintain, aid, or control the labor organizations of the employees and specifically prohibits carrier managements from requiring employees to sign "yellow-dog contracts" requiring them to join company unions.

6. The Railway Labor Act of 1926, now in effect, provides that representatives of the employees, for the purpose of collective bargaining, shall be selected without interference, influence, or coercion by railway management, but it does not provide the machinery necessary to determine who are to be such representatives. These rights of the employees under the present act are denied by railway managements by their disputing the authority of the freely chosen representatives of the employees to represent them. A considerable number of railway managements maintain company unions, under the control of the officers of the carriers, and pay the salary of the employees' representatives, a practice that is clearly contrary to the purpose of the present Railway Labor Act, but it is difficult to prevent it because the act does not carry specific language in respect to that matter. This bill is designed to correct that defect.

#### (Section 3)

7. The second major purpose of the bill is to provide sufficient and effective means for the settlement of minor disputes known as "grievances", which develop from the interpretation and/or application

HeinOnline -- 1 The Railway Labor Act of 1926 A Legislative History Michael H. Campbell & Edward C. Brewer III eds. 919

AMEND THE RAILWAY LABOR ACT OF MAY 20, 1926    3

of the contracts between the labor unions and the carriers, fixing wages and working conditions. The present Railway Labor Act provides for the establishment of boards of adjustment by agreement. In many instances, however, the carriers and the employees have been unable to reach agreements to establish such boards. Further, the present act provides that when and if such boards are established by agreement, the employees and the carriers shall be equally represented on the board.

Many thousands of these disputes have been considered by boards established under the Railway Labor Act; but the boards have been unable to reach a majority decision, and so the proceedings have been deadlocked. These unadjusted disputes have become so numerous that on several occasions the employees have resorted to the issuance of strike ballots and threatened to interrupt interstate commerce in order to secure an adjustment. This has made it necessary for the President of the United States to intervene and establish an emergency board to investigate the controversies. This condition should be corrected in the interest of industrial peace and of uninterrupted transportation service. This bill, therefore, provides for the establishment of a national board of adjustment to which these disputes may be submitted if they shall not have been adjusted in conference between the parties. The provisions as to the national board of adjustment are as follows:

(a) The board is to consist of equal number of representatives of the employees and the carriers. The members of the board are to be paid by the parties they represent.

(b) The board is to be divided into four divisions, each functioning independently of one another.

(c) Division 1 is given the authority to hear and decide disputes involving train, engine, and yard service employees, such as engineers, firemen, conductors, trainmen, and switchmen.

(d) Division 2 is to hear and decide the disputes of the mechanical forces, such as machinists, boiler makers, blacksmiths, electrical workers, sheet-metal workers, carmen, stationary firemen, and oilers, and their apprentices and helpers, respectively.

(e) Division 3 is to hear and decide disputes of dispatchers, telegraphers, clerks, freight handlers, express, station, and storehouse employees, maintenance-of-way and section forces, Pullman conductors, maids, and porters, dining-car employees, and other miscellaneous groups.

(f) Division 4 is to hear and decide disputes of the employees engaged on the marine equipment, such as matters, mates, pilots, marine engineers, longshoremen, etc.

(g) If any division of the Board should deadlock on a dispute, then the representatives on the Board will endeavor to select a neutral or impartial person; and if they are unable to agree upon the selection of such neutral person, then the United States Board of Mediation will appoint a neutral person. The dispute will then be again considered and a majority decision reached.

(h) It is further provided that should the National Board in its discretion, find it advisable to establish subordinate boards in any particular section of the country in order to take care of its work, that may be done.

(i) Finally, the bill gives absolute freedom to the carriers and the employees to establish any other machinery upon which they may

4       AMEND THE RAILWAY LABOR ACT OF MAY 20, 1926

voluntarily agree. If such voluntary machinery should be established, then the parties are exempt from the jurisdiction of this National Board.

(j) There is no increase in expense to the Government provided for in this bill. At the present time the United States Board of Mediation maintains a staff of field men to aid the parties in adjusting these disputes when they are not decided by the adjustment boards. That method will no longer be necessary because these boards will now have a neutral person, which will make it possible to break deadlocks and reach decisions.

The committee is confident that this bill strengthens the Railway Labor Act, where it is necessary to do so, and feels sure that if the act is amended as proposed in this bill, it will provide effective and adequate machinery to adjust controversies between the carrier managements and employees. It will assure employees the right to bargain collectively and will contribute immeasurably to the establishment and maintenance of industrial peace.

As heretofore stated in this report, all of the standard railroad labor organizations, numbering 21, are supporting the bill and unanimously urge its passage.

### CHANGES IN EXISTING LAW

In compliance with paragraph 2a of rule XIII of the Rules of the House of Representatives, changes in the Railway Labor Act made by the bill are shown as follows: Existing law proposed to be omitted is enclosed in black brackets; new matter is printed in italics; existing law in which no change is proposed is shown in roman.

### DEFINITIONS

SECTION 1. When used in this Act and for the purposes of this [Act:] *Act—*
First. The term "carrier" includes any express company, sleeping-car company, [and any] carrier by railroad, subject to the Interstate Commerce Act, [including all floating equipment such as boats, barges, tugs, bridges and ferries; and other transportation facilities used by or operated in connection with any such carrier by railroad, and any receiver or any other individual or body, judicial or otherwise, when in the possession of the business of employers or carriers covered by this Act] *and any company which is directly or indirectly owned or controlled by or under common control with any carrier by railroad and which operates any equipment or facilities or performs any service (other than trucking service) in connection with the transportation of passengers or property or the receipt, delivery, elevation, transfer in transit, refrigeration or icing storage, and handling of property transported by railroad, and any receiver, trustee, or other individual or body, judicial or otherwise, when in the possession of the business of any such "carrier": Provided, however,* That the term "carrier" shall not include any street, interurban, or suburban electric [railway] *railway,* unless such [a] *railway is operating as a* part of a general steam-railroad system of transportation, but shall not exclude any part of the general steam-railroad system of transportation now or hereafter operated by any other motive [power;] *power. The Interstate Commerce Commission is hereby authorized and directed upon request of the Board of Mediation or upon complaint of any party interested to determine after hearing whether any line operated by electric power falls within the terms of this proviso.*
Second. The term "Adjustment Board" means [one of the boards of adjustment provided for in this Act;] *the National Board of Adjustment created by this Act.*
Third. The term "Board of Mediation" means the Board of Mediation created by this [Act;] *Act.*
Fourth. The term "commerce" means commerce among the several States or between any State, Territory, or the District of Columbia and any foreign nation, or between any Territory or the District of Columbia and any State, or between any Territory and any other Territory, or between any Territory and the District

HeinOnline -- 1 The Railway Labor Act of 1926 A Legislative History Michael H. Campbell & Edward C. Brewer III eds. 921