STEPHEN P. BERZON (#46540)
sberzon@altshulerberzon.com
LINDA LYE (#215584)
llye@altshulerberzon.com
CLAIRE P. PRESTEL (#235649)
cprestel@altshulerberzon.com
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:   (415) 362-8064

ELIZABETH GINSBURG
(Admitted to Practice *Pro Hac Vice*)
elizabeth.ginsburg@alpa.org
Air Line Pilots Association, International
1525 Massachusetts Ave., NW
Washington, D.C. 20036
Telephone: (202) 797-4081
Facsimile:   (202) 797-4014

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, *et al.*, | ) ) ) | CASE No. C-07-2688 CRB |
| Plaintiffs, | ) ) ) | **PLAINTIFFS' SUPPLEMENTAL BRIEF RE: REMEDIES** |
| vs. | ) ) ) | |
| SKYWEST AIRLINES, INC., | ) ) ) | Date: Time: |
| Defendant. | ) ) | Place:  Courtroom 8, 19th Floor |

**SUMMARY OF ARGUMENT**

The Court requested briefing on the scope of relief sought by Plaintiffs. This brief addresses only the relief sought in paragraphs 3 and 4 of Plaintiffs' Revised Proposed Preliminary Injunction. Plaintiffs have demonstrated an overwhelming likelihood of success on the merits of their claim that Defendant SkyWest Airlines, Inc. ("SkyWest") is interfering with its pilots' right to exercise free choice in the designation of their bargaining representative through its unlawful support for the SkyWest Airlines Pilot Association ("SAPA"). As a result, Plaintiffs are entitled to preliminary injunctive relief (1) prohibiting SkyWest from providing financial support to SAPA, (2) prohibiting SkyWest from providing discriminatory access to SAPA to communicate with SkyWest pilots, and (3) requiring SkyWest to provide members of Plaintiff SkyWest Pilots ALPA Organizing Committee ("OC") with access to the same channels of communication previously provided to SAPA. *See* Pltfs' Rev. Prop. Prel. Inj. at ¶¶3-4 (Doc. 128). The relief sought here is far more modest than the remedy ordinarily imposed by a long and unbroken line of company union cases, is squarely in line with precedent in "discriminatory access" cases, and is necessary to remedy the harmful effects of SkyWest's unlawful support for SAPA. Moreover, absent preliminary injunctive relief on these issues, employees' right to organize – free of the coercive effects of SkyWest's support for SAPA – will be irreparably lost.

This Court has jurisdiction to fashion a remedy under the Railway Labor Act ("RLA") "as necessary to ensure the full effectiveness of the congressional purpose." *Burke v. Compania Mexicana De Aviacion, S.A.*, 433 F.2d 1031, 1033 (9th Cir. 1970); *see also CSX Transp. Inc. v. Marquar*, 980 F.2d 359, 367 (6th Cir.1992) (RLA creates "a general right of action that can be enforced with any appropriate remedy"). In addressing the scope of the remedy in this case, we therefore turn first to the nature and purpose of the RLA's prohibition against carrier interference with employee free choice.

It is well-established that RLA Section 2, Third and Fourth broadly protects employee free choice, prohibits employer interference with that free choice, and specifically prohibits employer support for "company unions" as a particularly insidious form of unlawful employer interference. *See, e.g., Virginian Ry. v. Sys. Fed. No. 40*, 300 U.S. 515, 543–44 (1937). Company unions have a prohibited coercive effect because, as they are intended to do, they create the *illusion* that employees are adequately represented and need not unionize in order to have their voices heard. *See, e.g., NLRB*

1  *v. Penn. Greyhound Lines*, 303 U.S. 261, 271 (1938).

2  In cases involving company unions under the RLA and also the National Labor Relations Act,

3  which has a parallel prohibition, the Supreme Court and Ninth Circuit have repeatedly upheld the

4  extreme remedy of complete "disestablishment" of the company union. *See, e.g., Texas & N.O.R. v.*

5  *Bhd. of Ry. & Steamship Clerks,* 281 U.S. 548, 557 (1930); *Penn. Greyhound Lines,* 303 U.S. at 263-64;

6  *NLRB v. Holtville Ice & Cold Storage Co.*, 148 F.2d 168, 169-70 (9th Cir. 1945); *NLRB v. Idaho*

7  *Refining Co.*, 143 F.2d 246 (9th Cir. 1944).[1] In *NLRB v. Newport News Shipbuilding & Dry Dock Co.*,

8  308 U.S. 241 (1939), the Supreme Court affirmed a disestablishment order even in a case where a

9  "sweeping majority" of employees had voted for the company union, reasoning that disestablishment

10  of the union "previously dominated by the employer may be the only effective way of wiping the slate

11  clean and affording the employe[e]s an opportunity to start afresh in organizing for the adjustment of

12  their relations with the employer." *Id.* at 250.

13  Paragraph 4 of Plaintiffs' Revised Proposed Preliminary Injunction seeks an order prohibiting

14  SkyWest from funding SAPA. This is plainly commanded by Section 2, Fourth, which *expressly*

15  prohibits a carrier from using its funds to maintain, assist, or contribute to any labor representative. 45

16  U.S.C. §152, Fourth. A prohibition against funding is also much more modest than an order requiring

17  complete disestablishment of SAPA. It would have no impact on any existing agreements between

18  SAPA and SkyWest, and SAPA would be free to continue in existence. SAPA would simply have to

19  raise funds independent of SkyWest, as ordinary unions are required to do.

20  Plaintiffs are entitled to the relief sought in Paragraph 3. Employers are prohibited from

21  providing one union preferred access to the employer's employees or premises. *See, e.g., Duane Reade,*

22  *Inc.*, 338 NLRB 943, 945 (2003); *Katz's Deli,* 316 NLRB 318, 333 (1995); *Ella Indus.,* Inc., 295 NLRB

23  976, 979-80 (1989); *Castaways Management,* 285 NLRB 954, 959, 974 (1987). The appropriate

24  remedy for discriminatory access is injunctive relief prohibiting such discriminatory access and

25  requiring the employer to provide the excluded union *with the same access* previously granted to its

26  _____

27  [1] "Disestablishment" entails a complete prohibition against current and future dealings between the employer and the company union. Thus, a disestablishment order may prohibit the

28  entity appearing on the ballot in a future representation election. *NLRB v. Falk*, 308 U.S. 453, 461 (1940).

1    preferred union.  *See, e.g., San Manuel Indian Bingo and Casino*, 345 NLRB No. 79, Order at ¶¶1a, 2a

2    (2005); *Kosher Plaza Supermarket*, 313 NLRB 74, Order at ¶¶1d, 2(e) (1993).  As the D.C. Circuit has

3    explained, "access may be imposed as a remedial measure without a finding that the union will be

4    unable to reach employees through other available channels of communications.  Instead, the critical

5    inquiry is whether the employer conduct is of such a nature that access is needed to offset harmful

6    effects that have been produced by that conduct."  *United Steelworkers of America v. NLRB*, 646 F.2d

7    616, 638 (D.C. Cir. 1981).[2]

8          The remedy sought – injunctive relief prohibiting SkyWest from providing discriminatory access

9    and requiring SkyWest to provide Plaintiffs access to the same channels previously provided to SAPA

10   – is well within the main of relief ordered in cases involving unequal access.  *See, e.g., San Manuel*

11   *Indian Bingo and Casino*, 345 NLRB No. 79, Order at ¶¶1a, 2a; *Kosher Plaza Supermarket*, 313 NLRB

12   74, Order at ¶¶1d, 2(e).  Indeed, it is far more modest than the remedy of "disestablishment" often

13   imposed in cases such as this involving company unions.  And requiring SkyWest to provide members

14   of Plaintiff OC with access to company email and newly hired pilot classes is "the only effective way

15   of wiping the slate clean and affording the employe[e]s an opportunity to start afresh in organizing for

16   the adjustment of their relations with the employer."  *Newport News,* 308 U.S. at 250.

17         Finally, the relief Plaintiffs seek in Paragraphs 3 and 4 – which address the destructive effects

18   _____

19        [2] Defendant's contention that SAPA does not use its preferred access to engage in
     "campaign" activity is both inaccurate and irrelevant.  First, the prohibition against discriminatory

20   access applies even when the union with preferred access is engaging in speech related to its so-
     called "representational" duties, rather than an explicit campaign.  *Katz's Deli,* 316 NLRB at 324,

21   333.  Second, as a factual matter, SAPA does use its preferred access to "campaign."  Third, and
     most fundamentally, if it were true that SAPA engages in little overt campaigning, that would only

22   underscore the need for the remedy sought by Plaintiffs.  SAPA does not need to campaign as such
     because SkyWest has unlawfully "recognized" it without ever requiring SAPA to show majority

23   support. *See, e.g.*, *NLRB v. Link-Belt Co.* 311 U.S. 584, 598 (1941); *NLRB v. Katz's Delicatessen*,
     80 F.3d 755, 767 (2d Cir. 1996).  That is the whole point of a company union.  To permit SkyWest

24   to continue to provide discriminatory access to SAPA would allow SkyWest to profit from its own
     unlawful conduct in "recognizing" SAPA and thereby obviating the need for SAPA to "campaign,"

25   as representative unions are required to do.  Equally to the point, SkyWest's support of SAPA is by
     its nature campaign activity against independent union representation because it allows SkyWest to

26   create "the mistaken belief that [SAPA] was truly representative and afforded an agency for
     collective bargaining" in order "to prevent self-organization" by the SkyWest pilot group.  *Penn.*

27   *Greyhound*, 303 U.S. at 271.

28

1   of SkyWest's support for SAPA – must be granted as part of the preliminary injunction, or the RLA-

2   protected right of SkyWest pilots to exercise free choice, without employer interference, will be forever,

3   irreparably lost.   Congress and the Courts have long recognized that employer support for company

4   unions is inherently coercive of employee free choice.   Absent the relief in these paragraphs, SkyWest's

5   coercive and unlawful support of SAPA would be left completely, irreparably unremedied pending a

6   final judgment.   *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987) ("coercive

7   and inhibitory effects upon the employees' organizational rights secured by the RLA" are "irreparable");

8   *Brown v. Pac. Tel. & Telegraph Co.*, 218 F.2d 542, 544 (9th Cir. 1955) ("drifting away" of supporters

9   from union "to the union favored by the employers" constitutes irreparable harm).   Nor does the

10  National Mediation Board's authority to administer an election negate the irreparability of Plaintiffs'

11  harm.   The NMB has *no authority* to adjudicate violations of the Act.   *Horizon Air Indus. v. NMB*, 232

12  F3d 1126, 1133 (9th Cir. 2000).   The NMB may supervise elections, but it cannot even investigate a

13  claim of unlawful employer interference until *after* the election is conducted (absent undefined

14  "extraordinary circumstances), and the irreparable harm to Plaintiffs' right to organize has *already* been

15  inflicted.   *See* NMB Rep. Manual §17.0 at 24 (2005).

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................ v

INTRODUCTION ............................................................... 1

ARGUMENT .................................................................. 1

    I.     PLAINTIFFS HAVE AN OVERWHELMING LIKELIHOOD OF SUCCESS IN DEMONSTRATING THAT SKYWEST'S UNLAWFUL SUPPORT FOR SAPA VIOLATES THE RLA ........................................... 1

          A.     SKYWEST'S SUPPORT FOR SAPA VIOLATES THE RLA REGARDLESS OF WHETHER SAPA USES ITS FAVORED ACCESS TO "CAMPAIGN." .................................... 3

          B.     THE EVIDENCE ESTABLISHES PLAINTIFFS' OVERWHELMING LIKELIHOOD OF SUCCESS ON THEIR CLAIM THAT SKYWEST'S SUPPORT FOR SAPA IS ILLEGAL ................ 5

    II.    PLAINTIFFS' PROPOSED RELIEF REMEDIES THE HARMFUL EFFECTS OF DEFENDANT'S UNLAWFUL SUPPORT OF SAPA ................... 9

          A.     THE SUPREME COURT HAS UPHELD THE EXTREME REMEDY OF DISESTABLISHMENT AS NECESSARY AND APPROPRIATE TO REMEDY THE UNIQUELY HARMFUL EFFECTS OF COMPANY UNIONISM ...................................... 10

          B.     THE RELIEF SOUGHT BY PLAINTIFFS IN PARAGRAPHS 3 AND 4 IS NECESSARY TO REMEDY THE HARMFUL EFEFCTS OF SKYWEST'S UNLAWFUL CONDUCT AND FAR MORE MODEST THAN THE REMEDY OF DISESTABLISHMENT ........ 11

               1.     AN ORDER PROHIBITING SKYWEST FROM FUNDING SAPA IS COMMANDED BY SECTION 2, FOURTH ......... 11

               2.     SKLYWEST'S UNLAWFUL PROVISION OF DISCRIMINATORY ACCESS TO SAPA REQUIRES AN ORDER PROHIBITING FUTURE DISCRIMINATION AND REQUIRING EQUAL ACCESS ...................... 12

    III.   ABSENT PRELIMINARY INJUNCTIVE RELIEF, PLAINTIFFS' RIGHT TO BE FREE OF THE COERCIVE EFFECTS OF SKYWEST'S SUPPORT FOR SAPA WILL BE IRREPARABLY LOST ......................... 15

CONCLUSION ............................................................... 17

1

# TABLE OF AUTHORITIES

2

## CASES

3

4
*Adams v. Fed. Ex. Corp.*,
  470 F.Supp. 1356 (W.D. Tenn. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

5
*Am. Bakery Workers Int'l Union v. NLRB*,
  379 F.2d 160 (D.C. Cir. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

6

7
*Arcamuzi v. Continental Air Lines, Inc.*,
  819 F.2d 935 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

8
*Ass'n of Flight Attendants v. Horizon Air Indus.*,
  280 F.3d 901 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9

10
*Barthelemy v. ALPA*,
  897 F.2d 999 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

11
*Brown v. Pac. Tel. & Telegraph Co.*,
  218 F.2d 542 (9th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

12

13
*Burke v. Compania Mexicana De Aviacion, S.A.*,
  433 F.2d 1031 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

14
*CSX Transp. Inc. v. Marquar*,
  980 F.2d 359 (6th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

15

16
*Caldor Inc.*,
  319 NLRB 728 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17
*Castaways Management*,
  285 NLRB 954 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

18

19
*Delta Air Lines, Inc.*,
  30 NMB 102 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 17

20
*Dennison Mfg. Co.*,
  168 NLRB 1012 (1967), *enf'd*, 419 F.2d 1080 (1st Cir. 1969) . . . . . . . . . . . . . . . . . . 6, 7, 8

21

22
*Duane Reade, Inc.*,
  338 NLRB 943 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12, 15

23
*Ella Indus., Inc.*,
  295 NLRB 976 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

24

25
*Elrod v. Burns*,
  427 U.S. 347 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

26
*Fieldcrest Cannon, Inc. v. NLRB*,
  97 F.3d 65 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

27

28
*Green v. County School Bd. of New Kent*,
  391 U.S. 430 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Hertzka & Knowles v. NLRB*,
 503 F.2d 625 (9th Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

*Horizon Air Indus. v. NMB*,
 232 F3d 1126 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Katz's Deli*,
 316 NLRB 318 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12, 14, 15

*Konop v. Hawaiian Airlines, Inc.*,
 302 F.3d 868 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

*Kosher Plaza Supermarket*,
 313 NLRB 74 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13, 15

*Lawson Co. v. NLRB*,
 753 F.2d 471 (6th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 5, 7

*NLRB v. Brown Paper Mill Co.*,
 108 F.2d 867 (5th Cir. 1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*NLRB v. Falk Corp.*,
 308 U.S. 453 (1940) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

*NLRB v. H&H Plastics Mfg.*,
 389 F.2d 678 (6th Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7

*NLRB v. Holtville Ice & Cold Storage Co.*,
 148 F.2d 168 (9th Cir. 1945) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 10

*NLRB v. Idaho Refining Co.*,
 143 F.2d 246 (9th Cir. 1944) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 10, 11

*NLRB v. Katz's Delicatessen*,
 80 F.3d 755 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

*NLRB v. Koehler*,
 328 F.2d 770 (7th Cir. 1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 7

*NLRB v. Link-Belt Co.*,
 311 U.S. 584 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

*NLRB v. Midwestern Personnel Servs., Inc.*,
 322 F.3d 969 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 9

*NLRB v. Newport News Shipbuilding & Dry Dock Co.*,
 308 U.S. 241 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

*NLRB v. Pennsylvania Greyhound Lines*,
 303 U.S. 261 (1938) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

*NLRB v. S.E. Nichols, Inc.*,
 862 F.2d 952 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*NLRB v. Vernitron Elec. Components, Inc.*,
   548 F.2d 24 (1st Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Patsy v. Bd. of Regents*,
   457 U.S. 496 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Powers Regulator Co. v. NLRB*,
   355 F.2d 506 (7th Cir. 1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Regal Recycling*,
   329 NLRB 355 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*San Manuel Indian Bingo and Casino*,
   345 NLRB No. 79 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

*Scott ex rel. NLRB v. Stephen Dunn & Assocs.*,
   241 F.3d 652 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Simmons Indus., Inc.*,
   321 NLRB 228 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Texas & N.O.R. Co. v. Bhd. of Ry. & Steamship Clerks*,
   281 U.S. 548 (1930) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United Steelworkers of America v. NLRB*,
   646 F.2d 616 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

*Utrad Corp. v. NLRB*,
   454 F.2d 520 (7th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*V&S ProGalv, Inc.*,
   323 NLRB 801 (1997), *enf'd*, 168 F.3d 270 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . 4

*Virginian Ry. v. Sys. Fed. No. 40*,
   300 U.S. 515 (1937) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## STATUTES AND REGULATIONS

42 U.S.C. §1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

45 U.S.C. §152 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. §158(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

H.R. Rep. No. 73-1944 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

H.R. Rep. No. 74-1147 (1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

S. Rep. No. 73-1065 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

S. Rep. No. 74-573 (1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1

## MISCELLANEOUS

2   ABA, <u>The Railway Labor Act</u> Ch. 5.III.A. (2d ed. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

3   NMB Rep. Manual §17.0 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs have demonstrated an overwhelming likelihood of success on the merits of their claim that Defendant SkyWest Airlines, Inc. ("SkyWest") has interfered with the right of its pilots to exercise free choice in the designation of their bargaining representative by providing unlawful assistance to the SkyWest Airlines Pilot Association ("SAPA").  As a result, Plaintiffs are entitled to preliminary injunctive relief (1) prohibiting SkyWest from providing financial support for SAPA, (2) prohibiting SkyWest from providing discriminatory access to SAPA to communicate with SkyWest pilots, and (3) requiring SkyWest to provide members of Plaintiff SkyWest Pilots ALPA Organizing Committee ("OC") with access to the same channels of communication previously provided to SAPA.  Pltfs' Rev. Prop. Prel. Inj. at ¶¶3-4. (Doc. 128.)  The relief sought here is far more modest than the remedy ordinarily imposed and required in company union cases such as this, is squarely in line with precedent in "discriminatory access" cases, and is necessary to remedy the harmful effects of SkyWest's unlawful support for SAPA.

This Court has jurisdiction to fashion a remedy under the Railway Labor Act "as necessary to ensure the full effectiveness of the congressional purpose." *Burke v. Compania Mexicana De Aviacion, S.A.*, 433 F.2d 1031, 1033 (9th Cir. 1970); *see also CSX Transp. Inc. v. Marquar*, 980 F.2d 359, 367 (6th Cir.1992) (RLA rights "can be enforced with any appropriate remedy").  Accordingly, we turn first to the nature and purpose of the RLA's prohibition against employer interference with employee free choice in general and company unions in particular, and then explain why the scope of the remedy sought here is plainly appropriate in light of the harm to employee free choice caused by SkyWest's support for SAPA.  Finally, we address why the relief sought must be granted at the preliminary injunction stage and cannot await a final decision on the merits.

**ARGUMENT**

**I.    PLAINTIFFS HAVE DEMONSTRATED AN OVERWHELMING LIKELIHOOD OF SUCCESS ON THER MERITS OF THEIR CLAIMS THAT SKYWEST'S SUPPORT FOR SAPA VIOLATES THE RLA.**

RLA Section 2, Third prohibits any carrier "interference" or "influence" over the choice of employees' bargaining representative. 45 U.S.C. §152, Third.  RLA Section 2, Fourth prohibits any use of carrier "funds . . . in maintaining or assisting or contributing" to any union or bargaining

1   representative. 45 U.S.C. §152, Fourth.  These statutory provisions generally prohibit "employers from

2   providing assistance to a union or labor faction" and from "assist[ing] one union faction over another."

3   *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 885 (9th Cir. 2002).[3]

4        Employee free choice in the designation of a collective bargaining representative is "essential"

5   to the RLA's entire statutory scheme, and Congress enacted RLA Section 2, Third and Fourth for the

6   express purpose of preserving that free choice by prohibiting company-funded and company-supported

7   unions.  *See, e.g.*, *Virginian Ry. v. Sys. Fed. No. 40*, 300 U.S. 515, 543–44 (1937) (affirming injunctive

8   relief prohibiting further assistance to company-supported union); *Texas & N.O.R. Co. v. Bhd. of Ry.*

9   *& Steamship Clerks*, 281 U.S. 548, 557–60, 569 (1930) (affirming injunctive relief requiring

10  disestablishment of company-supported union).   Congress emphasized in enacting these RLA

11  provisions that they prohibit "any carrier from providing financial assistance to any union of employees

12  from funds of the carrier" and forbid "the use of the carriers' funds to maintain, aid, or control" unions.

13  S. Rep. No. 73-1065, at 2 (1934); H.R. Rep. No. 73-1944, at 2 (1934), attached as Exhs. 2–3 to Prestel

14

15

---

16        [3]  It cannot be doubted that the Court has jurisdiction over plaintiffs' SAPA-related claims.

17  The Ninth Circuit exercised jurisdiction over the plaintiff's RLA unlawful-assistance claim in
    *Konop*, and the Supreme Court, Ninth Circuit, and other appellate courts have repeatedly exercised

18  jurisdiction over claims for violation of RLA Section 2, Third and Fourth during organizing

19  campaigns.  *See* Plfs.' Corrected Reply ISO Mot. for Prelim. Inj. at 15–20 (citing cases).  The
    leading treatise – which lists SkyWest's counsel, Douglas Hall, as a Senior Editor – confirms that

20  "courts generally have exercised jurisdiction over actions brought against carriers for interference

21  with employees' rights under RLA Sections 2, Third and Fourth, during union organizing drives."
    ABA, The Railway Labor Act Ch. 5.III.A., at 257 (2d ed. 2005) (Prestel Decl. Exh. 1).  Even the

22  *Delta Air Lines* case cited and distributed by SkyWest during the evidentiary hearing confirms that

23  in the organizing campaign in that case, the union "could have sought the judicial relief available
    under [RLA] Section [2,] Third and Fourth."  *Delta Air Lines, Inc.*, 30 NMB 102, 114 (2002).

24  Plaintiffs also do not seek relief that the NMB could provide during this organizing phase; nor does
    Plaintiffs' requested relief invade the NMB's exclusive authority to conduct elections and to certify

25  collective bargaining representatives.  *See* Corrected Reply at 14–20.

26        Plaintiffs note that in the "Summary of Argument" of their Corrected Reply, a parenthetical
    mistakenly describes a Western District of Tennessee case as having granted "preliminary"

27  injunctive relief on RLA Section 2, Third and Fourth claims.  *See* Corrected Reply at i (citing
    *Adams v. Fed. Ex. Corp.*, 470 F.Supp. 1356, 1374 (W.D. Tenn. 1979)).  In fact, the court in that case

28  granted *permanent* injunctive relief, including relief based on a claim that the employer violated the
    RLA by interfering with employees' right to wear union insignia.  *Adams*, 470 F.Supp. at 1371–72.

Decl.[4]

### A. SKYWEST'S SUPPORT FOR SAPA VIOLATES THE RLA REGARDLESS OF WHETHER SAPA USES ITS FAVORED ACCESS TO "CAMPAIGN."

The Supreme Court recognized 70 years ago that company-supported unions inherently interfere with employees' right to freely choose their bargaining representative. *See, e.g.*, *Virginian Ry.*, 300 U.S. at 543–44 (carrier support for company union is "coercive interference"). Company unions are inherently coercive because, as they are intended to do, they create the *illusion* that employees are adequately represented and need not unionize to be heard. *See, e.g.*, *NLRB v. Penn. Greyhound Lines*, 303 U.S. 261, 271 (1938).

Although SkyWest contends that its provision of special access to SAPA is permissible because SAPA does not use that access to "campaign," the illusion of adequate representation is created not only when an employer grants a company union access for campaign purposes, but also when the employer "bargains with" (or appears to) with its preferred "union." In fact, the most insidious effect of company unions results from employers' apparent willingness to bargain with them. Such conduct enables "the employer to induce adherence of employees to the [company union] in the mistaken belief that it was truly representative and afforded an agency for collective bargaining" – thereby preventing "self-organization." *Id*.

Company unions – and employers' willingness to bargain with them – are "convenient weapon[s]" in employers' anti-union campaigns, even if the company unions themselves do not expressly campaign for majority support or against independent unions. *See NLRB v. Falk Corp.*, 308 U.S. 45, 460 (1940) (company-supported union was "convenient weapon to prevent the exercise of its employees' rights to self-organization"). Thus, courts routinely hold that an employer's bargaining with and granting concessions to a company-supported union is persuasive evidence of unlawful employer

---

[4] *See also* H.R. Rep. No. 74-1147, at 3067 (1935) (report on similar anti-interference provision in the National Labor Relations Act: "Collective bargaining is reduced to a sham when the employer sits on both sides of the table by supporting a particular organization with which he deals, by the payment of added compensation to their representatives, or by permitting such representatives to conduct organizational work among the employees during working hours without deduction of pay"); S. Rep. No. 74-573, at 2310 (1935) ("It seems clear that an organization or a representative or agent paid by the employer for representing employees cannot command, even if deserving it, the full confidence of such employees.") (Prestel Decl. Exhs. 4, 5).

assistance – regardless of whether the company union is also granted preferential access to employer facilities for campaign purposes. *See, e.g.*, *NLRB v. Holtville Ice & Cold Storage Co.*, 148 F.2d 168, 169, 170 (9th Cir. 1945) (employer signed collective bargaining agreement "without requesting a showing that the Association represented a majority"); *NLRB v. Idaho Refining Co.*, 143 F.2d 246 (9th Cir. 1944) (employer agreed to collective-bargaining agreement "without ascertaining whether or not the Association represented a majority").[5] Congress, the Supreme Court, and Ninth Circuit view the prohibitions in the RLA and NLRA against "company unions" as parallel. Thus, cases under the two statutes on this issue are interchangeable. *Penn. Greyhound*, 303 U.S. at 266–68 (looking to RLA in NLRA company union case); *Konop*, 302 F.3d at 885 (looking to NLRA in RLA company union case); *see also* H.R. Rep. No. 1147, at 3066 (describing NLRA Section 8(a)(2) as having "its counterpart in . . . [RLA] section 2").

Indeed, employers' unlawful assistance often makes it *unnecessary* for company unions like SAPA to "campaign" for employee support. An employer's decision to recognize a company-supported union may preempt the need to gather support. *See, e.g.*, *Penn. Greyhound*, 303 U.S. at 267 ("[O]nce an employer has conferred recognition on a particular organization it has a marked advantage over any other in securing the adherence of employees . . . ."); *NLRB v. Vernitron Elec. Components, Inc.*, 548 F.2d 24, 26 (1st Cir. 1977) (employer's "speedy recognition" of union "'locked in' majority support which otherwise might have eroded" after employer assistance ended). In more extreme cases (like this one), company unions need not campaign because employees are forced to join them and because employers recognize and bargain with them without requiring any evidence of majority support. *See, e.g.*, 6/7/07 Tr. (Doc. No. 134) 29:7–30:16, 124:7–25, 127:6–8, 224:20–225:1; 6/8/07 Tr. (Prestel Decl. Exh. 6) 81:17–21; Defs.' Exh. 6.

---

[5] *See also NLRB v. Midwestern Personnel Servs., Inc.*, 322 F.3d 969, 977–78 (7th Cir. 2003) (employer entered into agreement with preferred union without first determining whether that union enjoyed majority employee support); *Lawson Co. v. NLRB*, 753 F.2d 471, 477–78 (6th Cir. 1985) (employee committee's "recommendation . . . were quickly adopted by the Company"); *Utrad Corp. v. NLRB*, 454 F.2d 520, 523 (7th Cir. 1972) ("fruitful bargaining sessions" between employer and employee association); *V&S ProGalv, Inc.*, 323 NLRB 801, 806 (1997) ("give and take" between employer and company union), *enf'd*, 168 F.3d 270 (6th Cir. 1999).

1    When employees are forced to become members of a company union, and when a carrier

2 preemptively recognizes that union without evidence of employee support, the lack of a company union

3 "campaign" does not undermine plaintiffs' claims of unlawful employer assistance.  To the contrary,

4 the carrier's conduct in recognizing and bargaining with a union that has not been voluntarily selected

5 by a majority of employees is *itself* illegal.  *See, e.g.*, *NLRB v. Katz's Delicatessen*, 80 F.3d 755, 767

6 (2d Cir. 1996) (unlawful "for an employer to recognize and enter a collective bargaining agreement with

7 a union that has not been selected by a majority of the employees"); 45 U.S.C. §152, Fourth

8 (representatives shall be chosen by a "majority" of employees).  Holding in this situation that SAPA's

9 lack of campaign activity undermines plaintiffs' claims would turn the statutory scheme on its head:

10 It would *reward* SkyWest for its unlawful conduct in illegally recognizing and bargaining with the

11 company union, and thereby making it unnecessary for SAPA to campaign for employee support.

12    **B.    THE EVIDENCE ESTABLISHES PLAINTIFFS' OVERWHELMING**
13    **LIKELIHOOD OF SUCCESS ON THEIR CLAIM THAT SKYWEST'S**
     **SUPPORT FOR SAPA IS ILLEGAL.**

14    Evidence introduced during the preliminary injunction hearing establishes each of the following

15 facts, which courts have considered persuasive evidence of unlawful employer assistance:

16 (1)    All SkyWest pilots are required to become SAPA members, and there is no procedure for
        rejecting membership.  *Compare Penn. Greyhound*, 303 U.S. at 269 (all employees
17      "automatically became members of the Association"); *Virginian Ry.*, 300 U.S. at 540 (employer
        "sought to induce its employees to join" company union) *with* 6/7/07 Tr. 224:20–225:1; 6/8/07
18      Tr. 81:17–21; Defs.' Exh. 6.

19 (2)    SkyWest recognized SAPA as its employees' exclusive representative without requiring any
        showing of majority support.  *Compare NLRB v. Link-Belt Co.*, 311 U.S. 584, 598 (1941)
20      (employer's "quick recognition" of company union); cases cited *supra* p.4 & n.5 6/7/07 *with*
        6/7/07 Tr. 29:7–30:16, 124:7–25, 127:6–8.
21

22 (3)    SkyWest changed SAPA's organizational structure for the express purpose of defeating
        independent union campaigns. *Compare Texas & N.O.R.*, 281 U.S. at 559 (employer's motive
23      is relevant to proving unlawful interference); *Utrad*, 454 F.2d at 523 (employee association
        "revitaliz[ed] . . . contemporaneously with" union campaign); *Lawson Co.*, 753 F.2d at 477
24      (employee committee formed in response to union organizing campaign) *with* 6/7/07 230:6–15;
        6/8/07 Tr. 122:13–123:11.

25 (4)    SkyWest pays SAPA representatives more for their SAPA-related work than regular line pilots
        earn, even in cases where those employees are no longer able to fly the line.  *Compare NLRB*
26      *v. Newport News Shipbuilding*, 308 U.S. 241, 244 (1939) (employer paid employee
        representatives for their union work); *Texas & N.O.R.*, 281 U.S. at 560 (company union
27

28

members "were permitted to devote their time to that enterprise without deduction from their pay") *with* 6/7/07 Tr. 125:9–12, 226:16–227:2, 248:2–249:6.[6]

(5)    SkyWest pays *all* of SAPA's expenses, and SAPA does not collect membership dues or have a treasurer.  SAPA has no budget, no bank account, and no right to money without the company's permission.  *Compare Penn. Greyhound*, 303 U.S. at 269 (company paid union's expenses and union did not collect dues); *Virginian Ry.*, 300 U.S. at 539 ("all [employee] Association expenses were paid" by the carrier); *Texas & N.O.R. Co.*, 281 U.S. at 560 (employer paid all of company union's expenses) *with* 6/7/07 Tr. 125:3–8, 225:5–15, 230:16–231:12, 236:10–20; 6/8/07 Tr. 11:19–21, 81:25– 82:2, 83:24–85:15.[7]

(6)    SkyWest provides SAPA with additional assistance, including access to group email (for campaign purposes and for distribution of SAPA meeting summaries), pilot v-files (or mailboxes), newly hired pilot classes, general bulletin boards, and dedicated bulletin boards – while denying this same access to ALPA.  *Compare Utrad*, 454 F.2d at 521 (union permitted to use "Company time, bulletin boards and mimeograph services"); *NLRB v. H&H Plastics Mfg.*, 389 F.2d 678, 681 (6th Cir. 1968) (minutes of employee committee meetings were distributed on company bulletin boards); *Am. Bakery Workers*, 379 F.2d at 163 (employee association was permitted "to hold its meeting on Company property, during working hours" and company "paid employees for the time so spent") *with* 6/7/07 Tr. 26:11–27:15, 27:19–28:20; Plfs.' Exhs. 6–9; Martirano Decl. Exh 1.[8]

---

[6] *See also Am. Bakery Workers Int'l Union v. NLRB*, 379 F.2d 160, 163 (D.C. Cir. 1967) (company "paid employees for the time . . . spent" on company union business).

Defendant introduced at the preliminary injunction hearing excerpts of collective bargaining agreements to which ALPA is a party. Def. Exhs. 11, 13, 15. Those agreements provide for flight pay loss, which is expressly permitted by the proviso to Section 2, Fourth, 45 U.S.C. §152, Fourth, and, unlike the present case, they are part of a binding and enforceable collective bargaining agreement negotiated at arms' length by financially independent parties. The financial support for union time cannot be manipulated to influence the Association and cannot be revoked at the company's whim or based on company disapproval of ALPA actions. By contrast, the evidence before the Court shows SAPA has no expenses that are not funded by the Company, *see, e.g.*, 6/8/07 Tr. at 11, and that the three full-time Executive Board members of SAPA, who receive pay equivalent to 104 hours per month, earn *more* than they would if they "flew the line." *Id*. at 18-19.

[7] *See also Utrad*, 454 F.2d at 521 (company union received "vending-machine profits . . . as its sole source of financial support"); *NLRB v. Koehler*, 328 F.2d 770, 771 (7th Cir. 1964) (company union received "proceeds from the coke vending machine on [employer's] premises"); *NLRB v. Brown Paper Mill Co.*, 108 F.2d 867, 870 n.5 (5th Cir. 1940) (dues collected by company union "were so insignificant and their collection so little enforced as to show on its face that the 'association' was not self-constituted and independent"); *Dennison Mfg. Co.*, 168 NLRB 1012 (1967) ("financial contribution" of $4000 per month to employee committee violated NLRA Section 8(a)(2); the "Committee has no funds, has no source of income, and looks to the [employer] as its sole source of finances"), *enf'd*, 419 F.2d 1080 (1st Cir. 1969).

[8] *See also Koehler*, 328 F.2d at 771 (company union received "free use of [employer's] office facilities"); *Brown Paper Mill*, 108 F.2d at 870 (company union permitted to meet on employer's property while independent union's attempts to meet subject to employer surveillance);

(continued...)

(7) SkyWest "put[s] [SAPA] forward as the authorized representative" of its employees, *Virginian Ry.*, 300 U.S. at 540, by permitting SAPA to address mandatory new-hire training classes. *Compare Vernitron Elec.*, 548 F.2d at 26 (employer "shepherd[ed]" employees to meeting with preferred union, which would "create in the employee's minds an impression of employer support for the union" – especially when employer paid employees for time spent in meeting); *Duane Reade Inc.*, 338 NLRB 943, 943 (2003) (employees required to meet with company supported union) *with* 6/7/07 Tr. 29:10–30:16, 71:2–16, 75:1–16, 200:11–201:6; 6/8/07 Tr. 86:5–87:8.

(8) SAPA does not retain independent counsel or an outside auditor. *Compare Koehler*, 328 F.2d at 771 (company union received legal advice from employer's attorney); *H&H Plastics Mfg.*, 389 F.2d at 681 ("[i]nasmuch as the employee representatives were admittedly inexperienced . . ., management was available to and did provide valuable assistance and guidance") *with* 6/7/07 Tr. 131:23–132:6, 242:25–243:8; 6/8/07 Tr. 85:21–86:4.

(9) SkyWest permits employees to wear SAPA insignia while prohibiting other union insignia. *Compare Am. Bakery Workers*, 379 F.2d at 163 (company permitted employees to wear company-union "badges") *with* 6/7/07 Tr. 26:11–27:15, 31:23–32:5, 45:21–46:2, 50:16–53:10, 150:6–154:13, 164:6–169:5, 182:8–184:25, 188:16–22, 242:8–13; 6/8/07 Tr. 87:19–24; Plfs.' Exh. 5

(10) SAPA's secretary no longer works as a pilot, cannot fly the line, does not even qualify as an employee member of SAPA, and is classified by SkyWest as a member of management. *Compare Newport News*, 308 U.S. at 245 (management representative served on employee committee); *Utrad*, 454 F.2d at 521 (supervisors included in company union); *Powers Regulator Co. v. NLRB*, 355 F.2d 506, 508 (7th Cir. 1966) (employees' "negotiating committee" included supervisor) *with* 6/7/07 Tr. 226:16–228:23; 6/8/07 Tr. 6:16–19, 70:23–71:2, 71:13–73:8, 73:14–74:4; Plfs.' Exh. 16; Defs.' Exh. 6.

(11) SAPA's secretary (and member of management) reports on his work to management, acts as SAPA's "administrative head" in direct contravention of the bylaws (which he drafted), and fulfills other functions that the bylaws assign to SAPA's president. *Compare Texas & N.O.R*, 281 U.S. at 560 (citing evidence that company union "report[ed]" its progress to carrier) *with* 6/7/07 Tr. 234:14–235:13, 6/8/07 Tr. 9:4–7, 13:19–25, 22:23–23:8, 54:19–23, 118:20–23; Plfs.' Exh. 13.

(12) SkyWest is anti-union and has expressed its anti-union views to all employees, and SAPA representatives have made anti-ALPA statements in new hire classes and in correspondence with pilots. *Compare Link-Belt Co.*, 311 U.S. at 588 (employer's anti-union "attitude" is "relevant"); *Lawson Co.*, 753 F.2d at 477 (evidence that employer "exhibited an anti-union animus"); *Utrad*, 454 F.2d at 522 (employer had "antiunion bias") *with* 6/7/07 Tr. 15:21–16:22, 21:3–24:14, 108:9–10, 242:15–24, 244:1–245:12, 253:16–254:2; 6/8/07 Tr. 61:19–23, 120:11–123:3; Plfs.' Exhs. 3, 4.

(13) SkyWest has intimidated ALPA supporters by threatening them with discipline

---

[8](...continued)

*Dennison Mfg. Co.*, 168 NLRB 1012 (employee committee could not function without use of employer's premises for meetings and elections and depended on employer for supplies, stationery and secretarial services); 6/7/07 Tr. 29:10–30:16, 43:15–45:20, 59:18–60:12, 63:7–69:6, 70:1–72:1, 75:1–75:25, 85:10–86:6, 98:16–99:6, 110:7–112:8, 112:10–115:18, 154:14–158:25, 170:4–24, 190:4–191:17, 192:25–199:5, 236:10–238:20, 238:22–239:6; 6/8/07 Tr. 85:1–10, 91:12–14; Plfs.' Exh. 15.

for wearing ALPA lanyards and by refusing to promote an ALPA supporter because of his union politics. *Compare Link-Belt*, 311 U.S. at 589–90 (employer discriminated against supporters of independent union and only belatedly instructed supervisory personnel not to "take sides"); *Texas & N.O.R. Co.*, 281 U.S. at 560 (discriminated against supporters of independent union); *Caldor Inc.*, 319 NLRB 728 (1995) (company threatened employee for failing to support particular union) *with* 6/7/07 Tr. 15:3–14, 26:11–27:15, 45:21–46:2, 51:1–24, 72:2–5, 116:1–123:18, 130:9–15, 142:7–22, 150:6–154:13, 158:8–160:16, 168:12–23, 169:25–170:3, 179:3–25, 245:9–17; Plfs.' Exh. 10.

(14)  SkyWest "bargains" with SAPA. *Compare* cases cited *supra* p.4 & n.5 *with* 6/7/07 Tr. 29:10–30:16, 6/8/07 Tr. 28:2– 7, 29:3–6.

(15)  SkyWest retains complete control over the terms of the parties' purported "contract," is free to make "unwritten" changes to that "contract," and retains complete authority over disciplinary decisions and all employee grievances. *Compare Newport News*, 308 U.S. at 245 (provision for arbitration "was to become operative only upon concurrence of the [employer's] president"); *Penn. Greyhound*, 303 U.S. at 269 (grievances were to be taken up by committee with equal number of employee and management representatives and review could not be secured without management approval); *Dennison Mfg.*, 168 NLRB 1012 ("no decisions . . . can be made without management approval") *with* 6/7/07 Tr. 31:18–26, 33:9–35:15, 36:12–37:5, 39:19–42:3, 88:23–89:5, 229:6–19, 231:15–234:17, 235:20–236:9; 6/8/07 Tr. 53:9–11, 54:11–18, 88:5–89:13, 110:10–19, 119:23–25; Plfs.' Exhs. 1, 2, 14.

This overwhelming and uncontroverted evidence is more than sufficient to establish unlawful employer assistance, particularly on a preliminary injunction motion. The Supreme Court has found unlawful employer assistance on facts much less egregious. *See, e.g., Newport News*, 308 U.S. at 248 (employee "committee" in question successfully resolved disputes with management; "overwhelming majorities" of employees participated in elections for committee representatives; company *never* objected to employees' forming independent union; company did not discriminate against support for outside unions; no company officials or superiors exercise any influence regarding election of representatives; and employees voted by secret ballot to continue committee representation); *see also Utrad*, 454 F.2d at 522–23 (employer funded employee association; provided assistance in form of space, supplies, and materials; engaged in bargaining; association "revitaliz[ed]" contemporaneously with union campaign; supervisors permitted to participate).

The Ninth Circuit has also made clear that the RLA's prohibition against unlawful employer assistance is violated not only when a carrier completely dominates the company union, but even when it provides "assistance [to] one union faction over another." *Konop*, 302 F.3d at 885 (plaintiff claim that carrier disclosed contents of his union organizing-related website to rival incumbent union should

have survived summary judgment).[9]

## II.   PLAINTIFFS' PROPOSED RELIEF REMEDIES THE HARMFUL EFFECTS OF DEFENDANT'S UNLAWFUL SUPPORT OF SAPA.

As discussed above, Congress and the Courts have long recognized that employer support for company unions is inherently coercive of employee free choice.  Paragraphs 3 and 4 of Plaintiffs' proposed preliminary injunction remedy the harm that has been inflicted on pilots' free choice through SkyWest's unlawful support for SAPA.  Absent the relief provided for in these paragraphs, the destructive effects of SkyWest's support for this "company union" would be left completely unremedied pending resolution of the ultimate merits of this case.  Such a result flies in the face of controlling Ninth Circuit caselaw, which holds that "coercive and inhibitory effects upon the employees' organizational rights secured by the RLA" are "irreparable," and thus necessitate  preliminary injunctive relief. *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935, 938 (9th Cir. 1987).[10]

Where, as here, the harm consists of an employer's unlawful support of a "company union," the only appropriate remedy is an order prohibiting the employer from providing further financial support and discriminatory access to the company union, and also requiring the employer to provide the independent union with the same access to employees that the employer has already unlawfully

---

[9] SkyWest will likely renew its argument that its support for SAPA is permissible as a new "forward-thinking" model of labor relations.  But employer support for preferred unions on such a massive scale is no less illegal now than it was 70 years ago, when the RLA and NLRA were passed, as cases like *Konop*, 302 F.3d at 872–73, and *Midwestern Personnel*, 322 F.3d at 977–78, demonstrate.  Moreover, the *Barthelemy v. ALPA*, 897 F.2d 999 (9th Cir. 1990), case cited by SkyWest in opposition to Plaintiffs' Motion for Preliminary Injunction is easily distinguishable for the reasons given in Plaintiffs' Corrected Reply at 22.  *Hertzka & Knowles v. NLRB*, 503 F.2d 625 (9th Cir. 1974), is similarly distinguishable.  The key facts considered significant by the Ninth Circuit in that case were that the company's *employees* voted "overwhelmingly" to establish a committee system and to include management representatives on some of the committees.  *Id*. at 629–31.  Here, by contrast, SkyWest's employees have never voted to have SAPA as their bargaining representative, are forced to join and not permitted to reject membership, and have never been asked to approve Mr. Eisenstat's classification as a member of management.  *See* (1), (2), (10), (11) *supra*.  In addition, SkyWest provides SAPA all of the additional assistance cited above that was not present in *Hertzka*.

[10] Plaintiffs do not address in this brief paragraphs 1 and 2 of their Proposed Preliminary Injunction, which protect their right to engage in expressive and associational activity.  For the reasons stated in their briefs in support of the preliminary injunction motion, such relief is plainly necessary to remedy the chilling effect of Defendant's conduct.

1   provided to its preferred entity. Such relief is far more modest than the remedy ordinarily imposed in

2   company union cases, is squarely in line with the plain statutory text and relevant precedent, and is "the

3   only effective way of wiping the slate clean and affording the employe[e]s an opportunity to start afresh

4   in organizing for the adjustment of their relations with the employer." *Newport News,* 308 U.S. at 250.

5           **A.     THE SUPREME COURT HAS HELD THE EXTREME REMEDY OF**
            **DISESTABLISHMENT NECESSARY AND APPROPRIATE TO REMEDY THE**
6           **UNIQUELY HARMFUL EFFECTS OF COMPANY UNIONISM.**

7           The Supreme Court has held that the appropriate remedy for a carrier's unlawful support of a

8   "company union" is an injunction requiring "disestablishment" of that entity – a remedy far more radical

9   than the request for injunctive relief sought here, but necessary to remedy the harmful effects of

10  company unionism. An order requiring disestablishment – while fully appropriate in company union

11  cases of this sort – is not being sought here. Rather, Plaintiffs seek a remedy from this Court that is far

12  more modest, and that does not intrude even permissively on the NMB's authority to certify bargaining

13  representatives – namely, a preliminary injunction that simply protects the integrity of the organizing

14  process by eliminating future employer interference and remedying the harmful effects of past employer

15  interference.

16          In *Texas & N.O.R*, *supra*, a case in which an employer had interfered with employees' free

17  choice rights through its support for a company union, the Supreme Court upheld an injunction under

18  the RLA that restrained the employer from interfering with employees' free choice rights and

19  specifically required the company to "disestablish" the company union. *Id.* at 557; *see also Virginian*,

20  300 U.S. at 543–44, 549–52 (affirming injunction that prohibited carrier from "fostering . . . the

21  company union" and giving great weight to Congress' recognition that company unions exert a

22  "coercive influence" and constitute an "obstruction" to employee free choice); *see also Pennsylvania*

23  *Greyhound Lines,* 303 U.S. at 263-64 (approving disestablishment of company union under NLRA);

24  *Holtville*, 148 F.2d at 169-70 (same); *Idaho Refining Co.*, 143 F.2d at 246 (same).[11]

25  _____

26          [11] SkyWest contends that *Virginian Railway* is distinguishable because the employer's
    illegal activities in that case followed an NMB certification. But there is no support in *Virginian*
27  *Railway* for limiting its holding or analysis to the post-certification context. To the contrary, the
    Ninth Circuit has squarely held that judicial enforcement of employees' RLA rights is particularly
28                                                                                          (continued...)

1    Disestablishment orders are necessary to remedy the uniquely harmful effects of company

2    unions. In *Newport News*, the Supreme Court affirmed a disestablishment order even in a case where

3    a "sweeping majority" of employees had voted for the company union. 308 U.S. at 248; *see also Falk*,

4    308 U.S. at 459, 461 (because employer had used company union "as a convenient weapon to prevent

5    the exercise of its employees' rights to self-organization and collective bargaining," the company union

6    "could not emancipate itself from habitual subservience" it created and "in order to insure employees

7    that complete freedom of choice . . . must be completely disestablished and kept off the ballot"); *Idaho*

8    *Refining*, 143 F.2d 246 (enforcing disestablishment order even though majority of employees had voted

9    for entity: "where an organization has existed for ten years . . . the effects of the long practice cannot

10   be eliminated and the employees rendered entirely free to act upon their own initiative without the

11   complete disestablishment of" the company union) (quoting *Newport News,* 308 U.S. at 250).

12   **B.    THE RELIEF SOUGHT BY PLAINTIFFS IN PARAGRAPHS 3 AND 4 IS**
13   **NECESSARY TO REMEDY THE HARMFUL EFEFCTS OF SKYWEST'S**
     **UNLAWFUL CONDUCT AND FAR MORE MODEST THAN THE REMEDY**
     **OF DISESTABLISHMENT.**
14
15   **1.    AN ORDER PROHIBITING SKYWEST FROM FUNDING SAPA IS**
     **COMMANDED BY SECTION 2, FOURTH.**

16   Plaintiffs seek an order prohibiting SkyWest from funding or providing further financial support

17   to SAPA. (Pltfs' Rev. Prop. Prel. Inj. at ¶4.) Such an order directly implements the express statutory

18   prohibition in Section 2, Fourth, against a carrier contributing its funds to any labor organization. 45

19   U.S.C. §152, Fourth.

20   This remedy is also far less intrusive than the remedy of disestablishment, which is ordinarily

21   imposed in a company union case such as this. *See Texas & N.O.R.,* 281 U.S. at 560. Although

22   Plaintiffs are entitled to disestablishment of SAPA on these facts, Plaintiffs do not seek an order

23

24

25
_____

26   [11](...continued)

     appropriate in *pre-certification* cases, when organizing drives are in their initial stages and no
27   certified union is yet available to protect its employees' rights. *See, e.g.*, *Ass'n of Flight Attendants*
     *v. Horizon Air Indus.*, 280 F.3d 901, 905–06 (9th Cir. 2002) ("judicial intervention" more
28   appropriate in pre-certification cases than in post-certification cases).

1   requiring SkyWest to withdraw recognition from SAPA or to cease dealing with SAPA.[12]  Plaintiffs do

2   not seek to invalidate the Crewmember Policy Manual to which SkyWest and SAPA are parties.[13]  Nor

3   do Plaintiffs seek any kind of order prohibiting SAPA from continuing in existence.[14]  Plaintiffs merely

4   seek to enforce their express statutory right to be free of employer interference with their right to

5   organize, and in particular, that SkyWest not contribute any funds to SAPA.  45 U.S.C. §152, Fourth.

6         **2.    SKYWEST'S UNLAWFUL PROVISION OF DISCRIMINATORY ACCESS TO SAPA REQUIRES AN ORDER PROHIBITING FUTURE**
7         **DISCRIMINATION AND REQUIRING EQUAL ACCESS.**

8        The relief sought by Plaintiffs in Paragraph 3 is squarely in line with precedent on unlawful

9   employer assistance, and, like paragraph 4, is far less intrusive than the remedy of disestablishment.

10       The prohibition against employer support for a union is violated not only when an employer

11  completely dominates the entity, but even where it simply provides one union over another preferred

12  access to employees.  *See, e.g., Duane Reade, Inc.*, 338 NLRB at 945; *Katz's Deli,* 316 NLRB 318, 333

13  (1995); *Ella Indus.,* Inc., 295 NLRB 976, 979-80 (1989); *Castaways Management,* 285 NLRB 954, 959,

14  974 (1987); *see also Konop*, 302 F.3d at 885 (employer "assisted one union faction over another").

15       The appropriate remedy in such cases is an injunction prohibiting discriminatory access and

16  requiring the employer to provide the excluded union with the same access previously granted to its

17  preferred union.  *See, e.g., San Manuel Indian Bingo and Casino*, 345 NLRB No. 79, Order at ¶¶1a, 2a

18  _____

19     [12] "Disestablishment" entails a complete prohibition against current and future dealings
20  between the employer and the company union.  Thus, a disestablishment order may prohibit the
    entity appearing on the ballot in a future representation election.  *Falk*, 308 U.S. at 461.

21     [13]  An order prohibiting the company from funding SAPA has no legal effect on the
22  enforceability, such as it is, of the Crewmember Policy Manual, *contra* Am. Opp. to Prel. Inj. at 12,
    which, in any event, may already be overridden by the company at its sole discretion, *see* Plfs.'
23  Exhs. 1, 2.  Further, where, as here, a disestablishment order runs solely against the employer, it
    may properly be entered without even providing notice and a hearing to the company union.  *See*
24  *Penn. Greyhound*, 303 U.S. at 271 ("As the order did not run against the Association, it is not
25  entitled to notice and hearing").  In any event, SAPA is fully on notice of these proceedings.  Two of
    its Executive Board members testified at the hearing. 6/8/07 Tr. at 6 (Eisenstat, SAPA Secretary);
26  *id*. at 118 (Nolin, SAPA President).

27     [14] Under the relief Plaintiffs seek, and to which they are entitled, SAPA would be free to
28  support its activities in the same manner as any bona fide union – through a combination of
    volunteer work and union dues.

1    (2005) (prohibiting employer from denying union "access to its property, facility, and employees on an

2    equal and equivalent basis [as provided to other union]" and requiring it to provide, on request, "the

3    same rights of access to its property, facility, and employees on an equal and equivalent basis"); *Kosher*

4    *Plaza Supermarket*, 313 NLRB 74, Order at ¶¶1d, 2(e) (1993) (prohibiting employer from "denying

5    [union] representatives" the "same rights and access [as provided to other union] to meet with . . .

6    employees on worktime and on its premises" and requiring it to provide, on request, access to "premises

7    to meet with employees during worktime as it had previously granted [other union]").[15]

8        Contrary to Defendant's representation, there is nothing unprecedented about a remedy of

9    access.[16]  As the D.C. Circuit has explained, "the critical inquiry is whether the employer conduct is of

10    such a nature that access is needed to offset harmful effects that have been produced by that conduct.

11    If union access is needed to dissipate those effects, access may be granted even though the union has

12    alternative means of communicating with employees." *United Steelworkers of America v. NLRB*, 646

13    F.2d 616, 638 (D.C. Cir. 1981) (enf'g in part, remanding in part NLRB order).[17]

14        Defendant also contends that SAPA does not use its preferred access to engage in any

15

16    _____

17        [15] *See also Regal Recycling*, 329 NLRB 355, 357 n.15 (1999) (noting propriety of order
18    requiring employer "to grant Local 813 and its representatives reasonable access to the [employer's]
      bulletin boards and all places where notices to employees are customarily posted" and "to its facility
19    in nonwork areas during employees' nonworktime"; such a remedy "carefully tailored" to
      employer's unlawful denial to one union of access to employees and facility, where such access
20    provided to other union); *Simmons Indus., Inc.*, 321 NLRB 228, 229 Order at ¶¶1h, 2d (1996)
      (prohibiting employer from "[s]electively and disparately enforcing a rule regulating public access
21    to . . . employees' breakroom" and requiring employer to "[a]llow access by the Union's
      representatives to . . . employee breakroom to the same extent and manner permitted other
22    nonemployee visitors and solicitors").

23        [16] The Circuit Courts have upheld NLRB orders requiring an employer to provide a union
24    seeking to organize with extensive access, even where the unlawful conduct did not involve
      discriminatory provision of access to one union over another.  *See, e.g., Fieldcrest Cannon, Inc. v.*
25    *NLRB*, 97 F.3d 65 (4th Cir. 1996); *NLRB v. S.E. Nichols, Inc.*, 862 F.2d 952 (2d Cir. 1988).

26        [17] The cases cited herein order access to an outside union and not to the employer's own
27    employees.  Access rules governing unions are actually much more strict than those governing
      employees. **The access Plaintiffs seek is only for specified OC members, all of whom are
28    SkyWest employees. Rev. Prop. Prel. Inj. at ¶3.  Because the proposed relief satisfies the higher
      standard for outside unions, Plaintiffs are plainly entitled it.

1   "campaigning" activity.  This contention is meritless for three reasons.

2          First, the prohibition against discriminatory access applies even when the union with preferred

3   access is engaging in speech related to its so-called "representational" duties, and not in any explicit

4   campaign activity.  In *Katz's Deli,* for example, the prohibited discriminatory access consisted of one

5   union's discussions with workers on the premises "pertaining to the negotiation of the agreement" it

6   had just entered into with the employer.  316 NLRB at 324.  Even assuming that SAPA used its special

7   access to company email and training sessions for new hires exclusively to discuss the "representation"

8   it provides SkyWest pilots, SkyWest's refusal to provide Plaintiffs with equal access is unlawful and

9   must be remedied.  *Id*. at 333.

10         Second, as a factual matter, SAPA does use its preferred access to "campaign."  The SAPA

11  representative who makes presentations to newly hired pilots has by his own admission made negative

12  comments about ALPA.  *See* 6/8/07 Tr. at 121–22.  SAPA has used its "group email" capability to send

13  emails to the entire pilot group that attacks communications sent by Plaintiff OC as "misleading and

14  requir[ing] a direct response."  Martirano Decl. Exh. 1.  In addition, it is undisputed that SAPA uses the

15  company email system in connection with regular election campaigns to elect SAPA representatives.

16  *See* 6/7/07 Tr. at 237–38.

17         Third, and most fundamentally, even if it were true that SAPA had engaged in little overt

18  campaigning, that would only *underscore* the need for the remedy sought by Plaintiffs.  SAPA does not

19  need to campaign because SkyWest has unlawfully "recognized" it without ever requiring SAPA to

20  show majority support.  *See* cases cited *supra* pp.3–5.  To permit SkyWest to continue to provide

21  discriminatory access to SAPA would allow the company to profit from its unlawful conduct in

22  "recognizing" SAPA, and obviating the need for SAPA to "campaign," as truly representative unions

23  are required to do.  Equally to the point, SkyWest's support of SAPA is by its nature campaign activity

24  against independent union representation because it allows SkyWest to create "the mistaken belief that

25  [SAPA] was truly representative and afforded an agency for collective bargaining," and thus "to prevent

26  self-organization" by the SkyWest pilot group.  *Penn. Greyhound*, 303 U.S. at 271.  SkyWest has

27  intentionally used its support of SAPA "as a convenient weapon to prevent the exercise of its

28  employees' rights to self-organization and collective bargaining."  *Falk Corp.*, 308 U.S. at 461.

1    Plaintiffs are entitled to a remedy that redresses the harm inflicted by that weapon.

2        The remedy sought – a preliminary injunction prohibiting SkyWest from providing

3    discriminatory access and requiring it to provide access to the same channels previously provided to

4    SAPA – is well within the main of relief ordered in unequal access cases. *See, e.g., San Manuel Indian*

5    *Bingo and Casino*, 345 NLRB No. 79, Order at ¶¶1a, 2a; *Kosher Plaza Supermarket*, 313 NLRB 74,

6    Order at ¶¶1d, 2(e); *see also Green v. County School Bd. of New Kent,* 391 U.S. 430, 438 (1968) ("the

7    court has not merely the power but the duty to render a decree which will so far as possible eliminate

8    the discriminatory effects of the past as well as bar like discrimination in the future").  It is also far more

9    modest than the remedy of "disestablishment" often imposed in cases such as this involving company

10   unions.  Requiring SkyWest to provide members of Plaintiff OC with access to company email and

11   newly hired pilot classes is "the only effective way of wiping the slate clean and affording the

12   employe[e]s an opportunity to start afresh in organizing." *Newport News,* 308 U.S. at 250.  Congress

13   and the courts have long recognized the inherently destructive effect on employee free choice of

14   company unions.  Providing comparable "access is needed to offset [those] harmful effects." *United*

15   *Steelworkers of America*, 646 F.2d at 638.[18]

16   **III.    ABSENT PRELIMINARY INJUNCTIVE RELIEF, PLAINTIFFS' RIGHT TO BE FREE**
17   **OF THE COERCIVE EFFECTS OF SKYWEST'S SUPPORT FOR SAPA WILL BE**
     **IRREPARABLY LOST.**

18       The relief Plaintiffs seek from the coercive effects of SkyWest's support of SAPA must be

19   granted as part of the preliminary injunction or the RLA-protected right of SkyWest pilots to exercise

20   free choice, without employer interference, will be forever, irreparably lost.

21       Paragraphs 3 and 4 of Plaintiffs' proposed preliminary injunction remedy the harm that SkyWest

22   has inflicted on pilots' right to free choice through SkyWest's unlawful support of SAPA.  As the

23   Supreme Court has explained, company unions exert an inherently coercive effect on employee free

24

25       [18] Although there is ample precedent for an order requiring SkyWest to provide members of
26   Plaintiff OC with remedial access, there can be no doubt that, at a minimum, a preliminary
     injunction prohibiting SkyWest from discriminating between SAPA and members of Plaintiff OC
27   with regard to access is required in this case. *See, e.g., Duane Reade, Inc.*, 338 NLRB at 945;
28   *Katz's Deli,* 316 NLRB at 333; *Ella Indus., Inc.*, 295 NLRB at 979-80 ; *Castaways Management,*
     285 NLRB at 959, 974.

1    choice by creating the "mistaken belief" that employees do not need independent representation. *Penn.*

2    *Greyhound*, 303 U.S. at 271. Its is also well-established that "coercive and inhibitory effects upon the

3    employees' organizational rights secured by the RLA" are "irreparable," and thus demand preliminary

4    injunctive relief. *Arcamuzi*, 819 F.2d at 938.

5        A preliminary injunction providing only the relief in paragraphs 1 and 2 of Plaintiffs' proposed

6    preliminary injunction, while safeguarding important expressive and associational rights, would do

7    nothing to address the harmful effects stemming from SkyWest's unlawful support of SAPA. Where,

8    as here, Plaintiffs have an overwhelming likelihood of success on their claims of unlawful employer

9    support, *see supra* Part I-B, preliminary injunctive relief is necessary to guard against the "irreparable"

10   harm to their "organizational rights" based on SkyWest's "coercive and inhibitory" conduct. *Arcamuzi*,

11   819 F.2d at 938.

12       The harm at issue here is particularly time sensitive because Plaintiffs are engaged in an

13   organizing campaign. Absent the relief provided for in Paragraphs 3 and 4, SkyWest will continue to

14   utilize the "convenient weapon" of SAPA "to prevent the exercise of its employees' rights to self-

15   organization and collective bargaining." *Falk,* 308 U.S. at 461. Deferral of relief on the company union

16   issues until a final judgment on the merits would thus amount to *denial* of relief. *See, e.g., Scott ex rel.*

17   *NLRB v. Stephen Dunn &* Assocs., 241 F.3d 652, 667 (9th Cir. 2001) ("The value of the right to enjoy

18   the benefits of union representation is immeasurable in dollar terms once it is delayed or lost."); *Brown*

19   *v. Pac. Tel. & Telegraph Co.*, 218 F.2d 542, 544 (9th Cir. 1955) ("drifting away" of supporters from

20   union "to the union favored by the employers" constitutes irreparable harm).

21       Plaintiffs' right to organize, free of the coercive effect of SkyWest's support of SAPA, is as

22   precious, and perishable, as the expressive and associational rights for which preliminary injunctive

23   relief is unquestionably appropriate. *Cf., e.g., Elrod v. Burns*, 427 U.S. 347, 373 (1976) (First

24   Amendment). Indeed, the Supreme Court has made clear that extreme remedies (such as

25   disestablishment) are necessary in company union cases to "afford[] the employe[e]s an opportunity to

26   start afresh in organizing" and "to insure employees that complete freedom of choice guaranteed" by

27   statute. *Newport News*, 308 U.S. at 250; *Falk*, 308 U.S. at 461. To deny preliminary injunctive relief

28   on Plaintiffs' SAPA claims – and thereby permit SkyWest "to prevent self-organization," *Penn.*

1  *Greyhound*, 303 U.S. at 271 – would render a nullity the well-established right of employees to organize

2  free of employer support for a company union.

3      Finally, the National Mediation Board's authority to administer an election in no way negates

4  the irreparability of the harm to Plaintiffs' free choice right.  The NMB has *no authority* to adjudicate

5  violations of the Act.  *Horizon Air Indus. v. NMB*, 232 F3d 1126, 1133 (9th Cir. 2000).  The NMB may

6  supervise elections, but it cannot even investigate a claim of unlawful employer interference until *after*

7  the election is conducted (absent undefined "extraordinary circumstances") and the irreparable harm

8  to Plaintiffs' right to organize has *already* been inflicted.  *See* NMB Rep. Manual §17.0 at 24 (2005).[19]

9  The relief sought here can *only* be granted by this court, and absent such relief, Plaintiffs will have no

10  remedy at all.[20]

11                    **CONCLUSION**

12      For the foregoing reasons, the Court should enter Plaintiffs' revised proposed preliminary

13  injunction.

14  Dated:  June 12, 2007          Respectfully submitted

15                    STEPHEN P. BERZON
                      LINDA LYE
16                    CLAIRE P. PRESTEL
                      Altshuler Berzon LLP
17
                      ELIZABETH GINSBURG
18                    Air Line Pilots Association, International

19
                      by:  \s\Stephen P. Berzon
20                              Stephen P. Berzon

21                    Attorneys for Plaintiffs

22
    _____

23      [19]Available at www.nmb.gov/representation/representation-manual.pdf.

24      [20] Even if the NMB had "concurrent" jurisdiction (which it does not, as even SkyWest's

25  *Delta Airlines* case recognizes), the existence of a separate forum, whether a different court or an
    administrative remedy (*see Patsy v. Bd. of Regents*, 457 U.S. 496 (1982)), has never rendered

26  inappropriate the issuance of preliminary injunctive relief by a federal court.  Claims for violations
    of federal rights, 42 U.S.C. §1983, for example, are routinely brought in federal court.  Despite

27  concurrent state court jurisdiction over such claims, preliminary injunctive relief is regularly issued

28  so long as plaintiffs satisfy the requirements for such relief, which Plaintiffs in this case plainly do.