# EXHIBIT A

# The Railway Labor Act

Second Edition

## III. PROTECTION OF EMPLOYEE RIGHTS TO SELF-ORGANIZATION

### A. Jurisdiction

The 1934 amendments added administrative procedures to the Act, whereby the NMB determines the employees' choice of representative "in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier."[23] The courts in general have continued to recognize a private right of action to enforce the right to organize without carrier interference, as set forth in *Texas & New Orleans R.R.*[24] The first such case in the Supreme Court under the amended statute, *Virginian Railway v. System Federation*,[25] upheld the power of the courts to compel a carrier to treat with a union certified by the NMB under the procedures of Section 2, Ninth.

Subsequently, the courts generally have exercised jurisdiction over actions brought against carriers for interference with employees' rights under RLA Sections 2, Third and Fourth, during union organizing drives. These courts have held or implied that neither the NMB's powers under Section 2, Ninth, to determine the identity of the employees' representative without interference by the carrier, nor the enforcement procedures specified in Section 2, Tenth, are the exclusive means for protecting employees' rights under Section 2, Third and Fourth.[26]

---

[23] RLA §2, Ninth. For a discussion of the NMB's determinations on interference with employee choice during representation campaigns, see *supra* at Chapter 4, §VI.

[24] Thus, the holding of *Texas & New Orleans R.R. v. Railway & Steamship Clerks*, 281 U.S. 548 (1930), that the Act's protections of the right of self-organization are judicially enforceable in a private suit, continues to apply after the 1934 amendments. In *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 926–27, 114 LRRM 3641 (1st Cir. 1983), for example, the court observed that in adopting the 1934 amendments to the Act, Congress did not express an intent to overrule *Texas & New Orleans R.R.* or to make proceedings by the U.S. Attorneys the exclusive means for enforcing the Act.

[25] 300 U.S. 515, 1 LRRM 743 (1937).

[26] *See, e.g., Stepanischen*, 722 F.2d at 924, 926, 114 LRRM 3641, and cases cited therein (existence of criminal penalties does not preclude enforcement by private parties); *Adams v. Federal Express Corp.*, 547 F.2d 319, 321, 94 LRRM 2008 (6th Cir. 1976) (because the RLA contains no analog to the NLRB's jurisdiction over unfair labor practices, courts must resolve interference claims under RLA),

Legal actions to seek relief for carrier interference with pre-certification organizing activities under Section 2, Third or Fourth, may be brought during the processing of representation disputes under Section 2, Ninth, as well as after the dispute has been resolved.[27] Supplementing the NMB's traditional remedies for carrier interference, discussed in Chapter 4, courts may adjudicate the legality of carrier conduct; issue injunctive relief; and order reinstatement, backpay, and restored benefits and seniority.[28] Some courts also have recognized a right to a jury trial and punitive damages.[29] One district court held that the NMB's findings in a representation proceeding that employees were not discharged for engaging in organizing activities neither bar the employees from suing the carrier for wrongful discharge in violation of the Act nor bind the court.[30]

In certain circumstances, courts have exercised jurisdiction over claims of carrier interference occurring after certification of a

---

*cert. denied*, 431 U.S. 915, 95 LRRM 2326 (1977); Burke v. Compania Mexicana de Aviacion, 433 F.2d 1031, 75 LRRM 2658 (9th Cir. 1970) (criminal enforcement mechanism is not exclusive means of enforcing RLA); Beckett v. Atlas Air, Inc., 150 LRRM 2749, 2751 (E.D.N.Y. 1995) (same); Kent v. Fugere, 438 F. Supp. 560, 96 LRRM 3267 (D. Conn. 1977) (plaintiff not required to exhaust remedies at NMB or Adjustment Board before bringing suit under §2, Fourth); Associated Pilots of Alaska Int'l Air, Inc. v. Alaska Int'l Air, Inc., 96 LRRM 3233 (D. Alaska 1976) (district court rather than NMB had jurisdiction over interference claim); Griffin v. Piedmont Aviation, Inc., 384 F. Supp. 1070, 87 LRRM 2764 (N.D. Ga. 1974) (no union certified and no System Board; therefore court has jurisdiction over interference claim). *See also* America W. Airlines v. NMB, 986 F.2d 1252, 142 LRRM 2639 (9th Cir. 1992) (NMB lacks power to adjudicate the legality of carrier conduct). In some situations, courts have declined to resolve union claims of interference because the issues implicated representation disputes within the NMB's exclusive jurisdiction. *E.g.*, Texidor v. Ceresa, 590 F.2d 357, 100 LRRM 2477 (1st Cir. 1978); Ruby v. American Airlines, 323 F.2d 248, 54 LRRM 2202 (2d Cir. 1963); Aircraft Mechanics Fraternal Ass'n v. United Airlines, 406 F. Supp. 492, 91 LRRM 2248 (N.D. Cal. 1976); Machinists v. Air Indies Corp., 86 LRRM 2076 (D.P.R. 1973).

[27]*See, e.g.*, Adams v. Federal Express Corp., 90 LRRM 2742 (W.D. Tenn. 1975), *aff'd*, 547 F.2d 319, 94 LRRM 2008 (6th Cir. 1976), *cert. denied*, 431 U.S. 915, 95 LRRM 2326 (1977) (action brought during organizing drive); Burke v. Compania Mexicana de Aviacion, 433 F.2d 1031, 75 LRRM 2658 (action brought following organizing drive).

[28]For a full discussion of judicial remedies and procedures in carrier interference cases, see §III.F., *infra*.

[29]*See, e.g.*, Lebow v. American Trans Air, Inc., 86 F.3d 661, 667–72, 152 LRRM 2463 (7th Cir. 1996) (finding right to jury trial and punitive damages for claim of discharge because of union activities). See also §III.F., *infra*.

[30]Freiburger v. Emery Air Charter, 142 LRRM 2570 (N.D. Ill. 1992).

court of appeals observed that *Weingarten* rights are premised on the protection in the NLRA of the right "to engage in ... concerted activities for the purpose of ... mutual aid or protection" but that the RLA contains no comparable protection.[111]

A district court has held that the RLA prohibits a carrier from discharging nonunion employees for refusing to cross picket lines during a primary strike against their employer by unionized employees in another craft or class, unless the terminations are "necessary to prevent disruption of vital transportation services."[112]

### F. Judicial Remedies and Procedures

#### 1. Judicial Remedies

Several forms of relief have been awarded to employees who prevail in court cases on grounds of carrier interference with representation rights. These include orders of reinstatement, backpay, restored benefits, and restored seniority.[113]

Only one circuit court has addressed the availability of punitive damages in wrongful discharge cases under Section 2, Third and Fourth, of the RLA. The Seventh Circuit held in *Lebow v. American Trans Air, Inc.*[114] that punitive damages were recoverable by an employee who allegedly was discharged in retaliation for union organizing activity. The court explained that, where there is an implied right of action under a federal statute, the courts "must

---

[111]*Johnson*, 944 F.2d at 251, 138 LRRM at 2595.
[112]Arthur v. United Air Lines, 655 F. Supp. 363, 367, 126 LRRM 2082, 2085 (D. Colo. 1987). For further discussion on the right of employees to engage in sympathy strikes, see Chapter 8, §II.B.3.
[113]Burke v. Compania Mexicana de Aviacion, 433 F.2d 1031, 1034, 75 LRRM 2658 (9th Cir. 1970) (damages and reinstatement); Adams v. Federal Express Corp., 470 F. Supp. 1356, 1363, 1368, 101 LRRM 2543, 2546, 2550 (W.D. Tenn. 1979) (reinstatement, restored seniority, and backpay), *aff'd*, 654 F.2d 452, 109 LRRM 3123 (6th Cir. 1981); Lum v. China Airlines Co., 413 F. Supp. 613, 617, 92 LRRM 2451 (D. Haw. 1976) (reinstatement and restored benefits). *But see* Associated Pilots of Alaska Int'l Air, Inc. v. Alaska Int'l Air, Inc., 96 LRRM 3233, 3238 (D. Alaska 1976) (on motion for preliminary injunction, court enjoined further violations of §2, Fourth, but denied reinstatement of employee). In *Teamsters v. America W. Airlines*, 153 LRRM 2181, 2186 (D. Ariz. 1996), a district court held that there was no bar to the enforcement of release agreements signed by individual employees under which the employees waived their right to bring suit for discharge in violation of §2, Third and Fourth.
[114]86 F.3d 661, 152 LRRM 2463 (7th Cir. 1996).

'presume the availability of all appropriate remedies unless Congress has expressly indicated otherwise.' "[115] The court stated that "[a]warding punitive damages to non-union employees would not interfere with the collective bargaining process because there is no collective bargaining process with which to interfere."[116]

Lower courts are divided on the issue of whether punitive damages are available to an employee for carrier violations of Section 2, Third and Fourth, of the RLA. An important consideration in many cases is whether the employee was represented by a union.[117] However, some courts have stated generally that punitive damages are available in claims under the RLA without specifically discussing whether or not the employee was represented by a union,[118] and, in cases where the employee was nonrepresented, other courts have stated generally that punitive damages are not available.[119]

Section 2, Tenth, of the Act also establishes criminal penalties against carriers and their officers and agents for willful failure to comply with Section 2, Third, Fourth, Fifth, Seventh, or Eighth.[120]

---

[115] *Id.*, 86 F.3d at 670 (quoting Franklin v. Gwinnett County Pub. Schs., 503 U.S. 60, 66 (1992)).

[116] *Id.* at 672.

[117] *Compare* Beckett v. Atlas Air, Inc., 968 F. Supp. 814, 824–25, 155 LRRM 2816 (E.D.N.Y. 1997) (punitive damages available where employee was not represented by union); *and* Freiburger v. Emery Air Charter, Inc., 795 F. Supp. 253, 260, 143 LRRM 2148 (N.D. Ill. 1992) (same); *and* Belton v Air Atlanta, Inc., 647 F. Supp. 28, 124 LRRM 2661 (N.D. Ga. 1986) (same); *and* Brown v. World Airways, Inc., 539 F. Supp. 179, 118 LRRM 3183 (S.D.N.Y. 1982) (same), *with* Railway Carmen v. Delpro Co., 579 F. Supp. 1332, 118 LRRM 3185 (D. Del. 1984) (punitive damages not available where employee was union represented); *and* Flight Attendants (AFA) v. America W. Airlines, Inc., 161 LRRM 2381 (D. Ariz. 1999) (same holding as to union's claim for punitive damages).

[118] Machinists v. Northwest Airlines, Inc., 131 LRRM 2598 (D. Minn. 1988); Machinists v. Jet Am. Airlines, Inc., 115 LRRM 3283 (C.D. Cal. 1983).

[119] Tipton v. Aspen Airways, Inc., 741 F. Supp. 1469, 1470–71, 135 LRRM 2151 (D. Colo. 1990); Maas v. Frontier Airlines, Inc., 676 F. Supp. 224, 226–27, 128 LRRM 2420 (D. Colo. 1987). *See also* Grosschmidt v. Chautauqua Airlines, Inc., 122 LRRM 3254 (N.D. Ohio 1986) (noting that, in prior decision, court had dismissed plaintiff's claim for punitive damages).

[120] The statute states that it shall be the duty of any U.S. Attorney to prosecute violations of the specified provisions of §2 upon application of "any duly designated representative of a carrier's employees." RLA §2, Tenth. But see U.S. ATTORNEYS' MANUAL at 9-139.103, *supra* note 41 (Justice Department policy not to institute criminal prosecutions except in cases of violence or bribery; policy does not apply to civil litigation by Justice Department).

There has been only one reported criminal prosecution under Section 2, Tenth.[121]

### 2. Statute of Limitations

Several courts have addressed the question of the applicable statute of limitations in actions alleging carrier interference under Section 2, Third or Fourth. Those courts that have decided the issue have adopted the six-month statute of limitations derived from Section 10(b) of the NLRA.[122] The D.C. Circuit held that a carrier's "continued reliance" upon its policy excluding unionized employees from profit sharing, and "repeated threats to enforce this policy should crewmembers exercise this right to unionize, constitutes a continuing violation," and prevented the union's claim from being time-barred.[123]

### 3. Right to Jury Trial

The Seventh Circuit held that a jury trial was available in a wrongful discharge case because the plaintiff's claim under the RLA

---

[121]United States v. Winston, 558 F.2d 105, 109–10, 95 LRRM 2877 (2d Cir. 1977) (reversing convictions of airline officials for violating §2, Tenth, through discharge of union adherents in connection with organizing drive; court ruled that jury should have been instructed that defendants must have intended to violate a known legal duty in order to be convicted, and that in a criminal prosecution, if legitimate reasons existed for the discharge, the government must establish that such reasons alone would not have led to the discharge).

[122]Gvozdenovic v. United Air Lines, 933 F.2d 1100, 1107, 137 LRRM 2534 (2d Cir.), cert. denied, 498 U.S. 1085, 138 LRRM 2536 (1991); Benoni v. Boston & Me. Corp., 828 F.2d 52, 56, 126 LRRM 2273 (1st Cir. 1987); Machinists v. Aloha Airlines, 790 F.2d 727, 122 LRRM 2642 (9th Cir.), cert. denied, 479 U.S. 931, 123 LRRM 2904 (1986); Robinson v. Pan Am. World Airways, 777 F.2d 84, 120 LRRM 3374 (2d Cir. 1985); Tee v. UAL Corp., 902 F. Supp. 1572, 1575, 150 LRRM 2366 (N.D. Ga. 1995) (six-month limitations period ran from the date the plaintiff received "clear and unequivocal" notice of the alleged violation), aff'd without op., 91 F.3d 163, 152 LRRM 2832 (11th Cir. 1996), cert. denied, 520 U.S. 1264, 155 LRRM 2448 (1997).

[123]Atlas Air, Inc. v. Air Line Pilots Ass'n, 232 F.3d 218 (D.C. Cir. 2000). See also Dorsey v. United Parcel Serv., 195 F.3d 814, 818, 162 LRRM 2726 (6th Cir. 1999) (declining to address whether the six-month NLRA statute of limitations should be borrowed in actions under §2, Fourth, and holding that on the facts before it—involving the transfer of an employee and his subsequent termination because of his efforts to organize his fellow pilots—the statute of limitations did not begin to run with the employee's transfer but only when the carrier finally discharged him for his organizing activities).