# EXHIBIT B

# The Developing Labor Law
## Fifth Edition

## Volume I

H. 8.III.    EMPLOYER DOMINATION AND ASSISTANCE                431

*[r]sula General Hospital Medical Center*[60] the Fourth Circuit found the [e]lement of "dealing with" was not established where there were only [is]olated instances of employee proposals concerning working con[d]itions and management consideration thereof rather than a "pat[te]rn or practice" of such activity. But in *NLRB v. Webcor Packaging*[61] [th]e Sixth Circuit found that when a committee established by the [e]mployer to investigate safety, productivity, quality, and other "non[p]olicy" issues made several suggestions and management granted at [le]ast four, there was "dealing with" under the *DuPont* decision.

### III. EMPLOYER DOMINATION

Section 8(a)(2) prohibits employer *domination* of a labor orga[n]ization. Prohibited domination exists when the organization is con[t]rolled or directed by the employer, rather than by the employees.[62] [T]he original intent of Section 8(a)(2) was principally to eradicate ["]company unions" created by employers to minimize the threat of [e]mployee representation by outside labor organizations. However, [C]ongress did not intend to prohibit employees from freely selecting [r]epresentation by a "company" or "enterprise" union, that is, an in[d]ependent union organized solely on a companywide basis.[63]

---

19 NLRB 1203, 151 LRRM 1221 (1995) (violation found where Plant Council was [d]esigned to engage in pattern and practice of making recommendations for man[a]gement consideration). *But see* Reno Hilton Resorts, 319 NLRB 1154, 152 LRRM [1]245 (1995) (quality action teams existed "in part" for purpose of dealing with em[p]loyer even though committee recommendations were minority of topics addressed [a]t team meetings).
    [60]36 F.3d 1262, 147 LRRM 2513 (4th Cir. 1994), *denying enforcement of* 312 NLRB 82, 144 LRRM 1252 (1993).
    [61]118 F.3d 1115, 155 LRRM 2791 (6th Cir. 1997), *enforcing* 319 NLRB 1203, 151 [L]RRM 1221 (1995).
    [62]*See, e.g.,* Wahlgren Magnetics, 132 NLRB 1613, 48 LRRM 1542 (1961); Han[d]ee Spring & Mfg. Co., 132 NLRB 1542, 48 LRRM 1566 (1961).
    [63]"Nothing in the bill prohibits the formation of a company union, if by that [t]erm is meant an organization of workers confined by their own volition to the [b]oundaries of a particular plant or employer. What is intended is to make such [o]rganization the free choice of the workers, and not a choice dictated by forms of [i]nterference which are weighty precisely because of the existence of the employer-[e]mployee relationship." H.R. REP. No. 972, 74th Cong., 1st Sess. 15–16 (1935), *re[p]rinted in* 2 NLRB, LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT, [1]935, at 2971–72 (1949). An international comparative note: Almost all Japanese [t]rade unions are "enterprise" unions, confined to the employees of a single em[p]loyer. *See generally* Hanami, Japan, 5 INTERNATIONAL ENCYCLOPEDIA FOR LABOUR [L]AW AND INDUSTRIAL RELATIONS ¶¶188–94 (R. Blanpain ed. 1978).



The Board's first case under the Wagner Act involved Pennsylvania Greyhound Lines, which formed and controlled a company union for the handling of employee grievances in an effort to avoid dealing with a more militant outside organization.[64] The Board completely disestablished the company union and ordered the employer never to bargain with it again.[65] By the eve of the enactment of the Taft-Hartley amendments in 1947, Board Chairman Herzog was able to observe, in the *Detroit Edison Co.* case,[66] that employer domination of company unions had ceased to be the problem it had been in 1935. The prohibition was nevertheless kept intact in the new Act.

The Board's basic approach to unlawful domination of labor organizations was approved by the Supreme Court in *NLRB v. Newport News Shipbuilding & Dry Dock Co.*[67] The Board there ordered disestablishment of an employee committee that gave the employer the power to veto the organization's proposed actions, even though the challenged organization had prevented serious labor disputes and had employee support; and there was no evidence that the employer had actually exercised its power to control it. The Board and the Court found that the employer possessed such "control of the form and structure of an employee organization" as to deprive the employees of the "complete freedom of action guaranteed to them by the Act."[68]

While there is uniform agreement that Section 8(a)(2) was designed to facilitate employee free choice and self-organization, the Board and the courts have wrestled with the problem of distinguishing between *cooperation*, which the Act permits, and *domination*, which

---

[64]Pennsylvania Greyhound Lines, 1 NLRB 1, 1 LRRM 303 (1935).

[65]Disestablishment of company unions is the traditional Board remedy whenever prohibited domination or control is found. *See, e.g.*, Metropolitan Alloys Corp., 233 NLRB 966, 97 LRRM 1220 (1977), *enforced*, 624 F.2d 743, 105 LRRM 3419 (6th Cir. 1980); Kux Mfg. Corp., 233 NLRB 317, 97 LRRM 1052 (1977). *See* Sections VII.–VIII., *infra*.

[66]74 NLRB 267, 20 LRRM 1160 (1947).

[67]308 U.S. 241, 5 LRRM 665 (1939).

[68]*Id.* at 249. Similarly, in *NLRB v. Brown Paper Mill Co.*, 108 F.2d 867, 5 LRRM 782 (5th Cir. 1940), the employee association members testified that they were not dominated or coerced by the employer and that they desired representation by the association. Although the Board found no evidence that the employer in fact dominated the association, disestablishment was ordered because the employer had supported its formation.

the Act prohibits.[69] In *Humble Oil & Refining Co. v. NLRB*[70] the Fifth Circuit noted that the Board is not the "guardian or ruler over the employees, but is only empowered to deliver them from restraint at the hands of the employer when it exists."[71] Concerning employees' preference for an inside committee system rather than an outside union, Judge Magruder, in *Coppus Engineering Corp. v. NLRB*,[72] commented that the "choice was theirs," and that the Act was limited to guaranteeing them the "freedom to exercise that choice unimpeded by employer interference or coercion."[73]

In *Spiegel Trucking Co.*[74] the Board found the following factors relevant to the question of domination: (1) the relationship of the employer to the labor organization; (2) the nature of the collective bargaining negotiations between the parties; (3) what control, if any, the employer has over the union's membership; (4) whether the organization has a constitution and bylaws; (5) the nature and place of meetings of the organization; (6) whether employees are compensated for time and attendance at such meetings; and (7) whether supervisory personnel attend such meetings, and if so, their role in the organization.[75]

Generally, the Board considers a labor organization unlawfully dominated if the employer has the *potential power* to control it,[76] but

---

[69] *See* Hertzka & Knowles v. NLRB, 503 F.2d 625, 87 LRRM 2503 (9th Cir. 1974), *denying enforcement to* 206 NLRB 191, 84 LRRM 1556 (1973), *cert. denied*, 423 U.S. 875, 90 LRRM 2554 (1975).

[70] 113 F.2d 85, 6 LRRM 816 (5th Cir. 1940).

[71] *Id.* at 88.

[72] 240 F.2d 564, 39 LRRM 2315 (1st Cir. 1957).

[73] *Id.* at 573 (Magruder, C.J., concurring). Judge Magruder added: "[T]he statute does not make it the duty of the employer, nor a function of the Board, to 'baby' along the employees in the direction of choosing an outside union as a bargaining representative." *Id.* at 574.

[74] 225 NLRB 178, 179, 92 LRRM 1604 (1976), *enforced*, 559 F.2d 188, 95 LRRM 3010 (D.C. Cir. 1977); *accord* Wahlgren Magnetics, 132 NLRB 1613, 48 LRRM 1542 (1961).

[75] In *Spiegel*, the Board declined to find unlawful domination, although the employer was the moving force in the formation of the Spiegel Trucking Company Drivers Committee, because of an absence of proof of domination after the formation of the organization.

[76] *See, e.g.*, Stephens Inst., 241 NLRB 454, 100 LRRM 1603 (1979); Janesville Prods. Div., 240 NLRB 854, 100 LRRM 1383, *enforcement granted in part and denied in part*, 610 F.2d 819 (7th Cir. 1979); Northeastern Univ., 235 NLRB 858, 98 LRRM 1347 (1978), *enforcement denied*, 601 F.2d 1208, 101 LRRM 2767 (1st Cir. 1979); Duquesne Univ., 198 NLRB 891, 81 LRRM 1091 (1972).

reviewing courts generally have required evidence of *actual control*.[77] This difference in approach was illustrated by the Board's decision in *Northeastern University*[78] and the First Circuit's denial of enforcement.[79] In applying its test requiring *actual* domination, the First Circuit rejected the evidence relied upon by the Board, commenting that "allowing meetings on company property and company time, assisting with election procedures, providing for printing and secretarial services, and funding occasional social activities—does not a domination case make."[80]

The courts have recognized that the potential means for domination are always present to some degree in any employer-employee relationship;[81] however, there is no basis for a finding of a Section 8(a)(2) violation without evidence of its realization. "Words and actions which might dominate the employees in their choice of a bargaining agent do not constitute domination proscribed by the Act unless the employees are actually dominated."[82]

Courts also have held that employer cooperation that assists the employees or their bargaining representative in expressing their interests does not violate Section 8(a)(2).[83] Indeed, such assistance may be needed where the bargaining representative is "a feeble instrument."[84] Several court decisions have insisted that an organization is not per se dominated simply because it has no formal membership, no dues, no mass meetings, and no written collective bargain-

---

[77] The Ninth Circuit stated, "The sum of this is that a section 8(a)(2) finding must rest on a showing that the employees' free choice, either in type of organization or in the assertion of demands, is stifled by the degree of employer involvement at issue." Hertzka & Knowles v. NLRB, 503 F.2d 625, 630, 87 LRRM 2503 (9th Cir. 1974), *denying enforcement to* 206 NLRB 191, 84 LRRM 1556 (1973), *cert. denied*, 423 U.S. 875, 90 LRRM 2554 (1975). *See* Federal-Mogul Corp. v. NLRB, 394 F.2d 915, 918, 68 LRRM 2332 (6th Cir. 1968); NLRB v. Prince Macaroni Mfg. Co., 329 F.2d 803, 809–12, 55 LRRM 2852 (1st Cir. 1964); Coppus Eng'g Corp. v. NLRB, 240 F.2d 564, 39 LRRM 2315 (1st Cir. 1957); *but cf.* Newport News Shipbuilding & Dry Dock Co., 308 U.S. 241, 5 LRRM 665 (1939).

[78] 235 NLRB 858, 98 LRRM 1347.

[79] NLRB v. Northeastern Univ., 601 F.2d 1208, 101 LRRM 2767 (1st Cir. 1979).

[80] *Northeastern Univ.*, 601 F.2d at 1214.

[81] *See, e.g.*, Chicago Rawhide Mfg. Co. v. NLRB, 221 F.2d 165, 35 LRRM 2665 (7th Cir. 1955).

[82] *Id.* at 167.

[83] *See, e.g., Northeastern Univ.*, 601 F.2d 1208, 101 LRRM 2767.

[84] Coppus Eng'g Corp. v. NLRB, 240 F.2d 564, 573, 39 LRRM 2315 (1st Cir. 1957) (cited in NLRB v. Northeastern Univ., 601 F.2d 1208, 1213, 101 LRRM 2767 (1st Cir. 1979)).

ing agreement.[85] In one case, the appellate court found insufficient evidence of actual domination where the employer had permitted meetings on company time, had controlled the length of meetings, and had advised an employee representative not to concern himself with a particular safety problem.[86]

The Board and the courts are in general agreement, however, that domination exists where the employer creates an employee committee, selects the employee representatives, requires that committee membership be on a rotating basis, and determines when meetings will be held and also presides over them.[87] The same standards apply equally to labor organizations acting as employers.[88]

Because the agreement on these fundamental principles is so widespread, the Board's *Electromation, Inc.*[89] decision broke no new ground in ruling that the "action committees" scrutinized in that case were labor organizations dominated by the employer. The employer initiated the action committees to deal with employee displeasure. Although employee reaction to the concept of such committees

---

[85] *See, e.g., Northeastern Univ.*, 601 F.2d 1208, 101 LRRM 2767; Hertzka & Knowles v. NLRB, 503 F.2d 625, 87 LRRM 2503 (9th Cir. 1974), *denying enforcement to* 206 NLRB 191, 84 LRRM 1556 (1973), *cert. denied*, 423 U.S. 875, 90 LRRM 2554 (1975). The courts have held that the Act does not require approval of a purely adversarial model of labor relations. *Hertzka & Knowles*, 503 F.2d at 631. For criticism of the Board's adversarial approach, see Note, *Discarding the Doctrine of Supervisory Domination: New Solutions to an Old Conflict of Interest*, 30 HASTINGS L.J. 763 (1979).

[86] Federal-Mogul Corp. v. NLRB, 394 F.2d 915, 68 LRRM 2332 (6th Cir. 1968); *see also* Hotpoint Co. v. NLRB, 289 F.2d 683, 48 LRRM 2101 (7th Cir. 1961).

[87] *See, e.g.,* Beverly Cal. Corp. v. NLRB, 227 F.3d 817, 165 LRRM 2257 (7th Cir. 2000), *enforcing in part* 326 NLRB 153, 159 LRRM 1049; 326 NLRB 232, 159 LRRM 1033 (1998), *cert. denied*, 533 U.S. 950, 167 LRRM 2640 (2001) (employee council was creature of management); V&S ProGalv v. NLRB, 168 F.3d 270, 160 LRRM 2518 (6th Cir. 1999), *enforcing* 323 NLRB 801, 157 LRRM 1255 (1997); Utrad Corp. v. NLRB, 454 F.2d 520, 79 LRRM 2080 (7th Cir. 1971), *enforcing* 185 NLRB 434, 75 LRRM 1069 (1970); NLRB v. Ampex Corp., 442 F.2d 82, 77 LRRM 2072 (7th Cir. 1971), *enforcing* 168 NLRB 742, 67 LRRM 1134 (1967), *cert. denied*, 404 U.S. 939, 78 LRRM 2704 (1971); NLRB v. Reed Rolled Thread Die Co., 432 F.2d 70, 75 LRRM 2344 (5th Cir. 1970); Miller Indus. Towing Equip., Inc., 342 NLRB No. 112, 176 LRRM 1103 (2004); Kux Mfg. Corp., 233 NLRB 317, 97 LRRM 1052 (1977) (the employer paid representatives for time spent in meetings, unilaterally prepared and issued minutes of the meetings, and responded favorably only to those complaints and suggestions brought by representatives that it found beneficial to its own interests). *See also* Dillon Stores, 319 NLRB 1245, 151 LRRM 1225 (1995); *but see* NLRB v. Homemaker Shops, 724 F.2d 535, 115 LRRM 2321 (6th Cir. 1984), *denying enforcement in part to* 261 NLRB 441, 110 LRRM 1082 (1982).

[88] In *Teamsters Local 688*, 215 NLRB 852, 88 LRRM 1217 (1974), the labor organization-employer violated §8(a)(2) by entering into a collective bargaining agreement with itself as representative of its clerical employees.

[89] 309 NLRB 990, 142 LRRM 1001 (1992).

