STEPHEN P. BERZON (#46540)
sberzon@altshulerberzon.com
LINDA LYE (#215584)
llye@altshulerberzon.com
CLAIRE P. PRESTEL (#235649)
cprestel@altshulerberzon.com
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA  94108
Telephone:  (415) 421-7151
Facsimile:   (415) 362-8064

ELIZABETH GINSBURG
(Admitted to Practice *Pro Hac Vice*)
elizabeth.ginsburg@alpa.org
Air Line Pilots Association, International
1525 Massachusetts Ave., NW
Washington, D.C. 20036
Telephone: (202) 797-4081
Facsimile:   (202) 797-4014

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, *et al.*, | ) | CASE No. C-07-2688 CRB |
| | ) | |
| Plaintiffs, | ) | **PLAINTIFFS' REPLY RE: REMEDIES** |
| | ) | |
| vs. | ) | |
| | ) | Date:  n/a |
| SKYWEST AIRLINES, INC., | ) | Time:  n/a |
| | ) | Place:  Courtroom 8, 19th Floor |
| Defendant. | ) | |
| | ) | |

1    Plaintiffs submit this brief reply in response to SkyWest's opposition regarding remedies.[1]

2    1.    SkyWest devotes ten pages of its brief to the jurisdictional issue the Court has

3    said it will rule on in deciding SkyWest's motion to dismiss.  SkyWest has no persuasive arguments

4    on the merits of Plaintiffs' SAPA-related claims, on the issue of irreparable harm, or on the Court's

5    broad equitable jurisdiction to provide a meaningful remedy in Railway Labor Act ("RLA") cases.

6    *See, e.g.*, *Texas & N.O.R. Co.*, 281 U.S. 548, 558–59 (1930) (finding unlawful company assistance

7    on very similar facts); *Virginian Ry. v. Sys. Fed'n No. 40*, 300 U.S. 515 (1937); *Konop v. Hawaiian*

8    *Airlines, Inc.*, 302 F.3d 868, 885 (9th Cir. 2002), *cert. denied*, 37 U.S. 1193 (2003) (summary

9    judgment improperly granted against employee on claim of unlawful employer interference based on

10   much weaker facts than those present here); *Arcamuzi v. Continental Air Lines, Inc.*, 819 F.2d 935,

11   939 (9th Cir. 1987) (interference with RLA protected rights constitutes irreparable harm); *Burke v.*

12   *Compania Mexicana de Aviacion, S.A.*, 433 F.2d 1031, 1033–34 (9th Cir. 1970) (courts are "free to

13   fashion appropriate civil remedies . . . where necessary to ensure the full effectiveness" of the

14   RLA's purpose); *see also CSX Transp. Inc. v. Marquar*, 980 F.2d 349, 367 (6th Cir. 1992) (courts

15   have "the power to enforce the RLA with any appropriate remedy").

16   2.    In briefing the jurisdictional issue, SkyWest continues to ignore decades of case law

17   holding that courts *have* jurisdiction to decide claims of employer violation of RLA Section 2, Third

18   and Fourth – including claims arising during union organizing campaigns and campaigns to replace

19   an existing union with a new one.  *See Texas & N.O.R.*, 281 U.S. at 567; *Virginian Ry.*, 300 U.S. at

20   543–44; *Konop*, 302 F.3d at 881–82; *Fennessy v. Southwest Airlines*, 91 F.3d 1359, 1363–64 (9th

21   Cir. 1996); *Burke*, 433 F.2d at 1033–34; *Adams v. Fed. Exp. Corp.*, 547 F.2d 319, 321 (6th Cir.

22   1976); *Roscello v. Southwest Airlines Co.*, 726 F.2d 217, 220 n.2 (5th Cir. 1984); *Stepanischen v.*

23   *Merchants Despatch Transp. Corp.*, 722 F.2d 922, 924–27 (1st Cir. 1983); *AFM Pilots Ass'n v.*

24   *AFM Corp.*, 1982 WL 2030, *1 (D. Mass. March 25, 1982); *Hess v. Resort Air, Inc.*, 686 F.Supp.

25   741, 742 (E.D. Mo. 1988); *Adams v. Fed. Exp. Corp.*, 470 F.Supp. 1356 (W.D. Tenn. 1976), *aff'd*,

26   654 F.2d 452 (6th Cir. 1981); *Union of Prof'l Airmen v. Alaska Aeronautical Indus.*, 1977 WL

27

28   [1] The Court indicated during the June 8, 2007 hearing that it would consider a reply brief
     from Plaintiffs.  *See* 6/8/07 Tr. 129:8–9 (accompanying Prestel Decl. Exh. 1).

1714, *2 (D. Ala. Apr. 26, 1977); *Lum v. China Airlines Co.*, 413 F.Supp. 613, 614 (D. Hawaii

1976); *Griffin v. Piedmont Aviation, Inc.*, 384 F.Supp. 1070, 1071–72 (N.D. Ga. 1974).

SkyWest contends that *Texas & N.O.R.* is distinguishable because it was decided before the

RLA's 1934 amendments, which added Section 2, Ninth to the statute.  But *Texas & N.O.R.*'s

holding and analysis were affirmed in *Virginian Railway*, 300 U.S. at 543–44, decided in 1937.

SkyWest attempts to distinguish *Virginian Railway* on the ground that it was decided in a post-

certification context, but as Plaintiffs have repeatedly pointed out – and SkyWest never addressed –

court intervention is *more* appropriate in a pre-certification case like this one than in a post-

certification scenario.  *Ass'n of Flight Attendants v. Horizon Air Indus.*, 280 F.3d 901, 905–06 (9th

Cir. 2002).

3.      Although SkyWest states that the NMB can provide relief, it fails to cite even a

*single case* where the NMB intervened to fully investigate (let alone adjudicate) pre-election

interference.  In *Delta Airlines*, 30 NMB 102 (2002), cited by SkyWest, the NMB *deferred* a

complete investigation of employer interference until *after* the election.  *Id*. at 103; *see* NMB Rep.

Manual §17.0, at 24 (2005) (no pre-election investigation absent undefined "extraordinary

circumstances").  The NMB emphasized that during the organizing phase of the case, the union

"could have sought the *judicial relief* available under Section Third and Fourth, but failed to do so."

*Id*. at 113 (emphasis added).  Equally to the point, SkyWest's own analysis demonstrates that the

NMB cannot adjudicate violations of the RLA and is instead limited (even post-election) to

approving technical changes to the form of ballot.  *See* Def.'s Br. at 5; *see also Horizon Air Indus. v.

NMB*, 232 F.3d 1126, 1133 (9th Cir. 2000) (NMB has no adjudicatory authority); *Am. West Airlines,

Inc. v. NMB*, 986 F.2d 1252 (9th Cir. 1993) (affirming injunction prohibiting NMB even from

notifying employees that in its view employer had violated RLA, because NMB lacks jurisdiction to

determine violations of the statute and notice exceeded the scope of its authority).

SkyWest also fails to address that its entire jurisdictional theory depends on a factual

assertion about which the airline has taken directly contradictory positions.  On one hand, SkyWest

contends that Plaintiffs must resort to the NMB because the SkyWest Pilots ALPA Organizing

Committee ("OC") has gathered 35% support.  *But see* Corrected Reply (Doc. No. 125) at 11–20

1    (demonstrating that this argument is meritless).  At the same time, SkyWest contended in open court

2    that SAPA is an RLA representative.  If true, this means that Plaintiffs cannot even call for an NMB

3    election until they gather 50% support, not 35% support.  *See* 29 C.F.R. §1206.2.

4         4.     SkyWest cites *Switchmen's Union of North America v. NMB*, 320 U.S. 297 (1943),

5    but that case is completely inapposite.  *Switchmen's* addressed the federal courts' jurisdiction to

6    *review* an NMB certification once the Board has already acted.  The Supreme Court held that once

7    the NMB has certified a bargaining representative, the courts' jurisdiction to review that decision is

8    extremely limited.  *Id.* at 300; *see also Trans World Airlines, Inc. v. Ind. Fed'n of Flight Attendants*,

9    489 U.S. 426, 440 (1989) (describing *Switchmen's* as addressing courts' jurisdiction to review NMB

10   certifications); *Am. West Airlines*, 986 F.2d at 1256 (same); *Horizon Air Indus.*, 232 F.3d at

11   1131–32 (same).  Nothing in *Switchmen's* purported to limit courts' jurisdiction to protect employee

12   rights during an organizing campaign, *before* the NMB has acted to certify a representative.  To the

13   contrary, *Switchmen's* emphasized that its earlier cases approving court intervention in this context

14   remain good law.  *See Switchmen's*, 320 U.S. at 300.  And, since *Switchmen*'s, courts have

15   continued to fulfill their "duty," *Arcamuzi*, 819 F.2d at 939, to adjudicate claims of improper

16   employer interference in organizing campaigns.  *See* cases cited *supra*.

17        5.     SkyWest also cites some of the same cases declining to exercise jurisdiction that it

18   has cited in previous briefs.  *See* Def.'s Br. (Doc. No. 147) at 3–4, 8–10.  As Plaintiffs demonstrated

19   in their Corrected Reply, in *all* of those cases either the NMB's jurisdiction had already been

20   invoked (so that an NMB proceeding was currently pending), *see, e.g.*, *Aircraft Mechanics*

21   *Fraternal Ass'n v. United Airlines, Inc.*, 406 F.Supp. 492, 495 (N.D. Cal. 1976), or the plaintiffs

22   sought to have the court conduct an election or certify (or decertify) a particular union as bargaining

23   representative.  *See, e.g.*, *Texidor v. Ceresa*, 590 F.2d 357 (1st Cir. 1978) (court could not conduct

24   an election, decertify representative, or grant relief that would effectively overturn NMB

25   certification decision).  In this case, the NMB's jurisdiction has not been invoked; neither party has

26   asked the Court to certify any collective bargaining representative; and there is not even any basis

27   for concluding that a "representational dispute" within the meaning of the RLA exists.  *See*

28

1    Corrected Reply at 17–20.[2]

2          6.    SkyWest describes it as "ironic" that Plaintiffs cite decisions of the National Labor

3    Relations Board ("NLRB").  But this approach makes perfect sense given the very different roles

4    played by the NLRB and the NMB.  *See, e.g., Horizon Air Indus.*, 232 F.3d at 1131–33.  The NLRB

5    is an *adjudicatory* body with authority to determine and remedy employer violations of the National

6    Labor Relations Act ("NLRA").  The NMB, by contrast, has *no adjudicatory authority*.  *Id.* at 1131

7    ("Unlike the NLRB, which has broad adjudicatory and remedial powers," . . . the NMB "has no

8    authority to adjudicate unfair labor practices") (internal quotation marks omitted).  Accordingly,

9    claims of employer interference in violation of the RLA are routinely adjudicated in federal courts,

10    and those courts – like Plaintiffs – cite cases that were adjudicated before the NLRB as persuasive

11    authority.  *See, e.g., Konop*, 302 F.3d at 885.

12          7.    SkyWest does not and cannot dispute that the Supreme Court has approved complete

13    *disestablishment* as a remedy for employer interference that takes the form of a company union.

14    *See, e.g., Texas & N.O.R.*, 281 U.S. at 557, 560; *Virginian Ry.*, 300 U.S. at 543–44, 549–52 (post-

15    1934 amendments); *NLRB v. Penn. Greyhound Lines*, 303 U.S. 261, 263–66 (1938) (citing *Texas &*

16    *N.O.R.* as authority for the disestablishment remedy); *see also* Plfs.' Supp. Br. re: Remedies (Doc.

17    No. 140) at 10–11.  Nor does SkyWest dispute that the relief Plaintiffs seek in Paragraph 3 – an

18    ability equal with SAPA's to send group e-mail, to place fliers in pilot mailboxes, and to identify

19    itself as a potential representative during new-hire classes – is far less intrusive than the available

20

21         [2] SkyWest continues to rely heavily on dicta in the *Aircraft Mechanics* case.  As Plaintiffs

22    explained in their Corrected Reply, *Aircraft Mechanics* is distinguishable because in that case –
      unlike here – a party already had invoked the NMB's jurisdiction and there was an ongoing NMB

23    election proceeding.  *See* 406 F.Supp. at 495.  Moreover, *Aircraft Mechanics* held that courts *do*
      *have jurisdiction* over claims of unlawful "company unionism."  *Id.* at 501–02, 509.

24         To the extent Judge Conti suggested in dicta that a union must call for an election when it

25    reaches a certain level of support, that suggestion finds no support in the relevant NMB regulation,
      29 C.F.R. §1206.2, is contrary to RLA Section 2, Ninth, which leaves the decision whether to call

26    for an election to the union itself, *see, e.g., Railway Labor Execs. Ass'n v. NMB*, 29 F.3d 655, 658
      (D.C. Cir. 1994) (en banc), would put employees to the Hobson's choice of calling for an election

27    with less than majority support or losing all protection of the RLA, Corrected Reply at 15–16, and
      would deny employees and unions the very control over their own organizing campaigns that the

28    RLA was intended to protect.  *See, e.g.*, 45 U.S.C. §151a; *see also Burke*, 433 F.2d at 1033.

1   remedy of disestablishment (and is similar to equal access remedies provided by the NLRB in

2   various cases, *see* Plfs.' Br. at ii–iii).  Instead, SkyWest is left to contend that granting the OC the

3   equal access to which it is entitled would be "disruptive" because company e-mail is for "company-

4   related information" and because new-hire training classes are expensive for the airline.

5          SkyWest's first point is factually incorrect given the undisputed evidence that SAPA uses

6   company e-mail for campaign purposes and to criticize ALPA.  *See, e.g.*, 6/7/07 Tr. (Doc. No. 134)

7   237:24–238:4 (Captain Kanuch's testimony that SAPA uses the group e-mail system for its election

8   campaigns); Martirano Decl. Exh. 1 (SAPA communication sent via email, criticizing SAPA).

9   Even more important, SkyWest still fails to address the Ninth Circuit's holding in *Arcamuzi* that

10  violation of employees RLA Section 2 right to organize free of employer interference is *per se*

11  irreparable harm that courts have a "duty" to remedy.  *Arcamuzi*, 819 F.2d at 938–39.

12         Neither the inconvenience of one more email nor SkyWest's financial investment in new-

13  hire classes can possibly constitute irreparable harm under controlling Ninth Circuit case law.  *See,*

14  *e.g.*, *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980)

15  (injuries compensable by monetary damages are not irreparable).  And the balance of equities

16  weighs heavily against SkyWest given that it permits SAPA (an illegal company-funded "union") to

17  use both of these channels of communication, including for the purpose of criticizing ALPA.  *See*

18  6/7/07 Tr. 237:24–238:4; Martirano Decl. Exh. 1; 6/7/07 Tr. 200:11–201:5 (negative statements

19  about ALPA during new-hire classes); 6/8/07 Tr. 120:11-121:18 (same).

20         8.    SkyWest's final argument is that proof of actual and active control is required to

21  prove a "domination" claim under the NLRA.  However, the RLA also prohibits mere "interference"

22  – short of domination.  *Compare* 45 U.S.C. §152, Third and Fourth (prohibiting employer

23  interference and any use of carrier "funds" to "maintain[] or assist[] or contribut[e]" to a labor

24  organization, without requiring domination) *with* 29 U.S.C. §158(a)(2) (creating two prongs –

25  domination and interference – of unfair labor practice).

26         The Supreme Court set the standard for unlawful interference and assistance under the RLA

27  in *Texas & N.O.R.*, when it held – based on facts very similar to those here – that a carrier violated

28  the Act when it permitted employees to devote their time to company-union business without

1  deduction from pay, paid the company union's expenses, intimidated employees who supported an

2  independent union, and pressured employees to join the company union.  *See* 281 U.S. at 559–60.

3  Here, SkyWest pays SAPA representatives more than ordinary pilots earn, 6/7/07 Tr. 125:9–12,

4  226:16–227:2, 248:2–249:6, pays all of SAPA's expenses and provides it with additional in-kind

5  assistance, *see e.g.*, *id.* at 235:3–8, 243:9–11, threatens ALPA supporters with termination and

6  denies them promotions, *see, e.g.*, *id.* at 117:4–123:18, 150:15–154:12, Plfs.' Exh. 10, and

7  automatically forces all employees to be members of SAPA.  *Id.* at 224:20–225:1; 6/8/07 Tr.

8  81:17–21.  Indeed, the evidence shows that SkyWest changed SAPA's organizational structure in

9  direct response to an ALPA organizing campaign, *id.* at 6/7/07 Tr. 230:6–15; 6/8/07 Tr.

10  122:13–123:11, and that SAPA's secretary is a member of management ineligible for membership

11  in SAPA who reports on his work to upper management and who has assumed increasing control of

12  SAPA in direct contravention of its bylaws.  *Id.* at 6/7/07 Tr. 226:16–228:23, 234:14–235:13; 6/8/07

13  Tr. 6:16–19, 9:4–7, 13:19–25, 22:23–23:8, 54:19–23, 70:23–71:2, 71:13–73:8, 73:14–74:4,

14  118:20–23; Defs.' Exh. 6.

15       More recently, the Ninth Circuit reiterated in *Konop* that the RLA's rule against employer

16  interference and assistance "[g]enerally . . . prohibits employers from providing assistance to a

17  union or labor faction" and from "assist[ing] one union faction over another."  *Konop*, 302 F.3d at

18  885.  In that case, the Ninth Circuit held that the employer's mere sharing of information from a

19  pilot's website with the incumbent union created a triable issue of fact regarding unlawful

20  assistance.  *Id.*

21       The threshold for establishing unlawful employer interference under the RLA is not high and

22  is clearly satisfied in this case.  It is equally clear that this federal district court has broad equitable

23  authority – indeed a "duty," *Arcamuzi*, 819 F.2d at 939 – to provide a meaningful remedy for the

24  ongoing violation of Plaintiffs' RLA-protected right to organize free from employer interference.

25  *Burke*, 433 F.2d at 1033–34 (courts are "free to fashion appropriate civil remedies . . . where

26  necessary to ensure the full effectiveness" of the RLA's purpose); *CSX Transp. Inc.*, 980 F.2d at 367

27  (courts have "the power to enforce the RLA with any appropriate remedy").  To deny Plaintiffs the

28  relief requested in Paragraphs 3 and 4 would deny them *any* effective remedy for SkyWest's

1   ongoing, unlawful, and inherently coercive support for a wholly carrier-funded company "union" –

2   the very type of employer interference that the Supreme Court has described as a "convenient

3   weapon to prevent the exercise of . . . employees' rights to self-organization." *See NLRB v. Falk*

4   *Corp.*, 308 U.S. 453, 461 (1940) (internal quotation marks omitted); *see also Penn. Greyhound*, 303

5   U.S. at 271.  This is precisely the result the Ninth Circuit warned against in *Burke* when it

6   emphasized that courts may not permit violations of employees' RLA-protected rights to go

7   unremedied.  *Burke*, 433 F.2d at 1032–33.

8

9   Dated:  June 15, 2007                    Respectfully submitted

10                                           STEPHEN P. BERZON
                                             LINDA LYE
11                                           CLAIRE P. PRESTEL
                                             Altshuler Berzon LLP
12
                                             ELIZABETH GINSBURG
13                                           Air Line Pilots Association, International

14
                                             by:  \s\Stephen P. Berzon_____
15                                                    Stephen P. Berzon

16                                           Attorneys for Plaintiffs

17

18

19

20

21

22

23

24

25

26

27

28