Norman A. Quandt (Admitted *Pro Hac Vice*)
Ford & Harrison LLP
1275 Peachtree Street, N.E., Suite 600
Atlanta, GA 30309
Telephone:     404-888-3845
Facsimile:     404-888-3863
Email:  nquandt@fordharrison.com

Douglas W. Hall (Admitted *Pro Hac Vice*)
FORD & HARRISON LLP
1300 Nineteenth Street, N.W., Suite 700
Washington, DC 20036
Telephone:     202-719-2065
Facsimile:     202-719-2077
Email:  dhall@fordharrison.com

Robert Spagat (SBN: 157388)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone:     415-591-1000
Facsimile:     415-591-1400
Email:  rspagat@winston.com

Attorneys for Defendant
SKYWEST AIRLINES, INC.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, et al., | Case No. C-07-2688 CRB |
| Plaintiffs, | **NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMORANDUM OF POINTS AND AUTHORITIES** |
| vs. | |
| SKYWEST AIRLINES, INC., | Date:   July 27, 2007 |
| Defendant. | Time:  10:00 a.m. |
| | Ctrm:  8, 19th Floor |
| | Judge:  Hon. Charles R. Breyer |
| | Action Filed:  May 22, 2007 |

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO. C 07-2688 CRB

SF:175325.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# **TABLE OF CONTENTS**

Page

SUMMARY OF ARGUMENT ..................................................................................................... v

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.    STATEMENT OF ISSUE PRESENTED .......................................................................... 1

II.   STATEMENT OF FACTS ................................................................................................ 1

    A.    Background .............................................................................................................. 1

    B.    Shortly Before Filing Suit, ALPA Announces It Has Enough Cards To File
        For An NMB Election .............................................................................................. 1

III.  ARGUMENT ..................................................................................................................... 2

    A.    The Standard For Granting A Motion To Dismiss For Lack Of Subject Matter
        Jurisdiction .............................................................................................................. 2

    B.    Plaintiffs' Claims Implicate A Representation Dispute Within The Exclusive
        Jurisdiction Of The NMB ........................................................................................ 3

        1.    Introduction:  If A Claim Even Arguably Raises A "Representation"
            Dispute, The NMB Has Exclusive Jurisdiction ......................................... 3

        2.    Plaintiffs' SAPA-Related Claims Fall Within The Exclusive
            Jurisdiction Of The NMB Because They Ask The Court To Determine
            Whether SAPA Can Continue To Represent SkyWest's Pilots ..................... 5

        3.    *AMFA v. UAL* Establishes That The Board Has Exclusive Jurisdiction
            Over Plaintiffs' Claims As Well ................................................................. 8

        4.    Federal Court Jurisdiction Over Plaintiffs Claims Would Turn The
            RLA's Carefully Constructed Dispute Resolution Scheme Upside
            Down ......................................................................................................... 12

IV.   CONCLUSION ................................................................................................................. 15

i

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO.  C 07-2688 CRB

SF:175325.2

1

**TABLE OF AUTHORITIES**

2

CASES

3

*Adams v. Federal Express Corp.*,
    547 F.2d 319 (6th Cir. 1976) ....................................................................14

4

5

*Aerovias de Mexico v. NMB*,
    211 F. Supp. 2d 1 (D.D.C. 2002) ................................................................9

6

7

*Air Canada v. NMB*,
    478 F. Supp. 615 (S.D.N.Y. 1979) ............................................................11

8

*Air Line Employees Assoc., Int'l v. Republic Airlines, Inc.*,
    798 F.2d 967 (7th Cir. 1986), *cert. denied*, 479 U.S. 962 (1986)..............4

9

10

*Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.*
    656 F.2d 16 (2d Cir. 1981)........................................................................5, 7

11

*Aircraft Mechanics Fraternal Ass'n v. United Airlines, Inc. ("AMFA v. UAL")*,
    406 F. Supp. 492 (N.D. Cal. 1976) .....................................................Passim

12

13

*American Train Dispatchers Ass'n v. Denver & Rio Grande W.R..R..*,
    614 F. Supp. 543 (D. Colo. 1985)...............................................10, 13, 15

14

15

*Avgr International Business, Inc.*,
    31 NMB 419 (2004)......................................................................................9

16

*Dones v. Eastern Air Lines*,
    408 F. Supp. 1044 (D.P.R. 1975).............................................................14

17

18

*Express Airlines I*,
    28 NMB 431 (2001)....................................................................................11

19

20

*Flight Eng'rs Int'l Ass'n v. Eastern Air Lines*,
    311 F.2d 745 (2d Cir. 1963), *cert. denied*, 373 U.S. 924 (1963)................6

21

*Flight Eng'rs Int'l Ass'n v. Eastern Air Lines*,
    359 F.2d 303 (2d Cir. 1966).........................................................4, 12, 14

22

23

*General Comm. Of Adjustment v. Missouri-Kansas-Texas R. Co.*
    ("*M-K-T*"), 320 U.S. 323 (1943)..................................................................3

24

25

*Horizon Air Indus. v. NMB*,
    232 F.3d 1126 (9th Cir. 2000), *cert. denied*, 533 U.S. 915 (2001).............4

26

*Independent Fed'n of Flight Attendants v. Cooper*,
    141 F.3d 900 (8th Cir. 1998) ....................................................................4

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO.  C 07-2688 CRB

SF:175325.2

*International Bhd. of Teamsters v. Texas Int'l Airlines,*
   717 F.2d 157 (5th Cir. 1983) ..................................................................................4, 6, 7, 14

*Key Airlines,*
   16 NMB 296 (1989)...................................................................................................9, 15

*Laker Airways,*
   8 NMB 236 (1981)....................................................................................................9, 15

*Mercy Air Serv., Inc.,*
   29 NMB 55 (2001)........................................................................................................11

*Miller v. Norfolk S. Ry. Co.,*
   183 F. Supp. 2d 996 (N.D. Ohio 2002).........................................................................4

*Order of Ry. Conductors v. NMB,*
   141 F.2d 366 (D.C. Cir. 1944), *cert. denied,* 323 U.S. 166 (1944) ...........................13

*Railway Labor Executives' Ass'n v. Wheeling & L.E. Ry. Co.,*
   756 F. Supp. 249 (E.D. Va.), *aff'd without pub. op.,* 943 F.2d 49 (4th Cir. 1991).............11, 15

*Ruby v. American Airlines,*
   323 F.2d 248 (2d Cir. 1963), *cert. denied,* 376 U.S. 913 (1964).........................7, 12

*Safe Air v. Meyer,*
   373 F.3d 1035 (9th Cir. 2004), *cert. denied,* 544 U.S. 1018 (2005)......................2-3

*Sky Valet,*
   23 NMB 276 (1996)..................................................................................................9, 15

*SkyWest Airlines, Inc.,*
   21 NMB 352 (1994)........................................................................................................2

*SkyWest Airlines, Inc.,*
   26 NMB 485 (1999)........................................................................................................1

*SkyWest Airlines, Inc.,*
   31 NMB 348 (2004)........................................................................................................2

*Southwest Airlines Co.,*
   13 NMB 82 (1985)...................................................................................................11, 12

*Stock West, Inc. v. Confederated Tribes of Colville Reservation,*
   873 F.2d 1221 (9th Cir. 1989) ......................................................................................3

*Summit Airlines v. Teamsters Local Union No. 295,*
   628 F.2d 787 (2d Cir. 1980)....................................................................................7, 12

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

iii

SF:175325.2

*Switchmen's Union of N. Am. v. NMB,*
  320 U.S. 297 (1943)..............................................................................Passim

*Texas & New Orleans R.R. Co. v. Brotherhood of Ry. and Steamship Clerks,*
  281 U.S. 548 (1930)...............................................................................................9

*Texidor v. Ceresa,*
  590 F.2d 357 (1st Cir. 1978)................................................................................10

*United Transp. Union v. Gateway Western R. Co.,*
  78 F.3d 1208 (7th Cir. 1996) ................................................................................5

*United Transp. Union v. United States,*
  987 F.2d 784 (D.C. Cir. 1993)...............................................................................5

**STATUTES**

45 U.S.C. § 151................................................................................................v

45 U.S.C. § 152.........................................................................................Passim

**OTHER AUTHORITIES**

29 C.F.R. § 1206.2.......................................................................................v, 10

Fed. R. Civ. P. 12(b)(1)...................................................................................1, 3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO.  C 07-2688 CRB

SF:175325.2

1

**SUMMARY OF ARGUMENT**

2      Under federal regulations applicable to representation elections conducted by the National

3   Mediation Board ("NMB" or the "Board"), the Air Line Pilots Association, International ("ALPA")

4   claims to have gathered enough signature cards from pilots employed by SkyWest Airlines

5   ("SkyWest" or the "Company") to ask the NMB to conduct an election.  When ALPA lodges

6   sufficient authorization cards with the Board, it will be the fourth election in the past 13 years, with

7   SkyWest pilots having rejected unionization every time prior.  Instead, however, of filing the pilots'

8   authorization cards with the NMB and seeking the election to which it claims to be entitled, ALPA

9   and the other Plaintiffs have chosen to file a lawsuit.  That lawsuit claims that Plaintiffs' organizing

10   efforts have been "chilled" by SkyWest's enforcement of its uniform and bulletin board policies and

11   the existence of the SkyWest Airlines Pilot Association ("SAPA"), which Plaintiffs claim is not a

12   *bona fide* "representative" as that term is defined by Section 1, Sixth of the Railway Labor Act, 45

13   U.S.C. § 151, Sixth.

14      ALPA's admission that it has gathered the requisite number of signature cards from the pilot

15   group flatly contradicts its assertion that it needs mandatory injunctive relief; indeed, that admission

16   makes clear that the dispute the Plaintiffs would put before the Court is a representation dispute

17   within the sole and exclusive jurisdiction of the NMB.  Plaintiffs' rush to this forum is an attempt to

18   escape the federal agency and specific law that truly governs this dispute.

19      Since 1934, the NMB has had, statutorily, sole authority to resolve representation disputes

20   under Section 2, Ninth of the Railway Labor Act ("RLA" or the "Act"), 45 U.S.C. § 152, Ninth.

21   That authority includes resolving claims that the employer has interfered with employees'

22   representation rights, such as Plaintiffs have alleged here.  A union seeking to represent employees

23   of an air carrier applies for an election with the NMB, and must demonstrate a sufficient showing of

24   interest among the targeted employee group (in this case, pilots).  29 C.F.R. § 1206.2.  Any

25   complaints the union has about employer conduct during the period prior to the election – including

26   claims about employer support of an incumbent organization or committee -- can be raised with the

27   NMB, which has extensive experience and nearly unlimited authority in resolving such disputes.

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

v

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO.  C 07-2688 CRB

SF:175325.2

1    Indeed, this Court has held that the NMB has been given "plenary power ... to deal with employer

2    influence in the designation of representatives, rendering judicial intervention unnecessary."

3    *Aircraft Mechanics Fraternal Ass'n v. United Airlines, Inc. ("AMFA v. UAL")*, 406 F. Supp. 492,

4    498 fn5 (N.D. Cal. 1976).

5        In *AMFA v. UAL*, this Court held that the courts have <u>no</u> jurisdiction to decide interference

6    allegations in advance of an election, except in those rare cases where the employer's conduct was

7    so pervasive and egregious that it made it *impossible* for a union to obtain the necessary showing of

8    employee support to invoke the NMB's services.  406 F. Supp. at 508 n.25.  With ALPA

9    proclaiming that it has surpassed the showing of interest required for it to file an application with the

10   NMB, there is simply no reason for the parties to be before the Court.  The NMB, not this Court, has

11   exclusive jurisdiction over Plaintiffs' claims.  Plaintiffs have sought relief in the wrong forum.  Their

12   Complaint must be dismissed for lack of subject matter jurisdiction.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:175325.2

PLEASE TAKE NOTICE THAT, on July 27, 2007, at 10:00 a.m., or as soon thereafter as the matter may be called for hearing, in Courtroom 8 of the above-entitled Court, Defendant SkyWest Airlines, Inc. ("SkyWest") will move, and hereby does move, to dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  SkyWest's motion is brought on the grounds that this Court lacks subject matter jurisdiction of this action because this matter involves a representation dispute within the exclusive jurisdiction of the National Mediation Board.  This motion is based on this Notice of Motion and Motion, the attached Points and Authorities, the Proposed Order, all court files and records in this action, and upon such papers as may be filed and such oral argument as the Court may hear in this matter.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     STATEMENT OF ISSUE PRESENTED

Whether this Court must dismiss this matter for lack of subject matter jurisdiction because it involves a representation dispute subject to the exclusive jurisdiction of the NMB.

### II.     STATEMENT OF FACTS

#### A.     Background

SkyWest is a regional air carrier headquartered in St. George, Utah.  It operates as Delta Connection, United Express and Midwest Connect, and serves 140 cities in 39 states and 3 Canadian provinces.  SkyWest employs approximately 10,000 employees, including 2,651 pilots.  *See* Declaration of Todd Emerson ("Emerson Dec."), submitted in opposition to Plaintiffs' motion for preliminary injunctive relief, ¶ 2.

#### B.     Shortly Before Filing Suit, ALPA Announces It Has Enough Cards To File For An NMB Election

SkyWest's pilot group has long been an organizing target of ALPA.  In 1999, ALPA lost a representation election in which it was trying to become the collective bargaining representative of the SkyWest pilots.  *See SkyWest Airlines, Inc.*, 26 NMB 485 (1999).[1]  According to the Plaintiffs,

---

[1] SkyWest pilots also rejected unionization efforts in 1994 and 2004, initiated by the International Brotherhood of Teamsters ("IBT") and an organization calling itself the "Unified Pilots

1

SF:175325.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   ALPA began its current effort to unionize the SkyWest pilots in 2005, and started collecting signed

2   authorization cards from SkyWest pilots in late September 2006.[2]  In an April 2007 newsletter to the

3   SkyWest pilots, ALPA stated that it had enough cards to invoke the NMB's process, but that it

4   wanted more cards so it could be "better prepared ... for the next phase:  the secret ballot election."

5   Rickman Dec., Exh. A, pp. 15-16.

6       On May 22, 2007, rather than pursuing the election they say they seek and are entitled to,

7   Plaintiffs filed this suit.  They allege, generally, that SkyWest has supported SAPA, making it an

8   unlawful company-dominated union, and that SkyWest has interfered with their expressive activity

9   by discriminating against Plaintiffs on the basis of their support for ALPA.  Complaint, ¶¶ 42-50.

10  **III.   ARGUMENT**

11      **A.      The Standard For Granting A Motion To Dismiss For Lack Of Subject Matter
                   Jurisdiction**

12

13      SkyWest brings this Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of

14  Civil Procedure because the Court lacks subject matter jurisdiction over Plaintiffs' claims.

15  Plaintiffs' claims raise and implicate representation disputes over which the NMB has exclusive

16  jurisdiction and over which the Court, consequently, has no jurisdiction.

17      A complaint may be attacked for lack of subject matter jurisdiction either facially or

18  factually.  *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), *cert. denied*, 544 U.S. 1018

19  (2005).  In a facial attack, the party challenging subject matter jurisdiction asserts that the allegations

20  contained in the complaint are insufficient, on their face, to invoke federal jurisdiction.  *Id.*  A court,

21  when determining whether subject matter jurisdiction exists, accepts the well-plead factual

22  allegations contained in the complaint.  *Id.*  In a factual attack, the party challenging subject matter

23  jurisdiction disputes the truth of the allegations contained in the complaint.  *Id.*  A court deciding a

24  factual attack may review evidence beyond the complaint to determine whether the factual

25  Association," respectively.  *See SkyWest Airlines, Inc.*, 21 NMB 352 (1994); *SkyWest Airlines, Inc.*,
    31 NMB 348 (2004).

26  2 *See* Declaration of Plaintiff Steve Dow in Support of Temporary Restraining Order and

27  Preliminary Injunction, ¶ 7 (ALPA organizing committee was created in October 2005); Declaration
    of Jeff Rickman ("Rickman Dec."), submitted in opposition to Plaintiffs' preliminary injunction

28  motion, Exh. A, p. 8 (ALPA beginning distribution of authorization cards on September 29, 2006).

2

SF:175325.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    allegations contained in the complaint are true. *Id.*   A court has the authority to dismiss a plaintiff's

2    complaint if the plaintiff is unable to prove that the court has jurisdiction over its claims. *Stock*

3    *West, Inc. v. Confederated Tribes of Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989).

4         In the present case, even accepting as true all of ALPA's allegations, SkyWest is entitled to

5    have ALPA'S Complaint dismissed because the NMB has exclusive jurisdiction over the subject

6    matter of this dispute.   Because the NMB has exclusive jurisdiction over this matter, this Court must

7    dismiss ALPA's Complaint pursuant to Federal Rule 12(b)(1). *Stock West*, 873 F.2d at 1225; *AMFA*

8    *v. UAL*, 406 F. Supp. at 499.

### B.   Plaintiffs' Claims Implicate A Representation Dispute Within The Exclusive Jurisdiction Of The NMB

#### 1.   Introduction:  If A Claim Even Arguably Raises A "Representation" Dispute, The NMB Has Exclusive Jurisdiction

12        Section 2, Fourth of the RLA "writes into law the 'right' of the 'majority of any craft or class

13    of employees' to 'determine who shall be the representative of the craft or class for the purposes of'"

14    the RLA. *Switchmen's Union of N. Am. v. NMB*, 320 U.S. 297, 300-01 (1943).  "That 'right' is

15    protected by § 2, Ninth, which gives the [NMB] the power to resolve controversies concerning it."

16    *Switchmen's Union*, 320 U.S. at 300-01. Section 2, Ninth states that if any dispute arises "among a

17    carrier's employees as to who are the representatives of such employees designated and authorized

18    in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon

19    request of either party to the dispute, to investigate such dispute and to certify to both parties in

20    writing [who the NMB finds is the proper representative]." 45 U.S.C. § 152, Ninth.

21        The Supreme Court has noted that "[h]owever wide may be the range of jurisdictional

22    disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them.  To the

23    contrary, it fashioned an administrative remedy and left that group of disputes to the National

24    Mediation Board.  If the present dispute falls within § 2, Ninth, the administrative remedy is

25    exclusive." *General Comm. Of Adjustment v. Missouri-Kansas-Texas R. Co.* ("*M-K-T*"), 320 U.S.

26    323, 336 (1943). *See also AMFA v. UAL*, 406 F. Supp. at 506 ("at least where representation

27    disputes are concerned, the National Mediation Board has been given complete jurisdiction under the

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

3

SF:175325.2

1    [RLA]"). Where such an administrative remedy is established by Congress, "the specification of one

2    remedy normally excludes another." *Switchmen's Union*, 320 U.S. at 301.

3        Section 2, Ninth gives the NMB extensive, virtually unreviewable, authority to decide how it

4    will carry out its statutory duty of determining the employees' choice of representative. *Horizon Air*

5    *Indus. v. NMB*, 232 F.3d 1126, 1131 (9th Cir. 2000) (federal court jurisdiction over NMB actions is

6    "'one of the narrowest known to law'"), *cert. denied*, 533 U.S. 915 (2001) (citation omitted). This

7    includes making determinations as to whether the employees' choice of representative was made

8    "without interference, influence, or coercion exercised by the carrier." 45 U.S.C. § 152, Ninth;

9    *compare* 45 U.S.C. § 152, Third. Courts have interpreted the prohibition against treading on the

10   NMB's authority broadly. Even where a lawsuit raises an otherwise justiciable claim, if it merely

11   implicates a representation dispute, it should be dismissed. *See, e.g.*, *International Bhd. of*

12   *Teamsters v. Texas Int'l Airlines* ("*IBT v. Texas Int'l*"), 717 F.2d 157, 161 (5th Cir. 1983)

13   (representation disputes are for NMB, and "a court may not entertain an action involving such a

14   dispute even if it arose in the context of other justiciable claims"); *Air Line Employees Assoc., Int'l*

15   *v. Republic Airlines, Inc.*, 798 F.2d 967, 968 (7th Cir. 1986) (representational dispute falls within the

16   NMB's jurisdiction "even though . . . couched in terms of enforcing the collective bargaining

17   agreement"), *cert. denied*, 479 U.S. 962 (1986); *Independent Fed'n of Flight Attendants v. Cooper*,

18   141 F.3d 900, 903 (8th Cir. 1998) (state law tort claims arising out of union's alleged theft of other

19   union's membership list dismissed because they were "inextricably intertwined" with a

20   representation dispute); *Flight Eng'rs Int'l Ass'n v. Eastern Air Lines*, 359 F.2d 303, 308-09 (2d Cir.

21   1966) ("judicial enforcement of the [RLA] has been held proper" when "the issue *does not impinge*

22   on one committed to for resolution to other bodies") (emphasis added); *Miller v. Norfolk S. Ry. Co.*,

23   183 F. Supp. 2d 996, 1000 (N.D. Ohio 2002) (dismissing Section 2, Fourth and RICO claims

24   because representation dispute arguably involved; "Plaintiffs should not be able to avoid the Board's

25   jurisdiction or the designated remedial scheme by asserting a RICO claim or a claim for

26   organization[al] interference.").

27       All doubts as to whether a representational question exists are cast in favor of deferring to the

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

28

4

SF:175325.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

primary jurisdiction of the NMB.  Accordingly, the courts dismiss actions where they cannot rule out the possibility that a representational dispute may exist.  *See Air Line Pilots Ass'n, Int'l v. Texas Int'l Airlines, Inc.* ("*ALPA v. Texas Int'l*"), 656 F.2d 16, 24 (2d Cir. 1981) ("even in such 'unconventional contexts section 2, Ninth affords the sole and mandatory means for resolving disputes over representation'") (internal citation omitted); *United Transp. Union v. Gateway Western R. Co.*, 78 F.3d 1208, 1213-14 (7th Cir. 1996) ("when the precise character of the dispute is in doubt (when the dispute, in other words, is only 'arguably' representational), a federal court should not proceed").  In *United Transp. Union v. United States*, 987 F.2d 784 (D.C. Cir. 1993), the court held that it was "frankly uncertain whether the NMB would, or should, have exercised jurisdiction over this case if it had been brought before it." *Id.* at 789.  Because that made it an arguable representation dispute, the proper course, the court held, was to "recognize that the NMB has primary jurisdiction to determine whether it has exclusive jurisdiction over the dispute." *Id*

Here, Plaintiffs make two specific types of claims, both of which are subject to the exclusive jurisdiction of the NMB.  First, Plaintiffs seek to eliminate SAPA, as a rival to ALPA, by judicial action.  (Complaint, ¶¶ 49, 52)  That they cannot do.  The Board, not the federal courts, has exclusive jurisdiction to determine if SAPA, or ALPA, is or will represent SkyWest's pilots, and thus with whom SkyWest must bargain.  Second, they have complained that certain conduct by SkyWest has interfered with their ability to garner support for ALPA.  (Complaint, ¶¶ 43, 46)  Those charges amount to nothing more than run-of-the-mill election interference charges, the likes of which the NMB addresses on a regular basis and that also are within the Board's exclusive jurisdiction.

### 2. Plaintiffs' SAPA-Related Claims Fall Within The Exclusive Jurisdiction Of The NMB Because They Ask The Court To Determine Whether SAPA Can Continue To Represent SkyWest's Pilots

Plaintiffs assert that Sections 2, Third and Fourth of the RLA, 45 U.S.C. § 152, Third and Fourth have been violated by SkyWest because of the Company's purported support of SAPA – which Plaintiffs claim is a "company union."  What Plaintiffs truly are faced with, however, is merely an incumbent rival for representation of SkyWest's pilots.  What the Court is faced with is an

5

1    attempt by ALPA to defeat that rival in a forum other than that required by the RLA.

2         The essence of a "representation dispute" under the RLA is a question of who, if anyone, is

3    the collective bargaining representative of a particular system-wide craft or class at a particular

4    carrier.   45 U.S.C. § 152, Ninth. ALPA seeks that status. SAPA, at least arguably, holds that status.

5    Under the statutory scheme embodied by the RLA, there is but one way for ALPA to displace

6    SAPA:  through the procedures established by Section 2, Ninth of the RLA.  The statute does not

7    allow ALPA to eliminate its rival by judicial fiat.  Rather, it must convince SkyWest pilots that it is

8    the better representative and prevail in an election.  *IBT v. Texas Int'l Airlines*, 717 F.2d at 161

9    ("The Act commits disputes involving a determination of who is to represent airline employees . . .

10   to the exclusive jurisdiction of the National Mediation Board."); *Flight Eng'rs Int'l Ass'n v. Eastern*

11   *Air Lines*, 311 F.2d 745, 747 (2d Cir. 1963) (claims regarding representation of employees and rival

12   claims of jurisdiction "are to be vindicated or rejected not by the courts but by the administrative and

13   other processes provided by the Act."), *cert. denied*, 373 U.S. 924 (1963).

14        It is irrelevant that ALPA claims that SAPA is a "company union" and not a *bona fide*

15   representative. Such an allegation does not somehow conjure federal court jurisdiction.  As

16   explained by the Supreme Court in *Switchmen's Union*, "the history of § 2, Ninth is highly relevant.

17   . . . It [Section 2, Ninth] was aimed not only at company unions which had long plagued labor

18   relations [citation omitted] but also at numerous jurisdictional disputes between unions."

19   *Switchmen's Union*, 320 U.S. at 302.  This conclusion was based upon the testimony of

20   Commissioner Eastman, who was a draftsman of the Act's 1934 amendments, during Congressional

21   hearing.  *Id.*  Whether ALPA's allegations that SAPA is a "company union" has any support, or the

22   dispute ultimately devolves into a question whether ALPA or SAPA will in the future be the

23   SkyWest pilots' *bona fide* representative, jurisdiction lies with the Board.  The authority of the NMB

24   to investigate representation disputes and to conduct elections – and to exercise its authority to

25   ensure that elections are free from coercion and influence as required by Sections 2, Third and

26   Fourth – was expressly directed at claims such as those raised by Plaintiffs.

27        Courts must not become involved in the merits of representation disputes.  That is true

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

28

6

1  whether they involve a single union trying to expand its jurisdiction, *ALPA v. Texas Int'l*, 656 F.2d

2  at 24 (no subject matter jurisdiction over ALPA claim that sought to expand its representation rights

3  to the pilots of a carrier, related to the one whose pilots it already represented, notwithstanding

4  claims arising under Sections 2, Third and Fourth); a union seeking to obtain representation rights

5  through means other than an NMB-sponsored election, *Summit Airlines v. Teamsters Local Union*

6  *No. 295*, 628 F.2d 787, 795 (2d Cir. 1980) (enjoining recognitional picketing); rival unions seeking

7  representation rights over the same group of employees, *Ruby v. American Airlines*, 323 F.2d 248,

8  254, 256-57 (2d Cir. 1963) (claim by ALPA, as incumbent (albeit voluntarily recognized) union, that

9  American's dealings with rival union violated Sections 2 Third and Fourth, was a representation

10  dispute:  underlying dispute was who was the representative of American's pilots), *cert. denied*, 376

11  U.S. 913 (1964); or a union claiming that the carrier, following  a merger, violated the RLA by

12  refusing to continue to recognize it and asserting that the parties' collective bargaining agreement no

13  longer was effective, *IBT v. Texas Int'l*, 717 F.2d at 164.  That is to say, it is not the context in which

14  a dispute arises that controls whether federal courts of the NMB has jurisdiction, it is whether

15  representation is implicated. *See ALPA v. Texas Int'l*, 656 F.2d at 24 ("While we recognize that the

16  representation dispute in this case is murky, its presence, together with the traditional narrow role of

17  the court in enforcing the RLA, requires us to conclude that we lack subject matter jurisdiction over

18  this action."). If representation is implicated, the NMB has sole jurisdiction. *Summit Airlines*, 628

19  F.2d at 795 ("Congress did not intend that resort to the mechanism of section 2, Ninth be optional ").

20      Congress intended that sole and exclusive authority to take action affecting RLA employees'

21  representation rights be vested with the Board.  SAPA has represented SkyWest's pilots for years

22  and has negotiated the parties' labor contract.  Plaintiffs ask the Court to declare that SkyWest is

23  barred from "recognizing [and] purporting to bargain[] with" SAPA; that is to bar it from acting as

24  the SkyWest pilots' representative.  If that were to happen, it can happen only through Board action.

25  *See IBT v. Texas Int'l*, 717 F.2d 157 (carrier would not be enjoined to continue to recognize IBT and

26  its labor contract where doing so would amount to a decision on representation.).

27

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO. C 07-2688 CRB

SF:175325.2

1

### 3.    *AMFA v. UAL* Establishes That The Board Has Exclusive Jurisdiction Over Plaintiffs' Claims As Well

2

3    Though the names have changed, this Court has already held that it lacks jurisdiction over

4   Plaintiffs' causes of action. In *AMFA v. UAL*, this Court thoroughly analyzed the same issue

5   presented here:  the relationship between the NMB's authority to resolve representation disputes

6   amid allegations of election interference and employer favoritism of an incumbent representative,

7   and the district court's jurisdiction to resolve claims of employer interference in violation of the

8   RLA. AMFA was attempting to replace the International Association of Machinists ("IAM") as the

9   representative of United's mechanics. After it filed its application with the NMB, AMFA and four

10   of the employees it sought to represent filed suit requesting injunctive relief, pending the NMB's

11   determination, to prevent United from:  (1) continuing its ongoing negotiations with the IAM; (2)

12   enforcing its no-distribution policy; and (3) permitting representatives from the IAM, but not

13   AMFA, from campaigning on United property.  406 F. Supp. at 494.

14    This Court discussed at length the 1934 amendments to the RLA, noting that they

15   "represented a significant increase in the power and authority of the [NMB] in the area of

16   representation disputes." *AMFA v. UAL*, 406 F. Supp. at 498.  Although the amendments "left

17   unclear" whether the district courts still would play a role in enjoining illegal employer interference,

18   the Court concluded, citing *Switchmen's Union*, that "it seems more likely as a matter of statutory

19   construction that Congress intended the Board to take over in this area." *Id.* at 498.  Despite that

20   conclusion, the Court assumed, "for the purpose of this decision," that district courts might have

21   some residual (but not concurrent) jurisdiction in case involving "special facts tending to establish

22   company unionism." *Id.*  As explained below, even that possibility of jurisdiction is exceptionally

23   narrow and not applicable to this case.

24    One of AMFA's points of contention was an argument that the Court had jurisdiction

25   because the NMB itself had no jurisdiction to resolve alleged "unfair labor practices." *Id.*  The

26   Court found that plaintiffs' "major premise" was faulty because although the NMB was "not

27   empowered to remedy 'unfair labor practices' as such, Congress has given that Board a great deal of

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

8

SF:175325.2

1  power to regulate such practices indirectly." *Id.* at 502-03. "Where such practices are found by the

2  Board to have tainted the designation or election process certification of the union benefiting from

3  the taint can (and must) be withheld. The Board will continue to set aside elections tainted by

4  improper influence until such time as the offending practice ceases." *Id.* at 503. The NMB's

5  interference findings, the Court held, were "binding on the courts." *Id.* at 503 n. 11.

6      The NMB has, in practice, exercised that power. NMB elections normally are based upon a

7  requirement that a majority of eligible employees vote for representation. An employee notes "no"

8  by not voting at all. As explained in *Aerovias de Mexico v. NMB*, 211 F. Supp. 2d 1 (D.D.C. 2002),

9  however, other procedures can be used if the Board finds that an employer has interfered, influenced,

10  or coerced the voters in their selection of a bargaining representative. And the standard the Board

11  uses for determining interference is the same one espoused by the Supreme Court in *Texas & New*

12  *Orleans R.R. Co. v. Brotherhood of Ry. and Steamship Clerks*, 281 U.S. 548, 568 (1930). *See, e.g.,*

13  *Avgr International Business, Inc.*, 31 NMB 419, 444 (2004).

14      If the Board finds actionable interference, it can use a "Laker ballot" under which employees

15  must affirmatively vote "yes" or "no." *Aerovias de Mexico*, 211 F. Supp. 2d at 3 n.2, citing *Laker*

16  *Airways*, 8 NMB 236 (1981). Since union advocates tend to be better organized and more motivated

17  to vote than those opposed to representation, the possibility of a Laker ballot provides a strong

18  disincentive to interfere. A third balloting procedure that can be used in the "Key ballot." Under

19  that procedure, the union is certified unless a majority of the eligible employees vote against

20  representation. *Id.*, citing *Key Airlines*, 16 NMB 296 (1989). In other words, there is a presumption

21  of representation that can be overcome only if a majority affirmatively vote against representation.

22  The possibility of a Key ballot provides an even stronger disincentive for interfering with

23  employees' choice of representative; indeed, it virtually guarantees that the union will prevail. The

24  Board too, in exceptional circumstances, can exercise the ultimate sanction: the ability to certify a

25  union without an election on the basis of authorization cards. *Sky Valet*, 23 NMB 276 (1996).

26      This Court also rejected the plaintiffs' argument that the Court had "concurrent" jurisdiction

27  with the NMB whenever a party raised allegations of unlawful interference, influence, or coercion

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

9

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO. C 07-2688 CRB

SF:175325.2

1  by the carrier in violation of Section 2, Third. Thus, "what little jurisdiction the district courts have

2  in matters arising under the Act is in extreme cases of rampant employer domination of the labor

3  relations scene." *AMFA v. UAL*, 406 F. Supp. at 508. The Court would have jurisdiction only in

4  extreme cases, in which the employer's actions made it <u>impossible</u> to invoke the NMB's procedures:

5

6          [T]he court believes strongly that <u>if</u> a matter involving allegations of
           carrier interference or coercion, no matter how egregious, can be brought
7          before the Board – i.e., if the interference does not preclude access to the
           Board because of the requirements of 29 C.F.R. Section 1206.2 – then the
8          Board's jurisdiction is exclusive, without concurrent jurisdiction in the
           federal courts. Stated in the converse, a judicial assertion of jurisdiction is
9          appropriate only in those egregious situations of company unionism which
           <u>cannot</u> reach the Board because of the requirements of 29 C.F.R. Sec.
10         1206.2.

11  *Id.* at 508 n.25 (emphasis in original). This Court thus denied plaintiffs' requested preliminary

12  injunction and dismissed for lack of jurisdiction. *Id.* at 508. *See also Texidor v. Ceresa*, 590 F.2d

13  357, 359 (1st Cir. 1978) (dismissing claims notwithstanding allegations that interference resulted in

14  the NMB finding that there was insufficient showing of interest to hold an election, because,

15  following the "careful research and analysis" of *AMFA v. UAL*, "jurisdiction of the federal courts to

16  hear complaints of coercion affecting representation disputes under section 2, Third of the RLA is

17  extremely limited"); *American Train Dispatchers Ass'n v. Denver & Rio Grande W.R..R..*, 614 F.

18  Supp. 543, 545 (D. Colo. 1985) (dismissing claim that employer violated Section 2, Third by

19  supporting "company union"; "It is up to the Board to determine what level of involvement by the

20  defendant DRGW would amount to illegal interference, influence, or coercion.").

21          Although ALPA, unlike AMFA, has not filed an application with the NMB, it has stipulated

22  that it has enough signed authorization cards from SkyWest pilots to do so. (Transcript, June 7,

23  2007, pp. 81-82.) If it truly were impossible for ALPA to present its interference claims to the

24  Board, there remains a possibility that a district court could exercise jurisdiction.[3]  That is not this

25  _____

26  [3] There also is a possibility it could not. As this Court explained in *AMFA v. UAL*, its concurrent
    jurisdiction analysis was predicated upon *an assumption* that district courts can exercise original
27  jurisdiction over Section 2, Third claims. *AMFA v. UAL*, 406 F. Supp at 498. The Court's
    conclusion, based upon "statutory construction [was] that Congress intended the Board to take over
28  in this area." *Id.*

                                                    10

SF:175325.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    case, however. It is not that ALPA cannot bring its claims before the Board; only that it has elected

2    not to. It has made that decision because it would prefer to have its interference claims and

3    allegations about SAPA's legitimacy debated in court – where ALPA has little to lose – rather than

4    where it really counts – in a fair election among SkyWest's pilots – where SAPA could prevail as the

5    demonstrable choice of SkyWest's pilots.[4]

6         The alleged interference has not, in other words, "preclude[d] access to the Board." *AMFA v.*

7    *UAL*, 406 F. Supp. at 508 n.25. In fact, nothing has actually *precluded* access to the Board. ALPA

8    has merely *decided* not to seek such access; notwithstanding that, if it sought an election, all the

9    issues here in dispute could either be answered or otherwise resolved.

10        Indeed, it is not a controversial proposition that the Board has exclusive jurisdiction over

11   claims of election interference. *Railway Labor Executives' Ass'n v. Wheeling & L.E. Ry. Co.*, 756 F.

12   Supp. 249, 252 n.9 (E.D. Va.) (plaintiffs' claim "is futile because the NMB has exclusive

13   jurisdiction to resolve allegations of interference with the elections it conducts."), *aff'd without pub.*

14   *op.*, 943 F.2d 49 (4th Cir. 1991); *AMFA v. UAL*, 406 F. Supp. at 508 n.25. Claims of election

15   interference – that the "laboratory conditions" for a fair election have been violated – can arise when

16   the carrier first learns of a union organizing campaign. *See, e.g., Mercy Air Serv., Inc.*, 29 NMB 55

17   (2001); *Express Airlines I*, 28 NMB 431 (2001).

18        Plaintiffs' claims clearly fall within that window, and ALPA has what it deems to be a

19   sufficient showing of interest. It has communicated that to SkyWest's pilots. It will, it cannot be

20   doubted, eventually file its authorization cards with the Board. When it does, one of several things

21

22   4 The Board requires a 35% showing of interest before it will conduct an election for an
     unrepresented craft or class. It requires a showing of a majority interest – 50% plus 1 – before it will
23   conduct an election among a represented craft or class with a valid collective bargaining agreement.
     Even if ALPA does not have cards from 50% plus 1 of SkyWest's pilots, it can file its authorization
24   cards with the Board and assert that it need not have more than 35% because SAPA is (according to
     ALPA) not a legal representative and its agreement with SkyWest therefore is not valid. That would
25   put the questions Plaintiffs would have the Court decide in their proper venue. *See Southwest*
     *Airlines Co.*, 13 NMB 82 (1985) (addressing whether employee association was the existing
26   representative of the employees, and thus whether union had to submit cards from 35% or 50% of
     craft or class); *Air Canada v. NMB*, 478 F. Supp. 615, 618 (S.D.N.Y. 1979) (validity of the showing
27   of interest "'is for administrative determination and may not be litigated by the parties, either
     Employer or Union'") (citation omitted).
28                                                    11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

SF:175325.2

1  could happen. If ALPA presents cards from less than 50% plus 1, the Board will have to address

2  ALPA's claim that SAPA is not the existing representative of the SkyWest pilots for RLA purposes.

3  *See, e.g., AMFA v. UAL*, 406 F. Supp. at 498 ("it is within the Board's power, and is the Board's

4  policy, to deny certification to a union found to be a company union"); *Southwest Airlines*, 13 NMB

5  at 87-88. If it presents cards from more than 50% plus 1, the Board will conduct an election without

6  any need to address that question.

7       Once the election is held, only one of two relevant things could happen: ALPA will win, or

8  ALPA will lose. If ALPA wins, there will be no need for any entity – the Court or the Board – to

9  make any decision about any of the interference claims Plaintiffs would have the Court decide.

10 They will be moot and extensive resources will have been preserved. If ALPA loses, the Board will

11 have authority – indeed sole authority – to address ALPA's interference claims; including all those

12 set forth in Plaintiffs' Complaint.

13      The only thing preventing those scenarios is ALPA's refusal to act on the authorization cards

14 it now holds. There is, in other words, only one thing preventing the Board from addressing the

15 claims Plaintiffs would have the Court decide: ALPA itself. In an observation relevant to ALPA's

16 reticence about seeking an election for which it says it has enough cards to qualify, the court in

17 *Summit Airlines* noted that "a logical argument can be made that because the Union's power to

18 invoke the statutory process [of Section 2, Ninth] is exclusive, there is a greater obligation to

19 exercise that power." *Id.* at 794. Plaintiffs can go to the NMB; that is where they must go.

20        **4.**    **Federal Court Jurisdiction Over Plaintiffs Claims Would Turn The**
               **RLA's Carefully Constructed Dispute Resolution Scheme Upside Down**

21

22      What ALPA seeks here is, in effect, preemptive review of a virtually unreviewable decision

23 by the Board. That it cannot do. A Board certification decision is not subject to collateral attack.

24 *Flight Eng'rs Int'l Ass'n v. Eastern Air Lines*, 359 F.2d 303, 307-08 (2d Cir. 1966). It should not

25 matter whether that collateral attack follows a Board ruling; attempts, preemptively, to foreclose a

26 Board ruling; or creates a possibility of conflicting Board and judicial rulings through an earlier

27 judicial ruling. *See Ruby v. American Airlines*, 323 F.2d at 256 ("the action should have been

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

12

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO. C 07-2688 CRB

SF:175325.2

1  dismissed as soon as [it] appeared" that it "was subject to the vice that it sought orders from a federal

2  court that might frustrate ultimate determination by [the NMB]") (emphasis added).

3         The Board has the expertise to determine whether there is any merit to Plaintiffs' interference

4  claims and to evaluate the independence of SAPA. It should be allowed to do so – indeed, it must be

5  allowed to do so – without interference by this Court. *See Order of Ry. Conductors v. NMB*, 141

6  F.2d 366, 367-68 (D.C. Cir. 1944) (notwithstanding charge that "there was collusion" between the

7  carrier and a rival union for "the purpose of influencing the electors in casting their ballots,"

8  Supreme Court precedent "deprive[s] the courts of all right of interference" with the Board's

9  authority), *cert. denied*, 323 U.S. 166 (1944); *American Train Dispatchers Ass'n v. Denver & Rio*

10  *Grande W. R.R.*, 614 F. Supp. at 545 (granting railroad's motion to dismiss, thus allowing the

11  "Board to determine what level of involvement by the defendant . . . would amount to illegal

12  interference, influence, or coercion. . . . [and] to avoid the possibility of conflicting outcomes in this

13  court and before the National Mediation Board.").

14         This is, truly, the ultimate example of forum shopping. ALPA has access – today – to the

15  federal agency tasked with ensuring that RLA employees are represented by the representative of

16  their choice, and that that choice is made without interference or coercion. The only reason

17  Plaintiffs are not in that forum is that ALPA has elected to not avail itself of the expertise of that

18  agency and instead insists upon unnecessarily taking the time and resources of this Court.

19         The legislative history of the RLA makes abundantly clear that one of the major objectives of

20  Congress in passing the statute and its amendments was to reduce, to an absolute minimum, the role

21  of federal courts in administering the Act. *See AMFA v. UAL*, 406 F. Supp. at 500 ("In determining

22  whether an assertion of jurisdiction under the Act is proper, the court must be vigilant in guarding

23  against the evil of interfering with, or otherwise frustrating, the Board's sensitive role of insuring, to

24  the maximum extent possible, peaceful labor relations . . . .") Parties have access to federal courts in

25  disputes arising under the RLA only when, "but for the general jurisdiction of the federal courts

26  there would be no remedy to enforce the statutory commands which Congress had written into the

27  Railway Labor Act." *Switchmen's Union*, 320 U.S. at 300 (emphasis added). Thus, it is only when

28

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

13

SF:175325.2

1    the NMB cannot protect rights that judicial intervention is permissible. *AMFA v. UAL*, 406 F. Supp.

2    at 502 ("The question here is not, of course, whether these allegations are true, but rather whether the

3    [NMB], acting pursuant to its statutory power of Section 2, Ninth, can protect plaintiffs' rights in the

4    first instance without our judicial intervention.").

5    　　While it may be that, in some circumstances, there will be no remedy in either an

6    administrative or judicial forum because Congress intended that the parties rely on other processes,

7    *Flight Eng'rs Int'l Ass'n v. Eastern Air Lines*, 359 F.2d at 308-09 (quoting *M-K-T*, 320 U.S. at 337

8    ("There may be as a result many areas in this field where neither the administrative nor the judicial

9    functions can be utilized")), under the RLA it would be extraordinary – indeed unheard of – for a

10   court to have concurrent jurisdiction with an administrative body (*i.e.*, a system board of adjustment,

11   in the case of disputes arising from the interpretation or application of collective bargaining

12   agreements; or the NMB, in the case of representation disputes). *See Dones v. Eastern Air Lines*,

13   408 F. Supp. 1044, 1048 (D.P.R. 1975) (citing *M-K-T* as "seem[ing] to preclude any finding of

14   jurisdiction in cases where the National Mediation Board has jurisdiction").

15   　　There is, in any event, no such thing as concurrent jurisdiction under the RLA: if an

16   administrative body such as the NMB (for representation disputes) or a system board of adjustment

17   (for "minor" disputes (*i.e.*, grievances)) has jurisdiction, courts do not.[5] *See, e.g., IBT v. Texas Int'l*,

18   717 F.2d at 164 (finding a representation dispute because, *inter alia*, "we infer from the practical

19   problems of divided jurisdiction a congressional intent to allow that agency alone to consider the

20   post-merger problems that arise from existing collective bargaining agreements."). If Plaintiffs can

21   seek *any form of relief* from the Board that is where they must go. They are not entitled to the relief

22   of their choice, they are entitled to the relief that Congress, through the Act, allows.

23   　　Notwithstanding allegations of interference by SkyWest, Plaintiffs have sufficient cards to go

24   to the Board to ask for an election. If SAPA is not a *bona fide* representative, the Board can allow

---

26   [5] Because the NMB cannot, for example, provide a remedy to an employee terminated in violation
of Sections 2, Third and Fourth, a court has jurisdiction over a reinstatement claim by that

27   individual. *See Adams v. Federal Express Corp.*, 547 F.2d 319 (6th Cir. 1976). That is not
concurrent jurisdiction, it is filling a gap in the remedial scheme; exactly what is contemplated by

28   *Switchmen's Union. Switchmen's Union*, 320 U.S. at 300.

14

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    ALPA to pursue an election with cards from at least 35% of SkyWest's pilots – which ALPA says it

2    has.  If SkyWest has interfered with ALPA's organizing campaign, the Board can provide a remedy.

3    *See, e.g. Laker Airways*, 8 NMB 236 (1981); *Key Airlines*, 16 NMB 296 (1989); *Sky Valet*, 23 NMB

4    276 (1996).  The NMB can protect Plaintiffs' rights; if, indeed, they need protection.  Plaintiffs have

5    but to file their authorization cards.

6        Granting the relief Plaintiffs seek would turn the process on its head.  Rather than have the

7    NMB determine whether the challenged actions constitute interference, which would be binding on

8    the courts (*AMFA v. UAL*, 406 F. Supp. at 503 n. 11), Plaintiffs would have this Court make that

9    finding.  That effectively would ensure that the NMB <u>never</u> had an opportunity to decide whether the

10    conduct did, in fact, constitute interference with the employees' organizational rights – even though

11    it is the agency with the authority and expertise to make such decisions.  That result clearly is not

12    consistent with the structure and purpose of the RLA.  *See Railway Labor Execs' Ass'n v. Wheeling*

13    *& Lake Erie Ry. Co.*, 756 F. Supp. at 252 n.9 ("NMB has exclusive jurisdiction to resolve allegations

14    of interference with elections it conducts"); *American Train Dispatchers*, 614 F. Supp. at 545

15    (declining to address interference claim; court wanted to "avoid the possibility of conflicting

16    outcomes in this court and before the [NMB]").

17        Moreover, the nature of the relief that the Plaintiffs seek also starkly demonstrates that this

18    matter involves a representation dispute.  Plaintiffs seek to eliminate the longstanding, cooperative

19    relationship that SkyWest and SAPA have enjoyed, and to obtain unfettered and unprecedented

20    access to SkyWest property for the purposes of promoting the ALPA campaign, all while attacking

21    the legitimacy of SAPA.  If SAPA is, as Plaintiffs claim, dominated and controlled by SkyWest,

22    there is one litmus test that will tell the tale:  an election monitored by the NMB.

23    **IV.    CONCLUSION**

24        For all of the reasons set forth above, Defendant's motion to dismiss should be GRANTED.

25    Dated:  June 19, 2007                    WINSTON & STRAWN LLP

26                            By:    /s/ Robert Spagat
                                    _____
27                                   Robert Spagat
                                    Attorneys for Defendant
28                                   SKYWEST AIRLINES, INC.

NOTICE OF MOTION AND MOTION TO DISMISS OF DEFENDANT SKYWEST AIRLINES, INC.; MEMO OF
POINTS AND AUTHORITIES, CASE NO. C 07-2688 CRB

SF:175325.2

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894