1   STEPHEN P. BERZON (#46540)
    sberzon@altshulerberzon.com
2   LINDA LYE (#215584)
    llye@altshulerberzon.com
3   Altshuler Berzon LLP
    177 Post Street, Suite 300
4   San Francisco, CA 94108
    Telephone: (415) 421-7151
5   Facsimile:  (415) 362-8064

6   ELIZABETH GINSBURG
    (Admitted to Practice *Pro Hac Vice*)
7   elizabeth.ginsburg@alpa.org
    Air Line Pilots Association, International
8   1525 Massachusetts Ave., NW
    Washington, D.C. 20036
9   Telephone: (202) 797-4081
    Facsimile:  (202) 797-4014
10
    Attorneys for Plaintiffs
11

12              UNITED STATES DISTRICT COURT

13             NORTHERN DISTRICT OF CALIFORNIA

14  SKYWEST PILOTS ALPA ORGANIZING      )   CASE No. C-07-2688 CRB
    COMMITTEE, *et al.*,                )
15                                      )   **PLAINTIFF ALPA'S OPPOSITION**
              Plaintiffs,              )   **TO DEFENDANT'S MOTION TO**
16                                      )   **COMPEL**
          vs.                          )
17                                      )
    SKYWEST AIRLINES, INC.,             )   Date:   July 25, 2008
18                                      )   Time:   10:00 a.m.
          Defendant.                    )   Place:  Courtroom 8, 19th Floor
19  _____)

20

21

22

23

24

25

26

27

28

1

# TABLE OF CONTENTS

2    TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

3    INTRODUCTION AND SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4    STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

5    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

6    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7    I.    THE SUBJECT DISCOVERY REQUESTS DO NOT AID IN THE
           EXPLORATION OF ANY ISSUE MATERIAL TO EITHER
8          PLAINTIFFS' CLAIM OR SKYWEST'S DEFENSE . . . . . . . . . . . . . . . . . . . . . . 5

9          A.    ALPA's relationship to non-SkyWest carriers bears no nexus to the
                 separate SkyWest-SAPA relationship in this case . . . . . . . . . . . . . . . . . . . . 6
10
           B.    ALPA's legal briefs in other cases do not shed light on any material
11               facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

12    II.   SKYWEST'S REQUESTS ARE OVERBROAD AND UNDULY
            BURDENSOME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
13
           A.    SkyWest's requests for financial information are overbroad . . . . . . . . . . . 11
14
           B.    SkyWest's requests are burdensome and harassing, and seek
15               information available from more convenient sources . . . . . . . . . . . . . . . . . 12

16               1.    Compensation from airlines to ALPA officers, employees,
                        agents, representatives, or committee members . . . . . . . . . . . . . . . 12
17
                 2.    Financial support from airlines to ALPA . . . . . . . . . . . . . . . . . . . . . 13
18
                 3.    In-kind support from airlines to ALPA . . . . . . . . . . . . . . . . . . . . . . . 14
19
                 4.    Legal documents filed by ALPA . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
20
      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

## CASES

3

*ALPA v. NLRB*,
  525 F.3d 862 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

4

*ALPA v. Midwest Exp. Airlines, Inc.*,
  279 F.3d 553 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

5

6

*ALPA v. Trans States Airlines, Inc.*,
  2007 WL 2609875 (E.D. Mo. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

7

*Am. Fast Freight, Inc. v. Nat'l Consolidation & Dist., Inc.*,
  2008 WL 570810 (W.D. Wash. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

8

9

*Atkinson v. Denton Publ'g Co.*,
  84 F.3d 144 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

10

*Barthelemy v. ALPA*,
  897 F.2d 999 (9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9, 15

11

12

*Baum v. Village of Chittenango*,
  218 F.R.D. 36 (N.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

13

*Beneficial Fin. Co. of New York v. Fontaine (In re Fontaine)*,
  402 F. Supp. 1219 (E.D.N.Y. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 7

14

15

*Brew v. Johnson*,
  2008 WL 686433 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

16

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 5

17

18

*Caliper Technologies Corp. v. Molecular Devices Corp.*,
  213 F.R.D. 555 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

19

*Coleman v. Am. Red Cross*,
  23 F.3d 1091 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

20

21

*In re Convergent Technologies Sec. Litig.*,
  108 F.R.D. 328 (N.D. Cal. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 9, 14

22

*Dushkin Publ'g. Group, Inc. v. Kinko's Service Corp.*,
  136 F.R.D. 334 (D.D.C. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

23

24

*Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*,
  103 F.3d 1007 (D.C. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

25

*Hendershott v. Skipper*,
  160 F.R.D.129 (D. Or. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

26

27

*Matter of West Chicago Thorium Tailings Consol. Pretrial Proceeding*,
  919 F. Supp. 315 (N.D. Ill. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8, 10

28

*Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Elect. Transit Inc.,*
     2006 WL 1525809 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 5

*Oppenheimer Fund, Inc. v. Sanders,*
     437 U.S. 340 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 5, 8

*Superhype Publ'g Inc. v. Parrott Dev. Corp.,*
     163 F.R.D. 5 (W.D. Mich. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States ex. rel. Stephens v. Prabhu,*
     163 F.R.D. 340 (D. Nev. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 7, 8

*Walker v. Prudential Property and Cas. Ins. Co.,*
     286 F.3d 1270 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 7

*World Wrestling Fed'n Entm't, Inc. v. William Morris Agency, Inc.,*
     204 F.R.D. 263 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

## STATUTES AND REGULATIONS

45 U.S.C. §152, Fourth . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*

29 C.F.R. §403.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

## RULES

Federal Rules of Civil Procedure,
     Rule 26 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
     Rule 26(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15
     Rule 26(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 10, 15
     Rule 26(b)(2)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 15
     Rule 26(b)(2)(C)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  *passim*
     Rule 26(b)(2)(C)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 11, 13, 14
     Rule 26(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
     Rule 26(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 5
     Rule 33(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

Civil Local Rule 37-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5, 11, 14, 15

1

### INTRODUCTION AND SUMMARY OF ARGUMENT

2      Defendant SkyWest Airlines, Inc. ("SkyWest") seeks to obtain highly detailed financial

3  information about entities that are complete strangers to the relationship at issue in this case.

4  SkyWest's discovery requests will not aid in the exploration of any issue that is relevant, under any

5  conceivable theory, to the claims or defenses in this litigation and appears to have been interposed

6  for no purpose other than to burden and harass Plaintiff Air Line Pilots Association, International

7  ("ALPA").  Moreover, SkyWest's discovery requests are wildly overbroad, going far beyond the

8  information than even SkyWest (erroneously) asserts to be relevant, and would impose the

9  unjustifiable burden on ALPA of spending hundreds of hours to compile transaction by transaction

10 information that ALPA does not receive or track in uniform or electronic format, when SkyWest can

11 far more conveniently obtain the information from other sources.  The motion to compel should be

12 denied.

13      The individual plaintiffs are pilots employed by SkyWest who wish to be represented by

14 ALPA.  There are also two organizational plaintiffs, the SkyWest Pilots ALPA Organizing

15 Committee, an association of SkyWest pilots who wish to be represented by ALPA, and ALPA.

16 Complaint (Doc. 1) at ¶¶ 6-16.  Plaintiffs contend that SkyWest has interfered with their rights

17 under the Railway Labor Act ("RLA") by, *inter alia*, providing 100 percent of the funding for a

18 sham union, known as the SkyWest Airlines Pilots Association ("SAPA").  The ultimate question

19 before the Court is whether SkyWest's funding of SAPA is unlawful.  *See* 45 U.S.C. §152, Fourth

20 (prohibiting carrier from using "funds" to "maintain[] or assist[] or contribut[e]" to any labor

21 representative).

22      None of the detailed financial information that SkyWest seeks about ALPA's relationship

23 with carriers other than SkyWest bears remotely on the lawfulness of the SkyWest-SAPA

24 relationship.  The Court should deny the motion because SkyWest seeks information that will not

25 "aid in the exploration of a[ny] material issue." *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v.*

26 *Elect. Transit Inc.*, 2006 WL 1525809, at *2 (N.D. Cal. 2006) (quoting *CSC Holdings, Inc. v.*

27 *Redisi*, 309 F.3d 988, 993 (7th Cir. 2002)).  Neither ALPA nor the carriers whose pilots it represents

28 are parties to the SkyWest-SAPA relationship that is the subject matter of this lawsuit.  Courts

1  routinely deny discovery requests where, as here, they involve relationships or transactions *other*

2  than those whose legality is at issue.  *See, e.g., Walker v. Prudential Property and Cas. Ins. Co.*, 286

3  F.3d 1270, 1280 (11th Cir. 2002).  This makes sense because each transaction "is a separate entity,"

4  *Beneficial Fin. Co. of New York v. Fontaine (In re Fontaine)*, 402 F. Supp. 1219, 1221 (E.D.N.Y.

5  1975), and actions by other parties "will not change the nature of Defendants' allegedly similar

6  wrongful actions."  *United States ex. rel. Stephens v. Prabhu*, 163 F.R.D. 340, 342-43 (D. Nev.

7  1995).  ALPA and the carriers whose pilots ALPA represents are entirely separate entities from

8  SAPA and SkyWest, and ALPA's conduct cannot possibly change the nature of SkyWest's unlawful

9  funding of SAPA.  It bears emphasis that ALPA's relationships with other carriers bears no factual

10 parallel whatsoever to SkyWest and SAPA.  Unlike SAPA, ALPA is overwhelmingly funded by

11 sources entirely independent of any carrier, as is readily apparent from publicly available documents

12 which SkyWest can easily access over the internet.

13      As we explain more fully below, SkyWest has not served these requests in order to learn

14 information that it genuinely believes relates to this case.  Under SkyWest's theory, 100 percent

15 carrier financial support for a labor representative is beside the point because it is "only" when the

16 particular representative is actually dominated that the RLA is violated.  *See* Def's Mot. to Compel

17 (Doc. 206) at 3:17-20, 8:25.  SkyWest's theory renders its discovery requests doubly irrelevant

18 because they seek information about entities whose relationship is not at issue and on a topic

19 (financial support) that SkyWest claims does not matter.  Moreover, even if "common" practice in

20 the industry were relevant (*cf.* Def's Mot. to Compel (Doc. 206) at 9), which the caselaw above

21 shows it is not, it is clear from evidence introduced by SkyWest at the preliminary injunction trial,

22 prior to any discovery, that SkyWest is already well-versed with industry practice and has

23 propounded this discovery "not so much to learn what the facts are, but more to muscle" ALPA.  *In*

24 *re Convergent Tech. Sec. Litig.*, 108 F.R.D. 328, 332 (N.D. Cal. 1985).

25      Indeed, the crux of SkyWest's argument is that ALPA should have to produce the requested

26 information because it is the "mirror image" of the information that Plaintiffs have sought.  *See*

27 Def's Mot. to Compel (Doc. 206) at 2:15.  Any such rule would produce the absurd result of

28 subjecting a plaintiff in any suit to all of the same discovery requests that it propounds on the

1    defendant, even though the plaintiff's conduct is not the subject matter of the lawsuit.  SkyWest's

2    acknowledgment that it seeks "mirror image" discovery confirms that it is engaged in nothing more

3    than a "tit for tat."  "Discovery should be denied when a party's aim is to . . . harass the person from

4    whom he seeks discovery."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n. 17 (1978);

5    *see also* Fed. R. Civ. P. 26(g)(1) (discovery requests may not be "interposed for any improper

6    purpose, such as to harass").

7         Furthermore, SkyWest seeks information that is far more conveniently available to SkyWest

8    from other sources.  The immense burden required of ALPA to produce the detailed information

9    vastly outweighs whatever minimal probative value the union's financial information could provide.

10   *See* Fed. R. Civ. P. 26(b)(2)(C)(i), (iii).  For this independent reason, the motion should be denied.

11                                  **STATEMENT OF FACTS**

12        The underlying merits of this dispute are not currently before the Court on this motion to

13   compel, but provide necessary context for analyzing Defendant's discovery requests. Plaintiffs

14   brought this action against SkyWest for several violations of Section 2, Third and Section 2, Fourth

15   of the RLA.  Plaintiffs sought and the Court granted emergency relief on the ground that SkyWest's

16   conduct improperly interfered with Plaintiffs' efforts to organize the pilots of SkyWest for collective

17   bargaining purposes.  *See* Order (Doc. 160).  Plaintiffs' challenge to SkyWest's relationship to

18   SAPA – an in-house representative wholly funded by the carrier – was left for further development

19   through discovery, and that process is now underway.  The legal issue ultimately before the Court is

20   whether SkyWest's full financing of SAPA is lawful.

21        At issue in this motion to compel is whether SkyWest may seek discovery about

22   relationships entirely separate from the SkyWest-SAPA relationship at issue in this case.[1]

23

24        [1] Defendant seeks to compel ALPA to provide highly detailed information about the
25   financial and in-kind support paid by carriers other than SkyWest to ALPA and its agents, on the
     following four topics covering the five year period from 2003 through 2007 (*see* Def's Mot. to
26   Compel (Doc. 206) at 5-7, 9 n.1, & Exh. A):  (1) compensation provided by airlines to ALPA
     officers, employees, agents, representatives, or committee members, including a "description of
27   *each* expenditure, its purpose, and amount" (*see* Interrogatory 3); (2) financial support provided by
     airlines to ALPA, including a description of "*each* expenditure, its purpose, and amount" (*see*
28   Interrogatory 4); (3) in-kind support provided by airlines to ALPA, including "the value of *each*
                                                                               (continued...)

PLAINTIFF ALPA'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL, Case No. C-07-2688 CRB      3

1   Although, as Plaintiffs show below, Defendants' requests are not likely to lead to relevant evidence,

2   and appear to have been interposed for improper purposes, Defendant already has access to

3   sufficient information to support its contention.

4       In response to SkyWest's requests, ALPA *has already produced* to SkyWest responsive

5   portions of its collective bargaining agreements ("CBAs").  Hall Decl. (Doc. 207) at ¶8.  The

6   portions of the CBAs that ALPA produced "reflect the nature and scope of financial arrangements

7   between ALPA and the carrier[s] whose pilots ALPA represents."  *See* Def's Mot. to Compel (Doc.

8   206) at 5-7 (quoting ALPA's responses to Interrogatories and Document Requests).

9       In addition, extensive information about ALPA's finances is easily and publicly available to

10  SkyWest through the Department of Labor's website.[2]  ALPA files with the Department of Labor a

11  detailed annual financial report, known as an "LM-2," which includes information about its cash

12  receipts and disbursements, as well as assets and liabilities.  Declaration of Margarita Lorenzetti

13  ISO Pltf's Opp. at ¶10.  ALPA's LM-2 reflects that it is overwhelmingly funded by sources entirely

14  independent of any carrier whose pilots it represents.  As set forth on ALPA's LM-2s, in fiscal year

15  2007, for example, ALPA received a total of $257 million in cash receipts, $108 million of which

16  derived from the dues and agency fees paid by the pilots it represents, and $102 million of which

17  derived from the sale of investments and fixed assets.  *Id.* at ¶11.

18      Beyond producing its CBAs, ALPA objected to providing any further response to the four

19  disputed categories on the basis that the requests were not calculated to lead to the discovery of

20  relevant evidence, and were overbroad, unduly burdensome, and seeking evidence that could be

21  obtained more easily elsewhere.[3]  Def's Mot. to Compel (Doc. 206) at 5-7 (same).  ALPA has

22

23      [1](...continued)
24  item of in-kind support and the basis used to calculate its value" (*see* Interrogatory 5); and (4)
    documents that ALPA has filed in prior litigation in which ALPA or its agents were alleged to have
25  received compensation or financial support that violated Section 2, Fourth.  (Emphases added.)

26      [2]  http://erds.dol-esa.gov/query/getOrgQry.do.

27      [3]  In addition to the portion of the responses quoted in Defendant's brief, ALPA's response
    to SkyWest's interrogatories and ALPA's response to SkyWest's document requests stated that
28  "Plaintiff objects to each discovery request to the extent it seeks information which is . . . equally
                                                                                    (continued...)

1   objected to producing a witness to testify on the contested subjects.  Hall Decl. (Doc. 207) at ¶12.

2                                    **LEGAL STANDARD**

3           SkyWest may only discover material that is "relevant to any party's claim or defense" (Fed.

4   R. Civ. P. 26(b)(1)).  As the Supreme Court has made clear, "discovery should be denied when a

5   party's aim is to . . . harass the person from whom he seeks discovery."  *Oppenheimer Fund, Inc. v.*

6   *Sanders*, 437 U.S. 340, 352 n. 17 (1978); *see also* Fed. R. Civ. P. 26(g)(1) (discovery requests may

7   not be "interposed for any improper purpose, such as to harass").

8           Further, SkyWest is not entitled to seek information that is available from a "more

9   convenient, less burdensome, or less expensive" source, or unduly burdensome considering its

10  "likely benefit."  Fed. R. Civ. P. 26(b)(2)(C).  SkyWest must demonstrate that "the proportionality

11  and other requirements of" Rule "26(b)(2) are satisfied."  Civ. L. R. 37-2.

12          "In deciding a motion to compel, courts must evaluate such factors as timeliness, good

13  cause, utility and materiality."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Elect. Transit Inc.*,

14  2006 WL 1525809, at *2 (N.D. Cal. 2006) (quoting *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 993

15  (7th Cir. 2002)).  In accordance with Federal Rule of Civil Procedure 26, the court "may deny

16  motions to compel [because they] would not aid in the exploration of a material issue . . . [or

17  because] the discovery sought would impose an undue burden on the responding party or . . . its

18  benefits are outweighed by its burdens."  *Id.* (citations omitted).

19                                      **ARGUMENT**

20  **I.     THE SUBJECT DISCOVERY REQUESTS DO NOT AID IN THE EXPLORATION**
    **       OF ANY ISSUE MATERIAL TO EITHER PLAINTIFFS' CLAIM OR SKYWEST'S**
21  **       DEFENSE**

22          The challenged discovery fails to aid in the exploration of any issue that is material to either

23  Plaintiffs' claim or SkyWest's defense.  Both the claim and the defense are specific to the

24  relationship between two entities:  SkyWest and SAPA.  The requested discovery seeks information

25  about ALPA and air carriers other than SkyWest – entities that are strangers to the relationship at

26

27  _____

28  [3](...continued)
    available to defendant, or publicly available . . ., thus requiring Plaintiff to incur unnecessary
    expense and burden in responding."  Decl. of Elizabeth Ginsburg ISO Pltf's Opp. at  ¶2.

issue in this case.  These separate union-company relationships have no bearing on the SkyWest-SAPA relationship and shed no light on the question whether SkyWest's contribution of 100 percent of the funds necessary for "maintaining or assisting or contributing to" SAPA is unlawful.  45 U.S.C. §152, Fourth; *cf. Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1013 (D.C. Cir. 1997) (concluding that documents related to *other* unions' actions vis-à-vis *other* employers were irrelevant to the question of a defendant union's "intent in carrying out" a lawsuit against the plaintiff employer).

> **A.    ALPA's relationship to non-SkyWest carriers bears no nexus to the separate SkyWest-SAPA relationship in this case**

The requested detailed information about the compensation, financial, and in-kind support that ALPA and its agents receive from carriers other than SkyWest is not reasonably calculated to lead to the discovery of relevant evidence under any theory of the case.

1.    Plaintiffs' arguments in this case will focus on the legal significance of the fact that SkyWest admittedly provides 100 percent of the expenses that SAPA incurs in purporting to deal with SkyWest and represent pilots vis-à-vis SkyWest management.  But the funding arrangements bargained at arm's length between carriers other than SkyWest with labor unions with independent funding, such as ALPA, have no connection whatsoever to the analysis of SkyWest's financial support for SAPA.  This is so for two reasons.  First, neither ALPA nor any of the carriers whose pilots it represents are parties to the SkyWest-SAPA relationship at issue in this case.  Second, ALPA's carrier relationships cannot be analogized to the SkyWest-SAPA context.  Publicly available records make clear that in sharp contrast to SAPA, which SkyWest concedes is *100 percent company-financed*, ALPA is overwhelmingly funded by membership dues and agency fees, and other sources entirely independent of the carriers whose pilots ALPA represents.  Lorenzetti Decl. at ¶11 (in 2007, ALPA had total cash receipts of $257 million, including $108 million of from dues and agency fees and $102 million from the sale of investments and fixed assets).

Nor do ALPA's receipts have any bearing on SkyWest's theory of the case.  SkyWest claims that even complete funding of a labor organization does not violate Section 2, Fourth unless such funding results in its actual domination by the carrier.  *See* Def's Mot. to Compel (Doc. 206), at

3:17-20, 8:25-26.  In other words, under SkyWest's theory,  it is not financial support, but "actual

. . . domination" of the particular labor representative that matters.  *Id.* at 3:20.  If this is so, financial

arrangements between other unions and carriers have no relevance.

Plaintiffs strenuously disagree that a violation of Section 2, Fourth requires a showing under

the unique facts in this case, that SkyWest has actually dominated SAPA, but the Court need not

resolve the issue now.  ALPA's relationship to other carriers involves entirely different entities than

those at issue here.  And SkyWest cannot claim that ALPA's *financial* relationship to these other

carriers aids in its defense, when its contention is that domination, not financing, matters.  In no way

would ALPA's financial information aid in the case-specific exploration of whether SAPA is

dominated by SkyWest.  *Cf. World Wrestling Fed'n Entm't, Inc. v. William Morris Agency, Inc.*,

204 F.R.D. 263, 265 (S.D.N.Y. 2001) (denying plaintiff's motion for information about defendant's

other contracts:  "[T]reatment of one contracting party in the entertainment field does not really

illuminate or is not really relevant to how another party in the entertainment field is treated").

2.    Appropriately, courts routinely conclude that discovery requests are irrelevant when

they involve relationships or transactions *other* than those whose legality is at issue.[4]  This makes

sense because each transaction "is a separate entity," *In re Fontaine*, 402 F. Supp. at 1221; and

actions by other parties "will not change the nature of Defendants' allegedly similar wrongful

---

[4]  *See e.g., Walker v. Prudential Property and Cas. Ins. Co.*, 286 F.3d 1270, 1280 (11th Cir. 2002) (in employment discrimination case, denying discovery of settlement agreements involving managers at defendant company because those managers' discriminatory animus was not at issue in this case); *Atkinson v. Denton Publ'g Co.*, 84 F.3d 144, 148 (5th Cir. 1996) (denying discovery of personnel files because many of them related to individuals who had no contact with supervisor whose actions were challenged); *Caliper Technologies Corp. v. Molecular Devices Corp.*, 213 F.R.D. 555, 561 (N.D. Cal. 2003) (denying motion to compel discovery of plaintiff's license agreements for patents other than the one in the suit); *United States ex. rel. Stephens v. Prabhu*, 163 F.R.D. 340, 342-43 (D. Nev. 1995) (in false claims case, denying discovery of Medicare documentation submitted by companies other than defendants to Medicare provider); *Superhype Publ'g Inc. v. Parrott Dev. Corp.,* 163 F.R.D. 5, 7 (W.D. Mich. 1995) (holding that information about licenses received by establishments other than the defendant business was irrelevant to claim that defendant violated copyright law by failure to obtain proper license); *Beneficial Fin. Co. of New York v. Fontaine (In re Fontaine)*, 402 F. Supp. 1219, 1221 (E.D.N.Y. 1975) (holding that loan applications submitted to plaintiff, other than those of the defendant, were irrelevant to the issue of whether plaintiff relied on false statement in the defendant's loan application because "each loan is a separate entity").

1    actions." *Prabhu*, 163 F.R.D. at 343.  Similarly, here, ALPA and the carriers whose pilots ALPA

2    represents are entirely separate entities from SAPA and SkyWest, and ALPA's conduct cannot

3    possibly change the nature of SkyWest's unlawful funding of SAPA.

4            Notably, courts deny even requests for discovery about other transactions involving one of

5    the same entities whose conduct is at issue.  *See, e.g., World Wrestling Fed'n Entm't, Inc*., 204

6    F.R.D. at 265; *Matter of West Chicago Thorium Tailings Consol. Pretrial Proceeding*, 919 F. Supp.

7    at 317; *Hendershott v. Skipper*, 160 F.R.D.129, 130 (D. Or. 1995) (in excessive force case, denying

8    prisoner's motion to compel discovery about other uses of force by named defendants).  SkyWest's

9    requests for ALPA's financial information are even further afield.  Not only does SkyWest seek

10   information about different transactions, none of the entities about which it seeks information is

11   party to the SkyWest-SAPA relationship at issue here.  There is simply no "nexus" between

12   SkyWest's unlawful funding of SAPA and ALPA's relationship to other carriers.  *Atkinson*, 84 F.3d

13   at 148 (denying discovery because there was no "nexus" between an individual's allegedly wrongful

14   acts and acts that do not involve that individual).

15           3.      SkyWest argues nevertheless that ALPA's financial relationship with other carriers is

16   relevant because its discovery requests are the "mirror image" of Plaintiffs' requests.  *See* Def's

17   Mot. to Compel (Doc. 206) at 2:15, 8:24.  This is not a cognizable principle of relevance.  Financial

18   information about one party is not relevant simply because identical information about the *opposing*

19   party is relevant.  Any such rule would produce absurd results.  It would mean, for example, that an

20   organization sued for financial wrongdoing could seek information about the plaintiff's bank

21   accounts, simply because the defendant's financial transactions – the subject matter of the lawsuit –

22   were discoverable.  Indeed, SkyWest's insistence on "mirror image" discovery requests for ALPA's

23   detailed financial information – particularly when SkyWest dismisses the legal significance of

24   carrier financial support – makes clear that SkyWest is less interested in obtaining information for

25   its defense than in punishing ALPA for participating in this suit.  *See Oppenheimer Fund,* 437 U.S.

26   at 352 n. 17 (discovery should be denied when a party's aim is to . . . harass the person from whom

27   he seeks discovery").

28           4.      Alternatively, SkyWest argues that ALPA's financial information is needed to show

1   that "it is common for airline employee unions generally – and ALPA specifically – to receive

2   financial support from the carriers whose employees they represent." Def's Mot. to Compel (Doc.

3   206) at 9:7-9.  SkyWest fails to note that, in stark contrast to the SkyWest-SAPA relationship, these

4   "common" practices to which SkyWest alludes result from arm's length negotiations between

5   carriers and certified collective bargaining representatives which are overwhelmingly financed from

6   independent sources, and are entirely distinguishable from the 100 percent subsidized SkyWest-

7   SAPA relationship at issue here.  *See* Lorenzetti Decl. at ¶¶3-4, 11.

8          Even if there were any factual parallel between these other union-carrier relationships and

9   the captive SkyWest-SAPA relationship, "common" industry practice simply bears no relationship

10  to any legal theory of the case.  Plaintiffs contend that the arrangement under which SkyWest funds

11  100% of SAPA's expenses and SAPA purports to be the pilots' "representative" is a blatant and

12  facial violation of Section 2, Fourth of the RLA, which expressly prohibits a carrier from using its

13  funds to "maintain[] or assist[]or contribut[e] to any" labor representative.  45 U.S.C. §152, Fourth.

14  Nothing in Section 2, Fourth suggests an exception to this prohibition for "common" practice.  And

15  absent a court ruling, the mere fact that a practice is common does not suggest that it is *legal*.

16  *Compare Barthelemy v. ALPA*, 897 F.2d 999, 1016 (9th Cir. 1990) (per curiam) (recognizing the

17  "minor assistance" to unions from employers that *courts* have frequently held to be permissible).

18         In any event, SkyWest's theory of the case, which focuses on actual domination of the

19  *particular* labor representative, renders the matter of common practice irrelevant.  *Cf. Am. Fast*

20  *Freight, Inc. v. Nat'l Consolidation & Dist., Inc.*, 2008 WL 570810, at *4 (W.D. Wash. 2008)

21  (denying motion to compel discovery about *plaintiffs'* corporate form because "typical industry

22  practices" are not relevant to deciding whether to pierce *defendants'* corporate form).  SkyWest's

23  "actual domination" theory rests entirely on an analysis of the specific SkyWest-SAPA relationship

24  because, in its view, payments to labor organizations that could be illegal in some contexts may be

25  legal in others, depending on the specific facts of how those payments affect a particular labor

26  representative in a particular context.

27         Furthermore, the record suggests that SkyWest has propounded discovery on ALPA "not so

28  much to learn what the facts are, but more to muscle" ALPA.  *In re Convergent Tech. Sec. Litig.*,

1    108 F.R.D. 328, 332 (N.D. Cal. 1985).  SkyWest is already familiar with common industry practice

2    and had no need to propound burdensome discovery on ALPA to find out more about this topic.

3    Before any discovery was conducted in this case, SkyWest introduced excerpts at the preliminary

4    injunction trial from ALPA's CBAs with various other carriers.  *See* Def's Mot. to Compel (Doc.

5    206) at 3:24-27.  It is not surprising that SkyWest would have easy access to ALPA's agreements

6    with other carriers or that it would generally be familiar with industry practice.  Its counsel is

7    experienced in representing airlines in suits involving unions including ALPA, *see, e.g., ALPA v.*

8    *NLRB*, 525 F.3d 862 (9th Cir. 2008) (SkyWest's counsel listed as counsel for carrier in case); *ALPA*

9    *v. Midwest Exp. Airlines, Inc.*, 279 F.3d 553 (7th Cir. 2002) (same); *ALPA v. Trans States Airlines,*

10   *Inc.*, 2007 WL 2609875 (E.D. Mo. 2007) (same), and holds itself out as having "unmatched

11   experience in the labor and employment issues unique to airlines."  *See*

12   http://www.fordharrison.com/showindustry.aspx?Show=578.

13            **B.    ALPA's legal briefs in other cases do not shed light on any material facts**

14            The remainder of SkyWest's requested discovery, for litigation documents filed by ALPA in

15   other cases, is even more meritless.  Under no theory of Section 2, Fourth could ALPA's legal briefs

16   lead to evidence about SkyWest and SAPA.  ALPA's *legal* arguments in other cases involving other

17   carriers do not constitute evidence or binding precedent of any sort and simply are not "reasonably

18   calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  The Federal

19   Rules do not permit discovery to aid a party's legal research.  Any *facts* about ALPA's finances

20   reflected in such documents are irrelevant for the reasons described above.  The requested ALPA

21   documents involve other parties, other facts, and other claims.  *Cf. Matter of West Chicago Thorium*

22   *Tailings Consol. Pretrial Proceeding*, 919 F. Supp. 315, 317 (N.D. Ill. 1996) (denying plaintiff's

23   motion to discover evidence related to prior case against defendant because it "involv[ed] a different

24   facility, different plaintiffs, different injuries, and completely different facts").

25   **II.    SKYWEST'S REQUESTS ARE OVERBROAD AND UNDULY BURDENSOME**

26            Even if the Court were to conclude that the requested financial information has some

27   minimal probative value, it should still deny SkyWest's motion to compel.  SkyWest's own

28   description confirms that it seeks ALPA's financial information primarily to engage in a tit-for-tat

1  game of "mirror image" discovery. *See* Def's Mot. to Compel (Doc. 206), at 2:15, 8:24. The

2  company's strategy of harassment and punishment through discovery is not permissible. *See*

3  *generally* Fed. R. Civ. P. 26(g). SkyWest seeks information that is far more conveniently available

4  to SkyWest from other sources, and that would place immense burden on ALPA to produce. The

5  hundreds of hours ALPA would need to compile the transaction-by-transaction information sought

6  entirely overshadow whatever minimal probative value its financial information could provide. *See*

7  Fed. Rs. Civ. P. 26(b)(2)(C)(i), (iii); *see* Civ. L. R. 37-2 (party seeking to compel discovery must

8  show that "the proportionality and other requirements of FRCivP 26(b)(2) are satisfied.").

9      **A.    SkyWest's requests for financial information are overbroad**

10      SkyWest is seeking extremely detailed financial information: the amount, date, and purpose

11  of *each* transaction between ALPA, the over 40 airlines with which ALPA has agreements, and

12  ALPA officials between 2003 and 2007. This level of detail is completely unnecessary to establish

13  even what SkyWest erroneously asserts to be relevant.

14      SkyWest argues that it seeks to understand the "common" practices among airline employee

15  unions, and that ALPA should therefore be compelled to produce information "regarding the *types*

16  of compensation, financial support, and in-kind support received by ALPA from the carriers it

17  represents." Def's Mot. to Compel (Doc. 206) at 9:7-16 (emphasis added). Even if "common"

18  practices bore any relation to the claims and defenses in this case – which they do not, *see supra* at

19  8-10 – ALPA has already produced to SkyWest its CBAs (including associated letters of

20  understanding and memoranda of understanding) which include routine agreements between ALPA

21  and air carriers regarding what SkyWest terms compensation and other financial flows between air

22  carriers and ALPA and its members (Lorenzetti Decl. at ¶4). These documents "reflect the nature

23  and scope of financial arrangements between ALPA and the carrier[s] whose pilots ALPA

24  represents." Def's Mot. to Compel (Doc. 206) at 6-7 (quoting ALPA's responses to Defendant's

25  Document Requests 5-7).

26      SkyWest has entirely failed to explain why these already-produced CBAs do not satisfy

27  SkyWest's purported need for information about the "types" of practices between ALPA and the

28  carriers whose pilots it represents. Def's Mot. to Compel (Doc. 206) at 9:14. Producing each

1   specific, individual transaction that flows from these agreements will immensely burden ALPA, but

2   will not further illuminate any "types" of common practice.

3       **B.    SkyWest's requests are burdensome and harassing, and seek information available from more convenient sources**

4       SkyWest's requests are also burdensome and require information that is equally available to

5   SkyWest or is not readily available to ALPA.

6       1.  Compensation from airlines to ALPA officers, employees, agents, representatives, or

7   committee members.  SkyWest Interrogatory 3 , Document Request 5, and its Deposition Notice

8   seek the compensation provided by airlines "whose pilots are represented by ALPA to any local or

9   national ALPA officer, employee, agent, representative, or committee member . . . by virtue of his

10  or her status and/or work performed as a local or national ALPA officer, employee, agent,

11  representative, or committee member."  SkyWest requests "each expenditure, its purpose, and

12  amount," except for information about compensation "which ALPA reimbursed."  *See* Def's Mot. to

13  Compel (Doc. 206) at 5:1-7, 6:3-8, Exh. A, 2:17-20.

14      Even if it were minimally probative – which it is not – this discovery is so burdensome to

15  ALPA that it should not be compelled on that ground alone.  SkyWest seeks information about each

16  individual item of "compensation *provided by any airline* whose pilots are represented by ALPA" to

17  any ALPA official, representative, committee member, or employee.  (SkyWest Interrogatory 3,

18  Document Request 5) (emphasis added).  ALPA's burden of reviewing and then compiling all of its

19  records related to various airline carriers to reproduce information *those airlines* have in far more

20  convenient form greatly outweighs any benefit of such information to SkyWest.  *See* Fed. R. Civ. P.

21  26(b)(2)(C)(i) ("court must limit" discovery where it "can be obtained from some other source that

22  is more convenient, less burdensome, or less expensive").

23      Like any employer, carriers themselves routinely record the amount, purpose, and date of all

24  compensation that they provide to ALPA pilots.  ALPA, on the other hand, would only be able to

25  respond to and generate the transaction-by-transaction compensation information that SkyWest

26  seeks with hundreds of hours of work.  This information is not received by ALPA in a uniform,

27  transaction-by-transaction format.  Furthermore, ALPA does not record all the information

28  electronically, or track it in any other uniform transaction-by-transaction format.  ALPA cannot

1  generate any report from its electronic accounting system that would either show the instances,

2  purposes and amount of the compensation covered by SkyWest's requests, or readily identify the

3  documents that would show such information. Thus, to respond accurately to SkyWest's requests,

4  ALPA would need to review thousands of paper documents and approximately 57,000 lines of

5  electronic data to first identify those that are relevant, and then reconcile those records. *Lorenzetti*

6  Decl. ¶¶6-9.

7      This burden far outweighs any benefit such detail may provide SkyWest. *See* Fed. R. Civ. P.

8  26(b)(2)(C)(iii); *cf. Coleman v. Am. Red Cross*, 23 F.3d 1091, 1098 (6th Cir. 1994) (denying as

9  overly burdensome request that would require Red Cross to "search every file that exists at National

10  Headquarters for any documents that might be of any relevance"); *Brew v. Johnson*, 2008 WL

11  686433, at *5 (E.D. Cal. 2008) (concluding that it would be unduly burdensome to compel

12  defendant to gather statistics that defendant's employer did not maintain).[5]  Because, unlike ALPA,

13  air carriers have electronic or otherwise accessible records of the compensation they pay to pilots,

14  SkyWest should seek this information from the carriers instead. *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

15      2.  Financial support from airlines to ALPA.  SkyWest Interrogatory 4, Document Request 6,

16  and its Deposition Notice seek "a description of each expenditure, its purpose, and amount" for any

17  "financial support" that ALPA receives from airlines whose pilots it represents, including

18  reimbursed expenses. *See* Def's Mot. to Compel (Doc. 206) at 5:13-16. 6:14-17, Exh. A, 2:20-24.

19      ALPA understands these requests to seek ALPA's cash receipts from carriers.  In addition to

20  being overbroad, *see supra* at 11-12, this request appears designed only to harass and burden ALPA

21  for participating in this lawsuit.  Most, if not all, of the information SkyWest seeks is a matter of

22  public and easily accessible record.  ALPA reports the amount and description of each cash receipt

23  from carriers on Schedule 14 of its LM-2 reports to the Department of Labor.  *Lorenzetti Decl.*

24

25

26      [5]  ALPA's option, pursuant to Federal Rule of Civil Procedure 33(d), to respond to the
   interrogatory request by producing documents rather than compiling the information from these
   records does not mitigate the burden because ALPA's burden simply to produce the relevant
27  documents is substantial.  Identifying responsive documents alone would require ALPA to review
   tens of thousands of lines of electronic data and thousands of paper documents. *Lorenzetti Decl.* at
28  ¶8. And the records with responsive information are intermingled with records unrelated to
   SkyWest's compensation requests. *Id.* at ¶9.  ALPA should not be required to hand over documents
   that contain substantial unrelated information.

1    ¶¶10, 12; *see also* 29 C.F.R. §403.3; Department of Labor, "What do I report in Schedule 14-Other

2    Receipts?," *available at* http://www.dol.gov/esa/olms/regs/compliance/lm2faqsched1419.htm#53

3    (accessed June 28, 2008). The reports from 2000 to 2007 for ALPA are publicly available on the

4    Department of Labor website, at http://erds.dol-esa.gov/query/getOrgQry.do.

5        Indeed, SkyWest's willingness to pay for a motion to compel despite the ease of

6    downloading information that will entirely or almost entirely address what SkyWest insists is an

7    important request suggests that the purpose behind SkyWest's request is nothing more than to

8    harass. *Cf. In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328 at 331, 332 (stating

9    that "counsel . . . *must* make a common sense determination . . . that the information sought is of

10    sufficient potential significance to justify the burden the discovery probe would impose [and ] that

11    the discovery tool selected is the most efficacious of the means that might be used").

12        As a result, ALPA should have no duty to produce cash receipts information. The material

13    "can be obtained from some other source that is more convenient." Fed. R. Civ. P. 26(b)(2)(C)(i);

14    *see also Baum v. Village of Chittenango*, 218 F.R.D. 36, 40 (N.D.N.Y. 2003) ("compelling

15    discovery from another is unnecessary when the documents sought are equally accessible to all");

16    *Dushkin Publ'g. Group, Inc. v. Kinko's Service Corp.*, 136 F.R.D. 334, 335 (D.D.C. 1991) ("'It is

17    well established that discovery need not be required of documents of public record which are

18    equally accessible to all parties.'"). SkyWest has made no showing to the contrary.

19        Nor should ALPA be compelled to produce information beyond that contained in its LM-2s.

20    To provide additional detail about any cash receipts, ALPA would need to review its *daily* deposit

21    files for the five-year period over which SkyWest seeks information and seek any clarifying

22    information from individuals familiar with the transaction, a process that would require several

23    weeks. Lorenzetti Decl. at ¶13. Again, SkyWest has made no showing that this information is so

24    important as to justify such a burden. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii); Civ. L. R. 37-2.

25        3.  In-kind support from airlines to ALPA. SkyWest Interrogatory 5, Document Request 7,

26    and its Deposition Notice seek the value and an explanation of the calculation of such value of any

27    "in-kind support provided by any airline whose pilots are represented by ALPA to ALPA." *See*

28    Def's Mot. to Compel (Doc. 206), at 5:22-23, 6:24, Exh. A, 2:25-26. Regardless of its relevance,

1   ALPA should not be required to produce such information. In-kind support the union may receive –

2   such as refreshments at a meeting – is not ordinarily recorded, tracked, or valued by ALPA.

3   Lorenzetti Decl. at ¶¶14-15. As with the compensation information it seeks, SkyWest should

4   request this in-kind support information from carriers instead. The carriers themselves are far more

5   likely than ALPA to have records of the type that SkyWest seeks. *See* Fed. R. Civ. P.

6   26(b)(2)(C)(i); Civ. L. R. 37-2.

7          4. Legal documents filed by ALPA. SkyWest Interrogatory 13 and SkyWest Document

8   Request 30 seek information about documents that ALPA filed in *Barthelemy* and other litigation in

9   which it was alleged to have received compensation or financial support from airlines that violated

10   Section 2, Fourth. Def's Mot. to Compel (Doc. 206) at 7:8-12, 7:15-19, Exh.A at 2:15-17. As

11   described above, the requested information is an improper attempt to conduct legal research through

12   discovery, and cannot possibly "lead to the discovery of admissible evidence." Fed. R. Civ. P.

13   26(b)(1). Moreover, like the LM-2 forms, any litigation pleadings would be a matter of public

14   record. SkyWest does not make any attempt to explain why seeking such information from ALPA

15   is more convenient than seeking it directly from courts or other fora. Thus, even if minimally

16   probative, this information should not be compelled. *See* Fed. R. Civ. P. 26(b)(2)(C); *Baum*, 218

17   F.R.D. at 40; *Dushkin*, 136 F.R.D. at 335.

18                                   **CONCLUSION**

19          For the foregoing reasons, SkyWest's requested discovery does not meet the requirements of

20   Federal Rule of Procedure 26(b). Its motion to compel should be denied.

21   Dated: July 3, 2008                     Respectfully submitted

22                                           STEPHEN P. BERZON
                                             LINDA LYE
23                                           Altshuler Berzon LLP

24                                           ELIZABETH GINSBURG
                                             Air Line Pilots Association, International
25

26

27                                   by:  \s\Linda Lye
                                            Linda Lye
28

                                             Attorneys for Plaintiffs