Norman A. Quandt (Admitted *Pro Hac Vice*)
Ford & Harrison LLP
1275 Peachtree Street, N.E., Suite 600
Atlanta, GA 30309
Telephone:    404-888-3845
Facsimile:    404-888-3863
Email: nquandt@fordharrison.com

Douglas W. Hall (Admitted *Pro Hac Vice*)
Ford & Harrison LLP
1300 Nineteenth Street, N.W., Suite 700
Washington, DC 20036
Telephone:    202.719.2065
Facsimile:    202.719.2077
Email: dhall@fordharrison.com

Robert Spagat (SBN: 157388)
WINSTON & STRAWN LLP
101 California Street
San Francisco, CA 94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400
Email: rspagat@winston.com

Attorneys for Defendant
SKYWEST AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SKYWEST PILOTS ALPA ORGANIZING COMMITTEE, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SKYWEST AIRLINES, INC., <br><br> Defendant. | Case No. C-07-2688 CRB <br><br> **DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL** |

## TABLE OF CONTENTS

Page

I. BACKGROUND ....................................................................................................................1

II. ARGUMENT .........................................................................................................................3

    A. Introduction ................................................................................................................4

    B. ALPA's Funding From The Carriers Whose Pilots ALPA Represents Is Highly Relevant And Not Overbroad ..........................................................................6

    C. ALPA Is The Most Convenient, Least Burdensome And Least Expensive Source Of The Information SkyWest Seeks ...............................................................9

        1. Service of Subpoenas On More Than Forty (40) Non-Parties Is Not More Convenient, Less Burdensome, or Less Expensive That Discovery From ALPA .......................................................................................9

        2. ALPA Is The Only Comprehensive Source Of The Information Sought By SkyWest Regarding Litigation Involving Claims That It Has Received Financial Support In Violation Of Section 2, Fourth Of The RLA ...........................................................................................................11

III. CONCLUSION ...................................................................................................................13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Barthelemey v. Air Lines Pilots Ass'n*,
  897 F.2d 999 (9th Cir. 1990) ..................................................................................... 2, 4, 5, 11

*Beneficial Fin. Co. of New York v. Fontaine*,
  402 F. Supp. 1219 (E.D.N.Y. 1975) ....................................................................................... 6, 7

*Garneau v. City of Seattle*,
  147 F.3d 802 (9th Cir. 1998) ....................................................................................................... 3

*United States ex. rel. Stephens v. Prabhu*,
  163 F.R.D. 340 (D. Nev. 1995) .................................................................................................. 6

**STATUTES**

45 U.S.C. § 151 ............................................................................................................................... 4

45 U.S.C. § 152 ....................................................................................................................... *passim*

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 .................................................................................................................. 3, 4, 10

Fed. R. Civ. P. 30 ....................................................................................................................... 3, 13

Fed. R. Civ. P. 45 ............................................................................................................................. 10

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Defendant SkyWest Airlines, Inc. ("SkyWest" or the "Company") hereby submits its reply brief in support of its motion to compel Plaintiff Air Line Pilots Association, International ("ALPA") to produce certain information requested by SkyWest in discovery relating to financial support received by ALPA from the carriers whose pilots it represents.

## I. BACKGROUND

SkyWest is an airline headquartered in St. George, Utah. ALPA is a labor union that, at the time this suit was filed in May 2007, sought to become the collective bargaining representative of SkyWest's pilots. The other Plaintiffs in this suit are individual SkyWest pilots who supported ALPA's efforts and the SkyWest Pilots ALPA Organizing Committee.

Plaintiffs raised two types of claims in their Complaint, one of which is particularly pertinent to this discovery dispute: that SkyWest violated the RLA by "funding, promoting, recognizing, purporting to bargain with, and otherwise supporting" the SkyWest Airline Pilots Association ("SAPA"). Complaint, ¶¶ 48-52.

On February 21, 2008, SkyWest served on ALPA its first set of interrogatories and document requests, seeking information related to the financial relationship between ALPA and the carriers whose pilots it represents, as well as information relating to litigation in which ALPA has been a party that involved claims that financial support or compensation provided to ALPA by any carrier violated the RLA. The following four interrogatories are germane to this motion:

> <u>Interrogatory 3</u>: Identify any and all compensation provided by any airline whose pilots are represented by ALPA to any local or national ALPA officer, employee, agent, representative, or committee member, including but not limited to a description of each expenditure, its purpose, and amount. "Compensation" includes, but is not limited to, wages, salary, reimbursement of lost flying opportunities, bonuses, benefits, reimbursed travel, and other perquisites. In responding to this interrogatory, you need only provide information relating to compensation that an individual received by virtue of his or her status and/or work performed as a local or national ALPA officer, employee, agent, representative, or committee member, not as an employee of the airline. In addition, you need not identify or provide the value of any compensation which ALPA reimbursed to the airline in question.
>
> <u>Interrogatory 4</u>: Identify any and all financial support provided by any airline whose pilots are represented by ALPA to ALPA, including but not limited to a description of each expenditure, its purpose, and

amount. For purposes of this interrogatory, "financial support" includes, but is not limited to, any payments or reimbursements to ALPA; any expenses incurred by ALPA that were paid directly or reimbursed by the airlines; and any expenses incurred by ALPA in connection with ALPA business that were paid directly or reimbursed by the airlines.

Interrogatory 5: Identify any and all in-kind support provided by any airline whose pilots are represented by ALPA to ALPA. Your description should state the value of each item of in-kind support and the basis used to calculate its value.

Interrogatory 14: Identify any and all litigation, including but not limited to *Barthelemey v. Air Lines Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990), in which compensation or financial support (as those terms are defined in Interrogatories 5 and 6 above) to ALPA and/or any local or national ALPA officer, employee, agent, representative, or committee member was alleged to violate Section 2, Third and/or Section 2, Fourth of the Railway Labor Act. For purposes of this interrogatory, "litigation" includes, but is not limited to, any lawsuit, counter-claim, cross-claim, arbitration, administrative proceeding, or bankruptcy adversary proceeding in which such allegation was made.

SkyWest served document requests to ALPA (requests 5, 6, and 7) that corresponded with Interrogatories 3, 4, and 5, respectively. SkyWest's document request 30 sought production of all "briefs, motions, and other documents filed or submitted by ALPA" relating to ALPA's position in the litigation identified in response to Interrogatory 14 regarding the allegation that compensation or financial support it received from carriers violated the RLA.

ALPA served discovery its responses on May 5, 2008. With respect to Interrogatories 3 through 5, ALPA gave the same substantive response:

> Plaintiff specifically objects to this Interrogatory to the extent that it calls for information protected by the attorney-client, attorney work product, or other privilege. Plaintiff further objects on the basis that this Interrogatory is overbroad, unduly burdensome, and not calculated to lead to the discovery of relevant evidence. Subject to and without waiving the foregoing general and specific objections, ALPA states that collectively-bargained agreement negotiated on behalf of the pilots it represents reflect the nature and scope of financial arrangements between ALPA and the carrier whose pilots ALPA represents and those arrangements vary among the 41 carriers represented.

Likewise, ALPA provided an identical response to each of SkyWest's document requests 5 through 7:

Plaintiff specifically objects to this Request as unduly burdensome to the extent that it calls for documents protected by the attorney-client or attorney work product privilege. Plaintiff further objects on the basis that this Request is overbroad in that it is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff further objects on the basis that this Request is not limited to time and is thus unduly burdensome. Subject to and without waiving its objections, Plaintiff will produce provisions of current collectively bargained agreements negotiated on behalf of the pilots it represents in effect that reflect the nature and scope of financial arrangements between ALPA and the carrier whose pilots ALPA represents.

Finally, with respect to each of Interrogatory 14 and Document Request 30, pertaining to litigation in which the compensation or financial support it received was alleged to violate the RLA, ALPA objected on the ground that the request was "unduly burdensome insofar as it is unlimited as to time and seeks information that is publicly available and is overly broad because it is not reasonably calculated to lead to the discovery of admissible evidence."

SkyWest also has served ALPA with a deposition notice pursuant to Federal Rule of Civil Procedure 30(b)(6). Among the topics listed in the deposition notice were those covered in Interrogatories 3, 4, 5 and 14. ALPA has informed SkyWest that it will not produce a witness or witnesses to testify on those matters, absent a court order compelling it to do so.

## II.   ARGUMENT

In response to SkyWest's motion to compel, citing Fed. R. Civ. P. 26(b)(1), ALPA tells the Court that the legal standard applicable to SkyWest's motion to compel is that, "SkyWest may only discover material that is 'relevant to any party's claim or defense.'" Pl. ALPA's Opp. To Def.'s Mot. To Compel, p. 5:3-4 (hereinafter, "ALPA's Opp."). What ALPA implies is that "relevant" means "admissible"; but that clearly is not the law. "Relevant," for the purposes of Fed. R. Civ. P. 26(b)(1), means that the "information need not be admissible at the time of trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir.1998).

As shown herein, the information sought by SkyWest is discoverable and is not subject to any of the limitations on discovery cited by ALPA.

3

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

A.  **Introduction**

ALPA argues that SkyWest is not entitled to the information it seeks because (1) "ALPA's relationship to non-SkyWest carriers bears no nexus to the separate SkyWest-SAPA relationship in this case," ALPA Opp., at 6:8-9; in other words, stripped of obfuscation, ALPA says the materials SkyWest seeks are not relevant, (2) ALPA's briefs in other cases are not relevant, *id.* at 10:13, (3) the Company's requests are overbroad, *id.* at 11:9, and (4) the materials can be obtained from other sources, *id.* at 12:3-4. As to the first three arguments, ALPA seems to misapprehend the Company's rationale for demanding the information. As to the fourth argument, ALPA's position facially is absurd.

Assessment of ALPA's first three excuses for resisting discovery requires a brief review of the parties' positions. We start with Section 2, Fourth of the RLA, 45 U.S.C. § 152, Fourth. It states that, "it shall be unlawful for any carrier to . . . use the funds of the carrier in maintaining or assisting or contributing to any labor organization [such as ALPA], labor representative, or other agency of collective bargaining [such as SAPA]. . . ."

SkyWest's position, supported by, *inter alia*, ALPA's own position in *Barthelemy v. Air Line Pilots Ass'n*, 897 F.2d 999 (9th Cir. 1990), is that when deciding if a carrier's payments to an RLA "representative," *see* 45 U.S.C. § 151, Sixth, violate Section 2, Fourth of the RLA, the relevant inquiry is whether the financial support compromises the independence of the representative. Def.'s Mem. In Supp. Of Mot. To Compel And To Extend Deadlines, p. 6 (hereinafter, "Def.'s Mem. To Compel"). That means that Section 2, Fourth cannot be read completely literally, for if it were, any degree of support whatsoever would be unlawful.

ALPA's explicit position is that the degree to which SkyWest funds SAPA (indisputably 100%) violates Section 2, Fourth. ALPA's Opp., p. 1. As explained below, the parties' positions in this case, in conjunction with (1) the seemingly unconditional language in Section 2, Fourth, and (2) ALPA's position in *Barthelemy*, leads to related factual issues that SkyWest is entitled to explore, in its search for materials that are "reasonably calculated to lead to the discovery of admissible evidence." *See* Fed. R. Civ. P. 26(b)(1). Those facts pertain to (a) the related propositions that

4
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

SkyWest's funding of SAPA differs by degree, not type, from the support ALPA receives from many other carriers and that ALPA presumably would contend is legal, and that there is a common, industry-standard practice whereby carriers provide funding to unions, and (b) SkyWest's defense of unclean hands.

As to the first two related propositions, for SkyWest to show a common, industry-standard practice, and that its funding of SAPA differs by degree, not type, from the support ALPA receives, a baseline for industry common practice must be established. Because of ALPA's dominance in the airline industry and status as a party, SkyWest will be content to use ALPA's data to show that there indeed is an industry-wide practice whereby unions – and specifically unions that represent pilots – routinely obtain financial support from the carriers whose pilots the unions represent. That baseline would be comprised of information showing how much support ALPA receives from each carrier, and the reasons for that support. The reasons may or may not be contained in the relevant collective bargaining agreements ("CBAs").

As to the last proposition, SkyWest's purpose in obtaining detailed financial information from ALPA is to show that ALPA, through words and deeds, practices differently in the world outside the courthouse than it preaches inside the courthouse. By contending, or more accurately pretending, in this case that the effect of funding on a union's independence is irrelevant, ALPA disingenuously tells the Court to read Section 2, Fourth of the RLA literally; and a truly literal reading would bar any funding whatsoever. The data SkyWest seeks will, it is expected, show that, to the contrary, ALPA regularly (and legally) accepts very significant financial support from carriers. If that is the case, those diametrically opposed positions gives ALPA unclean hands and equity would not permit ALPA to take a different position as the plaintiff in this case than it has taken (a) as the defendant in *Barthelemy* and (b) on a daily basis as a labor organization that demands and accepts carrier contributions of literally tens of millions of dollars.[1]

---

[1] If ALPA were to accede to SkyWest's legal position that the proper inquiry is into whether a representative's independence *actually* has been overridden by carrier contributions, the discovery SkyWest seeks would indeed be irrelevant. *See, e.g.*, ALPA Opp. at 6:25-7:13, 9:18-26 and cases cited therein (arguing that SkyWest is not entitled to discovery because what is sought is not relevant to SkyWest's position that actual domination of the supported union is the proper test). So long, however, as SkyWest is called upon to respond to ALPA's legal theory – that there is some threshold

5

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

The evidence that ALPA seeks to hide from SkyWest and the Court may well show that what ALPA self-righteously says is unlawful as to SAPA is, in ALPA's view, entirely legal when applied to itself. But, of course, that cannot be known until ALPA shares the information demanded by SkyWest.

### B. ALPA's Funding From The Carriers Whose Pilots ALPA Represents Is Highly Relevant And Not Overbroad

In claiming that the discovery sought by SkyWest is not relevant, ALPA cites numerous cases that it asserts stand for proposition that materials related to its relationships with other carriers are not discoverable merely because different entities and transactions are involved. ALPA Opp. at 7:14-8:14. SkyWest's objectives in demanding information is, however, entirely different than in the cases cited by ALPA. For example, in *United States ex. rel. Stephens v. Prabhu*, 163 F.R.D. 340, 342-43 (D. Nev. 1995), the party seeking discovery of other parties' Medicare documentation "admitted that they were not influenced by the billing practices of other providers during the [relevant] time period. . . ." *Id.* at 343. Here, there is no dispute that SkyWest was aware, in general terms, of the industry-standard practice embodied in ALPA's practices: that ALPA demands and accepts carrier funds.

*Beneficial Fin. Co. of New York v. Fontaine*, 402 F. Supp. 1219 (E.D.N.Y. 1975), similarly is off point. In that case, the defendant, who admitted falsifying a credit application, sought to obtain other credit applications in order to show that the lender did not rely upon his false statement. Discovery was denied because, among other things, the plaintiff averred that each application was separately considered on its own merit, and because, as a more general proposition, failure to rely in one case does not speak to reliance in another case. *Id.* at 1221. Here, of course, ALPA has not taken a position on whether it accepts funding from carriers (but it really cannot deny that it does),

---

at which a carrier's contributions to a union is too much, and thus unlawful – the Company is entitled to discovery showing that its contributions to SAPA differ by degree, not type, from the those received by ALPA, *and that ALPA's position in the courthouse is different than its position outside the courthouse.*

and SkyWest's purpose is fundamentally different that that of the defendant in *Fontaine*. This case, and the cases cited by ALPA, fundamentally are different.

ALPA's Opposition also harps on its claim that ALPA's relationship with the carriers whose pilots it represents is entirely different from SkyWest's relationship with SAPA because ALPA is, it says "overwhelmingly financed from independent sources. . . ." ALPA Opp. at 9:5-6. In support of that proposition, ALPA tells the Court that out of a total of $257 million in receipts for fiscal 2007, substantially less than half - $108 million - came from its membership. ALPA Opp., at 6:23-24. Another $102 million came from the "sale of investments and fixed assets." *Id.* at 6:24-25. That leaves $47 million for which ALPA provides no source in its opposition. ALPA's 2007 LM-2, however, shows that nearly half that amount – approximately $22 million – came from unidentified "other" sources." Declaration of Andrew D. McClintock (hereinafter, "McClintock Dec."), Attachments A (Detailed Summary Page – Schedules 14 through 19), B (Receipts Report).

Having asserted that ALPA is "overwhelmingly financed from independent sources," based upon its LM-2 and the declaration of its Director of Finance, Declaration of Margarita Lorenzetti In Support of Plaintiff ALPA's Oppositon to Defendant's Motion to Compel (hereinafter, "Lorenzetti Dec."), p. 3:21-28, SkyWest is entitled to inquire into the accuracy of that assertion. ALPA's opposition, in short, has opened the very door that it seeks to close.

Indeed, it can only be presumed that the unidentified "other sources" on the LM-2 are the carriers whose pilots ALPA represents. In other words, nearly nine percent (9%) of ALPA's total income in 2007 - $22 million dollars - came from carriers. What ALPA does not want the Court or SkyWest to know is how that $22 million in income from carriers was distributed among the more than forty (40) carriers whose pilots ALPA represents, and how that income is allocated inside each of the Master Executive Councils ("MEC") it has established at each such carrier, and why that sum of money was paid.[2]

---

[2] Under ALPA's structure, a unit called an Master Executive Council ("MEC") is formed at each carrier whose pilots ALPA represents. Each MEC at each carrier is led by an MEC Chairman who typically is a pilot employee of the carrier. The MEC is not a legal entity or labor organization; it is, instead, merely a subordinate unit of the international union.

7
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

That net 9% distribution could mean that, if all ALPA carriers had the same costs, at one of every ten ALPA-represented carriers, the carrier provides nearly total support. It also could mean that twenty percent (20%) of ALPA-represented carriers are fifty percent (50%) supported by the carrier. But, of course, nobody can pretend that ALPA representation at all 40+ carriers has the same costs. So it also could mean that a greater percentage of the carriers, that have the lowest cost of ALPA representation, provide the majority of the support to their MEC. The data might also show that carrier contributions largely sustain the individual MECs, while other sources of funding support the operations of the international union.

It also cannot be pretended, under ALPA's theory of the case, that how a carrier's "contribution" is allocated is unimportant. Only ALPA's own internal documents reasonably can be expected to tell the Court if, for example, ALPA reimburses a carrier for the compensation provided to pilots who devote all of their working time to ALPA business. If the carrier pays 100% of an MEC Chairman's income, and he or she spends all his or her working time on ALPA business and none flying for the carrier, the situation would seem to fall within the spectrum of what ALPA disingenuously tells the Court is unlawful as to SAPA and SkyWest.

SkyWest's objective is to show that its contributions to SAPA differ from the carrier contributions ALPA receives only by a matter of degree. To establish the industry common baseline, SkyWest must have data from ALPA that shows how much ALPA receives from each carrier, the purposes for which those contributions were made, and how the amount corresponds to the total funding of each MEC and of ALPA itself (*i.e.*, the international union). The limited sampling of CBAs ALPA has produced show what has been contracted for with a limited number (not the entire set) of carriers at which it the designated collective bargaining representative, but not the amounts. These CBAs also do not tell SkyWest or the Court if ALPA has been the beneficiary of extra-contractual payments from carriers. Even ALPA's limited sampling of CBAs, in short, tell only part of the story.[3]

---

[3] Section II.A. of ALPA's Opposition argues that SkyWest's requests for financial information are overbroad. The crux of ALPA's argument is that the ALPA's CBAs with the carriers whose pilots it represents provide all the information SkyWest requires. ALPA Opp. at 11:9-12:2. As explained in the text above, the contractual basis for payments by carriers, without the amounts, provides only

8

As the attached excerpts from ALPA's most current LM-2 shows, there is no possible way to discern the purpose of most payments received by ALPA from various carriers. *See* McClintock Dec., Attachments C (Other Receipts), D (Payer/Payee Report). There is, likewise, no way to discern whether, or the extent to which, payments made or owed by ALPA to the various carriers constitute full or partial reimbursement for payments the carriers made to their pilots who work full time for ALPA, or for costs incurred on behalf of ALPA. McClintock Dec., Attachment E (Accounts Payable).

It is not unimportant that nine percent (9%) of ALPA's total revenues comes from carriers. Standing alone, however, that fact tells a wholly incomplete tale. What matters more is which carriers that money comes from *and the purposes for which ALPA accepts it*. That information is not contained in, and cannot be discerned from, ALPA's LM-2s.

The CBAs tell part of the story. The LM-2s tell part of the story. The data SkyWest has requested in its discovery requests provide the linkage between the CBAs and the LM-2. Without this information the stories told by the CBAs and the LM-2s are meaningless.[4]

**C.    ALPA Is The Most Convenient, Least Burdensome And Least Expensive Source Of The Information SkyWest Seeks**

   **1.   Service of Subpoenas On More Than Forty (40) Non-Parties Is Not More Convenient, Less Burdensome, or Less Expensive That Discovery From ALPA**

ALPA objects to providing information sought by Interrogatory 3, Document Request 5, Interrogatory 5, and Document Request 7 and SkyWest's deposition notice. ALPA's objection is premised, at least in part, on an unfounded assertion that the carriers that provide the payments about which SkyWest asks have better access to the information than ALPA. ALPA Opp. at 12:18-20, 15:5-6. ALPA asserts, for example, that the carriers "themselves routinely record the amount,

---

half of the story. The CBAs also tell SkyWest and the Court nothing about extra-contractual payments from carriers to ALPA.
[4] ALPA makes a number of wild accusations that SkyWest's discovery requests are made for the purpose of harassment. ALPA Opp. at 8:23-27, 9:27-10:11. This memorandum provides compelling reasons why ALPA should be required to respond to the disputed interrogatories, requests for production and deposition notices and makes clear that they are not propounded for any improper purpose.

9
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

purpose, and date of all compensation that they provide to ALPA pilots." *Id.* at 12:23-24. That presumably would be true for the purposes of, for example, W-2 and related tax information. That is not to say, however, whether or how those carriers record when, if or why, ALPA reimburses the carrier. SkyWest does not merely ask for information about compensation provided to pilots – it asks for compensation provided to each pilot who is a "local or national ALPA officer, employee, agent, representative or committee member" who receives that compensation "by virtue of his or her status" with ALPA, *and for which the carrier is not reimbursed.* SkyWest Interrog. 3. No support is given for ALPA's blanket assertion that the carriers have *all* the information SkyWest seeks because, of course, ALPA has no more way to know what those carriers' internal accounting systems contain than does SkyWest or the Court.

Then ALPA goes for the truly absurd, proposing that SkyWest serve document production and deposition subpoenas, *see* Fed. R. Civ. P. 45, on the more than forty (40) non-party airlines whose pilots ALPA represents. ALPA Opp., pp. 13:13-14, 15:3-5.. It certainly would be less burdensome for ALPA to throw the cost of discovery, in a case that it filed, upon non-parties, but it is ludicrous to suggest that doing so would be "more convenient, less burdensome, or less expensive," *see* Fed. R. Civ. P. 26(b)(2)(C)(i), than obtaining the information from ALPA.

Moreover, while ALPA reports that it does not "record *all* the information [sought by SkyWest] electronically, or track it in any other uniform transaction-by transaction format," ALPA Opp., p. 12, it must somehow track information related to compensation paid or not paid to airline pilots who are officers, employees, agents or representatives of ALPA, for it does provide a name-by-name summary of the compensation paid to such employees on its LM-2. McClintock Dec., Attachment F (Officers/Employee Report).

Not only would obtaining the materials SkyWest seeks from more than forty (40) non-parties be less convenient, more burdensome and more expensive, there also is no reason to believe, other than unsupported speculation from ALPA, that the carriers actually have *all* the information SkyWest seeks. ALPA should be compelled to respond to SkyWest's Interrogatories 3 and 4, Document Requests 5 and 6, and its Deposition Notice.

10

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

ALPA's LM-2 Provides Inadequate Information

In refusing to respond substantively to SkyWest Interrogtory 4, Document Request 6, and the Company's Deposition Notice, ALPA tells the Court that SkyWest's demands will have to be met by the publicly available information provide by Schedule 14 of its LM-2 reports. ALPA Opp. at 13:21-23, 14:12-13. As the attached excerpts from ALPA's 2007 LM-2 shows, that report does not disclose the purpose of the payments made by various carriers to ALPA or identify the nature or purpose of goods or services provided to ALPA by carriers. McClintock Dec., Attachments C and D. Those payments could be reimbursement for expenses incurred by ALPA or they could fall within the scope of "funds of the carrier [for] maintaining or assisting or contributing to any labor organization" under Section 2, Fourth of the RLA. There is, however, no way to know from the LM-2 the purpose of those payments. It is the documentation that ALPA uses to build its LM-2 report that SkyWest seeks. The LM-2 does disclose, however, that there *is* source documentation for most of ALPA's receipts from carriers. McClintock Dec., Attachment A (itemized receipts for $20,784,964 out of $22,817,434 in "other receipts").

The data SkyWest seeks is not available from ALPA's LM-2 reports. They are not, therefore, an acceptable alternative to the materials sought by SkyWest's discovery requests.

2.   **ALPA Is The Only Comprehensive Source Of The Information Sought By SkyWest Regarding Litigation Involving Claims That It Has Received Financial Support In Violation Of Section 2, Fourth Of The RLA**

SkyWest Interrogatory 13 and Document Request 30 seek information pertaining to *Barthelemy* and other litigation involving ALPA in which it was alleged that ALPA received funding in violation of Section 2, Fourth of the RLA. ALPA's answer to those requests is that SkyWest is asking ALPA to conduct its legal research, ALPA Opp., at 10:18-19, 15:11-12, and that any such documents are matters of public record, *id.* at 15:13-14. Both arguments completely miss the mark.

SkyWest is entirely capable of conducting its own legal research. That is not SkyWest's purpose. SkyWest seeks, rather, to find out when, why, and how often ALPA has taken the position it took in *Barthelemy* that the proper inquiry, in a case such as this is whether a carrier's payments to a labor representative or organization purpose resulted in actual domination of the union. SkyWest

11

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

can find published opinions; but as explained below, it is another thing altogether to find ALPA statements (*i.e.*, admissions), in documents it has filed with other courts, that are squarely contrary to the position it takes before this Court.

ALPA says that "litigation pleadings would be a matter of public record," ALPA Opp. at 15:13-14, and then wants the Court to presume that they are easily located. It is true that litigation pleadings are public records (unless sealed); but to equate that to ease of access is as absurd as suggesting that SkyWest serve subpoenas on more than forty non-party airlines. ALPA will have ready access to any pleadings in any case in which it has been involved, including those that were settled without any court opinion and those for which, even if there were an opinion on the merits, the decision was not published. The only way SkyWest would have any hope independently of learning of all the cases that are within the scope of its request would be to search – electronically if possible, and by hand if not – every docket of every local, state and federal court in the country since ALPA was organized. After identifying the cases in which ALPA was a party, SkyWest would then have to read the complaints to determine which cases involved a claim that ALPA accepted funding in violation of Section 2, Fourth. To suggest that such a laborious and painstaking process is in any way comparable to – let alone more convenient, less expensive or less burdensome than – obtaining the documents from ALPA, is absurd.

ALPA should be compelled to produce the information sought by its Interrogatory 13, and Document Request 30.

//
//
//
//
//
//
//
//

12

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1

### III. CONCLUSION

For all of the reasons herein, SkyWest requests that the Court enter an order compelling ALPA (a) to respond to SkyWest Interrogatories 3, 4, 5 and 14; (b) to respond to SkyWest document requests 5, 6, 7, and 30; and (c) produce witnesses to testify in its Rule 30(b)(6) deposition about the subjects covered in these interrogatories and document requests.

Dated: July 10, 2008                              WINSTON & STRAWN LLP


By:   /s/ Robert Spagat
      Robert Spagat
      Attorneys for Defendant
      SKYWEST AIRLINES, INC.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

13
DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL
CASE NO. C 07-2688 CRB

SF:210805.1